No. 23-35235

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

ANDREW GRIMM,

Plaintiff-Appellant,

v.

CITY OF PORTLAND,

Defendant-Appellee.

On Appeal from the United States District Court
for the District of Oregon
No. 3:18-cv-00183-MO
Hon. Michael W. Mosman, United States District Judge

EXCERPTS OF RECORD: VOLUME I

Gregory Keenan
DIGITAL JUSTICE FOUNDATION
81 Stewart Street
Floral Park, New York 11001
(516) 633-2633
Gregory@DigitalJusticeFoundation.org

Attorney for Appellant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**ANDREW GRIMM**,

               Plaintiff,                               Case No. 3:18-cv-00183-MO

          v.                                      OPINION & ORDER

**CITY OF PORTLAND**,

               Defendant.

**MOSMAN, J.**,

Plaintiff Andrew Grimm challenges the constitutionality of Portland's pre-tow notice procedures after neglecting to return to his vehicle parked in downtown Portland for approximately ten days and finding that the vehicle had been towed. Both Defendant City of Portland ("the City" or "Portland") and Mr. Grimm filed Motions for Summary Judgment [ECF 94, 95]. Oral argument took place on February 7, 2023. For the reasons given below, I GRANT the City's Motion for Summary Judgment and DENY Mr. Grimm's Motion for Summary Judgment.

## PROCEDURAL BACKGROUND

On August 21, 2020, the Court of Appeals for the Ninth Circuit reversed this Court's grant of summary judgment to the City and remanded the case for further proceedings consistent with its opinion. *Grimm v. City of Portland*, 971 F.3d 1060 (9th Cir. 2020). The Ninth Circuit held that I erred in applying *Mathews v. Eldridge*, 424 U.S. 319 (1976), instead of *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), to analyze Mr. Grimm's adequacy of notice claim. *Id.* at 1062.

1 – OPINION & ORDER

Further, the Ninth Circuit called attention to Mr. Grimm's argument that *Jones v. Flowers*, 547 U.S. 220 (2006), extends *Mullane* by holding that the state's method of notice was inadequate because "additional reasonable steps were available" upon knowledge that the original method of service was ineffective. *Id.* at 1066 (citing *Jones*, 547 U.S. at 225). The panel advised that "[t]he analysis under *Mullane* and *Jones* will require the district court to decide whether the citations and tow placard provided 'reasonably calculated' notice of the tow, and whether, if Portland had knowledge that notice was ineffective, it was practicable to notify Grimm through other means." *Id.* at 1068.

The Ninth Circuit remanded the case and instructed this Court to consider the following, among other questions:

(1) Is putting citations on a car that do not explicitly warn that the car will be towed reasonably calculated to give notice of a tow to the owner?;

(2) Did the red tow slip placed on Grimm's car shortly before the tow provide adequate notice?; and

(3) Was Portland required under *Jones* to provide supplemental notice if it had reason to suspect that the notice provided by leaving citations and the tow slip on Grimm's windshield was ineffective?

*Id.*

## FACTUAL BACKGROUND

On December 14, 2017, Mr. Grimm parked his vehicle in downtown Portland and paid for parking using the Parking Kitty mobile parking payment application. Joint Notice of Stipulated Facts [ECF 93] ¶¶ 34–35. Mr. Grimm received notifications from Parking Kitty three minutes before and at the time of parking expiration. *Id.* ¶¶ 10, 11, and 36. Parking Kitty is not currently configured to allow the City to send notifications pertaining to citations or towing. *Id.* ¶ 14. Parking Kitty is owned by the company Passport Parking, Inc., *id.* ¶ 5, which does not regularly share users' contact information with the City, *id.* ¶ 20.

Mr. Grimm understood that having his vehicle remain in a metered spot without payment could result in the vehicle being towed. *Id.* ¶ 29. Beginning at 8 A.M. on December 15, 2017, Mr. Grimm's vehicle was parked illegally pursuant to Portland City Code 16.20.430A. *Id.* ¶ 41. That day, in accordance with city policy, *id.* ¶¶ 17–18, a Parking Enforcement Officer ("officer") issued two citations: (1) for failing to display current registration tags and (2) for unlawfully parking in a metered zone without proof of payment, *id.* ¶ 42. On December 18, 2017, an officer issued two additional citations for the same violations. *Id.* ¶ 43. The next day, an officer issued an additional citation for the unlawful parking in a metered zone. *Id.* ¶ 44. This citation included a "CITE AND WARN" comment, which referred to the red warning slip placed on the vehicle stating that "your vehicle will be subject to tow/citation if it is not moved," with "tow/citation" circled and "tow" underlined by the officer. *Id.* On December 21, 2017, an officer issued an additional parking citation for being parked in a metered zone without proof of payment. *Id.* ¶ 45. The officer also placed a separate tow slip on the windshield. *Id.* That day, the officer contacted Retriever Towing to tow and impound Mr. Grimm's vehicle. *Id.* ¶ 47.

Mr. Grimm did not see the postings before his car was towed and did not return to the vehicle between December 14, 2017, and December 24, 2017. *Id.* ¶ 48. On December 22, 2017, the City mailed letters to the address registered with Mr. Grimm's vehicle to provide retrieval information and state that the vehicle had been towed. *Id.* ¶ 49. The City "did not use telephone, email, Internet, contact information from Parking Kitty, or the Parking Kitty app to notify Mr. Grimm that his vehicle would be towed." *Id.* ¶ 51.

The City has the following policies for vehicles remaining in metered spaces past paid-for time:

> The City's policy and procedure is that after a minimum of two citations are issued for overtime parking in a metered zone, a Parking Enforcement Officer working for

[the Portland Bureau of Transportation] places a red warning placard in the form attached as Exhibit A ("Warning Placard") on the vehicle's windshield. The City's policy and procedure is that the Parking Enforcement Officer circles "tow" on the Warning Placard where it states: "Your vehicle will be subject to tow/citation _____ if it is not moved." The City's policy and procedure is that after placing the Warning Placard on the vehicle, if the vehicle is not moved within twelve hours, a City Parking Enforcement Officer places a tow placard in the form attached as Exhibit B on the vehicle and contacts a contracted towing company to tow and impound the vehicle.

*Id.* ¶¶ 17, 18.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The initial burden for a motion for summary judgment is on the moving party to identify the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once that burden is satisfied, the burden shifts to the non-moving party to demonstrate, through the production of evidence listed in Fed. R. Civ. P. 56(c)(1), that there remains a "genuine issue for trial." *Celotex*, 477 U.S. at 324. The non-moving party may not rely upon the pleading allegations, *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995) (citing Fed. R. Civ. P. 56(e)), or "unsupported conjecture or conclusory statements," *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). All reasonable doubts and inferences to be drawn from the facts are to be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

### I. *Mullane/Jones* Standard

*Mullane v. Central Hanover Bank & Trust Co.* held that "[a]n elementary and fundamental requirement of due process . . . is notice reasonably calculated, under all the circumstances, to

apprise interested parties of the pendency of the action and afford them an opportunity to present their objections . . . with due regard for the practicalities and peculiarities of the case." 339 U.S. 306, 314–15 (1950). *Mullane* established a "reasonably calculated" due process standard that has been understood to govern inquiries into adequacy of notice. *See, e.g.*, *Robinson v. Hanrahan*, 409 U.S. 38, 39–40 (1972) (collecting cases).

The reasonably calculated standard does not demand "best practicable" notice, contrary to Mr. Grimm's argument. Rather, Supreme Court and Ninth Circuit case law outlining a best practicable standard of notice is limited to the context of class action notice under Fed. R. Civ. P. 23. *See, e.g.*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985); *Silber v. Mabon*, 957 F.2d 697 (9th Cir. 1992). Other circuit courts have also referred to "best notice practicable" primarily in the context of Fed. R. Civ. P. 23. *Compare Greenfield v. Villager Industries, Inc.*, 483 F.2d 824 (3d Cir. 1973), *In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088 (5th Cir. 1977), *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008), *Pollard v. Remington Arms Company, LLC*, 896 F.3d 900 (8th Cir. 2018), *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935 (10th Cir. 2005), *and Juris v. Inamed Corp.*, 685 F.3d 1294 (11th Cir. 2012) *with In re Drexel Burnham Lambert Group Inc.*, 995 F.2d 1138, 1144 (2d Cir. 1993) (using "best notice practical under the circumstances" when referring generally to the Due Process Clause). In conclusion, I reject the argument that *Mullane* requires best practicable notice.

*Jones v. Flowers* acknowledges *Mullane*'s reasonably calculated due process standard but notes that the Supreme Court had "never addressed whether due process requires further efforts when the government becomes aware prior to the taking that its notice attempt has failed." 547 U.S. 220, 220 (2006). *Jones* held that "when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner

before selling his property, if it is practicable to do so." *Id.* at 225. The Court emphasized the individualized notice requirements by clarifying that "[t]he government must consider unique information about an intended recipient regardless of whether a statutory scheme is reasonably calculated to provide notice in the ordinary case." *Id.* at 221.

## II.     Notice of Individualized or Systemic Failure

Prior to evaluating the adequacy of individualized pre-tow notice, I first assess whether there were systemic issues to Portland's notice protocol regarding towing. The briefing indicates that the City was not on notice that its procedures of providing pre-tow notice were deficient. Unlike in *Greene v. Lindsey*, 456 U.S. 444 (1982), in which posting notice on the property was insufficient because of known instances of having notice removed prematurely, here, there is no information that the City's method of notice by posting citations and a warning slip on the vehicle was repeatedly failing to notify drivers. Based on the record before me, Portland's pre-tow notice protocol at the systemic level is constitutionally adequate.

*Jones* extends the due process analysis to evaluate the individualized adequacy of notice when the government had reason to suspect that notice was ineffective. Here, the parties stipulated that the parking citations remained on the windshield but disagree on the inference to make from this fact. On summary judgment, all reasonable doubts and inferences to be drawn from the facts are to be viewed in the light most favorable to the nonmoving party.

## A.     City of Portland's Motion for Summary Judgment

In the light most favorable to Mr. Grimm, the citations remaining on his vehicle indicated that he had not received the City's warnings. The citations indicated ineffective service because had Mr. Grimm seen the citations on the windshield, he would have retrieved them and presumably read them. Therefore, the City had reason to suspect that its attempt at providing notice had failed.

However, as explained later in this opinion, I find that the City did not have reasonable, practicable alternatives to provide notice.

### B.       Andrew Grimm's Motion for Summary Judgment

Even if Mr. Grimm's motion meets the requirements to trigger *Jones*, his motion fails because of the lack of reasonable alternatives available to the City.

### III.       Availability of Reasonable Alternatives

In *Jones*, there were additional reasonable steps available to the State to provide notice, such as resending notice by regular mail and posting notice on the front door. *Jones*, 547 U.S. at 221–22. Notably, *Jones* did not require the State to "search the local phone book and government records" to satisfy the supplemental notice requirement, establishing that there are limitations to what is considered reasonable. *Id.* at 222. Mr. Grimm suggests that the City could have sent notice through Parking Kitty, email, phone call, text message, or pre-tow mail. I address each proposed alternative below.

The parties stipulated to the fact that the City did not have access to the contact information inputted into Parking Kitty. The City did not have Mr. Grimm's email address or phone number, making these methods of communication impracticable for providing service. Further, the parties agreed to the fact that Parking Kitty is not configured to allow the City to send notifications regarding towing or citations.

Mr. Grimm also insists that sending pre-tow notice by mail was required to satisfy *Mullane/Jones*. However, sending pre-tow notice by mail is not a "reasonable step" in the context of street parking. The City has a legitimate interest in regulating downtown parking, which entails towing vehicles that remain illegally parked for a certain period of time. Sending pre-tow mail would severely interfere with the City's ability to timely enforce its parking codes. The mail would

take several days to arrive at the registered owner's house or potentially longer if, as here, the car is registered out of state. This is not a reasonable method of notice given the necessity of keeping city streets clean, safe, and orderly. In short, requiring pre-tow notice by mail erases consideration of the practicalities of the case. I categorically reject the argument that pre-tow notice by mail is required by *Mullane/Jones*. Given that there were no reasonable alternatives for supplemental notice, I grant the City's Motion for Summary Judgment and deny Mr. Grimm's Motion for Summary Judgment.[1]

## IV.    Ninth Circuit's Questions

The Ninth Circuit outlined three questions for this Court to consider, which I briefly address below.

### A.    Is Putting Citations on a Car That Do Not Explicitly Warn That the Car Will be Towed Reasonably Calculated to Give Notice of a Tow to the Owner?

The citations do not constitute adequate notice under the *Mullane* reasonably calculated standard. The citations lacked explicit statements warning the driver that their car would be towed. The due process analysis instead centers on the adequacy of notice from the warning and tow slips.

### B.    Did the Red Tow Slip Placed on Grimm's Car Shortly Before the Tow Provide Adequate Notice?

The Ninth Circuit assumed that there was no warning slip because the parties disputed its presence on Mr. Grimm's vehicle. *Grimm v. City of Portland*, 971 F.3d 1060, 1062 n.2 (9th Cir. 2020). Here, the parties have stipulated to the fact that an officer placed both a warning and tow slip on Mr. Grimm's vehicle. Therefore, I will analyze whether each slip provided adequate notice.

---

[1] Mr. Grimm also moves for retrospective declaratory relief, which I deny under *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 868 (9th Cir. 2017) (holding that "a declaratory judgment merely adjudicating past violations of federal law—as opposed to continuing or future violations of federal law—is not an appropriate exercise of federal jurisdiction.").

8 – OPINION & ORDER

The warning slip provided notice because it explicitly warned that the vehicle would be towed if not moved. City protocol states that after issuing two citations, at least twelve hours must pass between placing the warning slip on the vehicle and having it towed. Here, approximately two days passed. The warning slip provided adequate notice to Mr. Grimm that his vehicle would be towed. In contrast, the tow slip did not provide adequate notice because it was issued shortly before the towing took place, and therefore was not reasonably calculated to apprise Mr. Grimm of the action.

    **C.**     **Was Portland Required Under *Jones* to Provide Supplemental Notice if It Had Reason to Suspect that the Notice Provided by Leaving Citations and the Tow Slip on Grimm's Windshield Was Ineffective?**

*Jones* required the City to provide supplemental notice if it had reason to suspect ineffective notice *and* if additional reasonable steps were available. Unlike in *Jones*, in which the State had reasonable alternatives, here, the City had no such alternatives. While the *Jones* analysis was triggered in this matter, the City ultimately did not have to provide supplemental notice because of the lack of reasonable, practicable alternatives.

**CONCLUSION**

For the reasons given above, I DENY Andrew Grimm's Motion for Summary Judgment [ECF 95] and GRANT the City of Portland's Motion for Summary Judgment [ECF 94].

IT IS SO ORDERED.

DATED this ____ day of March, 2023.

MICHAEL W. MOSMAN
Senior United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**ANDREW GRIMM,**

           Plaintiff,

   v.

**CITY OF PORTLAND,**

           Defendant.

Case No. 3:18-cv-00183-MO

JUDGMENT

**MOSMAN, J.,**

Based on the Opinion and Order of the Court [ECF 103] granting Defendant City of Portland's Motion for Summary Judgment [ECF 94] and denying Plaintiff Andrew Grimm's Motion for Summary Judgment [ECF 95], IT IS ORDERED AND ADJUDGED that this action is DISMISSED with prejudice. Pending motions, if any, are DENIED AS MOOT.

DATED this _____ day of March, 2023.

MICHAEL W. MOSMAN
Senior United States District Judge

1 – JUDGMENT

1-ER-11

Case: 23-35231, 05/18/2023, DktEntry: 4-2, Page 12 of 81 Case 3:18-cv-00183-MO Document 375, Filed 06/02/23, Page 12 of 80

1

```
 1            IN THE UNITED STATES DISTRICT COURT

 2              FOR THE DISTRICT OF OREGON

 3  ANDREW GRIMM,                    )
                                     )
 4           Plaintiff,              )  Case No. 3:18-cv-00183-MO
                                     )
 5       v.                          )
                                     )
 6  CITY OF PORTLAND,                )  February 7, 2023
                                     )
 7           Defendant.              )  Portland, Oregon
    _____    )

 8

 9

10

11

12

13

14                    Oral Argument

15            TRANSCRIPT OF PROCEEDINGS

16     BEFORE THE HONORABLE MICHAEL W. MOSMAN

17    UNITED STATES DISTRICT COURT SENIOR JUDGE

18

19

20

21

22

23

24

25
```

Case: 23-35230, 08/04/2023, ID: 12764365, DktEntry: 6-2, Page 12 of 80
Case 3:18-cv-01882-MO Document 135, Filed 06/02/23, Page 12 of 80

2

```
 1
 2                            APPEARANCES
 3

 4   FOR THE PLAINTIFF:      Ms. Megan Keenan
                             Information Dignity Alliance
 5                           P.O. Box 8684
                             Portland, OR 97207
 6

 7

 8   FOR THE DEFENDANT:      Ms. Naomi Sheffield
                             Portland City Attorney's Office
 9                           1221 S.W. Fourth Avenue, Room 430
                             Portland, OR 97204
10

11

12

13   COURT REPORTER:        Bonita J. Shumway, CSR, RMR, CRR
                             United States District Courthouse
14                           1000 S.W. Third Avenue, Room 301
                             Portland, OR 97204
15                           (503)326-8188
                             bonita_shumway@ord.uscourts.gov
16

17

18

19

20

21

22

23

24

25
```

1-ER-13

```
1                    ( P R O C E E D I N G S )

2              (February 7, 2023; 1:34 p.m.)

3                         * * * * *

4              THE COURTROOM DEPUTY:  We are here this afternoon for

5    oral argument in Case No. 3:18-cv-183-MO, Grimm v. City of

6    Portland.

7              Counsel, please state your name for the record,

8    beginning with plaintiff.

9              MS. KEENAN:  Megan Keenan for Plaintiff Andrew Grimm.

10             MS. SHEFFIELD:  Naomi Sheffield for the City of

11   Portland.

12             THE COURT:  Thank you both for being here today.

13   We're here, of course, on remand from the Ninth Circuit.  I'm

14   instructed by the Ninth Circuit to consider what I'll call the

15   Mullane/Jones standard, which the parties have briefed, along

16   with three specific questions.

17             In addition, it's worth remembering, as I know you

18   do, we're here on cross motions for summary judgment.  It's

19   kind of tricky how one applies the prism or the standard of

20   summary judgment on cross motions.  It's just worth keeping in

21   mind that if I'm considering the possibility, for example, that

22   plaintiff might win on a motion for summary judgment, I'm doing

23   so in the light most favorable to defendant, and vice versa.

24             Here that's augmented somewhat by stipulated facts.

25   So, in other words, on stipulated facts, I'm not viewing those
```

1-ER-14

1  facts in the light most favorable to the nonmoving party, I'm

2  just viewing them as facts the parties have agreed to.  So it's

3  worth remembering that that does alter things somewhat.

4        It doesn't change that the inferences, the reasonable

5  inferences from those facts are still viewed in the light most

6  favorable to the nonmoving party.  So the parties have done

7  what they should have done.  They've agreed on facts but not

8  necessarily on the inferences from those facts.  Those still

9  run in the direction of the nonmoving party.

10       So with that in mind, I'm interested in how you see

11  this case, each of you, in addition to what you've submitted in

12  writing.

13       On cross motions, there is no party that bears the

14  particular burden except on their own motion.  Typically I

15  start with the moving party for oral argument, but since it's

16  cross motions, I think I'll just start with counsel for

17  plaintiff first and go that direction.

18            MS. KEENAN:  Thank you, Your Honor.

19            THE COURT:  If you wouldn't mind pulling that

20  microphone just a little closer to you.

21            MS. KEENAN:  Is that better?

22            THE COURT:  The whole base will move if you want it.

23  There you go.  Great, thank you.

24            MS. KEENAN:  Perfect.

25            This dispute is about the method of notice.

1  Specifically, it's about whether sole reliance on postings

2  satisfy *Mullane/Jones* here.  Plaintiff registered his car with

3  the City's parking app, Parking Kitty.  Plaintiff provided his

4  phone number, email address, license plate, and credit card

5  information.

6            THE COURT:  To whom?

7            MS. KEENAN:  To Parking Kitty.

8            THE COURT:  And is it your position that that is

9  inferentially providing it to the City?

10            MS. KEENAN:  I'm sorry, what was the question, Your

11  Honor?

12            THE COURT:  Is it your position that by providing it

13  to Parking Kitty -- I almost said Hello Kitty.  That shows you

14  I've raised daughters.

15         Is it your position that providing it to Parking

16  Kitty is functionally like providing it to the City in some

17  way?

18            MS. KEENAN:  Yes, Your Honor.  As the stipulated

19  facts make clear, the City holds Parking Kitty out as if the

20  City owned the parking app.  So it is our position that it is

21  akin to giving it to the City.  Also, stipulated fact paragraph

22  14 states that -- excuse me, not 14.  Twenty states Passport

23  does not regularly provide its contact information to the City,

24  the implication being that they could.  It's not that they

25  can't or won't, it's just not a regular thing.  So --

Case: 23-35230, 01/30/2024, ID: 12844675, DktEntry: 19, Page 17 of 80
Case 3:21-cv-01304-MO Document 105 Filed 06/02/23 Page 17 of 80

6

1          THE COURT:  How should I take that?  The way I've
2    read it so far is that Parking Kitty obtains this
3    information -- well, it's given to them by the customer, and
4    the City doesn't currently have a mechanism by which it's
5    automatically transferred to the City.  In other words, I'm
6    reading that the City doesn't have it.  I think your argument
7    is, and it's not -- it's very plausible; that is, that the City
8    probably could alter arrangements such that it regularly got it
9    and just didn't, but I don't know that I have anything -- I'm
10   curious what you can point me to on the record that tells me
11   anything that contradicts the idea that while Parking Kitty had
12   this information at the relevant time -- say, throughout
13   December -- the City did not.  Is that the state of facts, that
14   Parking Kitty had the information the City did not?

15         MS. KEENAN:  I don't think the record is clear to
16   that specific fact.  What we do know is that the City did not
17   try in these facts.  There is nothing in the record to reflect
18   that the City attempted to find this information or get it or
19   ask or be denied in any way.

20         And then the second point is that -- I lost my second
21   point, Your Honor.

22         THE COURT:  I understand your first point, though, is
23   there's nothing in the record that says the City made an effort
24   to get this information and had it denied.

25         MS. KEENAN:  Correct.  And they know -- and one thing

1  to note, too, is that the parking enforcement officers knew

2  that the plaintiff was a Parking Kitty user. They checked the

3  data to see that he -- whether or not he paid via Parking Kitty

4  to determine whether he was legally parked or not. And so the

5  officer knew he was a Parking Kitty user, and the City knew

6  that this information was collected through Parking Kitty.

7      THE COURT: And is that last fact, that the City knew

8  that this information -- phone, email, et cetera -- is

9  collected by Parking Kitty, is there something that tells me

10 the City did know that in the stipulated facts, that the City

11 knows what information Parking Kitty collects?

12      If you don't know right off, you'll have time to look

13 for it later. I'll give you a minute later. You'll let me

14 know if there's something in the stipulated facts that tells me

15 that the City knows the information that Parking Kitty

16 collects.

17      MS. KEENAN: Thank you.

18      THE COURT: You were saying -- you were going through

19 the facts, which I think I'm familiar with, but you said that

20 your client used Parking Kitty, provided certain information,

21 and that the City knew about that information. Then what?

22      MS. KEENAN: Then on December 14th, plaintiff --

23 2017, plaintiff parked his car in downtown Portland, and he

24 used Parking Kitty to pay. After parking, plaintiff received

25 an email receipt. Later he also received an app notification

1    notifying him about his car's parking status.

2          THE COURT:  Let me see if I have that right.  That

3    all happens, then he's late, and he gets a series of tickets.

4          MS. KEENAN:  Correct.

5          THE COURT:  And then he gets the first sort of

6    warning notice.  It's a warning notice that is at least a

7    couple days before being towed, right?

8          MS. KEENAN:  Correct.

9          THE COURT:  And that's the warning notice that, as

10   far as I can tell, the Ninth Circuit ignores.  Am I correct

11   about that?

12         MS. KEENAN:  Yes, Your Honor.

13         THE COURT:  All right.  So he gets this warning

14   notice and it says you might -- basically I'm summarizing.  If

15   you don't shape up, you might be towed.  It's not a warning

16   that you are, in fact, going to be towed today or something

17   like that, it's just move your car or you might be towed.  And

18   then day of, he gets the actual tow notice that says we're

19   going to tow your car, right?

20         MS. KEENAN:  Yes.

21         THE COURT:  Actually, in between those two there's

22   more tickets, right?

23         MS. KEENAN:  Yes.  There's a total of six tickets,

24   one warning placard, and the tow placard.

25         THE COURT:  All right.  So that happens and then he

Case: 23-5023, 01/23/2024, DktEntry: 16.1, Page 29 of 80
Case 2:18-cv-01839-MMD Document 675, Filed 06/02/23, Page 29 of 70

9

1  gets towed?

2          MS. KEENAN:  Right.

3          THE COURT:  I think I know the standard.  What is

4  wrong with that series of events under the *Mullane/Jones*

5  standard?

6          MS. KEENAN:  Yes, of course, Your Honor.

7          The first issue was the events as they took place was

8  the only attempt at pre-tow notice the City provided was

9  pre-tow posting.  And under *Mullane/Jones*, where a mailing

10  address is available, sole reliance on posting is not

11  sufficient to meet the test.

12          THE COURT:  Help me figure out where I find that.

13  What is the language you're relying on that you contend is that

14  holding?

15          MS. KEENAN:  Of course.  So in the *Mennonite Board of*

16  *Missions v. Adams*, 462 U.S. 791, page 800, the Court said,

17  "Notice by mail or other means as certain to ensure actual

18  notice is a minimum constitutional precondition where a name

19  and address are reasonably ascertainable."

20          Here there isn't a question of whether there's an

21  address that was ascertainable, because the City mailed after

22  the tow.  So by relying solely on posting --

23          THE COURT:  Well, the City mailed after the tow by

24  checking the registration information, right?

25          MS. KEENAN:  Yes, Your Honor.

1    THE COURT:  Do you see a problem with relying on

2  mailing out a notice of tow in a parking towing situation?  I

3  mean, you're going to -- that gives everybody who is going to

4  be towed about four days before you can tow them, right?

5    MS. KEENAN:  Well, Your Honor, in this case the

6  warning placard was placed two days before the car was towed.

7  There's nothing in the record to indicate that the City

8  couldn't have put a letter in the mail the same day.  From my

9  understanding -- and it's not in the record -- domestic mail

10  can take anywhere from one to three days.  And so sole reliance

11  on posting where they did a warning two days before just does

12  not meet the constitutional standard as put out by

13  *Mullane/Jones*.

14    THE COURT:  Which you contend due process requires

15  some sort of certified or registered mail as notice for a tow?

16    MS. KEENAN:  It does not have to be certified.  I

17  think first class mail is sufficient, and that seems to be

18  consistent with the case law.  Some cases indicate that

19  municipalities will use certified mail for certain

20  circumstances as a way to go above that minimum, but I believe

21  just regular mail is the standard articulated.

22    THE COURT:  And you're contending that that's the

23  standard for towing or for a number of situations?

24    MS. KEENAN:  Well, it's for a number of situations,

25  but courts in other jurisdictions, including the Illinois

1  appellate court, as well as the D.C. Circuit, have said, in

2  applying *Mullane/Jones* to the towing of a car, saying that mail

3  was required.  And that would be the *Valdez* case and the

4  *Propert* case.  And I can find the quotes if you would like me

5  to put those on the record.

6        THE COURT:  That's not, am I right -- Well, I'll say

7  this.  The *Mullane* standard is stated at a higher level of

8  generality, wouldn't you agree?

9        MS. KEENAN:  Yes, Your Honor.

10        THE COURT:  It simply says something like that the

11  requirements of due process is notice reasonably calculated

12  under all the circumstances to apprise interested parties of

13  the pendency of the action and afford them an opportunity to

14  present their objections, with due regard for the

15  practicalities of the case.

16        So you may get less notice if you've parked in front

17  of a fire hydrant than if you parked somewhere else because of

18  the practicalities of the case, right?

19        MS. KEENAN:  Yes, Your Honor.  And the Ninth Circuit

20  in the *Grimm v. City of Portland* decision made clear that there

21  are -- so pre-towing notice is presumptively required, but

22  there are circumstances in which that presumption is not

23  applicable, including things like blocking driveways or

24  blocking traffic.  So those aren't the types of towing issues

25  at hand when applying the *Mullane/Jones* to tows in this

1    context.

2           THE COURT:  And so that's *Mullane*.  What does *Jones*

3    add?  I mean, I appreciate your cites to another case, but the

4    Ninth Circuit has specifically referenced to me to consider

5    *Mullane* and *Jones*.  So to that sort of generalized statement of

6    due process, which is really sort of hornbook law of due

7    process across a number of situations, what does *Jones* add?

8           MS. KEENAN:  Yes, Your Honor.  So *Jones* adds that

9    even if the method employed by the government was reasonably

10   calculated, if they had reason to suspect that their attempt --

11   their method of notice was ineffectual, they had to try

12   something else.

13          THE COURT:  All right.  I have a question about that

14   for both of you.  I'll be coming at you with the same question

15   in a minute.

16          Reasons to suspect what?  There are two possibilities

17   as I see it.  One is reason to suspect that this particular

18   person didn't get notice.  Number two is the one I think is

19   correct, and that is reason to suspect that this method of

20   delivering notice wasn't working, generally speaking.  And

21   that's *Jones*, right, isn't it, the second?  The notice is

22   posted on property, they knew regularly being torn down, and

23   therefore they had reason to know that this method of

24   delivering notice was, generally speaking, not working.  Is it

25   that that I'm looking for or is it that I'm looking for the

1    City realizing that a single claimant in a single case maybe

2    didn't get notice?  Which is it?

3            MS. KEENAN:  Your Honor, I believe it's both.  And in

4    *Jones*, they had a process of sending certified mail, and even

5    made the argument before the Court that that was, you know,

6    reasonably calculated to apprise people of their -- their

7    property deprivation.  But the government got specific

8    information to *Jones* when the letter was returned unclaimed.

9            And also, as a general matter, as far as posting

10   goes, posting as a method of notice is inherently unreliable in

11   itself.  The car sits here on a public street for seven days in

12   downtown Portland, you know, availing itself to any person that

13   walks by and also the elements of weather.  It's undisputed in

14   this case that the warning placard did go missing and that the

15   plaintiff never went back to his car and never saw any of these

16   postings.  So here you have actual facts that show that not

17   only is posting generally -- can be unreliable, but in this

18   case it was.

19           THE COURT:  Well, let's skip this case for a moment.

20   What do I have to tell me that the City knew that this method

21   of telling people, "We're about to tow your car," generally

22   speaking, sometimes or often didn't work?  What did the City --

23   in the only other case I'm aware of, it was simple.  There was

24   evidence that in other cases it hadn't worked.  So I don't have

25   that here, right?  I don't have anybody coming in saying, "I'm

 1   another person and this happened to me, too, and I never got

 2   notice."  We don't have that in this case, correct?

 3            MS. KEENAN:  I'm sorry, Your Honor.

 4            THE COURT:  We don't have another parker, another

 5   person who parked a car, saying, "That didn't work for me," and

 6   so the City -- and the City knew it.  We don't have, in other

 7   words, what in some kinds of cases we call a pattern and

 8   practice of not working, correct?

 9            MS. KEENAN:  There's nothing in the record that --

10            THE COURT:  So what do we have to tell me that now --

11   speaking generally, not individually to your client, what do we

12   have that tells me the City was on notice that this system

13   wasn't working, if anything?

14            MS. KEENAN:  Well, Your Honor, a point that I think

15   is fairly strong but maybe not tethered to something specific

16   in the doctrine is that generally I think most people don't

17   leave several -- rack up six parking tickets, which would cost

18   hundreds and hundreds of dollars, and then just leave it,

19   knowing that their car is, you know, wracking up these tickets,

20   going to get towed, going to get impounded, and have to go to

21   the tow lot and pay all that money.  There's a financial

22   incentive.

23            THE COURT:  What does that fact prove?

24            MS. KEENAN:  Well, if the City sees that they're

25   towing cars with tickets piled up, there's some reason to

1    suspect that people aren't getting them, and also when the City

2    tows the car to the tow lot, the notice is gone.

3              THE COURT:  You're telling me that a reasonable

4    inference from the fact of what I'll call piled up tickets is

5    that notice isn't being given -- or isn't being received?

6              MS. KEENAN:  Yes, Your Honor.

7              THE COURT:  All right.  Thank you.

8              Go ahead.

9              MS. KEENAN:  Yes.  So I'm going to jump to the Ninth

10   Circuit's three questions, the first one being --

11             THE COURT:  Before you do, I appreciate you doing

12   that, and I just want to make sure I understand your argument

13   so far.

14             So far we all agree on *Mullane*, and I agree that it

15   sort of gets the ball rolling but needs more case law

16   development to really help us here, and that's *Jones*.  And

17   you're contending that what *Jones* says is that either as a

18   pattern of some sort and/or individually, if the City knows

19   that its default or established method of giving notice either

20   isn't working -- that's the pattern -- or didn't work -- that's

21   the individual -- that it has to employ some what I'll call

22   reasonably practicable other method beyond what they tried

23   here.  Is that your contention is the governing standard I'm

24   dealing with here?

25             MS. KEENAN:  Let me clarify.  So as far as the

Case 3:18-35200, 06/03/2023, DktEntry: 40-1, Page 16 of 70
Case 3:18-35200, 06/03/2023, Document 140-3, Filed 06/03/22, Page 26 of 70

16

1  *Mullane/Jones* standard goes, the first part of the analysis is

2  is the method of notice that the City employed the best

3  practical notice.  So --

4          THE COURT:  Where does that idea come from?

5          MS. KEENAN:  Yes, Your Honor.  So *Mullane/Jones*, in

6  the *Mullane* case law, they talk --

7          THE COURT:  The reason I'm puzzled is that typically

8  in constitutional law, there isn't a constitutional principle

9  that says anybody has to use the best method available.  The

10  question is does the method they chose to use satisfy the

11  Constitution.  But you're suggesting that the City here has a

12  constitutional obligation to use the best method.

13          MS. KEENAN:  Well, so the first part is did they

14  actually provide notice, did actual notice occur.  Regardless

15  of the method they chose, there's no constitutional challenge,

16  they've met their obligation.  So if they took a ticket -- or a

17  warning placard, put it into a paper airplane, threw it in the

18  air and Mr. Grimm caught it, that's actual notice.  That's not

19  something in dispute.

20          However, if the method of notice failed, then the

21  Court is to look at the standard set by *Mullane/Jones* to decide

22  whether or not -- and *Mullane* describes it as the method

23  reasonably calculated.

24          THE COURT:  That's not best, though, right?  You can

25  have five methods, all of them reasonably calculated, and I can

1  think of, you know, several methods that would be better than

2  the one used here.  You could hire a private investigator for

3  every car that's overdue and have them go find the person and

4  speak to them individually and record the conversation, and

5  that would be better than what they did here.  But there is no

6  constitutional obligation -- right? -- to use the very best

7  method you can.  It's just *Mullane*, one that's reasonably

8  calculated to work, right?

9       MS. KEENAN:  So yes.  *Mullane* -- *Mullane* describes

10  what reasonably calculated is, is the "means employed" -- this

11  is on page 315 of *Mullane* -- "must be such as one desirous of

12  actually informing the absentee might reasonably adopt to

13  accomplish it."

14       So where the --

15       THE COURT:  I agree with you.  I'm not arguing with

16  your proposition.  Where I'm parting with you, I think, is what

17  you may not really need to make your argument, and that's the

18  idea that it's got to be the best method.  I can't see anything

19  anywhere that tells me that the Constitution requires the City

20  of Portland to use the best method available to give notice, as

21  opposed to just any method that satisfies the constitutional

22  standard.

23       You would agree, wouldn't you, that if there were

24  five methods available to the City to give notice, and all five

25  of them satisfy the constitutional, if you accept that for

1    argument's sake, then all five of them are available for the

2    City to use, even if they choose the least expensive, worst

3    option among the five.  It's still okay if it satisfies the

4    Constitution, right?

5              MS. KEENAN:  Yes.

6              THE COURT:  So I think we're in agreement --

7              MS. KEENAN:  I'm sorry, Your Honor.

8              THE COURT:  I think we're in agreement where we are

9    on the standard.

10             MS. KEENAN:  So just to reiterate, to make sure that

11   the broader principles are clear, the first question is whether

12   their method of notice met *Mullane/Jones*.

13             THE COURT:  Right.

14             MS. KEENAN:  And so it is plaintiff's position that

15   no, their pre-tow -- their sole reliance on pre-tow posting did

16   not satisfy the *Mullane/Jones* standard.  And should the Court

17   agree, they did not meet their constitutional obligation

18   because posting did not work in this case, they solely relied

19   on it, and they had a mailing address available.

20             THE COURT:  And in a case where notice doesn't

21   happen -- So let me back up.  In the abstract -- not this case,

22   but in the abstract -- it can be constitutional, correct, to

23   use a method that, in fact, didn't work in a particular case

24   but was otherwise constitutional?  In other words, it's not --

25   the Constitution doesn't require that the method is 100 percent

1  successful.

2        MS. KEENAN:  Correct.

3        THE COURT:  But if it doesn't work and the City knows

4  it doesn't work, then you're contending, okay, then they've got

5  to try something else reasonably practical and calculated to

6  work, right?

7        MS. KEENAN:  And there's still something that's not

8  quite clear.  When *Jones* comes in is if that method of notice

9  is deemed reasonably calculated and it didn't work, if the

10  Court were to find that there was some reason to suspect, the

11  analysis continues to see if there are feasible and customary

12  alternatives.  However, should the Court find that their method

13  of notice did not meet *Mullane/Jones*, then there's no reason to

14  bring in the *Jones* aspect of the case law.

15        THE COURT:  I understand that.

16        But there is a case, there's a third path, and that

17  is that you can have a system that generally satisfies the

18  Constitution, and it's not fatal, it's not unconstitutional to

19  that system if in one instance it didn't work.  What matters is

20  if it didn't work and the City knows it didn't work, right?

21        MS. KEENAN:  No, Your Honor.

22        THE COURT:  I'm positing that the system, in fact,

23  meets the constitutional standard but didn't work.

24        MS. KEENAN:  Well, I guess what I want to point the

25  Court to is in the *Grimm* opinion, individualized pre-tow

1    notice.  So it's not necessarily that the City in some general

2    sense does their structure usually mean, you know, 99 percent

3    of the time it worked.  It's in this case did it work and was

4    it -- if the City 99 percent of the time when it uses postings

5    actually effectuates actual notice, then 99 percent of the time

6    there's no problem.  But should the notice not have been

7    received and they still relied on it, then there is indeed the

8    chance that there could be a constitutional claim that they did

9    not provide adequate notice.

10           THE COURT:  I think I understand your position.

11           And that's why your client's acknowledgment that he

12   understood that his car could or would be towed doesn't carry a

13   lot of weight in your view here, because it's not about what he

14   knew ex ante, it's about what the City knew or didn't know?

15           MS. KEENAN:  Exactly, Your Honor.

16           THE COURT:  Thank you.

17           Now to the three questions.

18           MS. KEENAN:  So the first question the Ninth Circuit

19   posited was about whether or not the tickets placed on

20   Mr. Grimm's car, the six parking citations that didn't mention

21   anything about a tow, constitute notice of the tow.  And so the

22   answer is no.  And that's because the case law backs up the

23   common sense -- turns out there's a content requirement for the

24   individualized pre-tow notice.  So to be an attempt at notice,

25   the attempt must make some conspicuous mention of the property

1    deprivation.  And that's *Brody v. Village of Port Chester*,

2    Second Circuit, citing *Mullane*.

3           Here, the tickets aren't even attempts of notice

4    under *Mullane/Jones* because they lack the required information.

5    There's no mention of a tow.  And that's the Ninth Circuit

6    saying that there has to be the required information.  And the

7    Ninth Circuit made clear in this very case that individualized

8    pre-tow notice is required, and notice of the law is not notice

9    of the specific property deprivation, therefore the tickets do

10   not count as notice under *Mullane/Jones*.

11          THE COURT:  Do they matter as setting up context or

12   not?

13          MS. KEENAN:  Yes.  If the Court does have to go to

14   the *Jones* question of whether the City had reason to suspect

15   piled-up postings that the City mechanically leaves on a car is

16   indicia to show -- is reason to suspect that perhaps the person

17   isn't getting it, in which case they have to try something like

18   mail, if available, and not rely solely on posting.

19          And I do want to note and clarify something.  Posting

20   is sufficient if a mailing address cannot be ascertained or

21   there's no registration on the car.  And here that's not the

22   case.  The Ninth Circuit made clear that Mr. Grimm's car was

23   registered and that the information could be obtained.

24          THE COURT:  You a minute ago made reference to

25   something you acknowledged isn't in the record but you thought

1 was just common human understanding. And that's present here
2 to some degree, isn't it? Your client acknowledged that he
3 knew he could be towed, and that's probably true of every
4 driver, or at least registered car owner in America, who
5 understands that if you pay for three hours' parking and show
6 up, you know, ten days later, your car could be towed. So it's
7 separate from the notice issue, but is that important in
8 context at all or not? Your client knew this was going to
9 result in being towed. He said so. He admitted as much. It's
10 really part of the backdrop of the case. Is it a backdrop that
11 matters for my analysis or not at all?
12          MS. KEENAN: No, not at all, Your Honor.
13          THE COURT: Because it's all about notice?
14          MS. KEENAN: Yes. Generalized notice of the law is
15 not notice of the property deprivation, and you can see it in
16 the facts of other cases. You know, if you don't pay your
17 property taxes, like in *Jones* and *Mennonite*, it's likely that
18 the government is going to take your property, but that doesn't
19 mean that they didn't -- that they weren't supposed to provide
20 pre-property deprivation. Same in *Greene*. If you don't pay
21 your rent, you'll likely be evicted. Just the fact that one
22 might know that doesn't mean that it has any bearing on the
23 government's constitutional obligation to provide pre-property
24 deprivation notice.
25          THE COURT: Thank you very much.

1           So your answer to question No. 1 is the citations on

2   the car don't amount to any degree of notice?

3           MS. KEENAN:  Yes, Your Honor.

4           THE COURT:  Question No. 2?

5           MS. KEENAN:  Yes.  So the second question discusses

6   whether or not the tow placard placed on plaintiff's car an

7   hour before the tow is sufficient notice under the

8   *Mullane/Jones* standard.

9           THE COURT:  And that's a timing question for you,

10   right?  It is adequate notice, or at least it has content

11   that's missing from the citations.  Is it your point that the

12   problem is it's just right before getting towed, so it's

13   inadequate in that sense?

14           MS. KEENAN:  No, Your Honor.  Our position is that

15   postings are inherently insufficient under *Mullane/Jones* where

16   a mailing address is available.  So the timing issue discussed

17   in plaintiff's briefing is that a mailing address was available

18   and used, but it was used after the property deprivation, when

19   the car was towed.  So had they used the mail beforehand, you

20   know, that's the timing problem that we discussed.  The timing

21   of the tow placard is not at issue, it's the tow placard

22   itself, and I have two reasons as to why.

23           THE COURT:  Go ahead.

24           MS. KEENAN:  So the first issue with the tow placard

25   is it poses a *Mennonite* problem.  Where a mailing address is

1-ER-34

1    available, sole reliance on posting is insufficient.  Quoting

2    *Mennonite*, "Notice by mail or other means as certain to ensure

3    actual notice is a minimum constitutional precondition" --

4          THE COURT:  Would you slow down a bit when you're

5    reading.

6          MS. KEENAN:  Yes.

7          -- "if a name and address are reasonably

8    ascertainable."

9          So this is a dispositive feature of the *Mullane/Jones*

10   test.  Frankly, this is the easiest way to resolve the case,

11   and it's not -- and other courts have applied this same

12   principle to pre-tow notice.

13         THE COURT:  So when you talk about the easiest way to

14   resolve the case, I want to be sure I know what you're asking.

15   You're asking for a constitutional requirement that the City,

16   when it sees a car that's over-parked and legally susceptible

17   to be towed, mail a tow warning to -- well, I guess the only

18   thing we would know would be the registered owner, right?

19         MS. KEENAN:  Yes, Your Honor, that is --

20         THE COURT:  Effectively a requirement imposed by the

21   Constitution that the City can't tow any over-parked car,

22   absent it being in an emergency situation, for -- we'll split

23   the difference -- for two days?

24         MS. KEENAN:  Well, Your Honor, if --

25         THE COURT:  I want to start with yes-no, then I'll

1  get your explanation.  That is what you're asking, right?
2  You're asking that the City -- the Constitution impose on the
3  City the inability to tow a car for at least two days?
4       MS. KEENAN:  That's not -- that's not quite the
5  City's -- or the plaintiff's position.
6       THE COURT:  You want them to mail notice.  You say
7  the Constitution requires mailed notice.
8       MS. KEENAN:  The Constitution doesn't require the
9  City to necessarily mail.  The case law makes clear that if
10 they're going to rely solely on posting, then the minimum, the
11 absolute least you have to do is send a letter in the mail.  So
12 in some ways that is correct.  That doesn't mean that the City
13 can't exceed.  You know, if they have a phone number, they can
14 call.  If they have an email, they can email.  The record, you
15 know, as you said, there are certain things in the record that
16 implicate that they could have had that information and didn't
17 use it.
18      THE COURT:  So where do I learn from the holdings
19 you've given me that while mailing is what you say is the sort
20 of gold standard default, if you have a phone number, you can
21 use that instead?
22      MS. KEENAN:  I guess I would correct the Court in
23 saying it's not the gold standard, it's the floor.  You can't
24 go below the mail if you have a mailing address available.
25 That's the least you could do.

1-ER-36

1      THE COURT:  Where do I learn that if you have a

2 mailing address available and a phone number, it's okay to use

3 the phone number instead of the mailing address?

4      MS. KEENAN:  So that goes back to the reasonably

5 calculated -- *Mullane/Jones* requires notice reasonably

6 calculated to apprise the parties.  So this is what we were

7 discussing earlier, where it's plaintiff's position that the

8 calculation includes that the notice be the best practical

9 notice.  And courts have discussed *Mullane* in context.

10      THE COURT:  We discussed this earlier, and I thought

11 we came to at least some agreement that there's nothing that

12 says it has to be the best practical notice, or at least if

13 that's your argument, I do disagree with it.  I read nothing

14 anywhere that says that it has to be the best notice, and I'm

15 waiting for you to cite me a case that says that.

16      MS. KEENAN:  Yes, Your Honor.  Give me one second.

17      So just to clarify, the standard under *Mullane* is

18 reasonably calculated, and the standard requires the best

19 practical notice and --

20      THE COURT:  When you say the standard requires the

21 best practical notice, to back that up, you need a case that

22 says the word "best" somewhere.

23      MS. KEENAN:  Yes, Your Honor.

24      THE COURT:  I don't think you have such a case, but

25 I'll be happy to hear that you do.

1        MS. KEENAN:  Yes.  So there are two cases that

2  plaintiff cites for this proposition.  One is a Ninth Circuit

3  case, *Silber v. Mabon*, 957 F.2d 697, page 700.  And the Court

4  says that the best practical under the circumstances is both

5  the standard required since *Mullane* and by the express terms of

6  Rule 23.

7        And so a lot of the discussion about best practical

8  notice comes in the context of the Rule 23 class action notice

9  obligations, but those notice obligations were created to

10  actually meet the *Mullane/Jones* standard.  So the --

11        THE COURT:  The Rule 23 standard is specific to class

12  actions and is a statutory enactment.

13        MS. KEENAN:  Yes, Your Honor.

14        THE COURT:  You're saying that I can look at Rule 23

15  to learn what the due process requirement for nonclass actions

16  is?

17        MS. KEENAN:  Well, so courts have said that Rule 23

18  and *Mullane* are coextensive, meaning they're corresponding

19  exactly in extent.  So yes.

20        THE COURT:  Thank you.

21        So back to my question.  You contend that the minimum

22  is mailing, but if you have, say, a phone number, then you

23  could use that instead, because it's at least as good, if not

24  better, than mailing.  And the City knows that how?  How do

25  they know a phone number is better than mailing?

1-ER-38

1    MS. KEENAN:  So the *Mullane* test -- or *Mullane* case,
2    excuse me, says that "when notice is a person's due, process
3    which is a mere gesture is not due process.  The means employed
4    must be such as one desirous of actually informing the absentee
5    might reasonably adopt to accomplish it."
6        THE COURT:  So if you call the number and you don't
7    get anybody, then what?  I'm asking this not frivolously --
8        MS. KEENAN:  Yes.
9        THE COURT:  -- but because it's the scope of the
10   ruling you want me to impose on the City here.  So if I tell
11   the City, you know, at least in certain settings you've got to
12   mail notice, but you can also skip mailing because it's slow
13   and use a phone number if you have one, and then what?  The
14   City knows that if they just call and leave a message, that's
15   good enough?  That sounds a little like posting.  My experience
16   with anyone under 30 is they never answer their phones, so how
17   about that?  You have to reach them and get a live person and
18   otherwise phone isn't good enough?
19       MS. KEENAN:  Again, actual notice is not required by
20   due process.
21       THE COURT:  Not my question.
22       MS. KEENAN:  Yes, Your Honor.
23       THE COURT:  What happens?  You've told me, you've
24   essentially told the City, it's always mail unless you got a
25   better method.  Phone is better.  And I'm trying to explore

what you mean by saying phone is better.  Do you mean that if
you just call and leave a message, you're done, or do you have
to call and call until you get a live answer?

     MS. KEENAN:  Well, Your Honor, seeing as the case law
makes clear that sending a letter in the mail is sufficient, I
would presume from that that making a phone call and leaving a
message or making the phone call would be an attempt at notice
that would be sufficient.  It wouldn't be a repetitive calling.

     THE COURT:  Same with email, then?  Sending it is
sufficient?

     MS. KEENAN:  Yes, I agree with that.

     THE COURT:  Or text, I presume?

     MS. KEENAN:  Yes.

     THE COURT:  That's the ruling you want -- not want.
That's the ruling you say the Constitution requires here:
Start with mail, but if you have a better method -- which would
include email or phone -- you can use that instead, and it's
not required that you ever guarantee actual receipt, you just
have to use the best method you can, see Rule 23?

     MS. KEENAN:  Yes, Your Honor.

     THE COURT:  All right.  That's two.  How about three?

     MS. KEENAN:  Yes.

     THE COURT:  I know your answer there.  You've already
given it, right?  Yes is the answer?

     MS. KEENAN:  Yes, that is our position, that if the

1  City has reasons to suspect that its method at notice was not

2  working, then it has to try something else.  And so the first

3  part of that was did they have reason to suspect that their

4  method of notice wasn't working.  If they did not have reason

5  to suspect, then the analysis ends there.  It is our position,

6  as we discussed previously, because they saw the tickets piling

7  up, there was a reason to suspect that their method of notice

8  of posting and solely relying on postings was not sufficient.

9        THE COURT:  And, again, for our purposes that's what

10 you'd call a rational inference that could be drawn from the

11 facts here, and you seek it as at least as a way of defeating

12 their motion for summary judgment, right?

13        In other words, there's probably more than one

14 inference you could draw from tickets on a car piled up.  One

15 of them is the owner has never come back and therefore has

16 never seen them.  And for summary judgment purposes, that's, in

17 your view, a reasonable inference to draw from these facts, and

18 you're entitled to it in your client's favor at least to defeat

19 the City's motion for summary judgment.  Right?

20        MS. KEENAN:  Yes.  Should the Court get to the *Jones*

21 analysis, then yes.

22        THE COURT:  All right.  But the flip is true, right?

23 If it's also a reasonable inference to say, well, if you walk

24 away from your car after three hours' parking, one inference

25 we'd draw is that at some point you must have come back and

1-ER-41

1    seen your car; nobody leaves their car for ten days on a

2    three-hour parking tour.  Then if that's a reasonable

3    inference, then on your motion, the City gets the benefit of

4    the other inference, right?

5         MS. KEENAN:  Well, Your Honor, I think the point of

6    the *Jones* analysis is that it's a reason to suspect.  It's not

7    the only, it's not an absolute knowledge.  So the fact that

8    there is an inference, I believe it doesn't -- the inferences

9    could go either way, but if there's a reason to suspect it

10   could be that he didn't see his tickets, then --

11        THE COURT:  Well, the reason to suspect is an

12   inference you draw from the facts.  That's a reason to suspect

13   that notice wasn't given.  And you get that inference in your

14   favor when you're the nonmoving party, but you don't get it in

15   your favor when you're the moving party.  It's as simple as

16   that, isn't it, on summary judgment?

17        MS. KEENAN:  Yes, Your Honor.

18        THE COURT:  All right.  Thank you.  Thank you very

19   much.

20        From the City?

21        MS. SHEFFIELD:  Thank you, Your Honor.  I'll try to

22   go through and address some of the issues that you already

23   raised rather than reiterating my briefing, but first when you

24   talked about the standard -- and I think you're right, you

25   start with the *Mullane*, was the notice that the City gave, the

1  warning placard on the vehicle two days before the tow, was
2  that reasonably calculated to --
3       THE COURT:  Well, your opponent takes that language
4  and puts a gloss on it from cases interpreting Rule 23, but
5  calling Rule 23 coterminous with due process.  So is the City
6  obligated under due process to provide the best practical
7  notice?
8       MS. SHEFFIELD:  No.  I think it's reasonably
9  calculated notice.  And I think you can look at *Mullane* and the
10 *Mullane* line of cases to confirm that.  So the only cases that
11 the plaintiff points to are Rule 23 cases, and that is the
12 language in Rule 23, not the language in *Mullane* or *Jones* or
13 *Greene* or *Mennonite* or any of the *Mullane/Jones* line of cases
14 or the most recent decisions in the Ninth Circuit that applied
15 those *Mullane* --
16      THE COURT:  Do you limit that idea of best notice to
17 Rule 23?
18      MS. SHEFFIELD:  To Rule 23, yes.  I don't think that
19 that's -- but I will also say that one of the cases -- and I
20 don't have an extensive knowledge on class notification
21 procedure, so I don't want to say that I do, but in one of the
22 cases cited, the *Drexel* case basically -- the Second Circuit
23 suggested that that Rule 23 "best practicable" language just
24 meant notice is adequate if it is reasonably calculated to
25 apprise the plaintiff.

1    So it is true that at times courts have said that the
2  requirement of Rule 23 best practicable just means doing what
3  is reasonably calculated.

4    THE COURT:  I guess you have to be a smarter lawyer
5  than I am to turn best into adequate.

6    MS. SHEFFIELD:  Well, that is a decision from the
7  Second Circuit, so --

8    THE COURT:  But your main point is the "best"
9  language should be cabined to class action under the text of
10 Rule 23?

11   MS. SHEFFIELD:  Correct.

12   THE COURT:  Otherwise it's the actual standard
13 written in *Mullane*.  What does *Jones* add to that knowledge
14 about what the standard is?

15   MS. SHEFFIELD:  Yes.  So *Jones* applies that standard
16 still and looks at whether the notice given was reasonably
17 calculated.  And then it says that if -- if the City -- what
18 they were considering was a situation where the government
19 becomes aware prior to the taking that its attempt at notice
20 has failed.  So that is what it was considering.  It became
21 aware before the deprivation that notice had failed.

22   THE COURT:  So my question, as you'll recall, was is
23 that an awareness that the system for providing notice is
24 regularly failing or that -- and/or that it failed in the case
25 in question?

1          MS. SHEFFIELD:  Yes.  And I'll say that I think

2     actually plaintiff and I disagree a little bit, but not as much

3     as we might on some other things.  So I think if we knew the

4     system was failing generally, then it wouldn't be reasonably

5     calculated notice.  It would fail under *Greene*, which is the

6     apartment -- posting on the apartment, and the roommates came

7     and pulled them down.  And here's there's no evidence --

8          THE COURT:  That would just fail under *Mullane* at

9     that point.

10         MS. SHEFFIELD:  If the City knew we were sticking

11    things on cars and watching kids taking them off right behind

12    us, that would be a problem, but there's no evidence of that in

13    this case.

14         THE COURT:  What about if the City becomes aware in a

15    particular single case that notice didn't work, then what?

16         MS. SHEFFIELD:  In a particular single case, if we

17    did become aware prior to the deprivation.  And so I guess I

18    actually thought about what it would look like in this case, so

19    in --

20         THE COURT:  I'm going to have you finish that

21    sentence.

22         MS. SHEFFIELD:  The answer is yes, if we did become

23    aware, in a particular instance we knew that notice had failed,

24    then we -- if there were reasonably practicable alternatives,

25    then we had to consider them and try to use them.  That is the

1  second part of what *Jones* says.

2  THE COURT:  So applying that here -- I understand how

3  to apply *Mullane*.  If I applied *Jones*, then you've got to say

4  first of all that the City did not become aware that notice to

5  Mr. Grimm had failed.  Is that your position?

6  MS. SHEFFIELD:  Correct.  We have subsequently in

7  this litigation, because Mr. Grimm has informed us, but we had

8  no reason to know notice had failed at the time that the tow

9  was ordered.

10  THE COURT:  And that sort of turns on what one makes

11  of the effect of the notice that was given, right?  You've all

12  agreed on the facts about what notice was given and when it was

13  given, and so it's what inference does one draw from that that

14  tells me whether the City knew its method had failed or not.

15  You have one inference you want me to draw, your opponent has

16  another one, right?

17  MS. SHEFFIELD:  I think that it could be something,

18  but I actually wouldn't say that, no.  I don't think it's

19  necessarily, because I think under *Jones*, the City has to --

20  there has to be evidence that the City actually did become

21  aware or had a good reason to become aware, and I don't think

22  the evidence here, you could have an inference based on the

23  evidence here that the City became aware that the notice --

24  THE COURT:  Well, let's just tackle your opponent's

25  argument, because your opponent argues that -- Well, let me ask

1  first of all, in asking the question was the notice

2  sufficient -- actually, a different question.  In asking the

3  question whether the notice worked here, actually provided

4  notice to this plaintiff, what use, if any, do I make of the

5  citations?

6  　　　　　MS. SHEFFIELD:  I don't think the citations are

7  relevant to whether or not -- because I do think -- and that

8  kind of gets at the first question of the Ninth Circuit.  I

9  think that --

10  　　　　　THE COURT:  We'll come to that in a second.

11  　　　　　MS. SHEFFIELD:  But I don't think those citations

12  matter, because the notice, the warning placard provided the

13  notice the vehicle would be towed.

14  　　　　　THE COURT:  So your opponent's argument goes like

15  this, because you say there's nothing that in the record I can

16  look to that says the City knew that it didn't work.  Your

17  opponent's argument goes like this:  You have the tickets piled

18  up, which is evidence that the owner has never come back to

19  this car, and the warnings, the two warnings, the warning and

20  the tow slip also piled up, and from those facts there's a

21  reasonable inference that this method, which depended on the

22  driver or parker coming back to the car, didn't work because

23  it's reasonable to infer that if the owner had come back to the

24  car, all this stuff wouldn't be piled up on the windshield.

25  That's the inference that plaintiff wants me to draw from the

1  known facts.  Is that a reasonable inference?

2          MS. SHEFFIELD:  You know, I think the facts are

3  slightly different and that helps explain why that inference

4  isn't reasonable.

5          THE COURT:  Go ahead.

6          MS. SHEFFIELD:  So the citations remained on the car.

7  The warning placard did not appear to remain on the car.  So

8  plaintiffs have said because --

9          THE COURT:  What do you mean, "did not appear"?  Was

10  it on the car or not on the car?

11          MS. SHEFFIELD:  It is placed on the car -- that is

12  stipulated -- but at the time Mr. Grimm picked up his vehicle,

13  there was no warning placard.

14          THE COURT:  All right.

15          MS. SHEFFIELD:  So it didn't pile up in the way the

16  citations did.

17          So plaintiff's position is that citations piled up,

18  and therefore the City should have known that notice was not

19  effective.  But conversely, the warning placard didn't pile up,

20  so the City should have known that notice was not effective.

21  But both of those things can't be true.  Essentially what it

22  comes down to is the City's position -- the plaintiff's

23  position is because the car was never moved, then the City

24  should have known that notice was not effective.

25          THE COURT:  I think that's partly correct.  I think

Case: 23-3560, 06/02/2023, DktEntry: 4.1, Page 48 of 70
Case 3:18-cv-06164-WHA Document 135, Filed 06/02/23, Page 48 of 70

38

```
 1   the main argument is that it's a reasonable inference from the
 2   physical facts about what happened with the tickets and the
 3   citations, it's reasonable to infer that the -- we'll just say
 4   "owner" for now, shorthand, that the owner hadn't come back to
 5   the car.  No owner would come back and leave all that stuff
 6   there and walk away again, therefore no notice.
 7            So you contend that -- well, help me understand why
 8   that's -- you get where I'm going.  If that's a reasonable
 9   inference, then it's not a win for plaintiff, but it defeats
10   your motion, right?
11            MS. SHEFFIELD:  I don't think it does, because I
12   think --
13            THE COURT:  I'm just asking a procedural question to
14   start.  If it's a reasonable inference from the facts, then it
15   defeats your motion, right?  It means that he didn't get
16   notice.
17            MS. SHEFFIELD:  It could mean that, but I don't think
18   that the requirement -- I don't think it defeats summary
19   judgment because again I don't think -- I think Jones has to be
20   evidence that the City had actual knowledge that he wasn't
21   getting notice.
22            THE COURT:  You're not quite getting my hypothetical.
23   Your opponent's argument is that the City -- that a reasonable
24   inference from the facts is that the City had actual knowledge
25   that notice hadn't worked.  And at summary judgment, if -- I
```

1    know you don't agree with this proposition, but if a reasonable

2    inference from the facts is that the City had knowledge that

3    notice hadn't worked, if that's correct, that defeats summary

4    judgment for you, doesn't it?

5          MS. SHEFFIELD:  That's correct, if that is the case.

6          THE COURT:  Okay.  And so you contend that it's --

7    you pretty much have to contend, don't you, that it's not a

8    reasonable inference from the facts?

9          MS. SHEFFIELD:  Correct.

10         THE COURT:  And if I understand, the first thing

11    you've told me about why it's not is that the inference is

12    internally incoherent, right?

13         MS. SHEFFIELD:  Yes.

14         THE COURT:  Because it can't be the case that tickets

15    piling up tell you the owner hasn't come back, but the first

16    red slip being missing also means the owner hadn't come back.

17         MS. SHEFFIELD:  Correct.

18         THE COURT:  If the whole thing is just a mess, you

19    know, why isn't that still at least reasonable to say one

20    possible inference it's reasonable that a jury could have used

21    to say the City knew it hadn't worked because the citations

22    piled up?

23         MS. SHEFFIELD:  And I think it's important to look to

24    the cases, look to *Jones* and those cases.  And I think that

25    that's particularly important because in *Jones* it wasn't -- it

1   was -- it wasn't -- it wasn't reasonable to infer that the City

2   knew, the City knew there was evidence because they sent notice

3   by certified mail.  The certified mail was returned

4   undelivered.  So there's no question, there's no doubt that

5   that notice was not effective.  It was sent by certified mail,

6   it never got delivered.  It was the only notice.  It was,

7   without a doubt, not effective.

8         THE COURT:  Right.  But, I mean, some summary

9   judgment motions get lost on strong evidence and some summary

10   judgment motions get lost on weak evidence.  I don't pick

11   winners based on strength and weakness.  If it beats summary

12   judgment, it beats it.

13         MS. SHEFFIELD:  Well, but it does require evidence

14   that the City had knowledge that the -- that the notice had not

15   been --

16         THE COURT:  Well, on my question then of why this

17   isn't a reasonable inference to be drawn from the known facts,

18   the agreed-upon facts, your first and so far only argument is

19   it's not a reasonable inference because to make it, the

20   plaintiff has to cite to two contradictory facts.  It's

21   internally incoherent.  That's your first argument, right?

22         MS. SHEFFIELD:  Yes.

23         THE COURT:  Is there any other argument you present

24   as to why it's not a reasonable inference from the facts?

25         MS. SHEFFIELD:  Well, I think that that internal

1-ER-51

1  inconsistency suggests really the causal meaning there, which
2  in some ways makes some sense.  If a person had notice that
3  their car was going to be towed if they didn't move it, they
4  would move it.  To some extent that's what plaintiff seems to
5  be indicating, but just the reality is that people leave and
6  abandon their cars.
7       THE COURT:  How is this reality demonstrated to me in
8  this record?
9       MS. SHEFFIELD:  I don't think there's any specific
10  facts about the number of tows, but I -- that occur when cars
11  are left, but I do think it is just a general backdrop that
12  cars get abandoned.  The cases that cite cars getting towed
13  because they've been abandoned is pretty rare.
14       THE COURT:  But if it's rare, then the more
15  reasonable inference works for plaintiff, right?  If it's very
16  rare that people abandon their cars, then the fact this car has
17  never been moved ends up being a reasonable inference that the
18  owner hadn't come back, right?  Because if 99 percent of people
19  who are warned about tows move their cars, then the nonmoving
20  of this car would end up being an inference that the owner
21  didn't get notice, right?
22       MS. SHEFFIELD:  I think to rule that way would be to
23  rule that essentially that towing a car where the person hasn't
24  moved simply cannot be constitutional.
25       THE COURT:  No, it would mean that towing a car that

1-ER-52

1   hadn't been moved when posting was the only method of notice
2   wouldn't be constitutional because it would simply be
3   reasonable to assume that towing a car that hadn't been moved
4   through posting warnings only is towing the car of an owner who
5   never got notice.

6          MS. SHEFFIELD:  I think that -- I guess --

7          THE COURT:  I guess what you're telling me is that it
8   depends on facts I don't have.  If it's very common for cars to
9   simply be abandoned and then towed, then it might not be a
10  reasonable inference any longer to say, well, if the car didn't
11  get moved, it must be abandoned.  But if it's very rare that
12  cars get towed, that the vast majority of people move their
13  cars before they get towed, then it switches the reasonable
14  inference.  Now you'd say, okay, then that means if a car
15  didn't get moved, then in most cases it means the owner didn't
16  get notice.  I don't know either of those to be true on this
17  record, right?  I can't make either inference at all here.

18         MS. SHEFFIELD:  I don't think there is evidence in
19  the record about how common it is that cars are abandoned and
20  therefore towed.

21         THE COURT:  So plaintiff's argument that hey, the car
22  didn't get moved, therefore it must mean the owner didn't get
23  notice, has no factual support.  And your argument that hey,
24  cars get abandoned all the time, not being moved doesn't mean
25  they didn't get notice, also has no factual support, right?

Case: 23-3520, 06/13/2023, DktEntry: 14.1, Page 54 of 81   Case 3:18-cv-06183-VC Document 115, Filed 06/02/22, Page 43 of 70

43

```
 1        MS. SHEFFIELD:  I think the record doesn't have
 2   factual support on either of those points, but I do think on
 3   the burden point, the reasonable inferences need to be taken
 4   against the nonmoving party.  I do think the party --
 5        THE COURT:  Well, where we left off is I'm trying to
 6   stack up in my mind the arguments you've given me for why it's
 7   an unreasonable inference that plaintiff has advanced here.
 8   And you've given me one and you suggested another one that I
 9   don't think pans out on the record I have in front of me.  Are
10   there any others?
11        MS. SHEFFIELD:  No.  I think the primary one is just
12   that it's internally inconsistent.  It can't be the case that
13   both citations piling up --
14        THE COURT:  And I'm only asking this question not
15   because I've decided it but because I need to flesh out all
16   your arguments.  So if you're wrong about that, then what?  If
17   it is a reasonable inference that the City should or did know
18   that this plaintiff, this petitioner -- plaintiff, sorry, did
19   not get notice, then what's required?  You're required to find
20   another method, right?
21        MS. SHEFFIELD:  Yes.  So if the -- we're not required
22   to find another method.  We are required --
23        THE COURT:  If the posting -- if the City -- if I
24   conclude that a reasonable inference from these facts for the
25   nonmoving party is that the posting of the notices on the
```

Case: 23-3252, 06/16/2023, DktEntry: 14.1, Page 44 of 70   Case 3:18-cv-01841-MO   Document 63-5, Filed 06/02/23, Page 55 of 81

44

 1  vehicle didn't result in notice, then the next step is to say,

 2  well, was there some other reasonably practicable alternative,

 3  not best, just reasonably practicable alternative that you

 4  should have had to try, right?

 5          MS. SHEFFIELD:  Correct.

 6          THE COURT:  Was there one?

 7          MS. SHEFFIELD:  No.

 8          THE COURT:  Why not?

 9          MS. SHEFFIELD:  And I'll go through the methods that

10  plaintiff goes through.  I'm going to start with the mail,

11  because they put the mail in both -- two parts of the test.

12  But I think there's a beginning point that is probably most

13  important here is that mail would have never reached the

14  plaintiff because the plaintiff was not the registered owner of

15  this vehicle.  So the idea that mail was the better option in

16  this case is simply inconsistent with the facts, because it

17  would never have been sent to plaintiff.  It would have been

18  sent to the two registered owners of the vehicle.

19          And I think it's particularly telling in this case

20  why mail was not a reasonably practicable alternative, because

21  plaintiff had out-of-state license plates, and the vehicle was

22  registered in -- to owners in Nebraska and Illinois.  So the

23  idea that it would have been better notice or it would have

24  been reasonably practicable to send notice out of state to

25  individuals who were not plaintiff, thousands of miles away, in

1    order to intercede on the tow would just not have been

2    practicable, given the timing of towing the vehicles.

3          THE COURT:  Some of those are facts you learned

4    later, but going in to the idea of providing notice, you did

5    have access to a registered owner's mailing address.  You

6    almost always will, right?

7          MS. SHEFFIELD:  Correct.

8          THE COURT:  And so thinking more systemically and

9    less about the facts of this case, do you agree that the

10    Constitution due process standards set out in *Mullane* could

11    require mailing prior to towing?  I've suggested earlier that

12    the phrase, "with regard to the practicalities of the case"

13    means that the delay inherent in mailing makes that standard

14    possibly not something required by *Mullane*, but I don't want to

15    put words in your mouth.  Is that your argument?

16          MS. SHEFFIELD:  I think that is true because it is --

17    it doesn't address the practicalities of towing.  I also will

18    point out that the language in all of the *Mullane/Jones* cases

19    talk about giving notice that is -- basically considers how

20    people normally conduct themselves in ordinary affairs, is how

21    it's described.  But how do people normally behave?  And that

22    will depend on the property.  So when somebody pays for a

23    three-hour parking, the normal behavior of humans is to return

24    to the vehicle.  And I think the mail notice -- the inherent

25    problem with mail notice here -- so that is why, because people

1 normally return to the vehicle where they paid for parking and

2 then left it beyond the time.

3     THE COURT:  Well, I want to walk through that

4 methodologically to make sure I'm on the right path, though,

5 because your statement about what people normally do means that

6 normally posting works.  I'll accept that for now.

7     But you've admitted that if the City -- you have

8 disagreed that this happens, but you've admitted that if the

9 City had, in fact, known that posting in this particular case

10 didn't work, they are obligated to at least consider another

11 method, right?

12     MS. SHEFFIELD:  Correct.

13     THE COURT:  And you're now contending that in

14 considering other methods, one that the City never had to

15 employ in this case or any other case is mailing, right?

16     MS. SHEFFIELD:  Correct.

17     THE COURT:  Because it doesn't take into regard the

18 practicalities of towing parked cars?

19     MS. SHEFFIELD:  Correct.

20     THE COURT:  And is that principally because of the

21 delay?

22     MS. SHEFFIELD:  It's principally because of the

23 delay.  I think in this case in particular there are a few

24 other factors that kind of relate to the delay, which is --

25     THE COURT:  That might be true in some unknown number

1  of cases that the registered owner isn't the person who is ever
2  going to come back to the car.
3      MS. SHEFFIELD:  Well, one, yes, if the registered
4  owner isn't the person holding the car.  But I think more
5  importantly here is it had out-of-state license plates, so the
6  assumption probably would be that this is not someone whose
7  mailing address is in Oregon, so --
8      THE COURT:  This enhances your first argument, right?
9  Your first argument is two days is too long in any case, and in
10  this case you're going to say, well, it's not going to be two
11  days, it's going to be five.
12     MS. SHEFFIELD:  Yes.  I was going to say it's going
13  to be lengthened because it takes longer to get the mail there,
14  and then somebody from out of state would have to then come
15  back to Oregon to move the vehicle.
16     THE COURT:  So that's your first argument that
17  mailing is never required in this setting because of its
18  inherent problems.
19     MS. SHEFFIELD:  Yes.
20     THE COURT:  What is the next one?  How about email?
21     MS. SHEFFIELD:  So I was going to go to the next one.
22  And I think I'll put phone, text, and email in the same.  Here
23  there is no evidence in the record that the City had
24  plaintiff's email address or phone.  The evidence that's
25  stipulated in the record is that the parking enforcement

1-ER-58

1  officer didn't have plaintiff's information at all, and that

2  the City didn't regularly receive information from Passport,

3  who is Parking Kitty, the person who owns Parking Kitty.

4  　　　　THE COURT:  Can I pause you there for just a moment.

5  　　　　Does the record tell me what one learns when one

6  looks up -- when an official looks up registration?  Obviously,

7  I know from what happened here that you must have from

8  registration gotten a mailing address.  Does the record in this

9  case tell me what else you learn when you look up registration?

10 　　　　MS. SHEFFIELD:  No.  The record indicates that

11 PBOT -- So PBOT, so Portland Bureau of Transportation employees

12 are the parking enforcement employees.  It does say that they

13 didn't have information regarding the registered owner.  They

14 just had the license plate and the -- whether it's been paid or

15 not.

16 　　　　THE COURT:  I know from this record that somehow,

17 without using Parking Kitty, Portland learned the registered

18 owner's mailing addresses.

19 　　　　MS. SHEFFIELD:  Correct.  So PPB looks up the

20 registered owner's mailing address, so the Portland Police

21 Bureau.

22 　　　　THE COURT:  And provides it to the City?

23 　　　　MS. SHEFFIELD:  They actually -- Portland Police

24 Bureau is actually the one that sends the letter to the

25 registered owner.

```
 1              THE COURT:  So we know that's what they get, the
 2    mailing address.  Do we know whether or not they get anything
 3    else from looking up registration?
 4              MS. SHEFFIELD:  There's no evidence that they get any
 5    other information.
 6              THE COURT:  All right.  We do know that Parking Kitty
 7    has phone and email, right?
 8              MS. SHEFFIELD:  Yeah, Parking Kitty -- or Passport,
 9    the company that owns Parking Kitty, had the phone and email
10    address.
11              THE COURT:  And your position on that is that the
12    record in this case is that the City does not regularly get
13    that information from Parking Kitty.  What does "regularly"
14    mean?
15              MS. SHEFFIELD:  I think it means exactly what you
16    described.  There is no process that the information is getting
17    transferred.  The stipulated facts don't say that the City
18    could never have asked and obtained it.
19              THE COURT:  I guess that's my question.  I'm looking
20    at what's practicable.  If all the City has to do is ask and it
21    gets it, doesn't that sort of undercut significantly your
22    position that the City didn't have phone or an email?
23              MS. SHEFFIELD:  So there's no evidence that the City
24    could have just asked and gotten it.  I would say this again
25    goes to plaintiff's burden on the underlying case, and there's
```

1   no evidence in the record that suggests that the City could

2   have easily gotten that information.

3          I will also note that in *Jones*, the Court talks about

4   the other forms of notice after certified mail had failed, and

5   they point out that they could have posted it on the property

6   as one of the forms that they could have used.  What they say

7   would have been unreasonable would have been to ask the city --

8   or the state in that instance to look for plaintiff's address

9   in phone books or in the income tax records.  And so I think

10   that this would be completely comparable to that situation.

11   This would be asking a third party to provide information

12   that's subject to their privacy policy, which is stipulated,

13   subject to their terms of use.

14          THE COURT:  What is the relationship -- what is the

15   business relationship between the City and Passport or Parking

16   Kitty?

17          MS. SHEFFIELD:  So the --

18          THE COURT:  On the record I have.

19          MS. SHEFFIELD:  On the record you have, yes.  So

20   Passport is an app developer and Parking Kitty is what's called

21   a white label application.  So it is an application that they

22   sell to lots of parties.  So multiple cities might get it.  And

23   the City --

24          THE COURT:  Your opponent talked about the City being

25   the owner of Parking Kitty.  Does that just mean they bought

1-ER-61

1   the app?

2          MS. SHEFFIELD:  So the City doesn't own the app.  The

3   City -- there's a misrepresentation on the City's website

4   about -- which is in the facts -- that the City misrepresents

5   on its website that it owns Parking Kitty, but the facts are

6   stipulated that the City does not own Parking Kitty.

7          THE COURT:  It's a company that sells an app and the

8   City uses the app?

9          MS. SHEFFIELD:  So the City doesn't even use it.  The

10  company uses it.  The company obtains the money.  So basically

11  it's like a mobile parking meter.  So if we had parking meters

12  and we contracted with a company that installed parking meters

13  and would remit money to the City.

14         THE COURT:  This is all in the stipulated facts?

15         MS. SHEFFIELD:  This is in the stipulated facts.

16         THE COURT:  So your position is that it's an

17  independent third party, unrelated to this litigation by virtue

18  of any corporate connection, and it has this information and it

19  doesn't regularly give this information to the City, and your

20  further contention is that there's nothing in these facts that

21  shows that by any simple means the City could have gotten this

22  information from Parking Kitty?

23         MS. SHEFFIELD:  Correct.

24         THE COURT:  All right.  And therefore phone and email

25  weren't practically available to the City?

1    MS. SHEFFIELD:  Correct.

2    THE COURT:  Again, just for sake of rounding out your

3 position, if you had easy access to phone and email, do you

4 agree that that would have been an alternative that the

5 Constitution would have required the City in this case to

6 employ?

7    MS. SHEFFIELD:  Again, I don't believe in this case

8 because I don't think we had notice that he didn't -- I don't

9 think we had knowledge that he didn't get notice.  But assuming

10 your hypothetical, then yes, if the City had readily available

11 phone or email, we probably did need to --

12    THE COURT:  So I've got to ask you to make two

13 assumptions you disagree with.  Once you do that, once you

14 agree that the City knew, and once you agree that the City

15 could have access to phone and email, then you agree that if

16 those two are correct -- which you disagree with -- that the

17 City would have had to have tried to reach out by phone or

18 email.

19    MS. SHEFFIELD:  I think that's correct, but again I

20 don't think there's anything -- I don't think you can get there

21 from the facts as set forth.

22    THE COURT:  You mentioned you think it's the

23 plaintiff's burden to show that the City had some way to get

24 this information.  And that's correct on their motion.  On your

25 motion, I assume it's your position that there's nothing on

1    which one could base the reasonable inference that the City

2    could get -- could have easily gotten this information?

3                MS. SHEFFIELD:  Correct.

4                THE COURT:  It's not a reasonable inference from any

5    fact in the record?

6                MS. SHEFFIELD:  Correct.

7                THE COURT:  All right.

8                MS. SHEFFIELD:  And the last one, to the extent -- I

9    don't think they briefed it here, but they mention it there,

10   which is they call it in-app notifications.  I think I

11   described it as push notifications.  So it's the same idea,

12   though, that the application itself, Parking Kitty, which is

13   not owned, designed, or controlled by the City, it's a payment

14   app.  It allows for payment.  It doesn't allow the parking --

15   excuse me, enforcement officer to send out a notification

16   through it saying it's going to be towed.  So again, the idea

17   that we could have made a third-party company design the app

18   differently or do this differently is simply not accurate.

19               THE COURT:  To summarize your last point, your last

20   series of arguments, if I could, you disagree that there's

21   anything that shows the City knew that notice posting on the

22   car didn't work here, but if that's wrong, then your contention

23   is that I then have to look at whether there was a reasonably

24   practicable -- that's just one way of putting it -- whether

25   there was an alternative method also reasonably calculated to

1    provide interested party with notice, and what you've done is
2    you've taken the alternatives suggested by your opponent and
3    said none of them are reasonably calculated to provide notice
4    here.  They either wouldn't do a good job of providing adequate
5    notice on time -- that's mailing -- or you couldn't have done
6    them, you literally -- they weren't available to you as
7    alternative methods of providing notice.  That's phone and
8    email and text, right?
9            MS. SHEFFIELD:  Correct.
10           THE COURT:  And you contend, I assume, that there's
11   also no other method out there in addition to the ones you've
12   discussed that presents -- there's been certainly none
13   presented that presents yet another way.  And so I guess your
14   bottom line is you can have a notice method that you know
15   doesn't work, and it's constitutionally adequate if no other
16   method would have worked.
17           MS. SHEFFIELD:  Yes.  And that is -- *Jones* says that.
18   And I can, if you'd like, I can --
19           THE COURT:  No, thank you very much.  Does that
20   conclude your argument?
21           MS. SHEFFIELD:  Let me just double-check if there was
22   anything else.
23           I want to address -- I did want to address briefly
24   *Valdez* and *Propert*.  I would note that they destroyed the
25   vehicles in the two cases where they talk about mail notice.

1  So *Propert* was the D.C. Circuit case that plaintiffs cite, and
2  I think it's worth -- if that is something that the judge is --
3  that Your Honor is concerned about, I would note that they
4  don't decide that pre-tow notice via sticker isn't adequate.
5  They actually say even if D.C. may tow a vehicle that it sees
6  pursuant to a sticker, it can't then, without offending due
7  process, it can't then destroy the vehicle without notice.  So
8  I do want to be clear on that, on those cases.

9          THE COURT:  Thank you.

10         MS. SHEFFIELD:  Thank you.

11         THE COURT:  I'm going to turn to you for just two
12  points.  One, of course, is the point that some of the methods
13  you say, hey, the City should have done this once it learned
14  there was no notice to your client, weren't actually available
15  to the City.  We've talked enough about mailing.  I think I
16  know your argument there.

17         So what's your response to the idea that the City
18  says that hey, we don't have phones and emails.  Parking Kitty
19  has it, but Parking Kitty is not the City and we couldn't
20  readily get it.  And I'm asking you to tell me on this record,
21  how do I know that's not true?

22         MS. KEENAN:  Well, Your Honor, I think looking at
23  other cases --

24         THE COURT:  Before you go to other cases, I'm asking
25  a factual question.

1        MS. KEENAN:  Yes.

2        THE COURT:  Your opponent has asserted that the facts

3   in front of me show that the City had no access to phone or

4   email that it could have utilized in this case.  Tell me the

5   facts that discount that factual assertion by your opponent.

6        MS. KEENAN:  Yes, Your Honor.  Paragraph 20 of the

7   stipulated facts says that Passport does not regularly share

8   this information.  And as previously stated, "regularly" does

9   not mean that they can't, it does not mean that they won't,

10  it's just that they don't do it regularly.  We think that's the

11  strongest fact in our favor to show that they could.

12       THE COURT:  So your contention is that a reasonable

13  inference to draw from the statement that the information isn't

14  regularly shared, it's reasonable to infer from that that it

15  could readily have been shared?

16       MS. KEENAN:  Yes, Your Honor.

17       THE COURT:  All right.  Do you agree with the

18  proposition that if I conclude that posting didn't work here

19  and the City knew it, but I also conclude that neither mailing

20  nor phone nor email nor text was a rational or reasonably

21  available alternative here, if I conclude that, do you agree

22  that therefore the Constitution is not violated by a system

23  that didn't work but no other system would have worked either?

24       MS. KEENAN:  Correct.  If posting was the only

25  available method in this case, then yes, it would be sufficient

1   to meet their obligation.

2         THE COURT:  Even if it didn't work?

3         MS. KEENAN:  Even if it didn't work, because actual

4   notice is not required.

5         THE COURT:  Could we go back then to the earliest

6   fork in the road, and that is the reasonable inference to draw

7   from whether posting worked or not.  And one argument you face

8   now that we didn't discuss is that -- your argument that stuff

9   on the windshield means the owner never got notice is

10   internally inconsistent, since you've -- I'm not saying this

11   myself, I'm saying what the argument is, since you've talked

12   out of sort of both sides of your mouth here.

13         What's your response to that?  You've said citations

14   stacking up means that the owner never came back, and a missing

15   notice also means the owner never came back.  And what your

16   opponent is saying, that's sort of heads I win, tails you lose.

17         MS. KEENAN:  Well, Your Honor, I think it goes to the

18   inherent unreliability of posting as a method itself.  You

19   know, I don't necessarily think that those are mutually

20   exclusive.  The tickets can pile up and the car is sitting on a

21   public street where anyone can walk by and take it.  But I

22   think that's the reason why --

23         THE COURT:  The argument is that you can't rationally

24   infer something if any state of facts, you win.  If they pile

25   up, you win.  If they don't pile up, you win.  I mean, I guess

1   you're saying yes, that's true, any state of facts means a

2   rational inference to make is that notice didn't happen.

3           MS. KEENAN:  I think with these facts, I would agree

4   with that.

5           THE COURT:  All right.  Thank you.

6           Thank you all very much for your help.  I'll be

7   issuing a written opinion as soon as possible.

8           We'll be in recess.

9           THE COURTROOM DEPUTY:  All rise.  Court is in recess.

10          (Proceedings concluded at 2:49 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

--o0o--

I certify, by signing below, that the foregoing is a correct transcript of the record of proceedings in the above-entitled cause. A transcript without an original signature or conformed signature is not certified.


/s/Bonita J. Shumway                June 2, 2023
_____        _____
BONITA J. SHUMWAY, CSR, RMR, CRR   DATE
Official Court Reporter

**MS. KEENAN:** [87]
**MS. SHEFFIELD:** [72]
**THE COURT:** [158]
**THE COURTROOM DEPUTY:** [2]  3/4
58/9

**-**

**--o0o [1]**  59/2

**/**

**/s/Bonita [1]**  59/9

**1**

**100 percent [1]**  18/25
**1000 [1]**  2/14
**1221 [1]**  2/9
**14 [2]**  5/22 5/22
**14th [1]**  7/22
**1:34 [1]**  3/2

**2**

**20 [1]**  56/6
**2017 [1]**  7/23
**2023 [3]**  1/6 3/2 59/9
**23 [19]**  27/6 27/8 27/11 27/14 27/17
29/19 32/4 32/5 32/11 32/12 32/17 32/18
32/23 33/2 33/10
**2:49 [1]**  58/10

**3**

**30 [1]**  28/16
**301 [1]**  2/14
**315 [1]**  17/11
**326-8188 [1]**  2/15
**3:18-cv-00183-MO [1]**  1/4
**3:18-cv-183-MO [1]**  3/5

**4**

**430 [1]**  2/9
**462 [1]**  9/16

**5**

**503 [1]**  2/15

**6**

**697 [1]**  27/3

**7**

**700 [1]**  27/3
**791 [1]**  9/16

**8**

**800 [1]**  9/16
**8188 [1]**  2/15
**8684 [1]**  2/5

**9**

**957 [1]**  27/3
**97204 [2]**  2/9 2/14
**97207 [1]**  2/5
**99 percent [4]**  20/2 20/4 20/5 41/18

**A**

**abandon [2]**  41/6 41/16
**abandoned [6]**  41/12 41/13 42/9 42/11

42/19 42/24
**about [38]**  4/25 5/1 7/21 8/1 8/11 10/4
12/13 13/21 20/13 20/14 20/19 20/21
22/13 24/13 27/7 28/17 29/21 31/24
33/14 34/14 34/18 35/12 38/2 39/11
41/10 41/19 42/19 43/16 45/9 45/19 46/5
47/20 50/3 50/24 51/4 54/25 55/3 55/15
**above [2]**  10/20 59/6
**above-entitled [1]**  59/6
**absent [1]**  24/22
**absentee [2]**  17/12 28/4
**absolute [2]**  25/11 31/7
**abstract [2]**  18/21 18/22
**accept [2]**  17/25 46/6
**access [4]**  45/5 52/3 52/15 56/3
**accomplish [2]**  17/13 28/5
**accurate [1]**  53/18
**acknowledged [2]**  21/25 22/2
**acknowledgment [1]**  20/11
**across [1]**  12/7
**action [3]**  11/13 27/8 33/9
**actions [2]**  27/12 27/15
**actual [13]**  8/18 9/17 13/16 16/14 16/18
20/5 24/3 28/19 29/18 33/12 38/20 38/24
57/3
**actually [16]**  8/21 16/14 17/12 20/5
27/10 28/4 34/2 34/18 35/18 35/20 36/2
36/3 48/23 48/24 55/5 55/14
**Adams [1]**  9/16
**add [3]**  12/3 12/7 33/13
**addition [3]**  3/17 4/11 54/11
**address [25]**  5/4 9/10 9/19 9/21 18/19
21/20 23/16 23/17 23/25 24/7 25/24 26/2
26/3 31/22 45/5 45/17 47/7 47/24 48/8
48/20 49/2 49/10 50/8 54/23 54/23
**addresses [1]**  48/18
**adds [1]**  12/8
**adequate [7]**  20/9 23/10 32/24 33/5
54/4 54/15 55/4
**admitted [3]**  22/9 46/7 46/8
**adopt [1]**  17/12 28/5
**advanced [1]**  43/7
**affairs [1]**  45/20
**afford [1]**  11/13
**after [6]**  7/24 9/21 9/23 23/18 30/24
50/4
**afternoon [1]**  3/4
**again [9]**  28/19 30/9 38/6 38/19 49/24
52/2 52/7 52/19 53/16
**against [1]**  43/4
**ago [1]**  21/24
**agree [16]**  11/8 15/14 15/14 17/15 17/23
18/17 29/11 39/1 45/9 52/4 52/14 52/14
52/15 56/17 56/21 58/3
**agreed [4]**  4/2 4/7 35/12 40/18
**agreed-upon [1]**  40/18
**agreement [3]**  18/6 18/8 26/11
**ahead [3]**  15/8 23/23 37/5
**air [1]**  16/18
**airplane [1]**  16/17
**akin [1]**  5/21
**all [38]**  8/3 8/13 8/25 11/12 12/13 14/21
15/7 15/14 16/25 17/24 18/1 22/8 22/11
22/12 22/13 29/21 30/22 31/18 35/4
35/11 36/1 36/24 37/14 38/5 42/17 42/24

43/15 45/18 48/1 49/6 49/20 51/14 51/24
53/7 56/17 58/5 58/6 58/9
**Alliance [1]**  2/4
**allow [1]**  53/14
**allows [1]**  53/14
**almost [2]**  5/13 45/6
**along [1]**  3/15
**already [2]**  29/23 31/22
**also [17]**  5/21 7/25 13/9 13/13 15/1
28/12 30/23 32/19 36/20 39/16 42/25
45/17 50/3 53/25 54/11 56/19 57/15
**alter [2]**  4/3 6/8
**alternative [7]**  44/2 44/3 44/20 52/4
53/25 54/7 56/21
**alternatives [3]**  19/12 34/24 54/2
**always [2]**  28/24 45/6
**am [3]**  8/10 11/6 33/5
**America [1]**  22/4
**among [1]**  18/3
**amount [1]**  23/2
**analysis [6]**  16/1 19/11 22/11 30/5
30/21 31/6
**ANDREW [1]**  1/3 3/9
**another [10]**  12/3 14/1 14/4 14/4 35/16
43/8 43/20 43/22 46/10 54/13
**answer [7]**  20/22 23/1 28/16 29/3 29/23
29/24 34/22
**ante [1]**  20/14
**any [21]**  6/19 13/12 13/15 17/21 22/22
23/2 24/21 32/13 36/4 40/23 41/9 42/10
43/10 46/15 47/9 49/4 51/18 51/21 53/4
57/24 58/1
**anybody [3]**  13/25 16/9 28/7
**anyone [2]**  28/16 57/21
**anything [9]**  6/9 6/11 14/13 17/18 20/21
49/2 52/20 53/21 54/22
**anywhere [3]**  10/10 17/19 26/14
**apartment [2]**  34/6 34/6
**app [11]**  5/3 5/20 7/25 50/20 51/1 51/2
51/7 51/8 53/10 53/14 53/17
**appear [2]**  37/7 37/9
**APPEARANCES [1]**  2/2
**appellate [1]**  11/1
**applicable [1]**  11/23
**application [3]**  50/21 50/21 53/12
**applied [3]**  24/11 32/14 35/3
**applies [2]**  3/19 33/15
**apply [1]**  35/3
**applying [3]**  11/2 11/25 35/2
**appreciate [2]**  12/3 15/11
**apprise [4]**  11/12 13/6 26/6 32/25
**are [32]**  3/4 4/5 8/16 9/19 11/21 11/22
12/16 18/1 18/8 18/11 19/1 21/23 21/23 24/7
25/15 27/1 27/18 32/11 36/6 37/2 41/11
41/19 42/19 43/9 43/22 45/3 46/10 46/23
48/12 51/5 52/16 54/3 57/19
**aren't [3]**  11/24 15/1 21/3
**argues [1]**  35/25
**arguing [1]**  17/15
**argument [28]**  1/14 3/5 4/15 6/6 13/5
15/12 17/17 26/13 35/25 36/14 36/17
38/1 38/23 40/18 40/21 40/23 42/21
42/23 45/15 47/8 47/9 47/16 54/20 55/16
57/7 57/8 57/11 57/23
**argument's [1]**  18/1

1-ER-71

**A**

**arguments [3]** 43/6 43/16 53/20
**arrangements [1]** 6/8
**articulated [1]** 10/21
**as [50]** 3/17 4/2 5/18 5/19 8/9 8/10 9/7 9/17 10/12 10/15 10/20 11/1 11/1 12/17 13/9 13/9 13/10 15/17 15/25 15/25 16/22 17/11 17/20 21/10 21/11 22/9 23/22 24/2 25/15 27/23 28/4 29/4 30/6 30/11 30/11 31/15 31/15 33/22 34/2 34/3 40/24 50/6 52/21 53/11 54/6 56/8 57/18 58/7 58/7
**ascertainable [3]** 9/19 9/21 24/8
**ascertained [1]** 21/20
**ask [5]** 6/19 35/25 49/20 50/7 52/12
**asked [2]** 49/18 49/24
**asking [12]** 24/14 24/15 25/1 25/2 28/7 36/1 36/2 38/13 43/14 50/11 55/20 55/24
**aspect [1]** 19/14
**asserted [1]** 56/2
**assertion [1]** 56/5
**assume [3]** 42/3 52/25 54/10
**assuming [1]** 52/9
**assumption [1]** 47/6
**assumptions [1]** 52/13
**attempt [6]** 9/8 12/10 20/24 20/25 29/7 33/19
**attempted [1]** 6/18
**attempts [1]** 21/3
**Attorney's [1]** 2/8
**augmented [1]** 3/24
**automatically [1]** 6/5
**available [18]** 9/10 16/9 17/20 17/24 18/1 18/19 21/18 23/16 23/17 24/1 25/24 26/2 51/25 52/10 54/6 55/14 56/21 56/25
**availing [1]** 13/12
**Avenue [2]** 2/9 2/14
**aware [10]** 13/23 33/19 33/21 34/14 34/17 34/23 35/4 35/21 35/21 35/23
**awareness [1]** 33/23
**away [3]** 30/24 38/6 44/25

**B**

**back [20]** 13/15 18/21 26/4 26/21 27/21 30/15 30/25 36/18 36/22 36/23 38/4 38/5 39/15 39/16 41/18 47/2 47/15 57/5 57/14 57/15
**backdrop [1]** 22/10 22/10 41/11
**backs [1]** 20/22
**ball [1]** 15/15
**base [2]** 4/22 53/1
**based [2]** 35/22 40/11
**basically [4]** 8/14 32/22 45/19 51/10
**be [73]**
**bearing [1]** 22/22
**bears [1]** 4/13
**beats [2]** 40/11 40/12
**became [2]** 33/20 35/23
**because [46]** 9/21 11/17 18/18 20/13 20/22 21/4 22/13 27/23 28/9 28/12 30/6 35/7 35/19 35/25 36/7 36/12 36/15 36/22 37/8 37/23 38/11 38/19 39/14 39/21 39/25 40/2 40/19 41/13 41/18 42/2 43/15 43/15 44/11 44/14 44/16 44/20 45/16 45/25 46/5 46/17 46/20 46/22 47/13

**because I [1]** 38/11
**become [5]** 34/17 34/22 35/4 35/20 35/21
**becomes [2]** 33/19 34/14
**been [17]** 20/6 40/15 41/13 41/17 42/1 42/3 44/17 44/17 44/23 44/24 45/1 48/14 50/7 50/7 52/4 54/12 56/15
**before [13]** 1/16 8/7 10/4 10/6 10/11 15/15 15/11 23/7 23/12 32/1 33/21 42/13 55/24
**beforehand [1]** 23/19
**beginning [2]** 3/8 44/12
**behave [1]** 45/21
**behavior [1]** 45/23
**behind [1]** 34/11
**being [14]** 3/12 5/24 8/7 12/22 15/5 15/5 15/10 22/9 24/22 39/16 41/17 41/20 42/24 50/24
**believe [4]** 10/20 13/3 31/8 52/7
**below [2]** 25/24 59/4
**benefit [1]** 31/3
**best [23]** 16/2 16/9 16/12 16/24 17/6 17/18 17/20 26/8 26/12 26/14 26/18 26/21 26/22 27/4 27/7 27/9 29/2 32/6 32/16 32/23 33/2 33/5 33/8 44/3
**better [11]** 4/21 17/1 17/5 27/24 27/25 28/25 28/25 29/1 29/16 44/15 44/23
**between [2]** 8/21 50/15
**beyond [2]** 15/22 46/2
**bit [2]** 24/4 34/2
**blocking [2]** 11/23 11/24
**Board [1]** 9/15
**bonita [1]** 2/13 2/15 59/9 59/10
**books [1]** 50/9
**both [8]** 3/12 12/14 13/3 27/4 37/21 43/13 44/11 57/12
**bottom [1]** 54/14
**bought [1]** 50/25
**Box [1]** 2/5
**briefed [2]** 3/15 53/9
**briefing [2]** 23/17 31/23
**briefly [1]** 54/23
**bring [1]** 19/14
**broader [1]** 18/11
**Brody [1]** 21/1
**burden [4]** 4/14 43/3 49/25 52/23
**Bureau [3]** 48/11 48/21 48/24
**business [1]** 50/15

**C**

**cabined [1]** 33/9
**calculated [20]** 11/11 12/10 13/6 16/23 16/25 17/8 17/10 19/5 19/9 26/5 26/6 26/18 32/2 32/9 32/24 33/3 33/17 34/5 53/25 54/3
**calculation [1]** 26/8
**call [14]** 3/14 14/7 15/4 15/21 25/14 28/6 28/14 29/2 29/3 29/3 29/6 29/7 30/10 53/10
**called [1]** 50/20
**calling [2]** 29/8 32/5
**came [2]** 26/11 34/6 57/14 57/15
**can [28]** 6/10 8/10 10/4 10/10 11/4 13/17 16/24 16/25 17/7 18/22 19/17

**22/15 25/13 25/14 25/20 27/14 28/12 29/17 29/19 32/9 36/15 48/4 52/20 54/14 54/18 54/18 57/20 57/21
**can't [13]** 5/25 17/18 24/21 25/13 25/23 37/21 39/14 42/17 43/12 55/6 55/7 56/9 57/23
**cannot [2]** 21/20 41/24
**car [54]** 5/2 7/23 8/17 8/19 10/6 11/2 13/11 13/15 13/21 14/5 14/19 15/2 17/3 20/12 20/20 21/15 21/21 21/22 22/4 22/6 23/22 23/6 23/19 24/16 24/21 25/3 30/14 30/24 31/1 31/1 36/19 36/22 36/24 37/6 37/7 37/10 37/10 37/11 37/23 38/5 41/3 41/16 41/20 41/23 41/25 42/3 42/4 42/10 42/14 42/21 47/2 47/4 53/22 57/20
**car's [1]** 8/1
**card [1]** 5/4
**carry [1]** 20/12
**cars [14]** 14/25 34/11 41/6 41/10 41/12 41/12 41/16 41/19 42/8 42/12 42/13 42/19 42/24 46/18
**case [66]**
**cases [22]** 10/18 13/24 14/7 22/16 27/1 32/4 32/10 32/10 32/11 32/13 32/19 32/22 39/24 39/24 41/12 42/15 45/18 47/1 54/25 55/8 55/23 55/24
**caught [1]** 16/18
**causal [1]** 41/1
**cause [1]** 59/6
**certain [6]** 7/20 9/17 10/19 24/2 25/15 28/11
**certainly [1]** 54/12
**certified [9]** 10/15 10/16 10/19 13/4 40/3 40/3 40/5 50/4 59/7
**certify [1]** 59/4
**cetera [1]** 7/8
**challenge [1]** 16/15
**chance [1]** 20/8
**change [1]** 4/4
**check [1]** 54/21
**checked [1]** 7/2
**checking [1]** 9/24
**Chester [1]** 21/1
**choose [1]** 18/2
**chose [2]** 16/10 16/15
**Circuit [17]** 3/13 3/14 8/10 11/1 11/19 12/4 20/18 21/2 21/5 21/7 21/22 27/2 32/14 32/22 33/7 36/8 55/1
**Circuit's [1]** 15/10
**circumstances [4]** 10/20 11/12 11/22 27/4
**citations [13]** 20/20 23/1 23/11 36/5 36/6 36/11 37/6 37/16 37/17 38/3 39/21 43/13 57/13
**cite [4]** 26/15 40/20 41/12 55/1
**cited [1]** 32/22
**cites [2]** 12/3 27/2
**cities [1]** 50/22
**citing [1]** 21/2
**city [130]**
**City's [5]** 5/3 25/5 30/19 37/22 51/3
**claim [1]** 20/8
**claimant [1]** 13/1
**clarify [3]** 15/25 21/19 26/17
**class [5]** 10/17 27/8 27/11 32/20 33/9

1-ER-72

**C**

**clear [10]** 5/19 6/15 11/20 18/11 19/8 21/7 21/22 25/9 29/5 55/8
**client [5]** 7/20 14/11 22/2 22/8 55/14
**client's [2]** 20/11 30/18
**closer [1]** 4/20
**coextensive [1]** 27/18
**collected [2]** 7/6 7/9
**collects [2]** 7/11 7/16
**come [13]** 16/4 30/15 30/25 36/10 36/18 36/23 38/4 38/5 39/15 39/16 41/18 47/2 47/14
**comes [3]** 19/8 27/8 37/22
**coming [3]** 12/14 13/25 36/22
**common [4]** 20/23 22/1 42/8 42/19
**company [6]** 49/9 51/7 51/10 51/10 51/12 53/17
**comparable [1]** 50/10
**completely [1]** 50/10
**concerned [1]** 55/3
**conclude [5]** 43/24 54/20 56/18 56/19 56/21
**concluded [1]** 58/10
**conduct [1]** 45/20
**confirm [1]** 32/10
**conformed [1]** 59/7
**connection [1]** 51/18
**consider [4]** 3/14 12/4 34/25 46/10
**considering [4]** 3/21 33/18 33/20 46/14
**considers [1]** 45/19
**consistent [1]** 10/18
**conspicuous [1]** 20/25
**constitute [1]** 20/21
**Constitution [13]** 16/11 17/19 18/4 18/25 19/18 24/21 25/2 25/7 25/8 29/15 45/10 52/5 56/22
**constitutional [19]** 9/18 10/12 16/8 16/8 16/12 16/15 17/6 17/21 17/25 18/17 18/22 18/24 19/23 20/8 22/23 24/3 24/15 41/24 42/2
**constitutionally [1]** 54/15
**contact [1]** 5/23
**contend [7]** 9/13 10/14 27/21 38/7 39/6 39/7 54/10
**contending [4]** 10/22 15/17 19/4 46/13
**content [2]** 20/23 23/10
**contention [4]** 15/23 51/20 53/22 56/12
**context [5]** 12/1 21/11 22/8 26/9 27/8
**continues [1]** 19/11
**contracted [1]** 51/12
**contradictory [1]** 40/20
**contradicts [1]** 6/11
**controlled [1]** 53/13
**conversation [1]** 17/4
**conversely [1]** 37/19
**corporate [1]** 5/23
**correct [34]** 6/25 8/4 8/8 8/10 12/19 14/2 14/8 18/22 19/2 25/12 25/22 33/11 35/6 37/25 39/3 39/5 39/9 39/17 44/5 45/7 46/12 46/16 46/19 48/19 51/23 52/1 52/16 52/19 52/24 53/3 53/6 54/9 56/24 59/5
**corresponding [1]** 27/18
**cost [1]** 14/17
**coterminous [1]** 32/5

**could [36]** 5/24 6/8 17/2 20/8 20/12 21/23 22/3 22/6 25/16 25/25 27/23 30/10 30/14 31/9 31/10 35/17 35/22 38/17 39/20 45/10 49/18 49/24 50/1 50/5 50/6 51/21 52/15 53/1 53/2 53/2 53/17 53/20 56/4 56/11 56/15 57/5
**couldn't [3]** 10/8 54/5 55/19
**counsel [2]** 3/7 4/16
**count [1]** 21/10
**couple [1]** 8/7
**course [4]** 3/13 9/6 9/15 55/12
**court [18]** 1/1 1/17 2/13 9/16 11/1 13/5 16/21 18/16 19/10 19/12 19/25 21/13 25/22 27/3 30/20 50/3 58/9 59/11
**Courthouse [1]** 2/13
**courts [5]** 10/25 24/11 26/9 27/17 33/1
**created [1]** 27/9
**credit [1]** 5/4
**cross [4]** 3/18 3/20 4/13 4/16
**CRR [2]** 2/13 59/10
**CSR [2]** 2/13 59/11
**curious [1]** 6/10
**currently [1]** 6/4
**customary [1]** 19/11
**customer [1]** 6/3
**cv [2]** 1/4 3/5

**D**

**D.C [3]** 11/1 55/1 55/5
**data [1]** 7/3
**DATE [1]** 59/10
**daughters [1]** 5/14
**day [2]** 8/18 10/8
**days [13]** 8/7 10/4 10/6 10/10 10/11 13/11 22/6 24/23 25/3 31/1 32/1 47/9 47/11
**dealing [1]** 15/24
**December [2]** 6/13 7/22
**December 14th [1]** 7/22
**decide [2]** 16/21 55/4
**decided [1]** 43/15
**decision [2]** 11/20 33/6
**decisions [1]** 32/14
**deemed [1]** 19/9
**default [2]** 15/19 25/20
**defeat [1]** 30/18
**defeating [1]** 30/11
**defeats [4]** 38/9 38/15 38/18 39/3
**defendant [3]** 1/7 2/8 3/23
**degree [2]** 22/2 23/2
**delay [4]** 45/13 46/21 46/23 46/24
**delivered [1]** 40/6
**delivering [2]** 12/20 12/24
**demonstrated [1]** 41/7
**denied [2]** 6/19 6/24
**depend [1]** 45/22
**depended [1]** 36/21
**depends [1]** 42/8
**deprivation [9]** 13/7 21/1 21/9 22/15 22/20 22/24 23/18 33/21 34/17
**described [3]** 45/21 49/16 53/11
**describes [2]** 16/22 17/9
**design [1]** 53/17
**designed [1]** 53/13
**desirous [2]** 17/11 28/4

**destroy [1]** 55/7
**destroyed [1]** 54/24
**determine [1]** 7/4
**developer [1]** 50/20
**development [1]** 15/16
**did [30]** 6/13 6/14 6/16 7/10 10/11 13/22 16/13 16/14 17/5 18/15 18/17 18/18 19/13 20/3 20/8 30/3 30/4 34/17 34/22 35/4 35/20 37/7 37/9 37/16 43/17 43/18 45/4 52/11 54/23
**didn't [46]** 6/9 12/18 13/2 13/22 14/5 15/20 18/23 19/9 19/19 19/20 19/20 19/21 19/24 20/2 20/10 20/11 20/13 20/16 20/20 20/22 37/15 37/19 38/15 41/3 41/21 42/10 42/15 42/25 42/22 42/22 42/25 44/1 46/10 48/1 48/2 48/13 49/22 52/8 52/9 53/22 56/18 56/23 57/2 57/3 57/8 58/2
**difference [1]** 24/23
**different [2]** 36/2 37/3
**differently [2]** 53/18 53/18
**Dignity [1]** 2/4
**direction [2]** 4/9 4/17
**disagree [5]** 26/13 34/2 52/13 52/15 53/20
**disagreed [1]** 46/8
**discount [1]** 56/5
**discuss [1]** 57/8
**discussed [6]** 23/16 23/20 26/9 26/10 30/6 54/12
**discusses [1]** 23/5
**discussing [1]** 26/7
**discussion [1]** 27/7
**dispositive [1]** 24/9
**dispute [2]** 4/25 16/19
**DISTRICT [4]** 1/1 1/2 1/17 2/13
**do [42]** 3/18 6/16 10/1 13/20 14/10 14/11 15/11 19/1 21/11 21/19 25/11 25/18 25/25 26/1 26/13 26/25 27/24 29/1 29/2 32/16 32/21 36/4 36/7 37/9 41/11 43/2 43/4 45/9 45/21 46/5 49/2 49/6 49/20 52/3 52/13 53/18 54/4 55/8 55/21 56/10 56/17 56/21
**doctrine [1]** 14/16
**does [26]** 4/3 5/23 10/11 10/16 12/2 12/7 14/23 16/4 16/10 20/22 21/3 33/13 35/13 38/11 40/13 48/5 48/8 48/12 49/12 49/13 50/25 51/6 54/19 56/7 56/8 56/9
**doesn't [24]** 4/4 6/4 6/6 18/20 18/25 19/3 19/4 20/12 22/18 22/22 25/8 25/12 31/8 39/4 42/24 43/1 45/17 46/17 49/21 51/2 51/9 51/19 53/14 54/15
**doing [3]** 3/22 15/11 33/2
**dollars [1]** 14/18
**domestic [1]** 10/9
**don't [48]** 6/9 6/15 7/12 8/15 13/24 13/25 14/2 14/4 14/6 14/16 22/16 22/20 23/2 26/24 28/6 31/14 32/18 32/20 32/21 35/18 35/21 36/6 36/11 38/11 38/17 38/18 38/19 39/1 39/7 40/10 41/9 42/8 42/16 42/18 43/9 45/14 47/2 52/7 52/8 52/8 52/20 52/20 53/9 55/4 55/18 56/10 57/19 57/25
**done [6]** 4/6 4/7 29/2 54/1 54/5 55/13
**double [1]** 54/21

1-ER-73

**D**

double-check [1] 54/21
doubt [2] 40/4 40/7
down [4] 12/22 24/4 34/7 37/22
downtown [2] 7/23 13/12
draw [9] 30/14 30/17 30/25 31/12 35/13 35/15 36/25 56/13 57/6
drawn [2] 30/10 40/17
Drexel [1] 32/22
driver [2] 22/4 36/22
driveways [1] 11/23
due [13] 10/14 11/11 11/14 12/6 12/6 27/15 28/2 28/3 28/20 32/5 32/6 45/10 55/6

**E**

each [1] 4/11
earlier [3] 26/7 26/10 45/11
earliest [1] 57/5
easiest [2] 24/10 24/13
easily [2] 50/2 53/2
easy [1] 52/3
effect [1] 35/11
effective [5] 37/19 37/20 37/24 40/5 40/7
Effectively [1] 24/20
effectuates [1] 20/5
effort [1] 6/23
either [8] 15/17 15/19 31/9 42/16 42/17 43/2 54/4 56/23
elements [1] 13/13
else [7] 11/17 12/12 19/5 30/2 48/9 49/3 54/22
email [21] 5/4 7/8 7/25 25/14 25/14 29/9 29/17 47/20 47/22 47/24 49/7 49/9 49/22 51/24 52/3 52/11 52/15 52/18 54/8 56/4 56/20
emails [1] 55/18
emergency [1] 24/22
employ [3] 15/21 46/15 52/6
employed [4] 12/9 16/2 17/10 28/3
employees [2] 48/11 48/12
enactment [1] 27/12
end [1] 41/20
ends [2] 30/5 41/17
enforcement [4] 7/1 47/25 48/12 53/15
enhances [1] 47/8
enough [3] 28/15 28/18 55/15
ensure [2] 9/17 24/2
entitled [2] 30/18 59/6
essentially [3] 28/24 37/21 41/23
established [1] 15/19
et [1] 7/8
et cetera [1] 7/8
even [8] 12/9 13/4 18/2 21/3 51/9 55/5 57/2 57/3
events [2] 9/4 9/7
ever [2] 29/18 47/1
every [2] 17/3 22/3
everybody [1] 10/3
evicted [1] 21/4
evidence [18] 13/24 34/7 34/12 35/20 35/22 35/23 36/18 38/20 40/2 40/9 40/10 40/13 42/18 47/23 47/24 49/4 49/23 50/1
ex [1] 20/14

**F**

exactly [3] 20/15 27/19 49/15
example [1] 3/21
exceed [1] 25/13
except [1] 4/14
exclusive [1] 57/20
excuse [3] 5/22 28/2 53/15
expensive [1] 18/2
experience [1] 28/15
explain [1] 37/3
explanation [1] 25/1
explore [1] 28/25
express [1] 27/5
extensive [1] 32/20
extent [3] 27/19 41/4 53/8

F.2d [1] 27/3
face [1] 57/7
fact [14] 5/21 6/16 7/7 8/16 14/23 15/4 18/23 19/22 22/21 31/7 41/16 46/9 53/5 56/11
factors [1] 46/24
facts [50] 3/24 3/25 4/1 4/2 4/5 4/7 4/8 5/19 6/13 6/17 7/10 7/14 7/19 13/16 22/16 30/11 30/17 31/12 35/12 36/20 37/1 37/2 38/2 38/14 38/24 39/2 39/8 40/17 40/18 40/20 40/24 41/10 42/8 43/24 44/16 45/3 45/9 49/17 51/4 51/5 51/14 51/15 51/20 52/21 56/2 56/5 56/7 57/24 58/1 58/3
factual [5] 42/23 42/25 43/2 55/25 56/5
fail [2] 34/5 34/8
failed [9] 16/20 33/20 33/21 33/24 34/23 35/5 35/8 35/14 50/4
failing [2] 33/24 34/4
fairly [1] 14/15
familiar [1] 7/19
far [6] 6/2 8/10 13/9 15/13 15/14 15/25 40/18
fatal [1] 19/18
favor [4] 30/18 31/14 31/15 56/11
favorable [3] 3/23 4/1 4/6
feasible [1] 19/11
feature [1] 24/9
February [2] 1/6 3/2
few [1] 46/23
figure [1] 9/12
financial [1] 14/21
find [8] 6/18 9/12 11/4 17/3 19/10 19/12 43/19 43/22
finish [1] 34/20
fire [1] 11/17
first [23] 4/17 6/22 8/5 9/7 10/17 15/10 16/1 16/13 18/11 20/18 23/24 30/2 31/23 35/4 36/1 36/8 39/10 39/15 40/18 40/21 47/8 47/9 47/16
five [6] 16/25 17/24 17/24 18/1 18/3 47/11
flesh [1] 43/15
flip [1] 30/22
floor [1] 25/23
foregoing [1] 59/4
fork [1] 57/8
forms [2] 50/4 50/6
forth [1] 52/21

**G**

four [1] 10/4
Fourth [1] 2/9
Frankly [1] 24/10
frivolously [1] 28/7
front [3] 11/16 43/9 56/3
functionally [1] 5/16
further [1] 51/20

gave [1] 31/25
general [3] 13/9 20/1 41/11
generality [1] 11/8
generalized [2] 12/5 22/14
generally [8] 12/20 12/24 13/17 13/21 14/11 14/16 19/17 34/4
gesture [1] 28/3
get [41] 6/18 6/24 11/16 12/18 13/2 14/20 14/20 25/1 28/7 28/17 29/3 30/20 31/13 31/14 38/8 38/15 40/9 40/10 41/21 42/11 42/12 42/13 42/16 42/22 42/22 42/24 42/25 43/19 47/13 49/1 49/2 49/4 49/12 50/22 52/9 52/20 52/23 53/2 55/20
gets [9] 8/3 8/5 8/13 8/18 9/1 15/15 31/3 36/8 49/21
getting [7] 15/1 21/17 23/12 38/21 38/22 41/12 49/16
give [5] 7/13 17/20 17/24 26/16 51/19
given [12] 6/3 15/5 25/19 29/24 31/13 33/16 35/11 35/12 35/13 43/6 43/8 45/2
gives [1] 10/3
giving [3] 5/21 15/19 45/19
gloss [1] 12/3
go [17] 4/17 4/23 10/20 13/14 14/20 15/8 17/3 21/13 23/23 25/24 31/9 31/22 37/5 44/9 47/21 55/24 57/5
goes [8] 13/10 16/1 26/4 36/14 36/17 44/10 49/25 57/17
going [25] 7/18 8/16 8/19 10/3 10/3 14/20 14/20 15/9 22/8 22/18 25/10 34/20 38/8 41/3 44/10 45/4 47/2 47/10 47/10 47/11 47/12 47/12 47/21 53/16 55/11
going to [1] 10/3
gold [2] 25/20 25/23
gone [1] 15/2
good [5] 27/23 28/15 28/18 35/21 54/4
got [12] 6/8 13/7 14/1 17/18 19/4 28/11 28/24 35/3 40/6 42/5 52/12 57/9
gotten [5] 48/8 49/24 50/2 51/21 53/2
governing [1] 15/23
government [4] 12/9 13/7 22/18 33/18
government's [1] 22/23
Great [1] 4/23
Greene [3] 22/20 32/13 34/5
GRIMM [9] 1/3 3/5 3/9 11/20 16/18 19/25 35/5 35/7 37/12
Grimm's [2] 20/20 21/22
guarantee [1] 29/18
guess [10] 19/24 24/17 25/22 33/4 34/17 42/6 42/7 49/19 54/13 57/25

**H**

had [43] 6/11 6/14 6/24 12/10 12/11 12/23 13/4 18/19 21/14 23/19 25/16 33/21 34/23 34/25 35/5 35/7 35/8 35/14

1-ER-74

## H

**had... [25]** 35/21 36/23 38/20 38/24 39/2 40/14 40/14 41/2 44/4 44/21 46/4 46/14 47/5 47/23 48/14 49/9 50/4 51/11 52/3 52/8 52/9 52/10 52/17 52/23 56/3
**hadn't [9]** 13/24 38/4 38/25 39/3 39/16 39/21 41/18 42/1 42/3
**hand [1]** 11/25
**happen [2]** 18/21 58/2
**happened [3]** 14/1 38/2 48/7
**happens [4]** 8/3 8/25 28/23 46/8
**happy [1]** 26/25
**has [30]** 12/4 15/21 16/9 16/11 21/6 22/22 23/10 26/12 26/14 30/1 30/2 30/15 30/15 33/20 35/7 35/15 35/19 35/20 36/18 38/19 40/20 41/16 42/23 42/25 43/7 49/7 49/20 51/18 55/19 56/2
**hasn't [2]** 39/15 41/23
**have [107]**
**he [22]** 7/3 7/3 7/4 7/5 7/23 7/25 8/3 8/5 8/13 8/18 8/25 20/11 20/13 22/2 22/3 22/9 22/9 31/10 38/15 38/20 52/8 52/9
**he's [1]** 8/3
**heads [1]** 57/16
**hear [1]** 26/25
**Hello [1]** 5/13
**help [4]** 9/12 15/16 38/7 58/6
**helps [1]** 37/3
**here [40]** 3/4 3/12 3/13 3/18 3/24 5/2 9/20 13/11 13/16 13/25 15/16 15/23 15/24 16/11 17/2 17/5 20/13 21/3 21/21 22/1 28/10 29/15 30/11 35/2 35/22 35/23 36/3 42/17 43/7 44/13 45/25 47/5 47/22 48/7 53/9 53/22 54/4 56/18 56/21 57/12
**here's [1]** 34/7
**hey [4]** 42/21 42/23 55/13 55/18
**higher [1]** 11/7
**him [1]** 8/1
**hire [1]** 17/2
**his [8]** 5/2 5/3 7/23 8/1 13/15 20/12 31/10 37/12
**holding [2]** 9/14 47/4
**holdings [1]** 25/18
**holds [1]** 5/19
**Honor [38]** 4/18 5/11 5/18 6/21 8/12 9/6 9/25 10/5 11/9 11/19 12/8 13/3 14/3 14/14 15/6 16/5 18/7 19/21 20/15 22/12 23/3 23/14 24/19 24/24 26/16 26/23 27/13 28/22 29/4 29/20 31/5 31/17 31/21 55/3 55/22 56/6 56/16 57/17
**HONORABLE [1]** 1/16
**hornbook [1]** 12/6
**hour [3]** 23/7 31/2 45/23
**hours' [2]** 22/5 30/24
**how [15]** 3/19 4/10 6/1 27/24 27/24 28/16 29/21 35/2 41/7 42/19 45/19 45/20 45/21 47/20 55/21
**However [2]** 16/20 19/12
**human [1]** 22/1
**humans [1]** 45/23
**hundreds [2]** 14/18 14/18
**hydrant [1]** 11/17
**hypothetical [2]** 38/22 52/10

## I

**I'll [15]** 3/14 4/16 7/13 11/6 12/14 15/4 15/21 24/25 26/25 31/21 34/1 44/9 46/6 47/22 58/6
**I'm [39]** 3/13 3/21 3/22 3/25 4/1 4/10 5/10 6/5 6/9 7/19 8/14 12/25 12/25 13/23 13/25 14/3 15/9 15/23 16/7 17/15 17/16 18/7 19/22 26/14 28/7 28/25 34/20 38/8 38/13 43/5 43/14 44/10 46/4 49/19 55/11 55/20 55/24 57/10 57/11
**I've [5]** 5/14 6/1 43/15 45/11 52/12
**idea [10]** 6/11 16/4 17/18 32/16 44/15 44/23 45/4 53/11 53/16 55/17
**ignores [1]** 8/10
**Illinois [1]** 10/25 44/22
**implicate [1]** 25/16
**implication [1]** 5/24
**important [4]** 22/7 39/23 39/25 44/13
**importantly [1]** 47/5
**impose [2]** 25/2 28/10
**imposed [1]** 24/20
**impounded [1]** 14/20
**inability [1]** 25/3
**inadequate [1]** 23/13
**incentive [1]** 14/22
**include [1]** 29/17
**includes [1]** 26/8
**including [2]** 10/25 11/23
**incoherent [2]** 39/12 40/21
**income [1]** 50/9
**inconsistency [1]** 41/1
**inconsistent [3]** 43/12 44/16 57/10
**indeed [1]** 20/7
**independent [1]** 51/17
**indicate [2]** 10/7 10/18
**indicates [1]** 48/10
**indicating [1]** 41/5
**indicia [1]** 21/16
**indicia to [1]** 21/16
**individual [1]** 15/21
**individualized [3]** 19/25 20/24 21/7
**individually [3]** 14/11 15/18 17/4
**individuals [1]** 44/25
**ineffectual [1]** 12/11
**infer [5]** 36/23 38/3 40/1 56/14 57/24
**inference [43]** 15/4 30/10 30/14 30/17 30/23 30/24 31/3 31/4 31/8 31/12 31/13 35/13 35/15 35/22 36/21 36/25 37/1 37/3 38/1 38/9 38/14 38/24 39/2 39/8 39/11 39/20 40/17 40/19 40/24 41/15 41/17 41/20 42/10 42/14 42/17 43/7 43/17 43/24 53/1 53/4 56/13 57/6 58/2
**inferences [5]** 4/4 4/5 4/8 31/8 43/3
**inferentially [1]** 56/9
**information [35]** 2/4 5/5 5/23 6/3 6/12 6/14 6/18 6/24 7/6 7/8 7/11 7/15 7/20 7/21 7/23 9/18 21/4 21/6 21/23 25/16 48/1 48/2 48/13 49/5 49/13 49/16 50/2 50/11 51/18 51/19 51/22 52/24 53/2 56/8 56/13
**informed [1]** 35/7
**informing [2]** 17/12 28/4
**inherent [4]** 45/13 45/24 47/18 57/18
**inherently [2]** 13/10 23/15
**installed [1]** 51/12

## I (continued)

**instance [3]** 19/19 34/23 50/8
**instead [4]** 25/21 26/3 27/23 29/17
**instructed [1]** 3/14
**insufficient [2]** 23/15 24/1
**intercede [1]** 45/1
**interested [3]** 4/10 11/12 54/1
**internal [1]** 40/25
**internally [4]** 39/12 40/21 43/12 57/10
**interpreting [1]** 32/4
**investigator [1]** 17/2
**is [248]**
**isn't [18]** 9/20 12/21 15/5 15/5 15/20 16/8 21/17 21/25 22/2 28/18 31/16 37/4 39/19 40/17 47/1 47/4 55/4 56/13
**issue [5]** 9/7 22/7 23/16 23/21 23/24
**issues [2]** 11/24 31/22
**issuing [1]** 58/7
**it [185]**
**it's [94]**
**its [7]** 5/23 15/19 30/1 33/19 35/14 47/17 51/5
**itself [5]** 13/11 13/12 13/22 53/12 57/18

## J

**job [1]** 54/4
**Jones [48]** 3/15 5/2 9/4 9/9 10/13 11/2 11/25 12/2 12/5 12/7 12/8 12/21 13/4 13/8 15/16 15/17 16/1 16/5 16/12 18/12 18/16 19/8 19/13 19/14 21/4 21/10 21/14 22/17 23/8 23/15 24/9 26/5 27/10 30/20 31/6 32/12 32/13 33/13 33/15 35/1 35/3 35/19 38/19 39/24 39/25 45/18 50/3 54/17
**judge [2]** 1/17 55/2
**judgment [13]** 3/18 3/20 3/22 30/12 30/16 30/19 31/16 38/19 38/25 39/4 40/9 40/10 40/12
**jump [1]** 15/9
**June [1]** 59/9
**jurisdictions [1]** 10/25
**jury [1]** 39/20
**just [42]** 3/20 4/2 4/16 4/20 5/25 6/9 8/17 10/11 10/21 14/18 15/12 17/17 17/21 18/10 22/1 22/21 23/12 26/17 28/14 29/2 29/18 32/23 33/2 34/8 35/24 38/3 38/13 39/18 41/5 41/11 43/11 44/3 45/1 48/4 48/14 49/24 50/25 52/2 53/24 54/21 55/11 56/10

## K

**Keenan [1]** 2/4 3/9
**keeping [1]** 3/20
**kids [1]** 34/11
**kind [3]** 3/19 36/8 46/24
**kinds [1]** 14/7
**Kitty [34]** 5/3 5/7 5/13 5/13 5/16 5/19 6/2 6/11 6/14 7/2 7/3 7/5 7/6 7/9 7/11 7/15 7/20 7/24 48/3 48/3 48/17 49/6 49/8 49/9 49/13 50/16 50/20 50/25 51/5 51/6 51/22 53/12 55/18 55/19
**knew [23]** 7/1 7/5 7/5 7/7 7/21 12/22 13/20 14/6 20/14 20/14 22/3 22/8 34/3 34/10 34/23 35/14 36/16 39/21 40/2 40/2 52/14 53/21 56/19
**know [41]** 3/17 6/9 6/16 6/25 7/10 7/12

1-ER-75

**K**

**know...** [35]  7/14 9/3 12/23 13/5 13/12 14/19 17/1 20/2 20/14 22/6 22/16 22/22 23/20 24/14 24/18 25/13 25/15 27/25 28/11 29/23 35/8 37/2 39/1 39/19 42/16 43/17 48/7 48/16 49/1 49/2 49/6 54/14 55/16 55/21 57/19
**knowing** [1]  14/19
**knowledge** [8]  31/7 32/20 33/13 38/20 38/24 39/2 40/14 52/9
**known** [6]  37/1 37/18 37/20 37/24 40/17 46/9
**knows** [7]  7/11 7/15 15/18 19/3 19/20 27/24 28/14

**L**

**label** [1]  50/21
**lack** [1]  21/4
**language** [7]  9/13 32/3 32/12 32/12 32/23 33/9 45/18
**last** [4]  7/7 53/8 53/19 53/19
**late** [1]  8/3
**later** [5]  7/13 7/13 7/25 22/6 45/4
**law** [11]  10/18 12/6 15/15 16/6 16/8 19/14 20/22 21/8 22/14 25/9 29/4
**lawyer** [1]  33/4
**learn** [4]  25/18 26/1 27/15 48/9
**learned** [3]  45/3 48/17 55/13
**learns** [1]  48/5
**least** [15]  8/6 18/2 22/4 23/10 25/3 25/11 25/25 26/11 26/12 27/23 28/11 30/11 30/18 39/19 46/10
**leave** [6]  14/17 14/18 28/14 29/2 38/5 41/5
**leaves** [2]  21/15 31/1
**leaving** [1]  29/6
**left** [3]  41/11 43/5 46/2
**legally** [2]  7/4 24/16
**lengthened** [1]  47/13
**less** [2]  11/16 45/9
**let** [7]  7/13 8/2 15/25 18/21 35/25 54/21
**let's** [2]  13/19 35/24
**letter** [5]  10/8 13/8 25/11 29/5 48/24
**level** [1]  11/7
**license** [4]  5/4 44/21 47/5 48/14
**light** [3]  3/23 4/1 4/5
**like** [13]  5/16 8/17 11/4 11/10 11/23 21/17 22/17 28/15 34/18 36/14 36/17 51/11 54/18
**likely** [2]  22/17 22/21
**limit** [1]  32/16
**line** [3]  32/10 32/13 54/14
**literally** [1]  54/6
**litigation** [2]  35/7 51/17
**little** [3]  4/20 28/15 34/2
**live** [2]  28/17 29/3
**long** [1]  47/9
**longer** [2]  42/10 47/13
**look** [11]  7/12 16/21 27/14 32/9 34/18 36/16 39/23 39/24 48/9 50/8 53/23
**looking** [5]  12/25 12/25 49/3 49/19 55/22
**looks** [4]  33/16 48/6 48/6 48/19
**lose** [1]  57/16
**lost** [3]  6/20 40/9 40/10

**lot** [4]  14/21 15/2 20/13 27/7
**lots** [1]  50/22

**M**

**Mabon** [1]  27/3
**made** [7]  6/23 11/20 13/5 21/7 21/22 21/24 53/17
**mail** [34]  9/17 10/8 10/9 10/15 10/17 10/19 10/21 11/2 13/4 21/18 23/19 24/2 24/17 25/6 25/9 25/11 25/24 28/12 28/24 29/5 29/16 40/3 40/3 40/5 44/10 44/11 44/13 44/15 44/20 45/24 45/25 47/13 50/4 54/25
**mailed** [3]  9/21 9/23 25/7
**mailing** [28]  9/9 10/2 18/19 21/20 23/16 23/17 23/25 25/19 25/24 26/2 26/3 27/22 27/24 27/25 28/12 45/5 45/11 45/13 46/15 47/7 47/17 48/8 48/18 48/20 49/2 54/5 55/15 56/19
**main** [2]  33/8 38/1
**majority** [1]  42/12
**make** [11]  5/19 15/12 17/17 18/10 20/25 36/4 40/19 42/17 46/4 52/12 58/2
**makes** [5]  25/9 29/5 35/10 41/2 45/13
**making** [2]  29/6 29/7
**matter** [3]  13/9 21/11 36/12
**matters** [2]  19/19 22/11
**may** [5]  11/16 17/17 17/17 55/5
**maybe** [2]  13/1 14/15
**me** [43]  5/22 6/10 6/10 7/9 7/13 7/14 8/2 9/12 11/4 12/4 13/20 14/1 14/5 14/10 14/12 15/3 15/25 17/19 18/21 25/19 26/15 26/16 28/2 28/10 28/23 35/14 35/15 35/25 36/25 38/7 39/11 41/7 42/7 43/6 43/8 43/9 48/5 48/9 53/15 54/21 55/20 56/3 56/4
**mean** [19]  10/3 12/3 20/2 22/19 22/22 25/12 29/1 29/1 37/9 38/17 40/8 41/25 42/22 42/24 49/14 50/25 56/9 56/9 57/25
**meaning** [2]  27/18 41/1
**means** [17]  9/17 17/10 24/2 28/3 33/2 38/15 39/16 42/14 42/15 45/13 46/5 49/15 51/21 57/9 57/14 57/15 58/1
**meant** [1]  32/24
**mechanically** [1]  21/15
**mechanism** [1]  6/4
**meet** [6]  9/11 10/12 18/17 19/13 27/10 57/1
**meets** [1]  19/23
**Megan** [2]  2/4 3/9
**Mennonite** [9]  9/15 22/17 23/25 24/2 32/13
**mention** [4]  20/20 20/25 21/5 53/9
**mentioned** [1]  52/22
**mere** [1]  28/3
**mess** [1]  39/18
**message** [3]  28/14 29/2 29/7
**met** [2]  16/16 18/12
**meter** [1]  51/11
**meters** [2]  51/11 51/12
**method** [43]  4/25 12/9 12/11 12/19 12/23 13/10 13/20 15/19 15/22 16/2 16/9 16/10 16/12 16/15 16/20 16/22 17/7 17/18 17/20 17/21 18/12 18/23 18/25 19/8 19/12 28/25 29/16 29/19 30/1 30/4

30/7 35/14 36/21 42/1 43/20 43/22 46/11 53/25 54/11 54/14 54/16 56/25 57/18
**methodologically** [1]  46/4
**methods** [7]  16/25 17/1 17/24 44/9 46/14 54/7 55/12
**MICHAEL** [1]  1/16
**microphone** [1]  4/20
**might** [11]  3/22 8/14 8/15 8/17 17/12 22/22 28/5 34/3 42/9 46/25 50/22
**miles** [1]  44/25
**mind** [4]  3/21 4/10 4/19 43/6
**minimum** [5]  9/18 10/20 24/3 25/10 27/21
**minute** [3]  7/13 12/15 21/24
**misrepresentation** [1]  51/3
**misrepresents** [1]  51/4
**missing** [4]  13/14 23/11 39/16 57/14
**Missions** [1]  9/16
**MO** [2]  1/4 3/5
**mobile** [1]  51/11
**moment** [2]  13/19 48/4
**money** [3]  14/21 51/10 51/13
**more** [6]  8/22 15/15 30/13 41/14 45/8 47/4
**MOSMAN** [1]  1/16
**most** [7]  3/23 4/1 4/5 14/16 32/14 42/15 44/12
**motion** [9]  3/22 4/14 30/12 30/19 31/3 38/10 38/15 52/24 52/25
**motions** [6]  3/18 3/20 4/13 4/16 40/9 40/10
**mouth** [2]  45/15 57/12
**move** [7]  4/22 8/17 41/3 41/4 41/19 42/12 47/15
**moved** [9]  37/23 41/17 41/24 42/1 42/3 42/11 42/15 42/22 42/24
**moving** [2]  4/15 31/15
**Mr.** [6]  16/18 20/20 21/22 35/5 35/7 37/12
**Mr. Grimm** [4]  16/18 35/5 35/7 37/1
**Mr. Grimm's** [2]  20/20 21/22
**Ms** [2]  2/4 2/8
**much** [7]  22/9 22/25 31/19 34/2 39/7 54/19 58/6
**Mullane** [49]  3/15 5/2 9/4 9/9 10/13 11/2 11/7 11/25 12/2 12/5 15/14 16/1 16/5 16/6 16/21 16/22 17/7 17/9 17/11 18/12 18/16 19/13 21/2 21/4 21/10 23/8 23/15 24/9 26/5 26/9 26/17 27/5 27/10 27/18 28/1 28/1 31/25 32/9 32/10 32/12 32/13 32/15 33/13 34/8 35/3 45/10 45/14 45/18
**Mullane/Jones** [22]  3/15 5/2 9/4 9/9 10/13 11/2 11/25 16/1 16/5 16/21 18/12 18/16 19/13 21/4 21/10 23/8 23/15 24/9 26/5 27/10 32/13 45/18
**multiple** [1]  50/22
**municipalities** [1]  10/19
**must** [7]  17/11 20/25 28/4 30/25 42/11 42/22 48/7
**mutually** [1]  57/19
**my** [12]  6/20 10/8 22/11 27/21 28/15 28/21 31/23 33/22 38/22 40/16 43/6 49/19
**myself** [1]  57/11

**N**

**name** [3] 3/7 9/18 24/7
**Naomi** [2] 2/8 3/10
**Nebraska** [1] 44/22
**necessarily** [5] 4/8 20/1 25/9 35/19 57/19
**need** [5] 17/17 26/21 43/3 43/15 52/11
**needs** [1] 15/15
**neither** [1] 56/19
**never** [19] 13/15 13/15 14/1 28/16 30/15 30/16 36/18 37/23 40/6 41/17 42/5 44/13 44/17 46/14 47/17 49/18 57/9 57/14 57/15
**next** [3] 44/1 47/20 47/21
**Ninth** [13] 3/13 3/14 8/10 11/19 12/4 15/9 20/18 21/5 21/7 21/22 27/2 32/14 36/8
**no** [42] 1/4 3/5 4/13 16/15 17/5 18/15 19/13 19/21 20/6 20/22 21/5 21/21 22/12 23/14 24/25 32/8 34/7 34/12 35/8 35/18 37/13 38/5 38/6 40/4 40/4 41/25 42/23 42/25 43/11 44/7 47/23 48/10 49/4 49/16 49/23 50/1 54/11 54/15 54/19 55/14 56/3 56/23
**No.** [2] 23/1 23/4
**No. 1** [1] 23/1
**No. 2** [1] 23/4
**nobody** [1] 31/1
**nonclass** [1] 27/15
**none** [2] 54/3 54/12
**nonmoving** [7] 4/1 4/6 4/9 31/14 41/19 43/4 43/25
**normal** [1] 45/23
**normally** [5] 45/20 45/21 46/1 46/5 46/6
**not** [121]
**note** [5] 7/1 21/19 50/3 54/24 55/3
**nothing** [9] 6/17 6/23 10/7 14/9 26/11 26/13 36/15 51/20 52/25
**notice** [147]
**notices** [1] 43/25
**notification** [3] 7/25 32/20 53/15
**notifications** [2] 53/10 53/11
**notifying** [1] 8/1
**now** [7] 14/10 20/17 38/4 42/14 46/6 46/13 57/8
**number** [15] 5/4 10/23 10/24 12/7 12/18 25/13 25/20 26/2 26/3 27/22 27/25 28/6 28/13 41/10 46/25

**O**

**o0o** [1] 59/2
**objections** [1] 11/14
**obligated** [2] 32/6 46/10
**obligation** [6] 16/12 16/16 17/6 18/17 22/23 57/1
**obligations** [2] 27/9 27/9
**obtained** [2] 21/23 49/18
**obtains** [2] 6/2 51/10
**Obviously** [1] 48/6
**occur** [2] 16/14 41/10
**off** [3] 7/12 34/11 43/5
**offending** [1] 55/6
**Office** [1] 2/8
**officer** [3] 7/5 48/1 53/15
**officers** [1] 7/1

**official** [2] 48/6 59/11
**often** [1] 13/22
**okay** [5] 18/3 19/4 26/2 39/6 42/14
**once** [4] 52/13 52/13 52/14 55/13
**one** [43] 3/19 6/25 8/24 10/10 12/17 12/18 15/10 17/2 17/7 17/11 19/19 22/21 26/16 27/2 28/4 28/13 30/13 30/14 30/24 32/19 32/21 35/10 35/13 35/15 35/16 39/19 43/8 43/8 43/11 44/6 46/14 47/3 47/20 47/21 48/5 48/5 48/24 50/6 53/1 53/8 53/24 55/12 57/7
**ones** [1] 54/11
**only** [12] 9/8 13/17 13/23 24/17 31/7 32/10 40/6 40/18 42/1 42/4 43/14 56/24
**opinion** [2] 19/25 58/7
**opponent** [8] 32/3 35/15 35/25 50/24 54/2 56/2 56/5 57/16
**opponent's** [4] 35/24 36/14 36/17 38/23
**opportunity** [1] 11/13
**opposed** [1] 17/21
**option** [2] 18/3 44/15
**oral** [3] 1/14 3/5 4/15
**ord.uscourts.gov** [1] 2/15
**order** [1] 45/1
**ordered** [1] 35/9
**ordinary** [1] 45/20
**OREGON** [4] 1/2 1/7 47/7 47/15
**original** [1] 59/6
**other** [27] 3/25 6/5 9/17 10/25 13/23 13/24 14/6 15/22 18/24 22/16 24/2 24/11 30/13 31/4 34/3 40/23 44/2 46/14 46/15 46/24 49/5 50/4 54/11 54/15 55/23 55/24 56/23
**others** [1] 43/10
**otherwise** [3] 18/24 28/18 33/12
**our** [6] 5/20 23/14 29/25 30/5 30/9 56/11
**out** [19] 5/19 9/12 10/2 10/12 20/23 43/9 43/15 44/21 44/24 45/10 45/18 47/5 47/14 50/5 52/2 52/17 53/15 54/11 57/12
**over** [2] 24/16 24/21
**over-parked** [2] 24/16 24/21
**overdue** [1] 17/3
**own** [3] 4/14 51/2 51/6
**owned** [2] 5/20 53/13
**owner** [24] 24/18 30/15 36/18 36/23 38/4 38/4 38/5 39/15 39/16 41/18 41/20 42/4 42/15 42/22 44/14 47/1 47/4 48/13 48/25 50/25 57/9 57/14 57/15
**owner's** [3] 45/5 48/18 48/20
**owners** [2] 44/18 44/22
**owns** [3] 48/3 49/9 51/5

**P**

**p.m** [2] 3/2 58/10
**P.O** [1] 2/5
**page** [3] 9/16 17/11 27/3
**paid** [3] 7/3 46/1 48/14
**pans** [1] 43/9
**paper** [1] 16/17
**paragraph** [2] 5/21 56/6
**parked** [8] 7/4 7/23 11/16 11/17 14/5 24/16 24/21 46/18
**parker** [1] 14/4 36/22
**parking** [52] 5/3 5/3 5/7 5/13 5/15 5/19

5/20 6/2 6/11 6/14 7/1 7/2 7/3 7/5 7/6 7/9 7/11 7/15 7/20 7/24 7/24 8/1 10/2 14/17 20/20 22/5 30/24 31/2 45/23 46/1 47/25 48/3 48/3 48/12 48/17 49/6 49/8 49/9 49/13 50/15 50/20 50/25 51/5 51/6 51/11 51/11 51/12 51/22 53/12 53/14 55/18 55/19
**part** [5] 16/1 16/13 22/10 30/3 35/1
**particular** [8] 4/14 12/17 18/23 34/15 34/16 34/23 46/9 46/23
**particularly** [2] 39/25 44/19
**parties** [6] 3/15 4/2 4/6 11/12 26/6 50/22
**parting** [1] 17/16
**partly** [1] 37/25
**parts** [1] 44/11
**party** [14] 4/1 4/6 4/9 4/13 4/15 31/14 31/15 43/4 43/4 43/25 50/11 51/17 53/17 54/1
**Passport** [6] 5/22 48/2 49/8 50/15 50/20 56/7
**path** [2] 19/16 46/4
**pattern** [3] 14/7 15/18 15/20
**pause** [1] 48/4
**pay** [5] 7/24 14/21 22/5 22/16 22/20
**payment** [2] 53/13 53/14
**pays** [1] 45/22
**PBOT** [2] 48/11 48/11
**pendency** [1] 11/13
**people** [12] 13/6 13/21 14/16 15/1 41/5 41/16 41/18 45/12 45/20 45/21 45/25 46/5
**percent** [5] 18/25 20/2 20/4 20/5 41/18
**Perfect** [1] 4/24
**perhaps** [1] 21/16
**person** [12] 12/18 13/12 14/1 14/5 17/3 21/16 28/17 41/2 41/23 47/1 47/4 48/3
**person's** [1] 28/2
**petitioner** [1] 43/18
**phone** [29] 5/4 7/8 25/13 25/20 26/2 26/3 27/22 27/25 28/13 28/18 28/25 29/1 29/6 29/7 29/17 47/22 47/24 49/7 49/9 49/22 50/9 51/24 52/3 52/11 52/15 52/17 54/7 56/3 56/20
**phones** [2] 28/16 55/18
**phrase** [1] 45/12
**physical** [1] 38/2
**pick** [1] 40/10
**picked** [1] 37/12
**pile** [5] 37/15 37/19 57/20 57/24 57/25
**piled** [9] 14/25 15/14 21/15 30/14 36/1 36/20 36/24 37/17 39/22
**piled-up** [1] 21/15
**piling** [3] 30/6 39/15 43/13
**placard** [14] 8/24 8/24 10/6 13/14 16/17 23/6 23/21 23/21 23/24 32/1 36/12 37/7 37/13 37/19
**place** [1] 9/7
**placed** [4] 10/6 20/19 23/6 37/11
**plaintiff** [32] 1/4 2/4 3/8 3/9 3/22 4/17 5/2 5/3 5/7 7/2 7/22 7/23 7/24 13/15 27/2 32/11 32/25 34/2 36/4 36/25 38/9 40/20 41/4 41/15 43/7 43/18 43/18 44/10 44/14 44/14 44/17 44/21 44/25
**plaintiff's** [13] 18/14 23/6 23/17 25/5

1-ER-77

**P**

plaintiff's... [9]  26/7 37/17 37/22 42/21 47/24 48/1 49/25 50/8 52/23
plaintiffs [2]  37/8 55/1
plate [2]  5/4 48/14
plates [2]  44/21 47/5
plausible [1]  6/7
please [1]  3/7
point [17]  6/10 6/20 6/21 6/22 14/14 19/24 23/11 30/25 31/5 33/8 34/9 43/3 44/12 45/18 50/5 53/19 55/12
points [3]  32/11 43/2 55/12
Police [2]  48/20 48/23
policy [1]  50/12
Port [1]  21/1
PORTLAND [16]  1/6 1/7 2/5 2/8 2/9 2/14 3/6 3/11 7/23 11/20 13/12 17/20 48/11 48/17 48/20 48/23
poses [1]  23/25
posited [1]  20/19
positing [1]  19/22
position [20]  5/8 5/12 5/15 5/20 18/14 20/10 23/14 25/5 26/7 29/25 30/5 35/5 37/17 37/22 37/23 49/11 49/22 51/16 52/3 52/25
possibilities [1]  12/16
possibility [1]  3/21
possible [2]  39/20 58/7
possibly [1]  45/14
posted [2]  12/22 50/5
posting [27]  9/9 9/10 9/22 10/11 13/9 13/10 13/17 18/15 18/18 21/18 21/19 24/1 25/10 28/15 30/8 34/6 42/1 42/4 43/23 43/25 46/6 46/9 53/21 56/18 56/24 57/7 57/18
postings [6]  5/1 13/16 20/4 21/15 23/15 30/8
PPB [1]  48/19
practicable [11]  15/22 32/23 33/2 34/24 44/2 44/3 44/20 44/24 45/2 49/20 53/24
practical [9]  16/3 19/5 26/8 26/12 26/19 26/21 27/4 27/7 32/6
practicalities [5]  11/15 11/18 45/12 45/17 46/18
practically [1]  51/25
practice [1]  14/8
pre [12]  9/8 9/9 11/21 18/15 18/15 19/25 20/24 21/8 22/20 22/23 24/12 55/4
pre-property [2]  22/20 22/23
pre-tow [9]  9/8 9/9 18/15 18/15 19/25 20/24 21/8 24/12 55/4
pre-towing [1]  11/21
precondition [2]  9/18 24/3
present [3]  11/14 22/1 40/23
presented [1]  54/13
presents [2]  54/12 54/13
presume [2]  29/6 29/12
presume from [1]  29/6
presumption [1]  11/22
presumptively [1]  11/21
pretty [2]  39/7 41/13
previously [2]  30/6 56/8
primary [1]  43/1
principally [2]  46/20 46/22
principle [2]  16/8 24/12

principles [1]  18/11
prior [3]  33/19 34/17 45/11
prism [1]  3/19
privacy [1]  50/12
private [1]  17/2
probably [6]  6/8 22/3 30/13 44/12 47/6 52/11
problem [7]  10/1 20/6 23/12 23/20 23/25 34/12 45/25
problems [1]  47/18
procedural [1]  38/13
procedure [1]  32/21
proceedings [3]  1/15 58/10 59/5
process [14]  10/14 11/11 12/6 12/7 13/4 27/15 28/2 28/3 28/20 32/5 32/6 45/10 49/16 55/7
Propert [3]  11/4 54/24 55/1
property [12]  12/22 13/7 20/25 21/9 22/15 22/17 22/18 22/20 22/23 23/18 45/22 50/5
proposition [4]  17/16 27/2 39/1 56/18
prove [1]  14/23
provide [9]  5/23 16/14 20/9 22/19 22/23 32/6 50/11 54/1 54/3
provided [5]  5/3 7/20 9/8 36/3 36/12
provides [1]  48/22
providing [8]  5/9 5/12 5/15 5/16 33/23 45/4 54/4 54/7
public [2]  13/11 57/21
pulled [1]  34/7
pulling [1]  4/19
purposes [2]  30/9 30/16
pursuant [1]  55/6
push [1]  53/11
put [7]  10/8 10/12 11/5 16/17 44/11 45/15 47/22
puts [1]  32/4
putting [1]  53/24
puzzled [1]  16/7

**Q**

question [26]  5/10 9/20 12/13 12/14 16/10 18/11 20/18 21/14 23/1 23/5 23/9 27/21 28/21 33/22 33/25 36/1 36/2 36/3 36/8 38/13 40/4 40/16 43/14 49/19 55/25
questions [3]  3/16 15/10 20/17
quite [3]  19/8 25/4 38/22
quotes [1]  11/4
Quoting [1]  24/1

**R**

rack [1]  14/17
raised [2]  5/14 31/23
rare [4]  41/13 41/14 41/16 42/11
rather [1]  31/23
rational [3]  30/10 56/20 58/2
rationally [1]  57/23
reach [2]  28/17 52/17
reached [1]  44/13
read [2]  6/2 26/13
readily [3]  52/10 55/20 56/15
reading [2]  6/6 24/5
reality [2]  41/5 41/7
realizing [1]  13/1

really [5]  12/6 15/16 17/17 22/10 41/1
reason [20]  12/10 12/17 12/19 12/23 14/25 16/7 19/10 19/13 21/14 21/16 30/3 30/4 30/7 31/6 31/9 31/11 31/12 35/8 35/21 57/22
reasonable [35]  4/4 15/3 30/17 30/23 31/2 36/21 36/23 37/1 37/4 38/1 38/3 38/8 38/14 38/23 39/1 39/8 39/19 39/20 40/1 40/17 40/19 40/24 41/15 41/17 42/3 42/10 42/13 43/3 43/17 43/24 53/1 53/4 56/12 56/14 57/6
reasonably [32]  9/19 11/11 12/9 13/6 15/22 16/23 16/25 17/7 17/10 17/12 19/5 19/9 24/7 26/4 26/5 26/18 28/5 32/2 32/8 32/24 33/3 33/16 34/4 34/24 44/2 44/3 44/20 44/24 53/23 53/25 54/3 56/20
reasons [3]  12/16 23/22 30/1
recall [1]  33/22
receipt [2]  7/25 29/18
receive [1]  48/2
received [4]  7/24 7/25 15/5 20/7
recent [1]  32/14
recess [2]  58/8 58/9
record [32]  3/7 6/10 6/15 6/17 6/23 10/7 10/9 11/5 14/9 17/4 21/25 25/14 25/15 36/15 41/8 42/17 42/19 43/1 43/9 47/23 47/25 48/5 48/8 48/10 48/16 49/12 50/1 50/18 50/19 53/5 55/20 59/5
records [1]  50/9
red [1]  39/16
reference [1]  21/24
referenced [1]  12/4
reflect [1]  6/17
regard [3]  11/14 45/12 46/17
regarding [1]  48/13
Regardless [1]  16/14
registered [15]  5/2 10/15 21/23 22/4 24/18 44/14 44/18 44/22 45/2 45/5 47/1 47/3 48/13 48/17 48/20 48/25
registration [6]  9/24 21/21 48/6 48/8 48/9 49/3
regular [2]  5/25 10/21
regularly [12]  5/23 6/8 12/22 33/24 48/2 49/12 49/13 51/19 56/7 56/8 56/10 56/14
reiterate [1]  18/10
reiterating [1]  31/23
relate [1]  46/24
relationship [2]  50/14 50/15
relevant [2]  6/12 36/7
reliance [5]  5/1 9/10 10/10 18/15 24/1
relied [2]  18/18 20/7
rely [2]  21/18 25/10
relying [4]  9/13 9/22 10/1 30/8
remain [1]  37/7
remained [1]  37/6
remand [1]  3/13
remembering [2]  3/17 4/3
remit [1]  51/13
rent [1]  22/21
repetitive [1]  29/8
REPORTER [2]  2/13 59/11
require [4]  18/25 25/8 40/13 45/11
required [16]  11/3 11/21 21/4 21/6 21/8 27/5 28/19 29/18 43/19 43/19 43/21 43/22 45/14 47/17 52/5 57/4

1-ER-78

# R

**requirement [6]** 20/23 24/15 24/20 27/15 33/2 38/18
**requirements [1]** 11/11
**requires [7]** 10/14 17/19 25/7 26/5 26/18 26/20 29/15
**resolve [2]** 24/10 24/14
**response [2]** 55/17 57/13
**result [2]** 22/9 44/1
**return [2]** 45/23 46/1
**returned [2]** 13/8 40/3
**right [64]**
**rise [1]** 58/9
**RMR [2]** 2/13 59/10
**road [1]** 57/6
**rolling [1]** 15/15
**Room [2]** 2/9 2/14
**roommates [1]** 34/6
**rounding [1]** 52/2
**rule [17]** 27/6 27/8 27/11 27/14 27/17 29/19 32/4 32/5 32/11 32/12 32/17 32/18 32/23 33/2 33/10 41/22 41/23
**ruling [3]** 28/10 29/14 29/15
**run [1]** 4/9

# S

**S.W [2]** 2/9 2/14
**said [11]** 5/13 7/19 9/16 11/1 22/9 25/15 27/17 33/1 37/8 54/3 57/13
**sake [2]** 18/1 52/2
**same [7]** 10/8 12/14 22/20 24/11 29/9 47/22 53/11
**satisfies [3]** 17/21 18/3 19/17
**satisfy [4]** 5/2 16/10 17/25 18/16
**saw [2]** 13/15 30/6
**say [28]** 6/12 11/6 25/6 25/19 26/20 27/22 29/15 30/23 32/19 32/21 34/1 35/3 35/18 36/15 38/3 39/19 39/21 42/10 42/14 44/1 47/10 47/12 48/12 49/17 49/24 50/6 55/5 55/13
**saying [13]** 7/18 11/2 13/25 14/5 21/6 25/23 27/14 29/1 53/16 57/10 57/11 57/16 58/1
**says [18]** 6/23 8/14 8/18 11/10 15/17 16/9 26/12 26/14 26/15 26/22 27/4 28/2 33/17 35/1 36/16 54/17 55/18 56/7
**scope [1]** 28/9
**second [10]** 6/20 6/20 12/21 21/2 23/5 26/16 32/22 33/7 35/1 36/10
**see [10]** 4/10 7/3 8/2 10/1 12/17 17/18 19/11 22/15 29/19 31/10
**seeing [1]** 29/4
**seek [1]** 30/11
**seems [2]** 10/17 41/4
**seen [2]** 30/16 31/1
**sees [3]** 14/24 24/16 55/5
**sell [1]** 50/22
**sells [1]** 51/7
**send [3]** 25/11 44/24 53/15
**sending [3]** 13/4 29/5 29/9
**sends [1]** 48/24
**SENIOR [1]** 1/17
**sense [2]** 20/2 20/23 23/13 41/2
**sent [4]** 40/2 40/5 44/17 44/18
**sentence [1]** 34/21

**separate [1]** 22/7
**series [3]** 8/3 9/4 53/20
**set [3]** 16/21 45/10 52/21
**setting [2]** 21/11 47/17
**settings [1]** 28/11
**seven [1]** 13/11
**several [2]** 14/17 17/1
**shape [1]** 8/15
**share [1]** 56/7
**shared [2]** 56/14 56/15
**Sheffield [2]** 2/8 3/10
**shorthand [1]** 38/4
**should [13]** 4/7 6/1 18/16 19/12 20/6 30/20 33/9 37/18 37/20 37/24 43/17 44/4 55/13
**show [6]** 13/16 21/16 22/5 52/23 56/3 56/11
**shows [3]** 5/13 51/21 53/21
**shumway [4]** 2/13 2/15 59/9 59/10
**sides [1]** 57/12
**signature [2]** 59/7 59/7
**significantly [1]** 49/21
**signing [1]** 59/4
**Silber [1]** 27/3
**simple [3]** 13/23 31/15 51/21
**simply [6]** 11/10 41/24 42/2 42/9 44/16 53/18
**since [4]** 4/15 27/5 57/10 57/11
**since you've [1]** 57/10
**single [4]** 13/1 13/1 34/15 34/16
**sits [1]** 13/11
**sitting [1]** 57/20
**situation [4]** 10/2 24/22 33/18 50/10
**situations [3]** 10/23 10/24 12/7
**six [3]** 8/23 14/17 20/20
**skip [2]** 13/19 28/12
**slightly [1]** 37/3
**slip [2]** 36/20 39/16
**slow [2]** 24/4 28/12
**smarter [1]** 33/4
**so [128]**
**So the [1]** 27/10
**sole [5]** 5/1 9/10 10/10 18/15 24/1
**solely [5]** 9/22 18/18 21/18 25/10 30/8
**some [26]** 5/16 10/15 10/18 14/7 14/25 15/18 15/21 19/10 20/1 20/25 22/2 25/12 26/11 30/25 31/22 34/3 40/8 40/9 41/2 41/2 41/4 44/2 45/3 46/25 52/23 55/12
**somebody [5]** 45/22 47/14
**somehow [1]** 48/16
**someone [1]** 47/6
**something [17]** 7/9 7/14 8/16 11/10 12/12 14/15 16/19 19/14 21/17 21/19 21/25 30/2 35/17 45/14 55/2 57/24
**sometimes [1]** 13/22
**somewhat [2]** 3/24 4/3
**somewhere [1]** 11/17 26/22
**soon [1]** 58/7
**sorry [4]** 5/10 14/3 18/7 43/18
**sort [11]** 8/5 10/15 12/5 12/6 15/15 15/18 25/19 35/10 49/21 57/12 57/16
**sounds [1]** 28/15
**speak [1]** 17/4
**speaking [4]** 12/20 12/24 13/22 14/11
**specific [7]** 3/16 6/16 13/7 14/15 21/9

27/11 41/9
**specifically [2]** 5/1 12/4
**split [1]** 24/22
**stack [1]** 43/6
**stacking [1]** 57/14
**standard [29]** 3/15 3/19 9/3 9/5 10/12 10/21 10/23 11/7 15/23 16/1 16/21 17/22 18/9 18/16 19/23 23/8 25/20 25/23 26/17 26/18 26/20 27/5 27/10 27/11 31/24 33/12 33/14 33/15 45/13
**standards [1]** 45/10
**start [7]** 4/15 4/16 24/25 29/16 31/25 38/14 44/10
**state [9]** 3/7 6/13 44/21 44/24 47/5 47/14 50/8 57/24 58/1
**stated [2]** 11/7 56/8
**statement [3]** 12/5 46/5 56/13
**states [5]** 1/1 1/17 2/13 5/22 5/22
**status [1]** 8/1
**statutory [1]** 27/12
**step [1]** 44/1
**sticker [2]** 55/4 55/6
**sticking [1]** 34/10
**still [4]** 4/5 4/8 18/3 19/7 20/7 33/16 39/19
**stipulated [14]** 3/24 3/25 5/18 5/21 7/10 7/14 37/12 47/25 49/17 50/12 51/6 51/14 51/15 56/7
**street [2]** 13/11 57/21
**strength [1]** 40/11
**strong [2]** 14/15 40/9
**strongest [1]** 56/11
**structure [1]** 20/2
**stuff [3]** 36/24 38/5 57/8
**subject [2]** 50/12 50/13
**submitted [1]** 4/11
**subsequently [1]** 35/6
**successful [1]** 19/1
**such [4]** 6/8 17/11 26/24 28/4
**sufficient [10]** 9/11 10/17 21/20 23/7 29/5 29/8 29/10 30/8 36/2 56/25
**suggested [4]** 32/23 43/8 45/11 54/2
**suggesting [1]** 16/11
**suggests [2]** 41/1 50/1
**summarize [1]** 53/19
**summarizing [1]** 8/14
**summary [13]** 3/18 3/20 3/22 30/12 30/16 30/19 31/16 38/18 38/25 39/3 40/8 40/9 40/11
**support [3]** 42/23 42/25 43/2
**supposed [1]** 22/19
**sure [4]** 15/12 18/10 24/14 46/4
**susceptible [1]** 24/16
**suspect [16]** 12/10 12/16 12/17 12/19 15/1 19/10 21/14 21/16 30/1 30/3 30/5 30/7 31/6 31/9 31/11 31/12
**switches [1]** 42/13
**system [8]** 14/12 19/17 19/19 19/22 33/23 34/4 56/22 56/23
**systemically [1]** 45/8

# T

**tackle [1]** 35/24
**tails [1]** 57/16
**take [5]** 6/1 10/10 22/18 46/17 57/21

1-ER-79

**T**

**taken [2]** 43/3 54/2
**takes [2]** 32/3 47/13
**taking [2]** 33/19 34/11
**talk [4]** 16/6 24/13 45/19 54/25
**talked [4]** 31/24 50/24 55/15 57/11
**talks [1]** 50/3
**tax [1]** 50/9
**taxes [1]** 22/17
**tell [9]** 8/10 13/20 14/10 28/10 39/15 48/5 48/9 55/20 56/4
**telling [4]** 13/21 15/3 42/7 44/19
**tells [6]** 6/10 7/9 7/14 14/12 17/19 35/14
**ten [2]** 22/6 31/1
**terms [2]** 27/5 50/13
**test [4]** 9/11 24/10 28/1 44/11
**tethered [1]** 14/15
**text [5]** 29/12 33/9 47/22 54/8 56/20
**than [8]** 11/17 17/1 17/5 27/24 27/25 30/13 31/23 33/5
**thank [16]** 3/12 4/18 4/23 7/17 15/7 20/16 22/25 27/20 31/18 31/18 31/21 54/19 55/9 55/10 58/5 58/6
**that [510]**
**that's [65]**
**their [28]** 4/14 11/14 12/10 12/11 13/6 13/6 14/19 16/16 18/12 18/15 18/15 18/17 19/12 20/2 28/16 30/3 30/7 30/12 31/1 41/3 41/6 41/16 41/19 42/12 50/12 50/13 52/24 57/1
**them [20]** 4/2 6/3 10/4 11/13 15/1 16/25 17/3 17/4 17/25 18/1 25/6 28/17 30/15 30/16 34/7 34/11 34/25 34/25 54/3 54/6
**themselves [1]** 45/20
**then [59]** 6/20 7/21 7/22 8/3 8/5 8/18 8/25 14/18 16/20 18/1 19/4 19/4 19/13 20/5 20/7 24/25 25/10 27/22 28/7 28/13 29/9 30/2 30/5 30/21 31/2 31/3 31/10 33/17 34/4 34/15 34/24 35/3 35/23 37/23 38/9 38/14 40/16 41/14 41/16 41/19 42/9 42/9 42/13 42/14 42/15 43/16 43/19 44/1 46/2 47/14 47/14 52/10 52/15 53/22 53/23 55/6 55/7 56/25 57/5
**there [48]** 4/13 4/23 6/17 7/9 9/20 11/20 11/22 12/16 13/23 16/8 17/5 17/23 19/10 19/11 19/16 20/12 20/8 21/6 25/15 27/1 29/23 30/5 30/7 31/8 34/24 35/20 37/13 38/6 40/2 40/23 41/1 42/18 43/10 44/2 44/6 46/23 47/13 47/23 48/4 49/16 52/20 53/9 53/23 53/25 54/11 54/21 55/14 55/16
**there's [38]** 6/23 7/14 8/21 8/23 9/20 10/7 14/9 14/21 14/25 16/15 19/7 19/13 19/16 20/6 20/23 21/5 21/21 26/11 31/13 31/9 34/7 34/12 36/15 36/20 40/4 40/4 41/9 44/12 49/4 49/23 49/25 51/3 51/20 52/20 52/25 53/20 54/10 54/12
**therefore [9]** 12/23 21/9 30/15 37/18 38/6 42/20 42/22 51/24 56/22
**these [7]** 6/17 13/15 14/19 30/17 43/24 51/20 58/3
**they [78]**
**They actually [1]** 48/23
**they're [3]** 14/24 25/10 27/18
**they've [4]** 4/7 16/16 19/4 41/13

**thing [5]** 5/25 6/25 24/18 39/10 39/18
**things [6]** 4/3 11/23 25/15 34/3 34/11 37/21
**think [77]**
**thinking [1]** 45/8
**third [5]** 2/14 19/16 50/11 51/17 53/17
**third-party [1]** 53/17
**this [89]**
**this: [1]** 36/17
**this: You [1]** 36/17
**those [19]** 3/25 4/5 4/8 4/8 8/21 11/5 11/24 27/9 32/15 36/11 36/20 37/21 39/24 42/16 43/2 45/3 52/16 55/8 57/19
**though [4]** 6/22 16/24 46/4 53/12
**thought [3]** 21/25 26/10 34/18
**thousands [1]** 44/25
**three [9]** 3/16 10/10 15/10 20/17 22/5 29/21 30/24 31/2 45/23
**three-hour [1]** 31/2 45/23
**threw [1]** 16/17
**through [8]** 7/6 7/18 31/22 42/4 44/9 44/10 46/3 53/16
**throughout [1]** 6/12
**ticket [1]** 16/16
**tickets [17]** 8/3 8/22 8/23 14/17 14/19 14/25 15/4 20/19 21/3 21/9 30/6 30/14 31/10 36/17 38/2 39/14 57/20
**time [6]** 6/12 7/12 20/3 20/4 20/5 35/8 37/12 42/24 46/2 54/5
**times [1]** 33/1
**timing [5]** 23/9 23/16 23/20 23/20 45/2
**today [2]** 3/12 8/16
**told [3]** 28/23 28/24 39/11
**too [3]** 7/1 14/1 47/9
**took [2]** 9/7 16/16
**torn [1]** 14/22
**total [1]** 8/23
**tour [1]** 31/2
**tow [36]** 8/18 8/19 8/24 9/8 9/9 9/22 9/23 10/2 10/4 10/15 13/21 14/21 15/2 18/15 18/15 19/25 20/21 20/21 20/24 21/5 21/8 23/6 23/7 23/21 23/21 23/24 24/12 24/17 24/21 25/3 32/1 35/8 36/20 45/1 55/4 55/5
**towed [23]** 8/7 8/15 8/16 8/17 9/1 10/4 10/6 14/20 20/12 22/3 22/6 22/9 23/12 23/19 24/17 36/13 41/3 41/12 42/9 42/12 42/13 42/20 53/16
**towing [14]** 10/2 10/23 11/2 11/21 11/24 14/25 41/23 41/25 42/3 42/4 45/2 45/11 45/17 46/18
**tows [4]** 11/25 15/2 41/10 41/19
**traffic [1]** 11/24
**transcript [3]** 1/15 59/5 59/6
**transferred [2]** 6/5 49/17
**Transportation [1]** 48/11
**tricky [1]** 3/19
**tried [2]** 15/22 52/17
**true [9]** 22/3 30/22 33/1 37/21 42/16 45/16 46/25 55/21 58/1
**try [8]** 6/17 12/11 19/5 21/17 30/2 31/21 34/25 44/4
**trying [2]** 25/25 43/5
**turn [2]** 33/5 55/11
**turns [2]** 20/23 35/10

**Twenty [1]** 5/22
**two [21]** 8/21 10/6 10/11 12/16 12/18 23/22 24/23 25/3 27/1 29/21 32/1 36/19 40/20 44/11 44/18 47/9 47/10 52/12 52/16 54/25 55/11
**types [1]** 11/24
**typically [2]** 4/14 16/7

**U**

**U.S [1]** 9/16
**unclaimed [1]** 13/8
**unconstitutional [1]** 19/18
**undelivered [1]** 40/4
**under [15]** 9/4 9/9 11/12 21/4 21/10 23/7 23/15 26/17 27/4 28/16 32/6 33/9 34/5 34/8 35/19
**undercut [1]** 49/21
**underlying [1]** 49/25
**understand [7]** 6/22 15/12 19/15 20/10 35/2 38/7 39/10
**understanding [2]** 10/9 22/1
**understands [1]** 22/5
**understood [1]** 20/12
**undisputed [1]** 13/13
**UNITED [3]** 1/1 1/17 2/13
**unknown [1]** 46/25
**unless [1]** 28/24
**unreasonable [2]** 43/7 50/7
**unrelated [1]** 51/17
**unreliability [1]** 57/18
**unreliable [2]** 13/10 13/17
**until [1]** 29/3
**up [35]** 8/15 14/17 14/19 14/25 15/4 18/21 20/22 21/11 21/15 22/6 26/21 30/7 30/14 36/18 36/20 36/24 37/12 37/15 37/17 37/19 39/15 39/22 41/17 41/20 43/6 43/13 48/6 48/6 48/9 48/19 49/3 57/14 57/20 57/25 57/25
**upon [1]** 40/18
**us [3]** 15/16 34/12 35/7
**use [19]** 10/19 16/9 16/10 16/12 17/6 17/20 18/2 18/23 25/17 25/21 26/2 27/23 28/13 29/17 29/19 34/25 36/4 50/13 51/9
**used [8]** 7/20 7/24 17/2 23/18 23/18 23/19 39/20 50/6
**user [2]** 7/2 7/5
**uses [3]** 20/4 51/8 51/10
**using [1]** 48/17
**usually [1]** 20/2
**utilized [1]** 56/4

**V**

**Valdez [2]** 11/3 54/24
**vast [1]** 42/12
**vehicle [12]** 32/1 36/13 37/12 44/1 44/15 44/18 44/21 45/24 46/1 47/15 55/5 55/7
**vehicles [2]** 45/2 54/25
**versa [1]** 3/23
**very [10]** 6/7 17/6 21/7 22/25 31/18 41/15 42/8 42/11 54/19 58/6
**via [2]** 7/3 55/4
**vice [1]** 3/23
**view [2]** 20/13 30/17
**viewed [1]** 4/5

1-ER-80

## V

**viewing [2]** 3/25 4/2
**Village [1]** 21/1
**violated [1]** 56/22
**virtue [1]** 51/17

## W

**waiting [1]** 26/15
**walk [4]** 30/23 38/6 46/3 57/21
**walks [1]** 13/13
**want [7]** 4/22 15/12 19/24 21/19 24/14 24/25 25/6 28/10 29/14 29/14 32/21 35/15 45/14 46/5 54/23 54/23 55/8
**wants [1]** 36/25
**warned [1]** 41/19
**warning [17]** 8/6 8/6 8/9 8/13 8/15 8/24 10/6 10/11 13/14 16/17 24/17 32/1 36/12 36/19 37/7 37/13 37/19
**warnings [3]** 36/19 36/19 42/4
**was [77]**
**wasn't [8]** 12/20 14/13 30/4 31/13 38/20 39/25 40/1 40/1
**watching [1]** 34/11
**way [13]** 5/17 6/1 6/19 10/20 24/10 24/13 30/11 31/9 37/15 41/22 52/23 53/24 54/13
**ways [2]** 25/12 41/2
**we [42]** 3/4 6/16 14/2 14/4 14/6 14/7 14/10 14/11 15/14 18/8 23/20 24/18 26/6 26/10 26/11 30/6 34/3 34/3 34/10 34/16 34/22 34/23 34/24 34/25 35/6 35/7 43/5 43/22 49/1 49/2 49/6 51/11 51/12 52/8 52/9 52/11 53/17 55/18 55/19 56/10 57/5 57/8
**we'd [1]** 30/25
**we'll [4]** 24/22 36/10 38/3 58/8
**we're [7]** 3/13 3/18 8/18 13/21 18/6 18/8 43/21
**We've [1]** 55/15
**weak [1]** 40/10
**weakness [1]** 40/11
**weather [1]** 13/13
**website [2]** 51/3 51/5
**weight [1]** 20/13
**well [34]** 6/3 9/23 10/5 10/24 11/1 11/6 13/19 14/14 14/24 16/13 19/24 24/17 24/24 27/17 29/4 30/23 31/5 31/11 32/3 33/6 35/24 35/25 38/7 40/13 40/16 40/25 42/10 43/5 44/2 46/3 47/3 47/10 55/22 57/17
**went [1]** 13/15
**were [10]** 7/18 7/18 17/23 19/10 26/6 27/9 33/18 34/10 34/24 44/25
**weren't [4]** 22/19 51/25 54/6 55/14
**what [73]**
**What did [1]** 13/22
**what's [5]** 43/19 49/20 50/20 55/17 57/13
**when [21]** 11/25 13/8 15/1 19/8 20/4 23/18 24/4 24/13 24/16 26/20 28/2 31/14 31/15 31/23 35/12 41/10 42/1 45/22 48/5 48/6 48/9
**where [21]** 9/9 9/12 9/18 10/11 16/4 17/14 17/16 18/8 18/20 23/15 23/25 25/18 26/1 26/7 33/18 38/8 41/23 43/5

**whether [18]** 5/1 7/3 7/4 9/20 16/22 18/11 20/19 21/14 23/6 33/16 35/14 36/3 36/7 48/14 49/2 53/23 53/24 57/7
**whether or [1]** 36/7
**which [22]** 3/15 6/4 7/19 10/14 11/22 12/6 13/2 14/17 21/17 28/3 29/16 34/5 36/18 36/21 41/1 46/24 50/12 51/4 52/16 53/1 53/10 53/12
**while [2]** 6/11 25/19
**white [1]** 50/21
**who [9]** 10/3 14/5 22/4 41/19 42/4 44/25 47/1 48/3 48/3
**whole [2]** 4/22 39/18
**whom [1]** 5/6
**whose [1]** 47/6
**why [13]** 20/11 23/22 37/3 38/7 39/11 39/19 40/16 40/24 43/6 44/8 44/20 45/25 57/22
**will [7]** 4/22 10/19 32/19 45/6 45/17 45/22 50/3
**win [6]** 3/22 38/9 57/16 57/24 57/25 57/25
**windshield [2]** 36/24 57/9
**winners [1]** 40/11
**without [5]** 40/7 48/17 55/6 55/7 59/6
**won't [2]** 5/25 56/9
**word [1]** 26/22
**words [6]** 3/25 6/5 14/7 18/24 30/13 45/15
**work [25]** 13/22 14/5 15/20 17/8 18/18 18/23 19/3 19/4 19/6 19/9 19/19 19/20 19/20 19/23 20/3 34/15 36/16 36/22 46/10 53/22 54/15 56/18 56/23 57/2 57/3
**worked [9]** 13/24 20/3 36/3 38/25 39/3 39/21 54/16 56/23 57/7
**working [7]** 12/20 12/24 14/8 14/13 15/20 30/2 30/4
**works [2]** 41/15 46/6
**worst [1]** 18/2
**worth [4]** 3/17 3/20 4/3 55/2
**would [49]** 11/3 11/4 14/17 17/1 17/5 17/23 20/12 24/4 24/18 24/18 25/22 29/6 29/7 29/8 29/16 34/5 34/8 34/12 34/18 36/13 38/5 41/4 41/20 41/22 41/25 42/2 44/13 44/17 44/17 44/23 44/23 45/1 47/6 47/14 49/24 50/7 50/7 50/10 50/11 51/13 52/4 52/25 52/17 54/16 54/24 55/3 56/23 56/25 58/3
**wouldn't [9]** 4/19 11/8 17/23 29/8 34/4 35/18 36/24 42/2 54/4
**wracking [1]** 14/19
**writing [1]** 4/12
**written [2]** 33/13 58/7
**wrong [3]** 9/4 43/16 53/22

## Y

**Yeah [1]** 49/8
**yes [55]** 5/18 8/12 8/20 8/23 9/6 9/25 11/9 11/19 12/8 15/6 15/9 16/5 17/9 18/5 21/13 22/14 23/3 23/5 24/6 24/19 24/25 26/16 26/23 27/1 27/13 27/19 28/8 28/22 29/11 29/13 29/20 29/22 29/24 29/25 30/20 30/21 31/17 32/18 33/15 34/1 34/22 39/13 40/22 43/21 47/3 47/12

46/1 54/25 57/21

47/19 50/19 52/10 54/17 56/1 56/6 56/16 56/25 58/1
**yes-no [1]** 24/25
**yet [1]** 54/13
**you [193]**
**you'd [3]** 30/10 42/14 54/18
**you'll [4]** 7/12 7/13 22/21 33/22
**you're [25]** 9/13 10/3 10/22 15/3 15/17 16/11 19/4 24/4 24/14 24/15 25/1 25/2 27/14 29/2 30/18 31/14 31/15 31/24 38/22 42/7 43/16 43/19 46/13 47/10 58/1
**you've [20]** 4/11 11/16 25/19 28/11 28/23 28/23 29/23 35/3 35/11 39/11 43/6 43/8 46/7 46/8 54/1 54/2 54/11 57/10 57/11 57/13
**your [122]**

1-ER-81