**No. 23-35235**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

ANDREW GRIMM,

*Plaintiff-Appellant*,

v.

CITY OF PORTLAND,

*Defendant-Appellee*.

On Appeal from the United States District Court
for the District of Oregon
No. 3:18-cv-00183-MO
Hon. Michael W. Mosman, United States District Judge

---

**EXCERPTS OF RECORD: VOLUME II**

---

Gregory Keenan
DIGITAL JUSTICE FOUNDATION
81 Stewart Street
Floral Park, New York 11001
(516) 633-2633
Gregory@DigitalJusticeFoundation.org

*Attorney for Appellant*

Megan Keenan (OSB No. 204657)
INFORMATION DIGNITY ALLIANCE
P.O. Box 8684
Portland, Oregon 97207
Phone: (925) 330-0359
Megan@InformationDignityAlliance.org

Paul Maddock (admitted *pro hac vice*)
CAREY DANIS & LOWE
8235 Forsyth Boulevard, Suite 1100
St. Louis, Missouri 63105
Phone: (314) 678-1205
PMaddock@CareyDanis.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **ANDREW GRIMM**, <br> Plaintiff, | Case No. 3:18-cv-183-MO |
| v. | Plaintiff Andrew Grimm's <br> REPLY IN SUPPORT OF HIS MOTION <br> FOR SUMMARY JUDGMENT |
| **CITY OF PORTLAND** <br> Defendant. | ***Oral Argument Requested*** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ 3

ARGUMENT ................................................................................ 5

   I.  ANSWERING THE NINTH CIRCUIT'S THREE QUESTIONS MAKES CLEAR THAT THE CITY'S POSTING FAILED TO SATISFY *MULLANE-JONES*. ................................ 5

   II.  IF THE MAIL IS AVAILABLE, THEN SOLE RELIANCE ON PAPER POSTING VIOLATES *MULLANE-JONES*. ................................................................ 12

   III.  THE CITY'S SOLE RELIANCE UPON PAPER POSTINGS FAILS THE *MULLANE-JONES* TEST. ... 22

      A.  The City's position has a *Greene* problem. ................................ 23

      B.  The City's position has a *Mennonite* problem. ........................... 24

      C.  The City's position has a *Jones* problem. ................................ 28

   IV.  POSTING WAS NOT THE BEST NOTICE PRACTICABLE HERE. ................................ 34

   V.  PLAINTIFF WAS TOWED UNDER THE CITY'S UNCONSTITUTIONAL NO-NOTICE AND POST-TOW NOTICE ORDINACES. ................................................ 40

CONCLUSION ............................................................................. 42

CERTIFICATE OF COMPLIANCE ............................................................. 43

CERTIFICATE OF SERVICE ................................................................ 44

TABLE OF AUTHORITIES

**Cases**

Aero-Medical v. United States,
    23 F.3d 328 (10th Cir. 1994)......................................................................... 12

Ayers v. Landow,
    666 A.2d 51 (D.C. 1995)............................................................................. 13

Brannon v. Household Int'l, Inc.,
    236 F. App'x 285 (9th Cir. 2007). ................................................................ 16

Fager v. CenturyLink Communs., LLC,
    854 F.3d 1167 (10th Circ. 2016)................................................................. 16

Greene v. Lindsey,
    456 U.S. 444 (1982). ................................................................ 11, 12, 19, 20

Grimm v. City of Portland,
    971 F.3d 1060 (9th Cir. 2020)............................................................. 8, 9, 11

In re Drexel Burnham Lambert Group,
    995 F.2d 1138 (2d Cir. 1993)..................................................................... 16

Intercontinental Indus. Corp. v. Luo,
    2011 U.S. Dist. LEXIS 9081 (C.D. Cal. Jan. 20, 2011)............................... 11

Jones v. Flowers,
    547 U.S. 220 (2006). .................................................................... 8, 9, 12, 20

Lombard v. United States,
    356 F.3d 151 (1st Cir. 2004). ..................................................................... 11

Mennonite Bd. of Missions v. Adams,
    462 U.S. 791 (1983). ............................................................................ 11, 12

Mitchell v. MAP Res., Inc.,
    649 S.W.3d 180 (Tex. 2022)....................................................................... 13

Phillips Petroleum Co. v. Shutts,
    472 U.S. 797 (1985). ................................................................................... 16

Schroeder v. City of New York,
    371 U.S. 208 (1962). ................................................................................... 12

Silber v. Mabon,
    957 F.2d 697 (9th Cir. 1992)......................................................... 16, 17, 19

2-ER-85

Sterling v. Environmental Control Bd.,
   793 F.2d 52 (2d Cir. 1986) ............................................................. 12

Taylor v. Yee,
   780 F.3d 928 (9th Cir. 2015) ......................................................... 8, 9

Tulsa Professional Collection Services, Inc. v. Pope,
   485 U.S. 478 (1988) ........................................................................ 12

Valdez v. Ottawa,
   105 Ill. App. 3d 972 (1982) ........................................................ 13, 14

Walker v. City of Hutchinson,
   352 U.S. 112 (1956) ........................................................................ 25

Wenatchee Reclamation Dist. v. Mustell,
   102 Wn.2d 721 (Wash. App. 1984) ................................................ 13

Wright v. Beck,
   981 F.3d 719 (9th Cir. 2020) ......................................................... 12

## Statutes

Portland, Or., City Code ch. 16.30 § 220 ......................................... 8, 9

Portland, Or., City Code ch. 16.30 § 320 ...................................... 8, 9, 21

ARGUMENT

**I.** **Answering the Ninth Circuit's Three Questions Makes Clear That the City's Posting Failed to Satisfy _Mullane-Jones_.**

The Ninth Circuit asked this Court to answer three questions.  Grimm v. City of Portland, 971 F.3d 1060, 1068 (9th Cir. 2020).

Answering these three questions makes clear that the City's exclusive reliance on posting failed to satisfy Mullane-Jones.  In turn, because the City failed to satisfy Mullane-Jones, the City's motion for summary judgment should be denied and Plaintiff's motion for summary judgment should be granted.

Each of the Ninth Circuit's three questions is addressed in turn below.

**Question 1**:          "**Did the red tow slip placed on Grimm's car shortly before the tow provide adequate notice?**"  Grimm, 971 F.3d at 1068.

**Answer 1**:          **No**, the red tow slip placed on Plaintiff's car an hour before the tow did _not_ provide adequate notice under Mullane-Jones.  Dkt. 95 at 11-25; Dkt. 98 at 14-27, 37-48, see also Dkt. 20-1 at 15.

_Posting_ was an _inadequate method_ of notice given the availability of mail—and other options, like the City's app.  Id.; Grimm, 971 F.3d at 1066 (Mullane-Jones determines "whether a _method_ of notice satisfied due process." (emphasis in original)).

The City disagrees.  But, critically, the City's Opposition **does not cite a single _Mullane-Jones_ case** finding that the _method_ of posting is sufficient when the mail is available.  Dkt. 96 at 9-14.  Not in the context of tows.  Not in **_any_** context.  Emphatically, the City does not cite a single Mullane-Jones case supporting its position that posting is enough when mail is available.

This silence speaks volumes.

Ultimately, the Mullane-Jones standard is clear.[1]  Posting is plainly not a sufficient *method* of notice on the facts *here*.

**_First_**, posting is an inadequate method of notice when mailing is available.  Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 799-800 (1983); Greene v. Lindsey, 456 U.S. 444, 456 n.10 (1982) (citing Schroeder v. City of New York, 371 U.S. 208, 213 (1962)).  *Here*, there is no dispute that mailing was available.  Dkt. 95 at 11-15; Dkt 98 at 21-28.

**Second**, posting is an inadequate method of notice when "tested" against "feasible and customary alternatives and supplements[.]"  Greene, 456 U.S. at 454; Dkt. 95 at 21-28; Dkt. 98 at 42-43.  We would never rely upon paper posting *alone* to deliver an important notification—not when a mailing address, a cellphone number, an email address and an app notification were available.  Dkt. 98 at 37-40 (Section II.A of Plaintiff's opposition).

Posting—without attempting a call, text, email, letter, or app notification—is not what someone "one desirous of actually informing the absentee" would do.  See Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 315 (1950).  We know this because that's not what any of us would do when we need to deliver an important, time-sensitive notification and want, *i.e.*, are actually desirous, of communicating this message to the intended recipient.  Doing something more and better is *customary*.

It's also *feasible* in a world of ubiquitous and automated text, call, email, and app notifications.  It's even plainly feasible in the context of tows.  Dkt. 98 at 23-27.  San Francisco does it.  "Text Before Tow Program," SFMTA.  Boston does it.  "Towing Alert Common Questions," City of Boston.  Even Portland police place phone calls.  See Dkt. 98-1 at 4.

---

[1] The only case law the City cites to support its position is dicta from cases applying the Mathews balancing test—the inapposite test.  Grimm, 971 F.3d at 1067 (holding that "Mullane, rather than Mathews, generally governs adequacy of notice claims" and does in this tow-notice context as well); see also Section II, *infra*.

**_Third_**, posting was an inadequate method given the "ascertainable" contact information that Plaintiff provided when registering his car with Portland's Parking Kitty app. Dkt. 95 at 20-21; Dkt. 98 at 27, 41-42, 48, see Mennonite, 462 U.S. at 800 (requiring use of "reasonably ascertainable" contact information); Jones v. Flowers, 547 U.S. 220, 223 (2006) (requiring use of new methods to attempt notice, even if initial attempts were reasonable, when there is a "good reasons to suspect" notice wasn't received).

For all these reasons, the _method_ of posting was insufficient here. Thus, the City's red tow slip was an inadequate **_method_** of notice under Mullane-Jones and, accordingly, the answer to the Ninth Circuit's first question is **_no_**.

* * * * *

**Question 2**:　　　"**Is putting citations on a car that do not explicitly warn that the car will be towed reasonably calculated to give notice of a tow to t he owner?**" Grimm, 971 F.3d at 1068.

**Answer 2**:　　　**No**, tickets that do not mention a tow are not an attempt at notice of a tow. Dkt. 98 at 28-32 (Section I.A.iii of Plaintiff's opposition).

Common sense dictates that something (a ticket) that makes no mention of something else (a tow) isn't notice of that something else.

The case law backs up this common-sense answer because Mullane-Jones imposes a _content_ requirement. Dkt. 98 at 28-32. To be an attempt at notice, the attempt "**must make some conspicuous mention**" of the property deprivation. See Brody v. Village of Port Chester, 434 F.3d 121, 130 (2d Cir. 2005) (citing Mullane, 339 U.S. at 315). _Here_, the tickets aren't even attempts at notice under Mullane-Jones because they lack the "required information"—any mention of a tow. See Harris v. County of Riverside, 904 F.2d 497, 503 (9th Cir.).

The City disagrees. The City doesn't think there is *any* content requirement at all.  It wants this Court to say that postings which **<u>don't</u>** mention a tow nonetheless provide notice of a tow. Yet, tellingly, the City <u>does not identify a *single* case</u> finding that a posting, **which makes no mention of the property deprivation**, has sufficient *content* to give notice.  <u>See</u> Dkt. 96 at 9-14; Dkt. 98 at 31.  Indeed, the City simply ignores <u>Mullane</u>-<u>Jones</u>'s *content* requirement altogether. See generally Dkt. 96; Dkt. 94.

In sum, **<u>no</u>**, a ticket that makes no mention of a tow is not a notification about that tow. Not under common sense.  Not under <u>Mullane</u>-<u>Jones</u>.

* * * * *

<u>**Question 3**</u>:       "**Was Portland required under <u>Jones</u> to provide supplemental notice if it had reason to suspect that the notice provided by leaving citations and the tow slip on Grimm's windshield was ineffective**" <u>Grimm</u>, 971 F.3d at 1068.

<u>**Answer 3**</u>:       **<u>Yes</u>**, <u>Jones</u> requires supplemental notice if the City had reason to suspect hat its chosen method of notice was ineffective.  Dkt. 95 at 24-25; Dkt. 98 at 44-47; <u>see</u> Section III.C, *infra*.

The Supreme Court in <u>Jones</u> is clear: when the government has "good reason to *<u>suspect</u>*" that an attempt at notice was ineffective, then the government **<u>must</u>** take "further reasonable steps **<u>*if any*</u>** *<u>were available</u>*." <u>Jones</u>, 547 U.S. at 230; Dkt. 95 at 24-25.

Again, the City disagrees.  The City claims that it had no reason to suspect the piled-up notice had not been received and, accordingly, concludes that "the Court need not consider available alternatives."  Dkt. 96 at 19.  But, that's **<u>not</u>** what <u>Jones</u> says.  547 U.S. at 230.

And, that's not what the Ninth Circuit said *in this very case*. Grimm, 971 F.3d at 1066. Specifically, the Ninth Circuit instructed the Parties and this Court to consider whether providing "**electronic notice through *Portland*'s parking app**" would be "one such reasonable step":

> Relying on Jones, Grimm argues that even if the tickets on his car could have provided notice of the tow, Portland should have known that notice of the tow through posting on his car had been ineffective when the car was not moved and the parking tickets remained on the car's windshield. With that awareness, Grimm maintains, Portland was required to take additional reasonable steps to notify him of the tow. One such "reasonable step," Grimm suggests, would have been to provide **electronic notice through Portland's parking app**. As explained *infra*, the district court should address this argument in the first instance. See Section II.C.

Id. So, when the City asks this Court to "*not consider available alternatives*"—it's asking this Court to ignore ***all*** of the "available alternatives" here. Dkt. 96 at 19. The City appears to want this Court to turn a blind eye to the exact kinds of considerations the Ninth Circuit asked this Court to make.

Yet, the City cannot ignore the mail. The City cannot ignore the phone. The City cannot ignore email. The City cannot ignore text messages. The City cannot ignore ascertainable contact information. The City cannot ignore its Parking Kitty app. Indeed, in light of Jones (and Greene and Mennonite), ruling for the City would require this Court to ignore all of these "available alternatives."

Yet, ultimately, the City's self-serving suggestion that this Court should "not consider available alternatives" is at odds with both the Supreme Court's Jones and the Ninth Circuit's express question. Jones makes clear that, *even if posting were a reasonable method in the ordinary case*, the City was required to take additional steps when there was a good reason to suspect that the method of posting was not working here, which there was given the tickets piling up. See Jones, 547 U.S. at 230; Dkt. 95 at 24-25; Dkt. 98 at 44-47. Indeed, it's undisputed that Plaintiff never saw any of the tickets or placards prior to the tow. Dkt. 93 at 9 ¶ 48.

For that reason too, the City's sole reliance on paper posting failed <u>Mullane</u>-<u>Jones</u>.

\* \* \* \* \*

Answering the Ninth Circuit's three questions makes clear that the City's sole reliance on posting failed to satisfy the <u>Mullane</u>-<u>Jones</u> test. Question one makes clear that Portland's posting has a *method* problem. Question two makes clear that Portland's postings had a *content* problem. Question three makes clear Portland's postings have a <u>Jones</u> problem. <u>See also</u> Section III.C, *infra*. That's not all. There's also a <u>Greene</u> problem. <u>See</u> Section III.A, *infra*. And, a <u>Mennonite</u> problem. <u>See</u> Section III.B, *infra*.

Importantly, the specific facts of this case provide a litany of limiting principles that do not require this Court to rule broadly. The point is not that posting is never sufficient under <u>Mullane</u>-<u>Jones</u>. Rather, sole reliance on paper posting was not sufficient on these specific facts, *i.e.*:

1. Where the City has its own parking app. Dkt. 93 at 2 ¶ 6.

2. Where Plaintiff registered his vehicle with the City's parking app. Dkt. 93 at 6 ¶ 30.

3. Where Plaintiff provided personal contact information including his phone number, email, license-plate number, and credit-card information when registering his car with the City's app. Dkt. 93 at 6 ¶ 31.

4. Where Plaintiff was already receiving messages via email and in-app notifications about his vehicle. Dkt. 93 at 3 ¶ 12, 6 ¶¶ 31, 36.

5. Where the towed car was currently registered with the State. Dkt. 93 at 6 ¶ 33.

6. Where a mailing address for the vehicle was readily accessible. Dkt. 93 at 9 ¶ 49.

7. Where the City routinely looks up addresses when towing cars. Dkt. 93 at 5 ¶ 22.

8. Where the City did in fact look up the address associated with the towed vehicle. Dkt. 93 at 9 ¶ 49.

9. **But where the City does not use <u>any</u> of these methods or <u>any</u> of this contact information to attempt any pre-tow notice.** Dkt. 93 at 9 ¶ 51.

10. And, where Plaintiff never saw the postings before the tow, where the warning placard went missing, and where there was reason to suspect that the postings were not being received. Dkt. 93 ¶ 48; Dkt. 96 at 17; Dkt. 22-1 ¶ 13; Dkt. 93 ¶ 44-45; Dkt. 93-1 at 35.

In such a situation, the <u>Mullane</u>-<u>Jones</u> standard plainly requires more than the City's paper postings on Plaintiffs car.   Thus, the Court should deny the City's motion for summary judgment and grant the Plaintiff's on these unique facts here.

## II.     If the Mail is Available, Then Sole Reliance on Paper Posting Violates *Mullane-Jones*.

Plaintiff's motion for summary judgment argued that this case is readily disposed of by turning to a well-established, bright-line rule imposed by the Mullane-Jones standard.  Dkt. 95 at 11-14; see also Dkt. 98 at 15-21.  Specifically, that rule is that posting alone is not sufficient *when the mail is available*.  Dkt. 95 at 11.

Plaintiff explained that this bright-line rule "has been repeatedly recognized by state courts and federal courts alike."  Dkt. 95 at 13.  And, Plaintiff showed that courts consistently apply this bright-line rule to *all* sorts of property deprivations, **including tows**.  Dkt 95. at 13; Dkt. 98 at 18-19.  Applied here, that bright-line rule is dispositive. *Because the mail was available*, the City's sole reliance on posting violated the Mullane-Jones standard. Dkt. 95 at 11-14; see also Dkt. 98 at 15-21.

The City disagrees.  Dkt. 96 at 9-14.

But, strikingly, the City's Opposition **fails to cite a *single* case applying the Mullane-Jones standard** to supports its position that posting alone is sufficient when mail is available.  Indeed, it does not cite a single Mullane-Jones case finding posting sufficient when an address is ascertainable.  See Dkt. 96 at 9-14.  Not for tows. Not for *any* property type.   This silence is telling.  While much of what the City says might *sound* good, when scrutinized it becomes clear that the City's position is **entirely unsupported by apposite case law, *i.e.*, by the Mullane-Jones case law.**

Indeed, the City's Opposition suffers three fatal flaws:

**Fatal Flaw #1**: The City misrepresents Plaintiff's position and then attacks a strawman argument never made in Plaintiff's motion.

**Result**: The City's opposition is entirely unresponsive to Plaintiff's ***actual*** position.

**Fatal Flaw #2**: The City **does not cite a single Mullane-Jones case** to support its position that posting is sufficient when the mail is available.

**Result**: The City's position is entirely unsupported by the case law.

**Fatal Flaw #3**: The City's opposition tries to evade the bright-line rule imposed by Mullane-Jones.

**Result**: The City's opposition relies on a case applying the wrong legal standard and misconstrues binding authorities applying the correct legal standard.

In sum, the City's opposition misstates Plaintiff's position to attack a strawman, fails to cite any apposite case law in favor its position, and then proceeds to a strained campaign of case distinction that do misconstrue binding authorities and ignore on-point persuasive authorities without reason.

**Fatal Flaw #1: The City misrepresents Plaintiff's position and then attacks a strawman argument never made in Plaintiff's motion.**

***First***, the City blatantly misrepresents Plaintiff's position. Specifically, the City claims that "Plaintiff asks the Court to conclude that posting pre-tow notice on his vehicle was ***categorically*** insufficient." Dkt. 96 at 9. The City then spends it briefing attacking this strawman argument that was never made. Dkt. 96 at 11 ("courts have not, as Plaintiff contends, said that posting ***never*** satisfies due process."); Dkt. 96 at 10 ("the court did not find that posting notice could ***never*** satisfy due process.").

**But that's *not* Plaintiff's position**. Plaintiff did ***not*** argue that postings are "***categorically***" insufficient. Dkt. 96 at 9. Plaintiff's Motion did ***not*** contend that "posting notice ***never*** satisfies due process." Dkt. 96 at 11.

Rather, Plaintiff argued that posting pre-tow notice is ***conditionally*** insufficient on the facts here. Indeed, Plaintiff's motion was clear: "***when mail was available***" then sole reliance upon posting fails to satisfy <u>Mullane</u>-<u>Jones</u>. Dkt. 95 at 11 (underline in original); <u>see also</u> Dkt. 95 at 12 (*if* "name and address" is available); Dkt. 95 at 13 ("*when* mail is available"); Dkt. 95 at 14 ("*where* notice by mail is available."). Plaintiff's position is **not** that that postings can **never** satisfy due process (as the City falsely mischaracterizes it). The point is that *given certain specific facts* (*i.e.,* that mail was available because an address was ascertainable) then posting is insufficient. That's a bright-line rule imposed by <u>Mullane</u>-<u>Jones</u>.

Yet, rather than engage that legal rule, the City simply misrepresents Plaintiff's position. It then goes to great lengths attacking a strawman argument never made in Plaintiffs' Motion. But that's <u>entirely unresponsive</u>. It's unresponsive to Plaintiff's arguments. And, it's unresponsive to the law. Indeed, the City's strawman arguments do nothing to disrupt the well-established, bright-line rule that <u>where the mail is available</u>, sole reliance upon paepr posting fails to satisfy <u>Mullane</u>-<u>Jones</u>.

Thus, because the City attacks a strawman of some made-up position not taken by Plaintiff (that posting is never acceptable) rather than Plaintiff's actual position (that posting isn't acceptable when mail is available), the City's response is non-responsive.

Ultimately, the bright-line <u>Mullane</u>-<u>Jones</u> rule against sole reliance upon posting *when* <u>mail is available</u> is dispositive because <u>mail *was* available</u>. Dkt. 93 at 9 ¶ 49. After all, "the vehicle was properly registered at the time of the tow[.]" <u>Grimm</u>, 971 F.3d at 1065. Thus, the City "could obtain current information" including a mailing address. <u>Id.</u>; Dkt. 93 at ¶49. For ***that*** **reason,** posting was *conditionally* insufficient and the method of mail was a "**minimum** constitutional precondition" given the facts of this case. <u>Mennonite</u>, 462 U.S. at 800.

**Fatal Flaw #2: The City does not cite a single _Mullane_-_Jones_ case finding that posting is sufficient when the mail is available.**

The City's position is that posting alone was sufficient here, *even though* the mail was available. Dkt. 96 9-14. But, tellingly, the City's Opposition **does _not_ cite a single _Mullane_-_Jones_ case** finding that the *method* of posting is sufficient when the mail is available. Dkt. 96 at 9-14. Not a single Mullane-Jones case supporting the City's position is cited—not in the context of tows and not even in the context of any property type.

By contrast, Plaintiff's motion cites an avalanche of authorities supporting its position and applying this principle to a wide swath of property types. Dkt. 95 at 11-14; Dkt. 98 at 16-21. Plaintiff cited numerous cases **_recognizing_** the general legal principle that when the mail is available posting does not satisfy Mullane-Jones. Dkt. 95 at 13. Indeed, Plaintiff cited cases **_applying_** this general legal principle to *all* types of property deprivations. Dkt. 95 at 11-13; Dkt. 98 at 18 ("This bright-line rule has been applied to all types of property deprivations."). And, Plaintiff's Motion *even* cited a case **_applying this general legal principle to the specific issue of pre-tow notice_**. Dkt. 95 at 13-14.

Specifically, Plaintiff's motion cited Valdez v. Ottawa, 105 Ill. App. 3d 972 (1982). Dkt. 95 at 13-14. The Valdez court applied the Mullane-Jones bright-line rule when evaluating pre-tow notice and rejected notice by posting **_because_** mail was available. Id. at 975. Its reasoning was straightforward: "**At a minimum**, notice by certified or registered **mail would have been appropriate**" because the "auto was currently registered and the police had the plaintiffs' name and address." Id. (citing Mullane). Thus, Valdez held that pre-tow notice by posting did **not** satisfy Mullane-Jones for a registered car **_because_** mailing was available.

The City unsurprisingly disagrees with <u>Valdez</u>. But <u>Valdez</u> was merely conducting a straightforward application of a well-established bright-line rule imposed by <u>Mullane</u>-<u>Jones</u> in the context of tows.

Tellingly, the City doesn't cite a single case to the contrary. Instead, the City simply says "This Court should not follow the reasoning of that case." Dkt. 96 at 12. But, the City never explains *why* it thinks <u>Valdez</u> was wrong. It would just prefer this court ignore inconvenient on-point persuasive authority.

Trying to run from <u>Valdez</u>, the City stresses that the Motion "identifies no court that has reached the same conclusion in the forty years since that [<u>Valdez</u>] opinion." Dkt. 96 at 12. Of course, that doesn't mean <u>Valdez</u> was wrong. After all, the City does not identify *any* court that has ever reached the **opposite** conclusion from <u>Valdez</u>. Dkt. 96 at 12. So, as an initial matter, Plaintiff's one case is surely better than the City's *none*.

But <u>Valdez</u> is **<u>not</u>** the only court to apply the <u>Mullane</u>-<u>Jones</u> principle that posting in insufficient when mail is available. Other courts *have* "reached the same conclusion" as <u>Valdez</u>. <u>See</u> Dkt 96 at 12. For example, the U.S. Court of Appeals for the District of Columbia has *also* found that posting was an insufficient method of pre-tow notice. <u>Propert v. District of Columbia</u>, 948 F.2d 1327, 1334-1336 (D.C. Cir. 1991). And, its rationale should sound familiar:

> **[T]he warning sticker does not provide constitutionally sufficient notice**, at least **<u>where</u>**, as in this case, the vehicle is properly licensed or registered and, therefore, **the owner's identity may be easily ascertained**.

<u>Propert</u>, 948 F.2d at 1334 (D.C. Cir. 1991) (applying <u>Mullane</u>). The D.C. Circuit's legal rationale was clear. There is a general legal principle that posting is not sufficient under <u>Mullane</u>-<u>Jones</u> *when the mail is available*. Neither <u>Valdez</u> nor <u>Propert</u> struggled to apply this bright-line rule to the context of pre-tow notice. And that rule applies the same here. Because the mail was available for Plaintiff's registered vehicle, posting alone was insufficient.

Grasping for straws, the City attempts to distinguish the present case by arguing that mail was somehow unavailable here. Dkt. 96 at 12. But that argument is as baseless as it is disingenuous.

The City suggests that Plaintiff's expired, out-of-state registration stickers made mail unavailable here. Dkt. 96 at 12. That's false. Here, it is undisputed that Plaintiff's car **was** registered. Dkt 93 at 6 ¶ 33. Indeed, the Ninth Circuit (*in this very case*) made clear that Plaintiff's "vehicle ***was*** properly registered at the time of the tow." <u>Grimm</u>, 971 F.3d at 1065 (italics in original). And, the Ninth Circuit further stressed that the City "***could*** obtain current information" for the registered vehicle. <u>Id.</u> So, just as in <u>Valdez</u> and just as in <u>Propert</u>, the mail was available to give pre-tow notice for Plaintiff's registered car. In fact, here the City *did* look up a mailing address—but the City just waited until *after* the tow. Dkt 93 at 9 ¶ 49.

So, nothing about the registration stickers stopped the City from mailing a letter. Indeed, nothing about the registration stickers made mail unavailable here. Dkt 93 at 9 ¶ 49; <u>cf.</u> <u>Grimm</u>, 971 F.3d at 1065 n.5.

In short, court after court has reached the same conclusion. The principle is a conditional one: ***if*** mail is available, ***then*** sole reliance upon posting is insufficient. It's a well-established principle. Notice by posting does **not** satisfy <u>Mullane</u>-<u>Jones</u> when the mail is available and, *<u>here,</u>* mailing is indisputably available because the City did mail but afterward and because the Ninth Circuit said so. Thus, City gives no legal reason to depart from that well-established, bright-line rule in this case. Its factual distinctions are meritless. Its legal positions are without support from any cited case authority. There is simply no reason, on these facts, to conclude that mail was unavailable here.

**Fatal Flaw #3**: The City's Opposition tries to evade the bright-line rule imposed by <u>Mullane</u>-<u>Jones</u>.

The City's opposition cites no <u>Mullane</u>-<u>Jones</u> case finding posting is sufficient when the mail is available. Indeed, the City's position is at odds with a well-established, bright line rule imposed by <u>Mullane</u>-<u>Jones</u>. <u>See</u> Section III.B, *infra*. Yet, because <u>Mullane</u>-<u>Jones</u> does not support its position, the City must evade that legal standard and cling to <u>Clement</u> (a case applying the <u>Mathews</u> test). Dkt. 96 at 14.

Indeed, the City boldly claims that posting notice is an "accepted form of pre-tow notice." Dkt 96 at 14 (citing <u>Clement v. City of Glendale</u>, 518 F.3d 1090, 1094, 1096 (9th Cir. 2008)). The City even chastises Plaintiff for ignoring <u>Clement</u>:

> Plaintiff also ignores that the Ninth Circuit has expressly recognized that physically posting notice on the vehicle is the common and accepted form of pre-tow notice. <u>Clement v. City of Glendale</u>, 518 F.3d 1090, 1094, 1096 (9th Cir. 2008)

Dkt 96 at 14. Once more, the City has it wrong. Plaintiff didn't ignore anything. And the Ninth Circuit held no such thing. The Ninth Circuit in <u>Clement</u> clearly did not hold that posting is the "accepted form of pre-tow notice". Dkt. 96 at 14. Indeed, <u>Clement</u> was **<u>not</u>** even *applying* the <u>Mullane</u>-<u>Jones</u> test to determine the adequacy of notice.

<u>Clement</u> is a case applying the <u>Mathews</u> balancing test to a separate legal question. <u>Clement</u> is clearly not addressing or applying the <u>Mullane</u>-<u>Jones</u> question about whether a method (posting) was adequate. Rather, it was deciding whether any notice was required at all. That's a <u>Mathews</u> question. But, the ***<u>method</u>*** question is a <u>Mullane</u>-<u>Jones</u> question. <u>Grimm</u>, 971 F.3d at 1066 ("<u>Mathews</u> and <u>Mullane</u> coexist, and that <u>Mullane</u>'s 'reasonably calculated; standard continues to apply, without any balancing test, **when courts are determining whether a *method* of notice satisfied due process**. (italics in original)).

So, by citing an <u>Mathews</u> case to answer a <u>Mullane</u> question, the City is merely citing inapposite case law, case law that does not address the legal question raised. Frankly, the City should know as much that by this point of the litigation. <u>Grimm</u>, 971 F.3d at 1068 (The <u>Mullane</u>-<u>Jones</u> "standard governs the adequacy of notice claim here.)

Further trying to evade the implications of <u>Mullane</u>-<u>Jones</u>, the City misconstrues binding <u>Mullane</u>-<u>Jones</u> authorities, such as <u>Mennonite</u> and <u>Greene</u>. And, the City misconstrues the Ninth Circuit's interpretation of <u>Greene</u> in its <u>Wright</u> decision. <u>Wright v. Beck,</u> 981 F.3d 719, 728 (9th Cir. 2020).

Plaintiff's motion cited <u>Greene</u>, Dkt. 95 at 12, and <u>Mennonite</u>, Dkt. 95 at 11-12, to support its position that sole reliance on posting is not sufficient when mail is available, Dkt. 95 at 11-12. Both those cases rejected notice by posting. Both those cases pointed to the availability of mail as a reason.

The City tries to distinguish those cases by suggesting that Plaintiff misconstrues them. Dkt. 96 at 10-11. But, respectfully it is the City that is misconstruing matters.

First, there's <u>Mennonite</u>. Mennonite held that "Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition [...] if its name and address are reasonably ascertainable." <u>Mennonite</u>, 462 U.S. at 800.

The City stresses that the Mennonite Court required "notice by mail *or other means*[.]" Dkt. 96 at 10. Interpreting <u>Mennonite</u>, the City argues that notice by *posting* qualifies as such "other means." Dkt. 96 at 10. But the City overlooks that, in <u>Mennonite</u> the Supreme Court **rejected the government's notice by "*posting*[.]"** <u>Mennonite</u>, 462 U.S. at 799. Clearly, the Court was not *rejecting* notice by posting to then hold that posting was acceptable.

When the Supreme Court says "[n]otice by mail or other means," the "other means" cannot mean posting because the Supreme Court in <u>Mennonite</u> was **rejecting reliance upon posting**. <u>See id.</u>

There's also <u>Greene</u>. In <u>Greene</u>, the Supreme Court also rejected a government's reliance on posting. It reasoned that where "the names and post-office addresses of those affected […] are at hand, the reasons disappear [to] resort to means less likely than the mails[.]" <u>Greene</u>, 456 U.S. at 456 n. 10.

The City observes that Plaintiff's motion relied on "circuit court interpretations of <u>Greene v. Lindsey</u>, 456 U.S. 444 (1982), to support [Plaintiff's] position that posting notice on Plaintiff's vehicle does not satisfy due process." Dkt. 96 at 10. Specifically, Plaintiff cited the Ninth Circuit's <u>Wright</u> decision, interpreting <u>Greene</u>. Dkt. 95 at 12.

The City claims that <u>Wright</u> does not support Plaintiff's position. Dkt. 96 at 10. Rather, the City argues that in <u>Wright</u> the Ninth Circuit "explained that <u>Greene</u> had 'held that posting notice on the door of a tenant's apartment of a forcible entry or detainer action does not satisfy minimum standards of due process.'" Dkt. 96 at 10 (quoting <u>Wright</u>, 981 F.3d at 723). But the City's quote of <u>Wright</u> stops one sentence too short. Indeed, one only needs to read ***the very next sentence*** to understand *why* posting was insufficient in <u>Greene</u>**:**

> Similarly, in <u>Greene v. Lindsey</u>, 456 U.S. 444, 453, 102 S. Ct. 1874, 72 L. Ed. 2d 249 (1982), the Court held that posting notice on the door of a tenant's apartment of a forcible entry or detainer action "does not satisfy minimum standards of due process." **<u>Due process demanded more, the Court explained, given that additional efforts, such as notice by mail or additional home visits, were feasible</u>**. <u>Id.</u> at 454-55.

<u>Wright v. Beck</u>, 981 F.3d 719, 728 (9th Cir. 2020). In other words, the ***reason*** that "**[d]ue process demanded more**" was that "**additional efforts**" were available such as "**notice by mail**."

Here, the City relied exclusively on posting.  Here, notice by mail was available.  Here, notice failed.  Thus, the City failed the <u>Mullane</u>-<u>Jones</u> test here.

Thus, it is the City who misconstrues and selectively edits <u>Wright</u>'s clarification of <u>Greene</u>.  The City quotes one sentence from <u>Wright</u> to suggest that the availability of mail was not part of <u>Greene</u>'s rationale.  But, the *very next sentence* makes clear that the posting in <u>Greene</u> was insufficient because mail or personal service "were feasible."

\* \* \* \* \*

In short, while the City's arguments might sound good, they are not rooted in the law.  To the contrary, the run afoul of a well-established, bright-line rule imposed by <u>Mullane</u>-<u>Jones</u>: when the mail is available, sole reliance on posting is insufficient.  To attempt to avoid this principle, the City misstates Plaintiff's position, misconstrues the case law, and cites <u>Mathews</u> authority to attempt to answer a <u>Mullane</u> question.  All of this should be rejected.

**III.**    <u>**The City's Sole Reliance Upon Paper Postings Fails the *Mullane-Jones* test.**</u>

It is undisputed that the City relied exclusively upon paper postings to attempt pre-tow notice. Dkt. 93 at 9 ¶¶ 50-51. In turn, that exclusive reliance on paper posting means that the City did not fulfill its legal obligations of pre-tow notice under the <u>Mullane</u>-<u>Jones</u> standard, the operative test here.

For over 70 years, the Supreme Court's <u>Mullane</u> standard has required the government—the City here—to make attempts at notice that are "reasonably calculated, under all the circumstances, to apprise interested parties[.]" <u>Mullane</u>, 339 U.S. at 314 (1950). In particular, the method, *i.e.*, "means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." <u>Id.</u> at 315.

So, the question here is that the City—when it has been communicating by app, when it had readily ascertainable contract information it didn't use, and when it waited until after the tow to send a letter—was acting like someone who really wanted to get in touch with an important communication. If you step back to think about if that's how people in contemporary society try to get in touch, you'll know that it's not.

Moreover, the <u>Mullane</u>-<u>Jones</u> standard has developed doctrinal bright lines as the cases have percolated throughout the Court system. Three plain holdings of three cases—<u>Greene v. Lindsey</u>, 456 U.S. 444 (1982); <u>Mennonite Bd. of Missions v. Adams</u>, 462 U.S. 791 (1983); and <u>Jones v. Flowers</u>, 547 U.S. 220 (2006)—are implicated here. Each is addressed in turn:

    (1)   The City has a <u>**Greene**</u> **problem** because Plaintiff indisputably never saw the posting and the posting was removed from the vehicle.

    (2)   The City has a <u>**Mennonite**</u> **problem** because Plaintiff's car was doubly registered—with a DMV and with the City's parking app.

    (3)   The City has a <u>**Jones**</u> **problem** because the tickets piled up.

A. *The City's position has a* Greene *problem.*

The City's exclusive reliance upon posting has a Greene problem. See Greene v. Lindsey, 456 U.S. 444 (1982).

Several critical facts establish this Greene problem. First, the City relied exclusively upon paper posting upon Plaintiff's car—namely the WARNING placard placed on Plaintiff's windshield about 48 hours before the tow. Dkt. 93 at 8 ¶ 44 ("WARNING" placard), 9 ¶ 50 (no further attempts at notice).

Second, it's undisputed that Plaintiff never saw this WARNING placard before the tow and impoundment ordered by the City. Dkt. 93 at 9 ¶ 48 ("Plaintiff did not see the postings before the tow."). In other words, it's undisputed that the City's attempted at notification did not reach Plaintiff because he did not return to his car or see the placard. See id.

Third, it's undisputed that *between the time it was posted and when the vehicle was towed, the WARNING placard has been removed.* Dkt. 98 at 13 ("And unlike the citations, the Warning Placard, which provided express notice of the tow, apparently did not remain on the windshield.")

**Thus, the City does not dispute that the WARNING  Placard was removed—and not by Plaintiff who had never seen it prior to the tow.**

That removal of the posting presents the Greene problem. In Greene, the Kentucky statute for notice of unlawful-detainer actions permitted attempts at notice by "**posting** a copy thereof in a conspicuous place on the premises." Greene, 456 U.S. at 446. The Sixth Circuit (which the Supreme Court later affirmed) "noted that *while there may have been 'a time when posting provided a surer means of giving notice than did mailing, [that] time has passed.*" Id. at 448. And, because the apartment dwellers alleged that they "suffered precisely such a failure of actual notice" and because posting was "'not infrequently' removed[,]" the Court held that sole reliance upon posting was insufficient. Id. at 453, 454-455.

In short, the critical fact here is that the WARNING placard was **removed**. It's also undisputed that Plaintiff did not see the WARNING placard before it was removed. That's the Greene problem: where the posting was **removed** (and not by Plaintiff who had not seen it), the notice is ineffectual and is not reasonably calculated to reach the person.

Indeed, if anything, the posting *on a car's windshield on a public street* is even more susceptible to removal of the posting than on an apartment door. The street is accessible to a broader swath of the public. Inclement weather can blow it away. The risk on the street is even greater than for an apartment building in Greene—and, it's undisputed here that the WARNING place was in fact removed.

Thus, under the holding of Greene, so to here: "where an inexpensive and efficient mechanism such as mail service is available to enhance the reliability of an otherwise unreliable notice procedure, the State's continued exclusive reliance on an ineffective means of service is not notice "reasonably calculated to reach those who could easily be informed by other means at hand." Id. at 455-456.

### B. *The City's position has a* Mennonite *problem.*

The City's sole reliance on posting poses a Mennonite problem.

In the present case, Plaintiff's car was registered. In fact, the car was doubly registered. The car was registered with the state. Dkt. 93 ¶ 33. And, the car was registered with the City's parking app. Dkt. 93 ¶ 30.

First, Plaintiff's car was registered with the state of California. Dkt. 93 ¶ 33. Indeed, the Ninth Circuit *in this very case* made clear that Plaintiff's "vehicle *was* properly registered at the time of the tow[,]" thus the City "**could** *obtain current information*" such as a mailing address. Grimm, 971 F.3d at 1065.

In fact, the City *did* lookup the mailing address for the registered vehicle–but it didn't bother doing so until *after* the tow. Dkt 93 ¶ 49.

Second, Plaintiff's car was *also* registered with Portland's own parking app, Parking Kitty. Indeed, Plaintiff had provided his phone number, email address, license plate, and credit card information when registering his vehicle with the City's parking app. Dkt. 93 ¶ 31.  And, the parking enforcement officer knew that the car was registered with the app. Dkt. 20 ¶ 4. Indeed, Officer Earle declared that the "data confirmed" that "electronic payment had been made [on] December 15, 2017." Dkt. 20 ¶ 4. Accordingly, Plaintiff's contact information was ascertainable via Parking Kitty. Dkt. 93 ¶ 5; Dkt. 93 ¶31.

Thus, all sorts of contact information, including a name and address, associated with the registered vehicle **were** ascertainable here.

That creates a Mennonite problem. In Mennonite, the Supreme Court held that:

> **Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition [...] if its name and address are reasonably ascertainable**.

Mennonite, 462 U.S. at 800.

Here, such information was ascertainable. In fact, the City *ascertained* **such information**. Dkt. 93 ¶ 49. Thus, under Mennonite, "mail or other means as certain to ensure actual notice" was a Constitutional "**minimum**." Id.

The City tries to evade this Mennonite problem. The City stresses that Mennonite required "notice by mail *or other means*[.]" Dkt. 96 at 10. The City thinks that notice by posting qualifies as "other means". Id. But that's not a tenable reading of Mennonite. Indeed, the City ignores that **in Mennonite the Court rejected the government's notice by "*posting*[.]"** Mennonite at 799.

The Court did not reject notice by posting but then at the same time require "notice by mail or other means [like posting]"--as the City suggests. Thus, the City's preferred reading of Mennonite ignores the facts of that case.

In Mennonite the government seized and sold a property for failure to pay property taxes. Id. at 792. The government **attempted *notice by posting*** and by publication to notify interested parties. Id. at 793. The Court held that the government's notice by *posting* and publication was insufficient as to the mortgagee. Id. at 800. That's because the mortgagee's name and address were ascertainable. Id. at 798. After all, the mortgage was recorded with the County Recorder's office. Id. at 792. But, the government failed to look up those publicly available records to ascertain the name and address of the mortgagee. Id. at 798.

Because "the address could have been ascertained by reasonably diligent efforts" the Mennonite Court held that ***posting* was an insufficient method** of notice. Id. at 798 n.4. Thus, the City's reading of Mennonite is strange. The City reads Mennonite to require "notice by mail or other means [like posting]". Dkt. 96 at 10. But, that doesn't make sense. Mennonite *rejected notice by posting* because a "name and an address was available." Id. at 800.

The City's preferred reading of Mennonite *also* ignores that Mennonite reflects a broader principle under the Mullane-Jones case law. Dkt 96 at 10. "Leading cases like Mullane contain general statements that **notice by posting** or publication ***only* suffices** where claimants are otherwise unknown[.] Lombard v. United States, 356 F.3d 151, 155-156 (2004). But, when a name or an address is ascertainable, notice by mail sets the constitutional floor. See e.g. Schroeder v. New York, 371 U.S. 208, 212-213 (1962). (Rejecting notice by publication and by posting as "**not enough with respect to a person whose name and address are known or very easily ascertainable**[.]").

It is within this context, that <u>Mennonite</u> rejected notice by posting as to those whose name and address "could have been ascertained by reasonably diligent efforts." <u>Mennonite</u> at 798 n.4. Thus, the City's misreading of <u>Mennonite</u> does not resolve the <u>Mennonite</u> problem here. Indeed, the facts of *this* case present a worse problem than in <u>Mennonite</u>.  In <u>Mennonite</u>, the Supreme Court faulted the government for ignoring *<u>one</u>* publicly available source of information. <u>Id.</u> at 792 ("The mortgage was recorded in the Elkhart County Recorder's Office").

Here, the City ignored *<u>two</u>* independent sources of contact information. Dkt. 93 ¶ 31; ¶ 33.

<u>First</u>, there was the car's registration, which made the mailing address ascertainable. Indeed, the City **actually ascertained the mailing address**. Dkt. 93 ¶ 49. But it only did so *after* the tow. <u>Id.</u> Given the ascertainability of a mailing address, sole reliance on posting was insufficient, just as in <u>Mennonite</u>.

<u>Second</u>, Plaintiff's contact information was *also* ascertainable via Parking Kitty. Plaintiff was required to provide his contact information when registering his car with the City's parking app. Dkt. 93 ¶ 9; ¶ 31. And the record demonstrates that this Parking Kitty information was ascertainable. Indeed, the record shows that the City occasionally obtains Parking Kitty contact information. Dkt. 93 ¶ 5. ("Passport does not *regularly* share user phone numbers, email addresses, or other contact information with the City."). In <u>Mennonite</u> the Court didn't ask whether the County Recorder's office *regularly* shared that information with the government. Rather, the pertinent question was whether the information "**could have been ascertained by reasonably diligent efforts**" by the Government. <u>Mennonite</u> at 798 n.4. Here, there is nothing in the record to suggest that the City could not have ascertained this contact information here had it made such efforts.

In short, the City has a <u>Mennonite</u> problem, but no constitutionally sufficient answer.[2]

### C.   *The City's position has a* Jones *problem.*

The

The City's sole reliance on the method of posting also has a <u>Jones</u> problem.

In the present case, there was good reason to suspect that Plaintiff was not receiving the City's attempts at notice. Over the course of a week, the parking enforcement officer piled eight different postings on Plaintiff's windshield. Dkt. 93 ¶¶ 42-45. Plaintiff received none of them. Dkt. 93 at ¶48. And, that was apparent:

---

[2] The City also argues that <u>Mennonite</u> only applies to situations involving a "final disposition of property[.]" Dkt. 96 at 10. But that's false. "Due process strictures must be met though the deprivation be temporary." <u>Stypmann v. City of San Francisco</u>, 557 F.2d 1338, 1342 (9th Cir. 1977); see also <u>Fuentes v. Shevin</u>, 407 U.S. 67, 85 (1972) ("well settled that a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment'"). Indeed, the Ninth Circuit has applied the <u>Mullane</u>-<u>Jones</u> test to a *temporary* "suspension" of a pilot's license. <u>Chin Yi Tu v. NTSB</u>, 470 F.3d 941, 944 (9th Cir. 2006).

In short, just as with any other property deprivation, the government must satisfy <u>Mullane</u>-<u>Jones</u> before the car is towed. <u>Grimm v. City of Portland</u>, 971 F.3d 1060, 1063 (Due process requires that individualized notice be given **before an illegally parked car is towed**[.]")



Dkt. 93-1 at 35 (top-right photograph).

The parking enforcement officer mechanically placed posting-after-posting "on the exterior of Plaintiff's windshield _on top of the previously issued citations_" Dkt. 93 ¶¶ 43-45. Day after day, over the course of a week, the postings piled up and the car never moved. Id. And, it's undisputed that Plaintiff never saw or received any of these postings. Dkt. 93 at ¶48.

These facts create a <u>Jones</u> problem for the City's postings.

In <u>Jones</u>, the Supreme Court held that when attempting notice, if the government has "**good reason to suspect**" that its earlier attempts at notice did not work then it must "**take additional steps** to effect notice" <u>Jones</u>, 547 U.S. at 230. The Court made clear that this obligation applies _even if_ the initial attempts at notice had been reasonable. <u>Id</u>. Specifically the Court clarified:

> Although the State may have made a reasonable calculation of how to reach
>
> Jones, it had **good reason to suspect** when the notice was returned that Jones was
>
> **no better off than if the notice had never been sent.** Deciding to take no further

action is not what someone "desirous of actually informing" Jones would do; such

a person would take **further reasonable steps if any were available.**

Jones v. Flowers, 547 U.S. 220, 230

In Jones, a property owner failed to pay his taxes. Jones at 223. He also failed to keep his

address updated, as required by Arkansas law. Id. at 231 (citing Ark. Code Ann. § 26-35-705

(1997)). Because Jones failed to pay his taxes, the government sold his home in a tax sale. Id. at

223.

Prior to doing so, the government made multiple attempts to notify Jones via certified

mail. Id. Indeed, the government mailed notice "to an address that Jones provided and had a legal

obligation to keep updated." Id at 231. But Jones had moved and failed to keep his address up-to-

date despite a "legal obligation" to do so. Id. at 223 and 231. Both times the certified mail was

returned "unclaimed." Id. at 224. When there was "good reason to suspect" that Jones was "no

better off than if the notice had never been sent", the government failed to try *any other methods*

of notice. Id. at 230. The Supreme Court concluded that such notice was insufficient. Id. Even if

it was "reasonable" that the government sent mail to Jones at his legally registered address, when

there was good reason to suspect it hadn't worked, the government had to "take further

reasonable steps *if any were available*." Id.

Here the City's postings have a Jones problem. There was good reason to suspect that

Plaintiff was not receiving the City's postings. Under Jones, that triggered an obligation to take

"**further reasonable steps if any were available.**" Jones v. Flowers, 547 U.S. 220, 230.

The City tries to evade this Jones problem.

First, it argues that there was "no reason to believe that Plaintiff did not receive the notice." Dkt. 96 at 5. Thus, the City tries to argue that the Jones obligation was not even triggered. But that's not true.

It's undisputed that Plaintiff did not see the tickets. Dkt. 93 ¶ 48. The City's speculations about why the postings were not being received are a red herring. Dkt. 96 at 17. Indeed, the Jones test is not an invitation to start conjecturing about all the reasons notice may not have been received.

Rather it asks a pragmatic question: Is there *good reason to suspect* that Plaintiff is "no better off than if the notice had never been sent." Jones at 230.

In answering that question, the City takes an extreme position. The City's position is, given the facts *in this case*, there was **no good reason to suspect** that Plaintiff did not receive the City's notice. Such a position requires this Court to ignore:

- Seven postings piled up over the course of seven days, Dkt. 93 ¶¶ 42-45.;

- A missing warning placard, Dkt. 96 at 17, ECF 22-1, ¶ 13; and

- The stipulated facts of this case, Dkt. 93.

Thus, there was good reason to suspect that the postings were not being received.

Because there was good reason to suspect that the postings were not being received, the Jones bright-line obligation was triggered.

Once that bright-line obligation is triggered, Jones requires the government to "take further reasonable steps **if any were available**." Jones at 230. Indeed, under Jones, the City can only prevail here if there were **no** other steps "available" to effectuate notice. Id.

The City asserts that this Court need not examine alternative forms of notice because every other form of notice other than posting was "either unavailable or impractical." Dkt 96 at 17. But, such a position is absurd.

To start, the mail was available here. Indeed, the City used the mail *after the tow*. Dkt. 93 ¶ 49.

Next, the City's extreme position would require this Court to ignore the Ninth Circuit. In its opinion, Ninth Circuit expressly asked this Court to address whether providing "**electronic notice through *Portland's* parking app**" would be "one such reasonable step" under Jones.

The City argues that Parking Kitty is impracticable because it is operated by a third-party. Dkt 96 at 18 citing Dkt 93 ¶ 14. But the City's argument falls flat. The City cannot skirt its constitutional obligations because it contracts with third-parties. Indeed, there are a number of examples where a government uses a third-party it does not control to provide notice.

For example, in Jones the government used the mail to send notice.Jones, 547 U.S. at 224. In Jones, the Commissioner of State lands did not use the mail because his department owned it. Indeed, the federal mail is a third-party that he used to effectuate notice.

Accordingly, the government does not disqualify the use of the telephone as a method of notice because it does not own the phone service.

Even the Ninth Circuit has required the use of third-party entities in the context of notice. Indeed, the Ninth Circuit noted that to effectuate notice for Rule 23 one "could have been electronically disseminated through social media or postings on any relevant online message boards" Roes v. SFBSC Mgmt., LLC, 944 F.3d 1035, 1047 (9th Cir. 2019).

Here too, the fact that Parking Kitty is run by a third-party does not disqualify it as a method of notice. Indeed, the City's logic is faulty. By virtue of being run and operated by a third-party does not constitutionally disqualify a method of notice. Thus, the City cannot construct a partition between itself and Parking Kitty. As <u>Jones</u> requires, the City was obligated to consider unique information about Plaintiff. And, once it had reason to suspect that its attempts at notice were not working, it was obligated to try something else.

Thus, to adopt the City's position, this Court would be required to say that:

- An in-app notification was not an available method of notice (despite the fact that the City had already been sending Plaintiff in-app notifications) Dkt 93 ¶ 36;

- An email was not an available method of notice (even though cities like Boston have offered tow-related emails) Dkt 98 at 25;

- A phone call was not an available method of pre-tow notice (despite the fact that the City could have ascertained Plaintiff's phone number *and* that Portland Police Bureau called about tows during the Covid 19 pandemic) Dkt 98-1 at 4; and

- The mail was not an available method of pre-tow notice (**despite the fact that the City mailed a letter *after* the tow**) Dkt 93 ¶ 49.

If the Court agrees that attempting *any one of those alternative methods* of notice would result in heroic or herculean efforts, then it can find that the City did not have a <u>Jones</u> problem.

**IV.**    <u>**Posting was Not the Best Notice Practicable Here.**</u>

Plaintiff's motion for summary judgment explained that the <u>Mullane</u>-<u>Jones</u> standard requires the "**best notice practicable** under the circumstances." Dkt. 95 at 16-19. Plaintiff's motion also demonstrated that the City fell far short of that standard given the "numerous methods available to attempt pre-tow notice" here. <u>Id.</u>; <u>see also</u> Dkt. 98 at 21-27 (Section I.A.ii in the opposition).

The City disagrees. The City argues, contrary to statements by the U.S. Supreme Court and by the Ninth Circuit, that <u>Mullane</u>-<u>Jones</u> does not require the best notice practicable. Dkt. 96 at 5, 8. And, the City maintains that it *did* provide the best notice practicable. Dkt. 96 at 16 ("[T]here is no evidence that placing notice on Plaintiff's vehicle was not the best practicable notice under the circumstances.")

The City is wrong.

<u>*First*</u>, the City's opposition claims that "Plaintiff ignores that the cited language [about best practicable notice] only appears in class action cases." Dkt. 96 at 15. That's simply false. Plaintiff's motion **expressly acknowledged** that the language about best practicable notice was stated in the "**context of Rule 23's notice of class actions**." Dkt. 95 at 16. The City's opposition is just plainly false in this regard.

<u>*Second*</u>, the City overlooks that the **nothing in the cited cases** predicates the "best practicable notice" requirement upon a case being a class action. <u>See generally</u> <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797 (1985); <u>Silber v. Mabon</u>, 957 F.2d 697 (9th Cir. 1992); <u>In re Drexel Burnham Lambert Grp.</u>, 995 F.2d 1138 (2d Cir. 1993). Rather, these cases clearly indicate that the requirement of the best practicable notice flows from the "Due Process Clause" or from "<u>Mullane</u>" itself—not some rule of class actions. <u>Shutts</u>, 472 U.S. at 812 ("<u>Mullane</u>"); <u>Silber</u>, 957 F.2d at 700 ("<u>Mullane</u>"); <u>Drexel</u>, 995 F.2d at 1144 ("Due Process Clause").

___Third___, as the City entirely ignores, the Courts of Appeals have expressly confirmed that **the** Mullane-Jones **"standard is** _coextensive_ **with the requirements of Fed. R. Civ. P. 23(c)(2)**[.]" Dkt. 95 at 16 (quoting Fager v.CenturyLink Communs., LLC, 854 F.3d 1167, 1171 (10th Cir. 2016)).   Thus, because the Mullane-Jones standard is "**coextensive**"[3] with the requirements of notice for class actions, the City is making a distinction without a difference: notice for class actions must be the "best notice practicable" ___and___ notice under Mullane-Jones must be the best notice practicable.  As the Ninth Circuit itself has stated, the "best notice practicable under the circumstances" has been "the standard required since Mullane[.]"  Silber, 957 F.2d at 700; Mullane at 317 ("best notice practicable"). The City does not explain why it thinks this Court should just ignore the Courts of Appeals in this respect.

Indeed, the City's Opposition merely observes that these clarifications of law were made in class-action cases, but identifies nothing about the holding or rationale that would distinguish them.  The City's opposition does nothing to undermine the validity of the point being made by these appellate authorities: The Mullane-Jones standard and Rule 23's requirement of the best notice practicable are "**coextensive**".   Thus, Mullane-Jones ___does___ require the best notice practicable—as Plaintiff's motion stated.

___Fourth___, the Advisory Committee to Rule 23 confirm what the cases say.  Rule 23(c)(2)'s best-notice-practicable  requirement "_is_ drawing from Mullane[.]" Dkt. 96 at 15.  After all, as the Rule's notes state, the best-notice-practicable requirement was "designed to fulfill the **requirements of due process**[.]"  Advisory Comm. Notes to Rule 23 (1996 Amendments) (citing Mullane,).  The point is that class-action and due-process notice are coextensive.

---

[3] Coextensive means "corresponding exactly in extent."  NEW OXFORD AMERICAN DICTIONARY 331 (2001).

**_Fifth_**, _even if_ the City were correct that the best notice practicable is not required, it would still be instructive as to what someone "desirous of actually informing" would try. Mullane, 339 U.S. at 315; Dkt. 95 at 18. After all, someone desirous of actually informing would reasonably choose the best notice practicable—absent "obstacles" that would justify resorting to lesser means. Mullane, 339 U.S. at 314.

**_Sixth_**, it is therefore instructive to consider the best practicable methods available—and what reasons the City had for not using those methods. See Greene, 456 U.S. at 454 ("[T]he notice provided must be tested" against "feasible and customary alternatives and supplements[.]"). It's certainly important to consider whether the City's sole reliance upon paper posting "**would satisfy a prudent man of business**" in an era of ubiquitous and automated texts, calls, emails, and app alerts (or whether this would be remotely reasonable in a comparable context of the business world). Mullane, 339 U.S. at 319-320 ("In some situations the law requires greater precautions in its proceedings than the business world accepts for its own purposes. In few, if any, will it be satisfied with less.").[4]

In sum, it is clear that the City is plainly mistaken both about best-practicable notice requirement and, in turn, about its constitutional obligations under the Mullane-Jones standard. This requirement that the City failed to fulfill is yet another reason that the City's motion for summary judgment should be denied and Plaintiff's motion for summary judgment should be granted.

---

[4] Indeed, the City arguably concedes that the best practicable notice is at least "part of addressing" the Mullane-Jones analysis. The City states that "to the extent that [Rule 23(c)(2)'s best notice practicable requirement] is drawing from Mullane, it is part of addressing the fundamental question of whether the notice was reasonably calculated to provide the owner with actual notice." Dkt. 96 at 15. Plaintiff doesn't disagree with this point that the best notice practicable is part and parcel "of addressing the fundamental question of whether the notice was reasonably calculated[.]" Dkt. 96 at 15.

* * * * *

Moreover, the City claims that it *did* provide the best notice practicable.  Dkt. 96 at 16 ("no evidence that placing notice on Plaintiff's vehicle was not the best practicable notice under the circumstances.").

That's not true.  The City's unsupported assertion is not serious—that paper posting was the best way to reach Plaintiff without attempting supplement via an email, text message, phone call, or app notification (which would have immediately reach him no matter where he was) or via mail (which was used after the tow and *did* reach his address).  Given that the City was required to consider "alternatives *and supplements*" to the paper posting, see Greene, 456 U.S. at 454, there is no serious suggestion that the City's exclusive reliance upon the paper posting was the best notice practicable.

Importantly, Plaintiff's car was registered at the time of the tow.  Dkt. 93 at 6 ¶ 33. Posting a warning sticker on a registered car is plainly **not** the best practicable notice—and it's certainly not sufficient under Mullane-Jones.  For a registered car the best practicable notice would involve, at the very least, using the registration to track down an address.  See Propert v. District of Columbia, 948 F.2d 1327, 1334-1336 (D.C. Cir. 1991)("[T]he vehicle is properly licensed or registered and, therefore, the owner's identity may be easily ascertained."); Valdez v. Ottawa, 105 Ill. App. 3d 972, 976 ("The auto was currently registered and the police had the plaintiffs' name and address.").

So too here.  Here, "the vehicle *was* properly registered at the time of the tow."  Grimm, 971 F.3d at 1065 (emphasis in original).  "Portland therefore could obtain current information" such as a mailing address.  Id.  And, the City itself acknowledges that notice by mail offered "another step to protect Plaintiff's interest." Dkt. 96 at 13.

Yet, the City waited until *after* it towed to look up an address and try to mail any notice. Thus, the City had essentially admitted it did not try the best notice practicable. So no, posting was not the best practicable notice here.

Indeed, the City *itself* identifies two reasons why posting was inferior to other options. First, the City identifies the common-sense fact that when a vehicle is towed "any posted notice would no longer be likely to provide actual notice." Dkt 96 at 17-18. That's one obvious reason why mail (or any of the other available options) would have been a vastly superior method of attempting notice.

Second, leaving a posting outside on a public street downtown exposes the posting to all sorts of precarities. Cf. Greene, 456 U.S. at 453 (noting risk posting is taken down or removed). Here, that's not some abstract hypothetical risk. The City's Opposition notes that "the Warning Placard, which provided express notice of the tow, apparently **did not remain on the windshield**." Dkt. 96 at 17 (citing Dkt. 22-1 at 4-5 ¶ 13). And, it's undisputed that Plaintiff **never saw and never received** the warning placard before it went missing. Dkt. 93 at 9 ¶ 48. Thus, posting was a far cry from the best practicable notice.

To the contrary, the best practicable notice would have been using *any* of the information that Plaintiff provided when registering his car with the City's parking app. The City tries to avoid considering this information by wildly overstating the record and making unsupported assertions. For example, the City makes the ***unsupported*** **assertion** that "telephone, email, mobile parking app, and Internet" were all methods that "were not available to provide pre-tow notice[.]" Dkt. 96 at 18 (citing Dkt. 93 at 4 ¶ 14). The facts do not support the City's assertion. Indeed, this record cite **is highly misleading.** This record cite, Dkt. 93 at 4 ¶ 14, **doesn't** **say** *anything* about whether telephone, email, and internet would be unavailable to provide pre-tow notice.

Rather, Paragraph 14 of the stipulated facts simply states that "[t]he Parking Kitty app is operated by a third-party, Passport. Parking Kitty is not currently configured to enable the City to ***push notifications***" about tows. Dkt. 93 at 4 ¶ 14. That doesn't show that telephone, email, and Internet are all unavailable methods here. And it doesn't show that posting was the best practicable notice. All it says is that an app is nor currently configured to provide push notifications—*not* that the City could not access that information at all.

The City also simply ignores all the information Plaintiff was required to provide when registering with the City's parking app. Dkt. 96 at 18. The best notice practicable would have involved using *that* Parking Kitty registration information. And, the record does not demonstrate that there were "impossible or impractical obstacles" precluding the use of that information here. Mullane, 339 U.S. at 314. Nor is there *any* record evidence that all this information was inaccessible despite "reasonably diligent efforts" by the City to access it. Mennonite, 462 U.S. at 804.

Ultimately, the record is entirely devoid of *any* "diligent efforts" by the City to ascertain that contact information to provide the best notice practicable. Given that it's the *City's* obligation to ascertain contact information and then use that contact information to provide the best notice practicable, the City failed in it legal obligations.

* * * * *

Mullane-Jones requires the best practicable notice. That's what someone who is actually desirous of getting in touch would do. Here, the City fell far short of that Constitutional obligation. Thus, the Court should deny the City's motion for summary judgment and should grant Plaintiff's motion for summary judgment.

**V.** **Plaintiff Was Towed Under the City's Unconstitutional No-Notice and Post-Tow Notice Ordinaces.**

Plaintiff's Motion explained that the City's towing ordinances "Towing Without

Prior Notice" and towing with only post-tow notice were unconstitutional. Dkt. 95 at 8. "Notice

After" (Portland, Or., City Code ch. 16.30 § 220); and Towing with Post-Tow Notice (id. § 320).

That's because the City must provide individualized, "pre-towing notice" when towing cars.

Grimm v. City of Portland, 971 F.3d 1060, 1064 (9th Cir. 2020). This "requirement that the

government provide individualized pre-tow notice" applies here. Id. at 1063

Here, it is undisputed that Mr. Grimm was towed pursuant to these unconstitutional

ordinances and procedures. Dkt 93 ¶ Accordingly, Plaintiff sought declaratory relief that the City's

towing plaintiff under such unconstitutional ordinances . Dkt. 95 at 10.

The City's Opposition argues that declaratory relief is not available here. The City believes

that "The City's towing ordinances are not relevant to Plaintiff's claim." Dkt. 96 at 5. Specifically,

the City argues that Plaintiff's request for declaratory relief "should be denied for two independent

reasons." Dkt. 96 at 6.

- First, the City argues that "Plaintiff has not stated a Monell claim with respect to

  these two City codes." Id.

- Second, the City argues that "Plaintiff has presented no evidence that he has

  standing for *prospective* relief." Id.

The City's second argument is entirely unresponsive. Plaintiff is **not** seeking *prospective* relief.

Plaintiff is seeking *retrospective* relief for the City's tow of his vehicle . Specifically, Plaintiff

wants retrospective declaratory relief that the unconstitutional tow ordinances, under which

Plaintiff was towed. Thus, the City simply overlooks the critical distinction "between prospective

and retrospective declaratory judgment[.]" See Nat'l Audubon Soc'y v. Davis, 307 F.3d 835, 847

2-ER-122

n.5 (9th Cir. 2002) (emphasis added). The City's argument that Plaintiff does not have standing for prospective relief does not respond to his request for retrospective declaratory relief, in addition to the damages request for the constitutional violations.

As to the City's first argument, the City is confused. The City states that there is no Monell claim here. Dkt. 96 at 6. Specifically, the City believes that Plaintiff cannot show the "causation" element of a Monell claim. Dkt. 96 at 6 ("Regardless of whether Plaintiff can demonstrate the first three elements of a Monell claim, Plaintiff cannot show that PCC 16.20.220 or PCC 16.30.320 were the moving force behind Plaintiff's alleged deprivation.").

But it is undisputed that the tow procedures here comported with City policy and code. Dkt. 66 ¶18 ; Dkt. 66 ¶31 ("per policy") PCC 16.30.100.

The City also believes that causation is lacking because it unsupported claims tha "Plaintiff has stipulated that the City did provide pre-tow notice, regardless of the City code that he cites." Dkt. 96 at 6. Indeed, the City repeatedly claims that "Plaintiff has stipulated that the City did provide pre-tow notice, regardless of the City code that he cites." Dkt. 96 at 6. **Tellingly, the City does not cite a single stipulated fact to support that assertion.** See Dkt. 96 at 6.  Regardless, there is no stipulation to that effect. The City is simply confused. The parties did not stipulate that the City provided pre-tow notice. All the stipulated facts acknowledge is that the City left postings on the car. Dkt. 93 ¶ 41-45

* * * * *

In short, the City provides two independent reasons why it believes declaratory relief is not available here. Neither is availing.  Accordingly, this Court should respectfully grant Plaintiff's request for retrospective declaratory relief.

## CONCLUSION

For the reasons discussed above, this Court is respectfully requested to deny the City's

Motion for Summary Judgment and grant Plaintiff's Motion for Summary Judgment.


Dated: November 21, 2022                          Respectfully submitted,

                                                  */s/ Megan Keenan*
                                                  Megan Keenan (OSB No. 204657)
                                                  INFORMATION DIGNITY ALLIANCE
                                                  P.O. Box 8684
                                                  Portland, Oregon 97207
                                                  Phone: (925) 330-0359
                                                  Megan@InformationDignityAlliance.org

**CERTIFICATE OF COMPLIANCE**

This Motion complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains **10,577** words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.


Dated: November 21, 2022         /s/ *Megan Keenan*
                                       Megan Keenan

**CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing on:

      Ms. Naomi Sheffield
      Sr. Deputy City Attorney
      OFFICE OF CITY ATTORNEY
      1221 Southwest Fourth Avenue
      Suite 430
      Portland, Oregon 97204
      Email: Naomi.Sheffield@PortlandOregon.Gov
      Telephone: (503) 823-3122
      Facsimile: (503) 823-3089

      *Of Attorney for City of Portland*

      Mr. Matthew Lowe
      Shareholder
      JORDAN RAMIS PC
      Two Centerpointe Drive
      6th Floor
      Lake Oswego, Oregon 97035
      Email: Matthew.Lowe@JordanRamis.com
      Telephone: (503) 598-7070
      Facsimile: (503) 598-7373

      *Of Attorney for Retriever Towing*

by **electronic filing** in CM/ECF.

Dated: November 21, 2022        /s/ *Megan Keenan*
                         Megan Keenan

NAOMI SHEFFIELD, OSB 170601
Senior Deputy Attorney
Email: naomi.sheffield@portlandoregon.gov
Office of City Attorney
1221 SW 4th Avenue, Room 430
Portland, OR 97204
Telephone: (503) 823-9969
Facsimile: (503) 823-3089
*Of Attorneys for Defendant City of Portland*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **ANDREW GRIMM,** | |
| **PLAINTIFF,** | **3:18-cv-00183-MO** |
| v. | **DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |
| **CITY OF PORTLAND,** | |
| **DEFENDANT.** | **Oral Argument Requested** |

Page i – DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.    **INTRODUCTION**.................................................................................... 1

II.    **ARGUMENT** ....................................................................................... 1

A.   **The City's argument does not rely on *Mathews* nor does it misapply the *Mullane-Jones* test.** ...................................................................................................... 2

   1.   **The City did not apply *Mathews* in its Motion for Summary Judgment.** .................... 3

   2.   **Plaintiff seeks to add "dispositive" elements to the *Mullane-Jones* test that are not there.**........................................................................................................ 3

     a.   **There is no precedent requiring notice by mail.** ........................................ 3

     b.   **Plaintiff's reliance on the phrase "best practicable notice" is not found in the *Mullane-Jones* test, but also does not change the outcome in this case.**........................... 6

   3.   **Plaintiff repeatedly mischaracterizes the City's argument.**.......................................... 9

B.   **The City's pre-tow notice was reasonably calculated to apprise interested parties that the vehicle would be towed.** ................................................................................... 11

C.   **The City did not become aware that Plaintiff had not received notice and there were no other reasonably available alternative forms of notice.** ...................................................... 14

III.  **CONCLUSION** ................................................................................... 17

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

2-ER-128

# TABLE OF AUTHORITIES

## Federal Cases

*Aero-Medical v. United States*,
 23 F.3d 328 (10th Cir. 1994) ................................................... 4

*Clement v. City of Glendale*,
 518 F.3d 1090 (9th Cir. 2008) ........................................... 3, 5, 11

*De Fontbrune v. Wofsy*,
 39 F.4th 1214 (9th Cir. 2022) ................................................. 14

*Dusenbery v. United States*,
 534 U.S. 161 (2002) ........................................................ 7, 12

*Greene v. Lindsey*,
 456 U.S. 444 (1982) .................................................. 4, 6, 13, 14

*Grimm v. City of Portland*,
 971 F.3d 1060 (9th Cir. 2020) ............................................ 6, 9, 13

*Intercontinental Indus. Corp. v. Luo*,
 No. CV 10-4174-JST (Ex.), 2011 WL 221880 (C.D. Cal. Jan. 20, 2011) ............... 4

*Jones v. Flowers*,
 547 U.S. 220 (2006) ..................................................... passim

*Lombard v. United States*,
 356 F.3d 151 (1st Cir. 2004) .................................................. 4

*Mathews v. Eldridge*,
 424 U.S. 319 (1976) .......................................................... 2

*Mennonite Bd. of Missions v. Adams*,
 462 U.S. 791 (1983) ........................................................ 5, 6

*Mullane v. Central Hanover Bank & Trust Co.*,
 339 U.S. 306 (1950) ..................................................... 2, 8, 13

*North Laramie Land Co. v. Hoffman*,
 268 U.S. 276 (1925) ......................................................... 13

*Propert v. District of Columbia*,
 948 F.2d 1327 (D.C. Cir. 1991) ............................................... 5

*Riley v. City and Cty. of San Francisco*,
 No. C 10-01300 SI, 2010 WL 5069697 (N.D. Cal. Dec. 7, 2010) ................... 3

*Rossi v. Trans World Airlines, Inc.*,
 507 F.2d 404 (9th Cir. 1974) .................................................. 7

*Schroeder v. City of New York*,
 371 U.S. 208 (1962) .......................................................... 4

*Scofield v. City of Hillsborough*,
 862 F.2d 759 (9th Cir. 1988) .................................................. 3

*SFBSC Mgmt., LLC*,
 944 F.3d 1035 (9th Cir. 2019) ................................................ 10

*Taylor v. Yee*,
 780 F.3d 928 (9th Cir. 2015) ............................................... 6, 14

Page iii – TABLE OF AUTHORITIES

2-ER-129

*Tulsa Professional Collection Servs., Inc. v. Pope*,
  485 U.S. 478 ............................................................................................... 4
*United States v. Davenport*,
  668 F.3d 1316 (11th Cir. 2012) .................................................................. 6
*Walker v. City of Hutschinson*,
  352 U.S. 112 (1956) .............................................................................. 6, 10
*Yi Tu v. Nat'l Transp. Safety Bd.*,
  470 F.3d 941 (9th Cir. 2006) ...................................................................... 6

**State Cases**

*Ayers v. Landow*,
  666 A.2d 51 (D.C. 1995) ............................................................................ 4
*Mitchell v. MAP Res., Inc.*,
  649 S.W.3d 180 (Tex. 2022) ....................................................................... 4
*Valdez v. City of Ottawa*,
  434 N.E.2d 1192 (Ill. App. Ct. 1982) ........................................................ 5
*Wenatchee Reclamation Dist. .v. Mustell*,
  684 P.2d 1275 (Wash. App. 1984) ............................................................. 4

**Federal Rules**

FRCP 23(c)(2)(B) ........................................................................................ 10

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

Defendant City of Portland ("City") replies in support of its Motion for Summary

Judgment (ECF 94) as follows:

## I.       INTRODUCTION

Rather than working through the test created by *Mullane-Jones*, Plaintiff insists that there

are multiple "bright-line" rules and dispositive issues to decide this case. (Pl.'s Resp., ECF 98, at

16, 17, 18, 19,  21, 22, 28, 44, 45, 47, 48[1]). That is incorrect. Instead, the Court is tasked with a

three-step analysis to determine whether the City's notice satisfied due process: (1) was the

City's "notice reasonably calculated, under all the circumstances, to apprise interested parties of

the pendency of the action and afford them an opportunity to present their objections"; (2) did

the City "become[] aware prior to the taking that its attempt at notice ha[d] failed"; and (3) if the

City became aware that notice was ineffective, were there "additional reasonable steps" available

to notify Plaintiff, that were practicable to take. *Jones v. Flowers*, 547 U.S. 220, 227, 234 (2006).

The City's notice in this case—a Warning Placard placed on Plaintiff's vehicle warning

that it would be towed—met the City's due process obligations. Because the action noticed was a

tow, this windshield notice was particularly well calculated to give an interested party the

opportunity to move the vehicle before it was towed. The City was never made aware, nor did it

have a reason to suspect that Plaintiff did not receive this notice. And even if it thought notice

had been ineffective, there were no other reasonably practicable means to quickly and effectively

provide notice that would have given Plaintiff a chance to intervene to prevent the vehicle from

being towed. Because the City's actions met the requirements for due process set forth in

*Mullane-Jones*, the Court should grant the City's Motion for Summary Judgment.

## II.      ARGUMENT

Plaintiff misstates that state court decisions and decisions from other circuits are binding

---

[1] All cites to the Court's record identify the relevant paragraph number or if there is no paragraph
number, the pin cite is to the ECF page numbers.

Page  1  – DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS MOTION FOR
              SUMMARY JUDGMENT

precedent on this Court. He does this while also mischaracterizing the holdings in these cases. Plaintiff also repeatedly insists that the City relied on *Mathews v. Eldridge*, 424 U.S. 319 (1976) or misrepresented the requirements under *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) and *Jones v. Flowers*. But none of this is accurate. The City outlined the tests set forth by *Mullane* and *Jones*, and analyzed the facts in the present case under those tests.

Additionally, Plaintiff looks at dicta from a handful of cases, cites it as controlling, but then fails to reasonably apply it. Plaintiff asks the Court to find that the City's notice, which was placed on Plaintiff's windshield two days prior to the tow and warned that his vehicle would be towed, was inadequate. Plaintiff insists that a better or more likely way to successfully provide notice of the tow was to send notice by mail to addresses over a thousand miles away from Portland. Plaintiff also insists that the City should have emailed Plaintiff or contacted him by phone, despite the fact that the City did not have this contact information. Plaintiff's varied arguments do not support his position. The City's notice satisfied the requirements of *Mullane-Jones*, and therefore satisfied due process.

### A. The City's argument does not rely on *Mathews* nor does it misapply the *Mullane-Jones* test.

Plaintiff dedicates the majority of his response to scattershot challenges to the City's arguments that either misinterpret the City's position, the facts of the case, or the relevant law. Plaintiff claims that the City has urged the Court to ignore *Mullane-Jones* and instead apply the *Mathews* balancing test. The City does not urge the Court to apply *Mathews*. Plaintiff also contends that the Court should apply what he incorrectly describes as a series of bright-line rules to determine the outcome of this case. (Pl.'s Resp., ECF 98, at 16-22). The Court should not accept this invitation. Lastly, Plaintiff mischaracterizes the City's arguments or the facts of this case. The City's argument is quite simple—the Court should apply the three part analysis developed under *Mullane* and *Jones.*

Page 2 – DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS MOTION FOR
        SUMMARY JUDGMENT

2-ER-132

1.     **The City did not apply *Mathews* in its Motion for Summary Judgment.**

Plaintiff incorrectly claims that the City relies on the *Mathews* test. (Pl.'s Resp., ECF 98, at 13, 20, 21). The City cited two cases,[2] both of which remain good law. (City's Mot., ECF 94, at 12). *Clement v. City of Glendale*, 518 F.3d 1090 (9th Cir. 2008) and *Riley v. City and Cty. of San Francisco*, No. C 10-01300 SI, 2010 WL 5069697 (N.D. Cal. Dec. 7, 2010) are appropriately relied on for the City's assertion that a tow warning placed on a vehicle prior to the tow is reasonably calculated notice. 518 F.3d at 1094-95; 2010 WL 5069697, at * 4-6.

While these cases both cite *Mathews*, neither apply the *Mathews* test when explaining that placing a pre-tow warning on a vehicle is both the typical form of notice and is reasonably calculated to provide notice. And these cases appear to be the only two cases in the Ninth Circuit to discuss whether pre-tow notice posted on a vehicle provides reasonably calculated notice of a potential tow. These two cases are certainly relevant, persuasive cases for this Court's consideration. Importantly, the cases acknowledge the commonly accepted practice of giving pre-tow notice by posting it on the vehicle itself.

2.     **Plaintiff seeks to add "dispositive" elements to the *Mullane-Jones* test that are not there.**

a.     **There is no precedent requiring notice by mail.**

Plaintiff maintains that "under binding authority, posting is insufficient where, as here, a mailing address is available." (Pl.'s Resp., ECF 98, at 17). But this assertion ignores that the cases Plaintiff cites are not binding, and mischaracterizes the holdings in those cases. Plaintiff also ignores relevant facts of this case, which demonstrate that mailing notice would have been less, not more, effective than posting on Plaintiff's vehicle. Finally, these cases do not provide

---

[2] The City's citation to *Clement v. City of Glendale*, 518 F.3d 1090, 1094 (9th Cir. 2008) refers to *Scofield v. City of Hillsborough*, 862 F.2d 759, 762-64 (9th Cir. 1988). But the City never cited to *Scofield* in its Motion. *Scofield* relies on *Mathews* because the case evaluated whether notice was required. It did not analyze the adequacy of notice. 862 F.2d at 762-63.

Page  3  – DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

2-ER-133

the absolute or "bright-line" rule that Plaintiff relies upon. (Pl.'s Resp., ECF 98, at 18).

Notably, the majority of cases that Plaintiff cites, from state courts, other circuits, and district courts, are not binding. *See Mitchell v. MAP Res., Inc.*, 649 S.W.3d 180 (Tex. 2022); *Wenatchee Reclamation Dist. .v. Mustell*, 684 P.2d 1275 (Wash. App. 1984); *Lombard v. United States*, 356 F.3d 151, 155-56 (1st Cir. 2004); *Intercontinental Indus. Corp. v. Luo*, No. CV 10-4174-JST (Ex.), 2011 WL 221880 (C.D. Cal. Jan. 20, 2011). Additionally, as previously addressed in the City's Response to Plaintiff's Motion for Summary Judgment, the facts of these cases are very different than the facts in this case. (*See* City's Resp., ECF 96, at 9-14).

Most importantly, none of these cases analyzed posting notice on tangible, movable, property, like a vehicle, that is subject to the relevant deprivation. *See Mitchell*, 649 S.W.3d 180 at 184 ("The taxing authorities that brought the foreclosure suit served Elizabeth and almost 500 other defendants *by posting citation on the courthouse door*" (emphasis added)); *Wenatchee*, 684 P.2d at 1277 (Wash. App. 1984) (considering law that requiring posting or publication of list of delinquent irrigation assessments, and if posted, "treasurer was to publish a list of the places where posted"); *Lombard*, 356 F.3d at 155-56 (publishing notice in local newspaper and posting notices on real property); *Greene v. Lindsey*, 456 U.S. 444, 453 (1982) (posting on apartment door was inadequate when postings were known to be removed by uninterested parties); *Ayers v. Landow*, 666 A.2d 51 (D.C. 1995) (analyzing the posting on an apartment door under *Greene*); *Schroeder v. City of New York*, 371 U.S. 208 (1962) (analyzing the adequacy of posting "22 notices on trees and poles along a seven-or eight-mile stretch of the river in the general vicinity of" the condemned property but not on the property itself).[3] The Court cannot apply conclusions

---

[3] Other cases that Plaintiff cites do not relate to notice by posting at all. *See Intercontinental Indus. Corp.*, 2011 WL 221880, *2 (requesting to serve defendant "through commercial courier and/or publication"); *Aero-Medical v. United States*, 23 F.3d 328, 329 (10th Cir. 1994) (analyzing notice that was mailed and returned undelivered and notice published for three weeks in *USA Today*); *Tulsa Professional Collection Servs., Inc. v. Pope*, 485 U.S. 478, 479 (considering notice by publication).

Page 4 – DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

about the reasonableness of published notice or notice posted at a courthouse to the City's notice in this case. The City did not post pre-tow notice at City Hall, and it did not publish pre-tow notice in *The Oregonian*. Instead, the City posted pre-tow notice on Plaintiff's vehicle. The vehicle that he parked on a downtown street. The vehicle that he knew was parked illegally because his paid parking had expired days earlier. This posting was reasonably calculated to apprise Plaintiff, in these circumstances, that his vehicle would be towed if it was not moved.

Plaintiff's citations to other non-precedential cases related to automobiles are also not applicable. As discussed in the City's Response to Plaintiff's Motion for Summary Judgment, *Valdez v. City of Ottawa*, 434 N.E.2d 1192, 1194 (Ill. App. Ct. 1982), is distinguishable. (City's Resp., ECF 96, at 12). *Propert v. District of Columbia*, 948 F.2d 1327 (D.C. Cir. 1991), is similarly distinguishable. First, the vehicle there, unlike here, "displayed current license plates, a current inspection sticker and a valid parking permit." 948 F.2d at 1328. Additionally, the vehicle was not just towed, but also "immediately destroyed the next day." *Id.* at 1329. These cases are not precedent. And they are contrary to the only discussion of this issue by the Ninth Circuit. *See Clement*, 518 F.3d at 1094-95. However, even if the Court finds them persuasive, they are distinguishable from the facts here, where Plaintiff's vehicle had expired tags, and the City's parking enforcement officer did not have access to current registration information. (ECF 93, at ¶¶ 19, 22).

*Mennonite Bd. of Missions v. Adams*, 462 U.S. 791 (1983), is the only binding case that Plaintiff cites. In Mennonite, the Indiana law at issue provided that prior to a tax sale of real property, "the county auditor must post notice in the county courthouse and publish notice once each week for three consecutive weeks." *Id.* at 793. The Court explained that "[b]ecause they are designed primarily to attract prospective purchasers to the tax sale, publication and posting are unlikely to reach those who, although they have an interest in the property, do not make special efforts to keep abreast of such notices." *Id.* at 799. And importantly, Plaintiff omits relevant

Page 5 – DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS MOTION FOR
        SUMMARY JUDGMENT

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

language when it describes the decision in *Mennonite*. (Pl.'s Resp., ECF 98, at 16). *Mennonite* does not hold that notice by mail is always required. Instead, it explains that "[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition . . ." 462 U.S. at 800. Here, posting notice on Plaintiff's vehicle, the vehicle that was the subject of the tow, was the means most certain to ensure actual notice. *See Jones*, 547 U.S. at 236 ("outside the specific facts of [*Greene*], posting notice on real property is 'a singularly appropriate and effective way of ensuring that a person . . . is actually apprised of proceedings against him.").

Plaintiff asks this Court to ignore any of the facts and circumstances in this case, and to instead apply or create a "bright-line" rule that does not exist. But analysis of whether the City's chosen form of notice was reasonably calculated to provide Plaintiff with actual notice is driven by the facts of this particular case. *Walker v. City of Hutschinson*, 352 U.S. 112, 115 (1956) ("notice required will vary with circumstances and conditions."). It is not appropriate to identify a bright-line rule based on cases with significantly different facts.

> **b.** **Plaintiff's reliance on the phrase "best practicable notice" is not found in the *Mullane-Jones* test, but also does not change the outcome in this case.**

Plaintiff is particularly concerned that the City did not use the term "best practicable notice" in its Motion for Summary Judgment. (Pl.'s Resp. ECF 98, at 21-51). In fact, Plaintiff refers to this terminology as a "bright-line rule" and argues that its application is dispositive to the case. (*Id.* at 21). Interestingly, this language is not used in most of the precedential decisions applying the *Mullane-Jones* test, including *Jones* itself. *See, e.g., Jones*, 547 U.S. 220 (no reference to "best practicable notice"); *see also Greene*, 456 U.S. 444 (same); *Mennonite*, 462 U.S. 791 (same); *Taylor v. Yee*, 780 F.3d 928 (9th Cir. 2015) (same); *Grimm v. City of Portland*, 971 F.3d 1060 (9th Cir. 2020) (same); *Yi Tu v. Nat'l Transp. Safety Bd.*, 470 F.3d 941 (9th Cir. 2006) (same). In fact, one court, applying *Dusenbery*, explained that due process "does not require that an interested party actually receive notice of the [matter], nor does it demand that the

Page 6 – DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

[g]overnment employ the best or most reliable means of ensuring notice." *United States v. Davenport*, 668 F.3d 1316, 1323 (11th Cir. 2012). The most appropriate reading of how courts have used "best notice practicable" is that it is another way to describe the reasonably calculated requirement of *Mullane-Jones*. Regardless, the evidence in the record indicates that posting the Warning Placard on Plaintiff's vehicle was the best practicable notice here.

Plaintiff looks at three other programs for the proposition that these programs provide the best practicable notice for towing.[4] None of these other programs support Plaintiff's position. First, Plaintiff identifies a "Text Before Tow Program" in San Francisco. This program began earlier this year, over four years after Plaintiff's vehicle was towed.[5] And the program, if a person signs up, provides for a text at the time the tow truck is dispatched, so it may give "as few as five minutes" notice.[6] The fact that another city, years later, developed another means of giving notice, does not make the City's notice in this case inadequate. *See Dusenbery v. United States*, 534 U.S. 161, 172 (2002) ("Even if one accepts that the BOP's current procedures improve delivery to some degree, our cases have never held that improvements in the reliability of new procedures necessarily demonstrate the infirmity of those that were replaced.").

Plaintiff also points to two programs that provide post-tow notice and maintains that each is the best notice practicable. (Pl.'s Resp., ECF 98, at 24-25). These references are confusing, as the adequacy of post-tow notice is not at issue in this case. Plaintiff cites to Portland Police Bureau's posted practice to "notify vehicle owners via phone (when possible) and letter if their vehicle has been towed." (*Id*. at 24). This is precisely what occurred here. The City contacted the registered owner, not Plaintiff, after the vehicle was towed. (ECF 93, at ¶ 49). And the City did

---

[4] Plaintiff's citation to each of these other programs relies on hearsay, and should not be considered by the Court. *See Rossi v. Trans World Airlines, Inc*., 507 F.2d 404, 406 (9th Cir. 1974) (court should not consider hearsay statements on summary judgment).
[5] *See* https://www.sfgate.com/local/article/SF-drivers-now-get-text-before-tow-16774009.php.
[6] *See* https://www.sfmta.com/getting-around/drive-park/towed-vehicles/text-tow-program.

Page 7 – DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

2-ER-137

not have Plaintiff's phone number, so it could not provide post-tow notice by phone. (*Id*. at ¶ 20).

Similarly, Boston allows a person to sign-up for email alerts or text alerts for notice "if your vehicle gets involuntarily towed in Boston." (Pl.'s Resp., ECF 98, at 25). These notices are provided within an hour *after* the vehicle is towed. (*Id*.). Plaintiff's position is that "best practicable notice looks like" notifying the owner of the vehicle within an hour of it being towed, rather than prior to the vehicle being towed. (*Id*.). None of the other programs that Plaintiff cites supports his position that the City's notice was not reasonably calculated or was not the best practicable notice in this situation.

The fact that Plaintiff provided his phone number and email address to a third-party, Passport, does not make notification by phone or email practicable to the City. Plaintiff has stipulated that this information—phone numbers and email addresses—was not provided to the City. (ECF 93, at ¶ 20). Plaintiff's repeated assertions that the City should have utilized these means of contacting him appears to simply ignore the stipulated facts. Due process did not require the City to obtain or search for information that it did not have. *See Mullane*, 339 U.S. at 317, ( "Nor do we consider it unreasonable for the State to dispense with more certain notice to those beneficiaries whose interests . . . although they could be discovered upon investigation, do not in due course of business come to knowledge of the common trustee.").

Plaintiff also spends time focusing on push notifications provided by the ParkingKitty application. Again, that application was not developed and is not owned or operated by the City. (ECF 93, at ¶ 5). The ParkingKitty application does not allow the City to send additional, individualized notices, such as tow notice. (*Id.* at ¶ 14). Plaintiff has again ignored the stipulated facts. In doing so, Plaintiff is arguing that to comply with due process the City is required to develop an application or purchase a new application because its current application does not have the capability to send individualized tow notice.

Lastly, Plaintiff again argues that the notice was not the best practicable because the pre-

Page 8 – DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

2-ER-138

tow notice was not mailed. Plaintiff's contention that mailing notice to the owner of an out-of-state registered vehicle at addresses over a thousand miles away was "the best practicable notice" defies common sense. The City sought to get notice to interested parties that the vehicle would be towed. The City used notice that would allow the interested parties to intervene and move the vehicle. Plaintiff's proposed notice by mail, while potentially notifying the registered owners of the tow, would not timely give anyone any opportunity to prevent the vehicle from being towed.

### 3. Plaintiff repeatedly mischaracterizes the City's argument.

Plaintiff devotes four pages to the argument that citations placed on his vehicle did not warn him of a tow. (Pl.'s Resp., ECF 98, at 28-31). But Plaintiff appears to ignore the Warning Placard, which did warn of a tow. The City does not contend or suggest that the repeated citations were pre-tow notice. These citations did provide notice that the vehicle was no longer parked legally, just like the notice sent by ParkingKitty that informed Plaintiff that his parking had expired. (ECF 93, at ¶¶ 10, 11, 36). The City, however, focuses on the Warning Placard because this placard was placed on Plaintiff's vehicle two days prior to the tow, and it did warn that the vehicle would be towed. (*Id*. at ¶ 44). In *Grimm*, the Ninth Circuit did not address the Warning Placard, because it found that the question of whether it was placed on Plaintiff's vehicle remained in dispute. 971 F.3d at 1062, n.2. That is no longer the case.

Plaintiff contends that the City contradicts well-settled law by saying that it did not have to consider unique information that it had about Plaintiff. (Pl.'s Resp., ECF 98, at 14). Not so. The City never took the position that unique information need not be considered. In fact, the City discussed the requirement of considering unique information that would make the government aware that notice was ineffective. (City's Mot., ECF 94, at 17-18). Here, the City did not have unique information that notice to Plaintiff had not been effective. Plaintiff's unknown and unusual behavior of leaving his vehicle parked on a downtown street and not returning, cannot be part of the City's calculation of reasonable notice.

Page 9 – DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Plaintiff states that the City claimed that it provided actual notice to Plaintiff. (Pl.'s Resp., ECF 98, at 32). Again, it did not. Plaintiff relies on the fact that the City referenced the "the actual notice that the City gave Plaintiff"—the Warning Placard on the vehicle. (City's Mot., ECF 94, at 10). It appears that Plaintiff intentionally misunderstood the City's sentence. But this is also not relevant to the Court's analysis in this case, as there is no dispute that Plaintiff did not see the Warning Placard. (ECF 93, at ¶ 48).

Plaintiff also takes issue with the City noting that he was parked in a metered spot, where he knew payment was necessary, and he knew the vehicle could be subject to tow. The City agrees that Plaintiff's general knowledge or particular knowledge does not relieve the City of its obligation to give notice. (Pl.'s Resp., ECF 98, at 33). That is why the City did place the Warning Placard on Plaintiff's vehicle. Additionally, Plaintiff seems to argue that the circumstances of Plaintiff leaving his vehicle and the general understanding of how people interact with vehicles left on City streets is not relevant to notice. (*Id*). But this is not true. While Plaintiff's neglect does not relieve the City of its obligations, general assumptions about how people act in particular circumstances is particularly relevant to the government reasonably calculating how to provide notice to them. *See Walker*, 352 U.S. at 115 (noting "the impossibility of setting up a rigid formula as to the kind of notice that must be given.").

Plaintiff finally points to a case that discusses available message boards in the context of class notification, to support his position that the City is obligated to create or purchase new technology to provide notice. (Pl.'s Resp., ECF 98, at 34). Plaintiff asserts that *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1047 (9th Cir. 2019), requires that the City obtain new information or purchase new technology in order to comply with due process. (Pl.'s Resp., ECF 98, at 34). There, the court was applying the requirements of FRCP 23(c)(2)(B), and it concluded that "information about the settlement could have been electronically disseminated through social media or postings on any relevant online message boards." *Roes*, 944 F.3d at 1047. That case did

Page 10 – DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS MOTION FOR
           SUMMARY JUDGMENT

not require that the class representatives obtain new or unavailable information about class members or develop a new form of technology that was not otherwise available to class representatives. Plaintiff also asserts that his ideas could be cheap and easy, but there is no evidence in the record of what the cost would be for the City to develop or purchase a new technology in order to provide different notice.

Finally, Plaintiff dismisses the City's interest in having available parking spots downtown that are not monopolized by vehicles remaining long after payment for parking has expired. Plaintiff cites *Clement*, 518 F.3d at 1094, for the proposition that towing cannot be justified as a means of deterring illegal parking. (Pl.'s Resp., ECF 98, at 35). But that case addressed towing without notice. In fact, the very same paragraph from *Clement*, states "[t]he punishment for illegal parking is a fine, which is normally imposed by affixing a ticket to the windshield. A ticket can also serve as notice of the illegality and a warning that the car will be towed if not moved or properly registered." 518 F.3d at 1094.[7] In short, towing without notice is not justified to deter illegal parking, but that does not eliminate the City's interest in having parking available on its downtown streets.

Plaintiff's various side-arguments distract from what is required in this case, which is applying the *Mullane-Jones* analysis to the pre-tow notice that the City gave Plaintiff. When that analysis is conducted, the City's notice meets the requirements of due process.

**B. The City's pre-tow notice was reasonably calculated to apprise interested parties that the vehicle would be towed.**

Plaintiff's discussion of whether the City's notice was reasonably calculated largely relies on hypotheticals regarding an associate attorney giving information to a partner. (Pl.'s Resp., ECF 98, at 37-40). In reaching his conclusion that the City's notice was not reasonably

---

[7] Notably, Plaintiff separately asserts that this very case, and this section of the case, should not be relied upon because it discusses the *Mathews* balancing test. (Pl.'s Resp., ECF 98, at 20). This is of no matter, because *Clement* is good law, and there is no basis for this Court to ignore it.

Page 11 – DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

calculated to inform him of the tow, he depends almost entirely on the assumption that the City should have contacted him through methods that were wholly unavailable. (*Id*. at 37-51). In other sections of his brief, Plaintiff appears to similarly challenge that the City's method of notice was not reasonably calculated to inform him of the tow. (*Id*. at 34-35). Each of these arguments fail.

The City placed a Warning Placard on Plaintiff's vehicle two days before towing it. (ECF 93, at ¶ 44). The City knew that Plaintiff was aware that the amount of time available for him to park was limited and had expired. (*Id*. at ¶¶ 35-36). The City knew that Plaintiff's vehicle had out-of-state license plates, which had expired tags. (*Id*. at ¶ 32-33). Given these circumstances, the City's decision to place the Warning Placard on Plaintiff's vehicle was reasonably calculated to reach Plaintiff, who was the person who could move the vehicle and prevent it from being towed.

Plaintiff's alternatives were either unavailable or would have been less likely to reach him. First, mailing notice of a tow to addresses out of state—in fact over a thousand miles away—was not reasonably likely to reach the person with an interest in preventing the vehicle from being towed. Plaintiff's other suggested methods of phone, email, or push notifications through ParkingKitty were simply not available alternatives, as discussed above. In short, Plaintiff's arguments that the City's notice was not reasonably calculated to reach him are simply at odds with the facts of this case.

Plaintiff also argues that any consideration of either the City's interest or the Plaintiff's interest is improper when evaluating whether notice was reasonably calculated. (Pl.'s Resp., ECF 98, at 35). But these assertions are incorrect or misconstrue the City's arguments. The City does not assert that notice is not required. In fact, the City explained exactly how notice was provided—by placing a Warning Placard on Plaintiff's vehicle two days before it was towed, warning that it would be towed if it was not moved. (City's Mot., ECF 94, at 8). Plaintiff argues that the Court cannot give consideration to either the City's interest or the Plaintiff's interest, and

Page 12 – DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

cites the Ninth Circuit's previous decision in this case for his position that any balancing is improper. (Pl.'s Resp., ECF 98, at 36).[8] The Ninth Circuit decision certainly concludes that the *Mullane* rather than *Mathews* governs the adequacy of notice. *Grimm*, 971 F.3d at 1067. But Plaintiff's outright rejection of any balancing is counter to both *Mullane* and *Jones*, which are the cases that all parties believe must be applied. *Mullane*, 339 U.S. at 314 ("Against this interest of the State we must balance the individual interest sought to be protected by the Fourteenth Amendment."); *Jones*, 547 U.S. at 229 ("[A]ssessing the adequacy of a particular form of notice requires balancing the 'interest of the State' against 'the individual interest sought to be protected by the Fourteenth amendment'" (quoting Mullane, 339 U.S. at 314)).

The City's references, therefore, to both its own interests and the fact that Plaintiff's deprivation is temporary, not permanent are relevant. They are not included to suggest that notice is not required or that the *Mathews* balancing test is applicable. Rather, understanding these interests is relevant to the Court's analysis of the adequacy of the City's notice. *See Jones*, 547 U.S. at 229 (citing cases where the Court had previously "evaluated the adequacy of notice given" based on various deprivations). Here, it is relevant, that the tow is only a temporary deprivation, and further attempts at notice will occur before any permanent deprivation. (ECF 93, at ¶ 22). It is also relevant that the City's interest is in making parking spaces available downtown. This interest would be greatly interfered with if cars could go for many weeks or months without being moved. Notice that may be more time-consuming to both give and for a party to respond, is less reasonable here than it may be in other circumstances.

Plaintiff also takes issue with the City's position that in evaluating whether the City's notice was reasonably calculated to reach Plaintiff, it can be generally assumed that a person

---

[8] The language from *Grimm*, that Plaintiff relies on is the court's discussion on *Dusenbery*, 534 U.S. 161. But the Supreme Court in *Dusenbery*, was stating that *Mullane*, not *Mathews*, is the appropriate test. *Id.* at 172-73. In fact, the question of whether to apply the *Mathews* balancing test was the entire issue on appeal before the Ninth Circuit.

Page 13 – DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

maintains superintendence of their property. (Pl.'s Resp. , ECF 98, at 33). Plaintiff contends that the City believes this relieved it of its obligation to provide notice. But that is not the City's position. Rather, in evaluating whether notice was reasonably calculated, it is appropriate to judge the notice "in the light of its practical application to the affairs of men as they are ordinarily conducted. *Greene*, 456 U.S. at 451 (quoting *North Laramie Land Co. v. Hoffman*, 268 U.S. 276, 283 (1925)). And, the Supreme Court has explained that "[i]t is, of course, reasonable to assume that a property owner will maintain superintendence of his property, and to presume that actions physically disturbing his holdings will come to his attention." *Id.* at 451-52. This assumption, therefore, relates to whether notice was reasonably calculated to give Plaintiff notice. The Supreme Court has explained that "[u]pon this understanding, a State may in turn conclude that in most cases, the secure posting of a notice on the property of a person is likely to offer that property owner sufficient warning of the pendency of proceedings possibly affecting his interests." *Id*.

Here, the City's method of posting notice on Plaintiff's vehicle was reasonably calculated to apprise him that his vehicle would be towed.

### C. The City did not become aware that Plaintiff had not received notice and there were no other reasonably available alternative forms of notice.

Plaintiff again accuses the City of misstating the law when applying the *Jones* analysis to this case. However, the City's heading states "[t]he City had no reason to know *or even suspect* that Plaintiff did not get notice that his vehicle was subject to tow." (City's Mot., ECF 94, at 16). The City then went on to note the question asked by the Ninth Circuit. (*Id*.). The City proceeded to apply the analysis from *Jones*. (*Id*.). *Jones* answered an issue that the Supreme Court had not previously addressed: "whether due process entails further responsibility when the government becomes aware prior to the taking that its attempt at notice has failed." *Jones*, 547 U.S. at 227; *see also Taylor v. Yee*, 780 F.3d at 936 (explaining that in *Jones*, "[s]tated another way, the issue

Page 14 – DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

was whether the government's knowledge that the notice had not been received was a 'circumstance and condition that varies the notice required.'").[9]

But Plaintiff's misguided attack on the City's semantics is again not relevant to this Court's analysis. There is no evidence that the City became aware that Plaintiff did not see the Warning Placard, had actual knowledge that Plaintiff did not see the Warning Placard, or had any reason to suspect that Plaintiff did not see the Warning Placard. Plaintiff's sole argument is that he had left the citations undisturbed on his vehicle. (Pl.'s Resp., ECF 98, at 46-47).[10] In contrast, there is no suggestion that the Warning Placard was piling up "undisturbed, unseen, and pinned under the windshield wiper." (*Id.* at 46). In fact, it appears that the Warning Placard was removed from the vehicle before it was towed. (ECF 22-1, at ¶ 13). It cannot be the case that the City should suspect or becomes aware that notice was ineffective both because it remained on Plaintiff's windshield—the citations and because it was removed from Plaintiff's windshield— the Warning Placard.[11]

There is no dispute of material fact. The parties have stipulated to the facts. What the City parking official knew when he ordered Plaintiff's vehicle towed is not in dispute: he knew that Plaintiff had parked in a downtown spot requiring payment (ECF 93, at ¶¶ 19, 34-35); he knew Plaintiff understood the payment requirements, as Plaintiff had initially paid for parking (*id.*); he knew that multiple citations piled up on Plaintiff's windshield (*id.* at ¶ 42-44); he knew that a

---

[9] As discussed previously, other courts have similarly discussed whether there was evidence that the notice-providing entity actually knew that notice had been ineffective. (City's Mot., ECF 94, at 18). And in *De Fontbrune v. Wofsy*, 39 F.4th 1214 (9th Cir. 2022) the government was made aware that notice was ineffective. There, a certificate of service was requested and not received. Then there was a subsequent issuance of a certificate of non-service, which "left no doubt that service had failed." *Id.* at 1232.

[10] Notably, Plaintiff dedicates four pages earlier in the brief to his argument that the citations were not notice. (Pl.'s Resp., ECF 98, at 28-31).

[11] Plaintiff again appears to contend that there is some relevance to the fact that he did not, in fact, get actual notice in this case. (Pl.'s Resp., ECF 98, at 47). But the Supreme Court has made clear that "[d]ue process does not require that a property owner receive actual notice before the government may take his property." *Jones*, 547 U.S. at 226.

Page 15 – DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Warning Placard explaining that Plaintiff's vehicle would be towed if not moved had been placed on Plaintiff's vehicle (*id.* at ¶ 44); and he knew the Warning Placard did not pile up with the citations (ECF 22-1, at ¶ 13). At no point did the City either become aware or have reason to suspect that the Warning Placard had been ineffective at giving Plaintiff notice of the tow. Therefore the City was not obligated to move to the next step of the analysis in *Jones*.

However, even if the Court engages in the next step of the *Jones* analysis—whether there were any reasonable steps available to notify Plaintiff—the answer is there were not. The additional steps proposed by Plaintiff were not reasonable steps the City could have taken prior to towing Plaintiff's vehicle.

As discussed above, sending a letter by mail to an out-of-state registered vehicle with expired registration tags was not a reasonable step to get notice to Plaintiff. This is particularly true because such notice would have been given to the registered owners of the vehicle—not Plaintiff—at addresses in Illinois and Nebraska. While the City can appreciate why Plaintiff would have desired notification through ParkingKitty, it was not a reasonably available alternative—in fact, it was not an alternative available to the City at all. Similarly, notification by phone or email were not available because Passport, not the City, had the contact information that Plaintiff readily references.

The City gave notice that was reasonably calculated to reach Plaintiff. The City was not aware and had no reason to suspect that Plaintiff had not seen the Warning Placard. And even if the City were aware that the Warning Placard was ineffective, it had no other reasonable means of providing notice to Plaintiff. Instead, Plaintiff asserts a number of steps that were either entirely unavailable or would not be reasonable for providing notice to a person able to move the vehicle. This is the entirety of the analysis under *Mullane-Jones*. The Court does not need to engage in a separate analysis of the various "bright-line" rules or "dispositive" tests that Plaintiff presents. The City's notice satisfied the requirements of *Mullane-Jones*, and, therefore, satisfied

Page 16 – DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

due process.

## III.    CONCLUSION

For the above reasons, as well as the reasons included in the City's Motion, this Court

should grant the City's Motion for Summary Judgment.

Dated:  November 21, 2022.

Respectfully submitted,

*/s/ Naomi Sheffield*
Naomi Sheffield, OSB No. 170601
Sr. Deputy City Attorney
Email: naomi.sheffield@portlandoregon.gov
*Of Attorneys for Defendant City of Portland*

Page  17  – DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS MOTION FOR
            SUMMARY JUDGMENT

2-ER-147

INFORMATION DIGNITY ALLIANCE
Megan Keenan
Oregon State Bar No. 204657
P.O. Box 8684
Portland, Oregon 97207
Phone: (925) 330-0359
Megan@InformationDignityAlliance.org

*Attorney for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **ANDREW GRIMM**,<br>Plaintiff,<br><br>v.<br><br>**CITY OF PORTLAND**,<br>Defendant. | Case No. 3:18-cv-183–MO<br><br>Megan Keenan's<br>DECLARATION IN SUPPORT OF<br>PLAINTIFF'S RESPONSE TO<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT |

I, Megan Keenan, counsel for Plaintiff Andrew Grimm in the above-captioned case, hereby declare as follows:

1. I make this Declaration in support of Plaintiff's Response to Defendant's Motion for Summary Judgment.  The following is true to the best of my knowledge, information, and belief, and I could testify to the following if called:

2. <u>Exhibit A</u>:  I declare that I have retained a true and correct copy of a screenshot taken from Portland's website. I have attached a true and correct copy of this document as **<u>Exhibit A</u>**.

---

DECLARATION OF MEGAN KEENAN – 1

3.  <u>Exhibit B</u>:  I declare that I have retained a true and correct copy of a screenshot taken

from the Parking Kitty app. I have attached a true and correct copy of this document as

**<u>Exhibit B</u>**.

**I hereby declare that the above statements are true to the best of my knowledge and belief, and that I understand that these statements are made for use as evidence in court and are subject to penalty for perjury.**

DATED: November 8, 2022           */s/ Megan Keenan*
                                  Megan Keenan
                                  Oregon State Bar No. 204657
                                  P.O. Box 8684
                                  Portland, Oregon 97207
                                  Phone: (925) 330-0359
                                  Megan@InformationDignityAlliance.org

                                  *Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing DECLARATION IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT on:

> Ms. Naomi Sheffield
> Sr. Deputy City Attorney
> OFFICE OF CITY ATTORNEY
> 1221 Southwest Fourth Avenue
> Suite 430
> Portland, Oregon 97204
> Email: Naomi.Sheffield@PortlandOregon.Gov
> Telephone: (503) 823-3122
> Facsimile: (503) 823-3089
> > *Of Attorney for Defendant City of Portland*

> Mr. Matthew Lowe
> Shareholder
> JORDAN RAMIS PC
> Two Centerpointe Drive
> 6th Floor
> Lake Oswego, Oregon 97035
> Email: Matthew.Lowe@JordanRamis.com
> Telephone: (503) 598-7070
> Facsimile: (503) 598-7373
> > *Of Attorney for Retriever Towing*

by **electronic filing** in CM/ECF.

Dated: November 8, 2022          /s/ *Megan Keenan*
                                         Megan Keenan

2-ER-150

# EXHIBIT A



# Exhibit B



INFORMATION DIGNITY ALLIANCE
Megan Keenan
Oregon State Bar No. 204657
P.O. Box 8684
Portland, OR 97207
Phone: (925) 330-0359
Megan@InformationDignityAlliance.org

CAREY DANIS & LOWE
Paul Maddock (admitted *pro hac vice*)
8235 Forsyth Boulevard, Suite 1100
St. Louis, Missouri 63105
Phone: (314) 678-1205
PMaddock@CareyDanis.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **ANDREW GRIMM**, <br> Plaintiff, <br><br> v. <br><br> **CITY OF PORTLAND** <br> Defendant. | Case No. 3:18-cv-183-MO <br><br> Plaintiff Andrew Grimm's <br> OPPOSITION TO THE MOTION FOR <br> SUMMARY JUDGMENT <br> filed by Defendant City of Portland <br><br> ***Oral Argument Requested*** |

2-ER-153

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................4

RELEVANT FACTUAL BACKGROUND ............................................................7

   I.   PLAINTIFF REGISTERED HIS CAR WITH THE CITY'S PARKING APP, PARKING KITTY. ..............7

   II.   PLAINTIFF PARKED HIS CAR AND PAID FOR PARKING USING PARKING KITTY. ......................8

   III.   AFTER PAYMENT EXPIRED, THE CITY PILED TICKETS ON PLAINTIFF'S WINDSHIELD. .............9

   IV.   THE CITY NOTIFIED RETRIEVER TOWING TO TOW THE CAR WITHIN AN HOUR. ...................11

   V.   THE CITY'S ONLY ATTEMPTS AT PRE-TOW NOTICE WERE TWO UNSEEN POSTINGS. .............11

RELEVANT PROCEDURAL BACKGROUND ......................................................12

ARGUMENT ...............................................................................................14

   I.   THE CITY'S MOTION BOTH IGNORES AND CONTRADICTS WELL-ESTABLISHED *MULLANE-JONES* REQUIREMENTS. ...............................................................14

       A.   The City's Motion ignores well-established *Mullane-Jones* requirements. ...............15

           i.   The City ignores that posting is not sufficient when mailing is available. ............15

           ii.   The City ignores that it must provide the "best notice practicable." ....................21

           iii.   The City ignores the Ninth Circuit's third question about tickets. ........................28

       B.   The City's Motion contradicts well-established *Mullane-Jones* requirements. ..........32

   II.   THE CITY'S SOLE RELIANCE UPON POSTINGS WAS NOT REASONABLY CALCULATED. ..........37

       A.   The City's sole reliance upon postings was not reasonable. ........................................37

       B.   The City did not make the required calculations in choosing its method. ..................41

   III.   THE CITY VIOLATED THE *JONES* BRIGHT-LINE RULE. ..........................................................44

A.  Under Jones, the City was required to try something else when there was "reason to suspect" that the postings were not working. .............................................. 44

B.  Here, the City tried nothing else. .............................................................. 47

CONCLUSION ............................................................................................................ 49

CERTIFICATE OF COMPLIANCE ........................................................................... 50

CERTIFICATE OF SERVICE ..................................................................................... 51

## TABLE OF AUTHORITIES

### Cases

Aero-Medical v. United States,
  23 F.3d 328 (10th Cir. 1994). ......................................................................................18

Ayers v. Landow,
  666 A.2d 51  (D.C. 1995) ...........................................................................................18

Brody v. Village of Port Chester,
  434 F.3d 121 (2d Cir. 2005) ...........................................................................28, 29, 31

Chin Yi Tu v. NTSB,
  470 F.3d 941 (9th Cir. 2006). ........................................................................14, 35, 40

Clement v. City of Glendale,
  518 F.3d 1090 (9th Cir. 2008). .......................................................................20, 31, 35

De Fontbrune v. Wofsy,
39 F.4th 1214, 1232 (9th Cir. 2022). ...............................................................................45

Dusenbery v. United States,
  534 U.S. 161 (2002)................................................................................................12, 32

Greene v. Lindsey,
  456 U.S. 444 (1982)................................................................................................18, 40, 41

Grimm v. City of Portland,
  971 F.3d 1060 (9th Cir. 2020). ...................12, 13, 19, 20, 21, 27, 28, 36, 37, 41, 42, 44, 48

Gross v. Carter,
  265 F. Supp. 2d 995 (W.D. Ark. 2003) .......................................................................31

Harris v. County of Riverside,
  904 F.2d 497 (9th Cir. 1990) .......................................................................................28

Intercontinental Indus. Corp. v. Luo,
  2011 U.S. Dist. LEXIS 9081 (C.D. Cal. Jan. 20, 2011) .......................................16, 18

Jones v. Flowers,
  547 U.S. 220 (2006)..........................................................14, 32, 33, 40, 41, 44, 45, 47

Lockyer v. FERC,
  329 F.3d 700 (9th Cir. 2003). .....................................................................................12

Lombard v. United States, 356 F.3d 151 (1st Cir. 2004). ............................................16

M.A.K. Inv. Grp., LLC v. City of Glendale,
    897 F.3d 1303 (10th Cir. 2018). ................................................................33

Mennonite Bd. of Missions v. Adams,
    462 U.S. 791 (1983)...............................................................16, 18, 19, 41

Mitchell v. MAP Res., Inc.,
    649 S.W.3d 180 (Tex. 2022). ..........................................................16, 18

Mullane v. Cent. Hanover Bank & Trust Co.,
    339 U.S. 306 (1950)..........................................22, 28, 29, 31, 37, 40

Phillips Petroleum Co. v. Shutts,
    472 U.S. 797 (1985)........................................................................14, 22

Propert v. District of Columbia,
    948 F.2d 1327 (D.C. Cir. 1991)...............................................................19

Riley v. City & County of San Francisco,
    2010 U.S. Dist. LEXIS 129092 (N.D. Cal. Dec. 7, 2010).........................20

Roes v. SFBSC Mgmt., LLC,
    944 F.3d 1035 (9th Circ. 2019). ..............................................................34

Schroeder v. City of New York,
    371 U.S. 208 (1962)................................................................................18

Scofield v. City of Hillsborough,
    862 F.2d 759 (9th Cir. 1988). ..................................................................20

Silber v. Mabon,
    957 F.2d 697 (9th Cir. 1992). ...........................................................14, 40

Stypmann v. City of San Francisco,
    557 F.2d 1338 (9th Cir. 1977) .................................................................35

Tulsa Professional Collection Services, Inc. v. Pope,
    485 U.S. 478 (1988)................................................................................18

Valdez v. Ottawa,
    105 Ill. App. 3d 972 (1982) ....................................................................19

Walker v. City of Hutchinson,
    352 U.S. 112 (1956)................................................................................48

Wenatchee Reclamation Dist. v. Mustell,
    102 Wn.2d 721 (Wash. App. 1984). .................................................16, 18

2-ER-157

## **Statutes**

Portland, Or., City Code ch. 16.30 § 220. ....................................................8, 9

Portland, Or., City Code ch. 16.30 § 320. ................................................8, 9, 21

2-ER-158

**RELEVANT FACTUAL BACKGROUND[1]**

## I.     <u>Plaintiff registered his car with the City's parking app, Parking Kitty.</u>

On October 25, 2017, Plaintiff downloaded the City's parking app, Parking Kitty, and registered his car with the app. Dkt. 93 at 6 ¶¶ 30-31. When registering his car with Parking Kitty, Plaintiff provided his cellphone number, his license plate, his credit card, and his email address. Dkt. 93 at 6 ¶ 31.

Parking Kitty users can pick whether to be notified by call or by text:



Dkt. 93 at 2-3 ¶ 9; <u>see</u> Keenan Decl. Ex. B.

---

[1] Emphasis supplied unless otherwise indicated. Internal brackets, quotations, and citations are sometimes removed for ease of reading. Record citations are to "Dkt." and are cited according to the docket-stamp pagination, not internal pagination.

## II.  **Plaintiff parked his car and paid for parking using Parking Kitty.**

On December 14, 2017, Plaintiff paid to park his car in downtown Portland using the

City's Parking Kitty app.  Dkt. 93 at 6 ¶¶ 34-35.  Plaintiff paid to park until 7:00pm that evening.

Dkt. 93 at 6-7 ¶ 37.  Then, Parking Kitty notified Plaintiff both when his parking session was

about to expire and when it did expire.  Dkt. 93 at 3 ¶¶ 10-11, 6 ¶ 36.  Examples of the in-app

notifications sent directly to Plaintiff's cellphone are shown below:





Dkt. 93 at 3 ¶¶ 10-11.

Plaintiff received both Parking Kitty notifications.  Dkt. 93 at 6 ¶ 36.  Because metered

parking ended at 7:00pm that evening and was free afterward, Plaintiff's car was legally parked

until 8:00am the next morning.  Dkt. 93 at 7 ¶¶ 39-40.

### III.    After payment expired, the City piled tickets on Plaintiff's windshield.

When later determining if Plaintiff had paid for parking, the City's parking-enforcement officers had to check Parking Kitty's data on their handheld devices.  Dkt. 93 at 7-8 ¶¶ 43-45; Dkt. 20 at 1 ¶ 4, 2 ¶ 6.  Over the course of seven days, the City left six parking citations on Plaintiff's windshield, checking Parking Kitty data each time.  Dkt. 93 at 7-8 ¶¶ 43-45.  *None* of the parking tickets made any mention of a tow.  Dkt. 93-1 at 22-34.  One of the parking tickets is shown below:



Dkt. 93-1 at 30.  It does not mention a tow.  Id.

The parking-enforcement officer placed each subsequent citation on top of the previously issued citation(s).  Dkt. 93 at 7-8 ¶¶ 42-44.  The citations piled up.  Id.



Dkt. 93-1 at 35 (top-right photograph).

When the City decided to tow Plaintiff's vehicle, it posted placards, *i.e.*, a posted "WARNING" placard and then a posted "TOW" placard. Dkt. 93 at 8 ¶¶ 44-45. The City placed both the "WARNING" and "TOW" placards on top of the undisturbed pile of tickets. Id.; Dkt. 20-1 at 15.



Dkt. 20-1 at 15.

2-ER-162

IV.    **The City notified Retriever Towing to tow the car within an hour.**

On December 21, 2017, the City notified Retriever Towing to tow Plaintiff's car *within an hour* of placing the "TOW" placard on Plaintiff's windshield.  Dkt. 93 at 8 ¶¶ 45, 47. Retriever Towing then towed Plaintiff's car.  Dkt. 93 at 8 ¶ 47.

After a car is towed, it is the City's practice to look up a mailing address for a registered vehicle and then mail *post*-tow notice.  Dkt. 93 ¶ 22.  Here, the day *after* Retriever Towing towed Plaintiff's car, the City mailed notice of the tow to the mailing address associated with Plaintiff's registered vehicle.  Dkt. 93 at 9 ¶ 49.

V.    **The City's only attempts at pre-tow notice were two unseen postings.**

The City attempted to notify Plaintiff of the tow by posting two separate tow postings on Plaintiff's car.  Dkt. 93 at 8 ¶¶ 44-45.  Plaintiff never saw *any* of the City's postings (tickets or tow placards) before the tow.  Dkt. 93 at 9 ¶ 48.

The City never once attempted any additional or supplemental method of notice beyond posting.  Dkt. 93 at 9 ¶ 50.  The City never attempted any pre-tow notice via mail, via a phone call, via text message, via email, or via its own Parking Kitty app (or any of Plaintiff's contact information that the City had received when Plaintiff registered his car with the app).  Dkt. 94 at 9 ¶ 51.

## Relevant Procedural Background

On January 29, 2018, Plaintiff filed this civil-rights suit. Dkt. 1. Plaintiff claimed that the City's reliance upon paper posting for pre-tow notice had failed to provide constitutionally adequate pre-tow notice. Dkt. 1 at 19-20 ¶¶ 136-153. The City answered, Dkt. 6, and then moved for summary judgment, Dkt. 19.

At summary judgment, the Parties disputed the proper legal standard for this type of claim regarding the constitutional adequacy of notice. In briefing and at oral argument, Plaintiff argued that Mullane-Jones governed. Dkt. 22 at 2 (brief); Dkt. 30 at 4:6-8 (hearing). By contrast, the City argued that Mathews governed. Dkt. 23 at 2-3 (brief); Dkt. 30 at 7:15-20 (hearing).

As the law made clear, for a "due process challenge to **adequacy of the notice**" of the seizure of a car, the Supreme Court had held that "***Mullane* supplies the appropriate analytical framework**." Dusenbery v. United States, 534 U.S. 161, 165, 167 (2002). Likewise, the Ninth Circuit observed that "the Supreme Court has **held** the Mathews v. Eldridge analysis does ***not*** apply" to claims about the "adequacy of notice[.]" Lockyer v. FERC, 329 F.3d 700, 709 n.8 (9th Cir. 2003).

Against these clear holdings from both the Supreme Court and Ninth Circuit that Mullane governed, the City nonetheless urged this Court to apply Mathews. Dkt. 23 at 2-3; Dkt. 30 at 7:15-20. At the City's urging, this Court applied Mathews, Dkt. 30 at 10:10-15, and granted the City's motion for summary judgment, id.

Plaintiff appealed. Dkt. 28. And, the Ninth Circuit reversed. Dkt. 33 (Grimm v. City of Portland, 971 F.3d 1060 (9th Cir. 2020)). A key holding on appeal was that Mullane governed this type of claim about the adequacy of notice—not Mathews as the City had urged. Grimm, 971 F.3d at 1065.

Specifically, the Ninth Circuit agreed with Plaintiff, not the City, regarding the governing legal standard:

> Grimm maintains that <u>Mullane</u>'s "reasonably calculated" standard, rather than the <u>Mathews</u> balancing test, is the legal standard applicable to his adequacy of notice claim. We agree.

<u>Id.</u> at 1065. The Ninth Circuit's ruling also made clear that the City had urged the application of <u>Mathews</u> in the face of adverse binding precedent and governing law:

> [**<u>U</u>**]**nder the governing Supreme Court case law and our precedents**, the district court applied the incorrect legal standard here. <u>Mathews</u> governs the question of whether and when due process requirements, including notice, is required, but <u>Mullane</u> governs Grimm's adequacy of notice claim.

<u>See</u> <u>id.</u> at 1067.

Therefore, it is now clear that the City had urged this Court to rule against governing law and binding precedent. <u>See</u> Dkt. 23 at 2-3; Dkt. 30 at 7:15-20 (urging the application of <u>Mathews</u> to decide the adequacy of notice in spite of adverse governing Supreme Court law and Ninth Circuit precedents).

Now, the City again tries the same tactic.

The City has again moved for summary judgment. Dkt. 94. And, the City's Motion is *again* urging this Court to apply <u>Mathews</u> precedents to decide the adequacy of notice—against governing Supreme Court law and against Ninth Circuit precedents. <u>See</u> Dkt. 94 at 12 (urging application of <u>Mathews</u> cases that decided whether notice was required at all, not the adequacy of the method used to provide notice).

Yet, the Ninth Circuit gave clear instructions about the standard: "<u>Mathews</u> governs the question of whether and when due process requirements, including notice, is required, but **<u>Mullane</u> governs Grimm's adequacy of notice claim**." <u>Grimm</u>, 971 F.3d at 1067. This Brief opposes the City's Motion.

2-ER-165

**ARGUMENT**

**I.   The City's Motion both ignores and contradicts well-established _Mullane-Jones_ requirements.**

The City's Motion _ignores_ settled law.  The Motion also _contradicts_ settled law.

Consequently, adopting the City's positions would entail ignoring and contradicting settled law,

_i.e._, well-established Mullane-Jones requirements.

First, the City's Motion _ignores_ well-settled law.  For example, Mullane-Jones requires

the City to provide the "**best practicable**" notice.  The Supreme Court has said so.  Phillips

Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985) ("The **notice** must be the **best practicable**[.]"

(citing Mullane).  The Ninth Circuit has said so.  Silber v. Mabon, 957 F.2d 697, 700 (9th Cir.

1992) ("**best notice practicable**").  Yet, the City's Motion **_completely fails to address_** this

governing legal standard.  The City's Motion **_nowhere even mentions_** the phrase "best

practicable notice."  See generally Dkt. 94.  And, this is just one of several ways in which the

City's Motion completely _ignores_ well-established Mullane-Jones requirements.  See Section

I.A, _infra_.

Second, the City's Motion also _contradicts_ well-settled law.  For example, the City's

Motion claims that the City did not owe Plaintiff notice "unique to him and his unusual

circumstances[.]"  Dkt. 94 at 15.  Yet, the Supreme Court has required exactly that: "we have

**required** the government **to consider unique information** about an intended recipient[.]"  Jones

v. Flowers, 547 U.S. 220, 230 (2006).  The Ninth Circuit has also been clear.  Chin Yi Tu v.

NTSB, 470 F.3d 941, 945 (9th Cir. 2006) ("**must consider unique information**").  Binding

authority says the City "_must consider unique information_," yet the City claims it didn't have to

consider "unique" information.  And, this is just one of many ways in which the City _contradicts_

well-established Mullane-Jones requirements.  See Section I.B, _infra_.

Thus, the City's Motion both completely *ignores* and affirmatively *contradicts* well-established <u>Mullane</u>-<u>Jones</u> requirements. Accordingly, to adopt the City's positions would entail both ignoring and contradicting well-established requirements of the <u>Mullane</u>-<u>Jones</u> test as set forth by the Ninth Circuit and by the Supreme Court.

This Court should deny the City's Motion.

A.     <u>*The City's Motion ignores well-established* Mullane-Jones *requirements.*</u>

The City's Motion has glaring omissions. Specifically, the Motion **ignores <u>*three*</u> well-settled <u>Mullane</u>-<u>Jones</u> rules**:

(1) The City's Motion ignores that posting is <u>in</u>adequate under <u>Mullane</u>-<u>Jones</u> where mailing is available. <u>See</u> Section I.A.i., *infra*.

(2) The City's Motion ignores that <u>Mullane</u>-<u>Jones</u> requires the City to employ the "best notice practicable." <u>See</u> Section I.A.ii, *infra*.

(3) The City's Motion ignores that postings which make no mention of a tow don't count as notice of a tow. <u>See</u> Section I.A.iii, *infra*.

Each of these rules is discussed below.

     i.    <u>The City ignores that posting is not sufficient when mailing is available.</u>

The City's Motion claims that "[p]osting a warning on Plaintiff's vehicle" satisfied <u>Mullane</u>-<u>Jones</u>. Dkt. 94 at 11; <u>id.</u> at 11-16.

Yet, that position ignores a well-established Mullane-Jones rule that posting alone is **not sufficient** where the mail is available. *Numerous* courts have reaffirmed the bright-line rule that, under Mullane-Jones, posting is inadequate when mailing is available:

- "Following Mullane, **the [U.S.] Supreme Court has *consistently held*** that when an [...] address can be ascertained from publicly recorded instruments, **notice by posting** or publication is *insufficient* **to satisfy due process.**" Mitchell v. MAP Res., Inc., 649 S.W.3d 180, 189-190 (Tex. 2022).

- "Notice by [...] **posting is constitutionally *inadequate*** where the name and address of the owner are known or can be discovered by the governmental entity[.]" Wenatchee Reclamation Dist. v. Mustell, 102 Wn.2d 721, 726 (Wash. App. 1984) (citing Mennonite, 103 S. Ct. at 2712).

- "**Leading cases** like Mullane contain general statements that **notice by posting** or publication *only suffices where claimants are otherwise unknown*[.]" Lombard v. United States, 356 F.3d 151, 155-156 (1st Cir. 2004) (citing Mullane).

- In "**a series of cases** following Mullane, **the Supreme Court has [...] condemned notice by** publication or **posting as not reasonably calculated** to inform [...] a known interested party with a known mailing address[.]'' Intercontinental Indus. Corp. v. Luo, 2011 U.S. Dist. LEXIS 9081, *8-9 (C.D. Cal. Jan. 20, 2011) (citing Mullane).

Notice by **mail "is a minimum constitutional precondition"** where a "name and address are reasonably ascertainable." Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 800 (1983) (applying Mullane).

Thus, under binding authority, **posting is insufficient** where, as here, a mailing address is available.

It is well settled that posting is **not** adequate when mailing is available. The _Supreme Court_ has recognized this bright-line rule. The federal _Courts of Appeals_ have recognized this bright-line rule. And, the _State courts_ have recognized this bright-line rule. Yet the City completely ignores it. Dkt. 94 at 11-16 (nowhere addressing this rule that posting is **only** sufficient where mail is unavailable). Applied here, this bright-line rule is **dispositive**: because mail was available to the City, the City's sole reliance upon posting failed to satisfy Mullane-Jones.

Indeed, it's **undisputed** that a **mailing address was available here**. The City's Motion admits this fact. Dkt. 94 at 16 ("[T]he City did mail [...] _after_ the vehicle was towed."). The stipulated facts confirm this fact. Dkt. 93 at 9 ¶ 49 ("[T]he City sent letters to the proper address registered with the vehicle[.]").

Yet, the City never attempted mailing notice _before_ the tow. Dkt. 93 at 9 ¶ 50. During the seven days that the car sat on the street, the City never once attempted notice by mail. Even when the City posted its warning placard two days before the tow, the City _still_ didn't bother mailing any notice. In fact, the City did not even bother looking up the address until _after_ it towed the car. Dkt. 94 at 16.

Thus, the City did not meet a "**minimum constitutional precondition**" of mailing where a "name and address are reasonably ascertainable." See Mennonite, 462 U.S. at 800. That's a bright-line rule under Mullane-Jones that the City entirely ignores. Yet, this bright-line rule is dispositive against the City.

Thus, this Court should deny the Motion.

* * * * *

The City's Motion chose to ignore the bright-line <u>Mullane</u>-<u>Jones</u> rule that posting is insufficient when mailing is available. Faced with this dispositive rule, the City's Reply Brief may try to muddle matters. Two possible reply arguments are likely.

*First*, the City may argue that the bright-line rule rejecting sole reliance upon posting when mailing is available does not apply to tows. That's a non-starter: since <u>Mullane</u> was decided, courts have consistently applied this bright-line rule about notice to all sorts of property deprivations, **<u>including tows</u>**.

This bright-line rule (that posting is inadequate when mailing is available) has been applied to notice of the "*seizure of the airplane*[.]" <u>Aero-Medical v. United States</u>, 23 F.3d 328, (10th Cir. 1994). It has been applied to seizure of real property via "*tax sale*[.]" <u>Mennonite</u>, 462 U.S. at 800. It applies to notice of "*entry and detainer actions*." <u>Greene v. Lindsey</u>, 456 U.S. 444, 446 (1982). It applies to notice of "*probate proceedings*." <u>Tulsa Professional Collection Services, Inc. v. Pope</u>, 485 U.S. 478, 490 (1988).

This bright-line rule has also been applied to notice of "*delinquent irrigation*[,]" <u>Wenatchee Reclamation</u>, 102 Wn.2d at 726, notice of landlord actions, <u>Ayers v. Landow</u>, 666 A.2d 51, 55 (D.C. 1995), and notice of seizures of "*mineral property*[,]" <u>Mitchell v. MAP Res., Inc.</u>, 649 S.W.3d at 184 (Tex. 2022); <u>see also</u> <u>Schroeder v. City of New York</u>, 371 U.S. 208, 208 (1962) (notice of "condemnation"); <u>Intercontinental</u>, 2011 U.S. Dist. LEXIS 9081 at *8-9 (notice of suit under alternative service).

This bright-line rule has been applied to ***<u>all</u>*** types of property deprivations, including notice of the seizure of vehicles like an airplane. <u>See</u> <u>Aero-Medical</u>, 23 F.3d at 329. Tows are no exception. Postings on a car don't suffice as pre-tow notice *where mailing is available*.

Indeed, courts have applied this well-settled Mullane-Jones rule ***specifically to tows***.  See, e.g., Valdez v. Ottawa, 105 Ill. App. 3d 972, 976 (1982); Propert v. District of Columbia, 948 F.2d 1327, 1334-1336 (D.C. Cir. 1991).

In Valdez, the defendant city argued that postings on a car gave adequate pre-tow notice (just like the City does here).  105 Ill. App. 3d at 976.  The Valdez court rejected this argument as being "**without merit**." Id. at 976.  Applying Mullane, the Valdez court determined that the postings on a car do not count as sufficient notice **because the "auto[mobile] was currently registered and the police had the [mailing] address**." Id.

Given that the vehicle was registered, "***at a minimum*, notice by certified or registered mail would have been appropriate**[.]" Id.  Thus, the Valdez court readily applied the Mullane-Jones bright-line rule that posting is an insufficient method of providing pre-tow notice when mailing is available.  Id.

It's not just Valdez.  The Propert court also rejected sole reliance upon postings in the context of tows because of this bright-line rule:

> **[T]he warning sticker does not provide constitutionally sufficient notice**, at least where, as in this case, the vehicle is properly licensed or registered and, therefore, the owner's identity may be easily ascertained.

Propert, 948 F.2d at 1334 (D.C. Cir. 1991) (applying Mullane).

***Here***, "**the vehicle *was* properly registered** at the time of the tow[.]" Grimm, 971 F.3d at 1065.  Thus, the City "**could obtain current information** on the whereabouts of the owner[.]" Id.  Indeed, it's **undisputed** that the City could (*and did*) obtain a mailing address.  Dkt. 93 at 5 ¶ 22, 9, ¶ 49.  Because a mailing address was readily ascertainable, notice by mail was a "**minimum constitutional precondition**[.]" Mennonite, 462 U.S. at 800.  Given the availability of pre-tow mail here, the City's argument that posting sufficed is "**without merit**." See Valdez, 105 Ill. App. 3d at 976.

2-ER-171

*Even in the towing context*, the postings on Plaintiff's car did not suffice because a mailing address was available.

*Second*, the City may urge this Court to ignore this well-settled <u>Mullane</u>-<u>Jones</u> rule and instead apply cases applying the **wrong legal standard**, *i.e.*, the <u>Mathews</u> balancing test. After all, the City's Motion has already urged just that. Dkt. 94 at 12.

The City has tipped its hand in its Motion. Cherry-picking dicta from three cases applying the <u>Mathews</u> balancing test, the City claims that "posting notice on a vehicle itself is the recognized and common way to apprise the vehicle owner of the tow." Dkt. 94 at 12. To support its unfounded legal position, the City relies upon three cases applying the <u>Mathews</u> balancing test, *i.e.*, cases applying the **wrong legal standard** for *these claims about the adequacy of notice*:

- <u>Riley</u> quotes and applies the <u>Mathews</u> balancing test—**but never cites <u>Mullane</u> or <u>Jones</u>**. <u>Riley v. City & County of San Francisco</u>, 2010 U.S. Dist. LEXIS 129092, *17 (N.D. Cal. Dec. 7, 2010).

- <u>Clement</u> quotes the <u>Mathews</u> balancing test—and then proceeds to apply <u>Mathews</u> by weighing private and governmental interests. <u>Clement v. City of Glendale</u>, 518 F.3d 1090, 1094-1096 (9th Cir. 2008).

- <u>Scofield</u> also quotes and applies the <u>Mathews</u> balancing test—**but never cites <u>Mullane</u> or <u>Jones</u>**. <u>Scofield v. City of Hillsborough</u>, 862 F.2d 759, 762-764 (9th Cir. 1988).

*All* of these cases are inapposite here because they apply <u>Mathews</u>. <u>Mathews</u> is the **wrong legal standard for these claims**. <u>Grimm</u>, 971 F.3d at 1067.

The question here is the adequacy of notice and, on this issue, <u>Mullane</u> and its precedents govern. The Ninth Circuit has made this crystal clear: "***Mathews* governs the question of whether and when due process requirements, including notice, is required, but *Mullane* governs Grimm's adequacy of notice claim.**" <u>Id.</u> Thus, the City's ***dicta*** cherry-picked from ***Mathews* cases** does not disturb the bright-line rule imposed by <u>Mullane</u>-<u>Jones</u> law that postings don't count when mailing is available.

This Court should reject such attempts to muddle a well-established <u>Mullane</u>-<u>Jones</u> rule.

\* \* \* \* \*

The City's Motion renews a misguided attempt to smuggle dicta from <u>Mathews</u> into a motion for summary judgment about the <u>Mullane</u>-<u>Jones</u> adequacy of notice. The City has done this before. Dkt. 23 at 2-3; Dkt. 30 at 7:15-20. Yet, ultimately, the <u>Mullane</u>-<u>Jones</u> test imposes a bright-line rule: postings don't suffice when mailing is available. The City ignores that rule entirely.

That well-established rule is dispositive here: because a mailing address was available to the City, the City's postings did not satisfy <u>Mullane</u>-<u>Jones</u>. In reply, the City may try to obfuscate this bright-line rule by relying on <u>Mathews</u> cases. But, the City cannot rely on the wrong standard to answer <u>Mullane</u>-<u>Jones</u> questions. The **<u>Mullane</u>-<u>Jones</u>** cases are clear: posting is insufficient when mailing is available.

    ii.   <u>The City ignores that it must provide the "best notice practicable."</u>

As explained above, the City's Motion completely *ignores* the bright-line rule imposed by <u>Mullane</u>-<u>Jones</u> that postings are insufficient when mailing is available. *<u>That rule is dispositive here</u>*. On that basis alone, this Court could deny the City's Motion. <u>See</u> Section I.A.i, *supra*.

Yet, that bright-line rule is not all that the City ignores in its Motion.  The City's Motion *also* completely ignores that <u>Mullane</u>-<u>Jones</u> requires the "**best notice practicable**."  As the Ninth Circuit has observed, the "standard required since <u>Mullane</u> is the "**best notice practicable** under the circumstances[.]"  <u>Silber v. Mabon</u>, 957 F.2d 697, 700 (9th Cir. 1992).  And, this requirement that the government provide the "best notice practicable" is longstanding and well-established.

<u>Mullane</u> itself articulated the best-notice-practicable requirement.  <u>Mullane v. Cent. Hanover Bank & Trust Co.</u>, 339 U.S. 306, 317 (1950) ("**best notice practicable**").  The Supreme Court has since reiterated it.  <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 812 (1985) ("**The notice must be the best practicable**, 'reasonably calculated, under all the circumstances, to apprise interested parties[.]'" (quoting <u>Mullane</u>)).

The Ninth Circuit has adopted this best-notice-practicable requirement.  <u>E.g.</u>, <u>Silber</u>, 957 F.2d at 700.  Other Courts of Appeals have as well.  <u>E.g.</u>, <u>In re Drexel Burnham Lambert Grp.</u>, 995 F.2d 1138, 1144 (2d Cir. 1993) ("**best notice practical**") (citing <u>Mullane</u>); <u>Fager v. CenturyLink Communs., LLC</u>, 854 F.3d 1167, 1171 (10th Circ. 2016) ("**best notice that is practicable**") (citing <u>Mullane</u>).

Yet the City *nowhere acknowledges* that **<u>Mullane</u>-<u>Jones</u> requires the *best notice practicable***.  Indeed, the City's Motion doesn't even pay lip service to this legal standard.  <u>See generally</u> Dkt. 94 (nowhere mentioning the phrase "best practicable notice.").  Instead, the City *completely ignores* this fundamental rule.

Regardless, it is abundantly clear that the City did **<u>not</u>** attempt the "best notice practicable" here.

2-ER-174

There were <u>numerous available *methods*</u> to attempt notice of the tow.  Mail was an available *method*. Dkt. 93 at 5 ¶ 22, 9 ¶ 49.  Parking Kitty notifications were an available *method*.  <u>Id.</u> at 3 ¶¶ 10-11.  Email was an available *method*.  <u>Id.</u> ¶ 12.  A phone call was an available *method*.  Id. at 6 ¶ 31.  A text message was an available *method*.  <u>Id.</u>  Indeed, the City uses such methods to contact drivers—*when it wants to*.  Dkt. 93 ¶ 22.  Yet, the City <u>did not try</u> ***<u>any of these methods</u>*** to provide pre-tow notice to Plaintiff here. Dkt. 93 at 4 ¶ 13, 5 ¶ 21, 9 ¶ 50-51.

And it's not because such methods aren't practicable.  After all, other cities use such methods to contact drivers and give tow notice.  For example, the City of San Francisco provides pre-tow notice ***via text message***.  "[Text Before Tow Program]()," SFMTA ("This service may prevent vehicles from being towed by giving you time to move your vehicle before a tow truck arrives."); "[San Francisco Program Warns Motorists Via Text That Their Car Is About to Get Towed]()," NBC (same).

*That's* what best practicable notice looks like.

Here, however, the City did **<u>not</u>** even try *this* method of notice.  The City did not try to text before towing, *even though* Plaintiff was required to provide his cellphone number when he registered his car with the City's parking app.  <u>See</u> Dkt 93 at 2-3 ¶ 3, 6 ¶ 31.

<u>*Another*</u> available method of notice was notice by phone.  The City itself uses phone calls to notify drivers about tows—*<u>when it wants to</u>*.  For example, during the recent COVID-19 pandemic, the Portland Police Bureau would "notify vehicle owners via phone" about tows.  <u>See</u> Keenan Decl. Ex. A.



*That's* what best practicable notice looks like.

But here the City did **not** try *this* method of notice either.  The City did not call—or try to call—before towing.  It did not call or attempt to call *even though* Plaintiff was required to provide his phone number when he registered his car with the City's parking app.  Dkt 93 at 2-3 ¶ 9, 6 ¶ 31.

*Yet another* available method of notice was notice by email.  Indeed, other cities use email to provide notice of a tow.  For example, the City of Boston uses email: "If your car is involuntarily towed in Boston's jurisdiction, then the system **will _email_ you**."  Boston Tow Alert Questions.  Drivers who provide the city with an email address and license plate number get an email when their car is towed.



*That's* what best practicable notice looks like.

Yet, here, the City did **not** try *this* method of notice either. The City did not email before towing.  The City did not try to email before towing *even though* Plaintiff provided his email address when he registered his car with the City's parking app.  Dkt 93 at 6 ¶ 31.

*Still another* available method of notice was notice by Parking Kitty.  Indeed, the City's app sends in-app notifications to drivers about their cars—*when it wants to*.  For example, the City routinely sends in-app notifications directly to driver's smartphones.




Dkt. 93 at 3 ¶¶ 10-11.

*That's* what best practicable notice looks like.

Yet,  here the City did **not** try this method of notice to provide pre-tow notice. The City did not send *any* in-app notifications about the tow—*even though* Plaintiff had registered his car with the City's parking app, Dkt 93 at 6 ¶ 31, and *even though* the City had already been sending in-app notifications to Plaintiff about his car, Dkt 93 at 6 ¶ 36.  In fact, when the City was obligated to provide the best practicable notice, these in-app notifications ceased.

Perhaps the *most obvious* available method of notice was notice by mail.  After all, the City routinely uses mail to contact drivers about tows—*when it wants to*.  Dkt 93 at 5 ¶ 22.  Yet, here, the City did **not** attempt to use the mail to provide *pre*-tow notice. Dkt 93 at 9 ¶ 49 (mailing *after* the tow).

2-ER-178

The City did not attempt pre-tow mail *even though* the City routinely looks up the mailing addresses for registered cars when towing. Dkt 93 at 5 ¶ 22. The City did not do so *even though* it's undisputed that Plaintiff's car was registered. Dkt 93 at 6 ¶ 33. The City did not do so *even though* it's undisputed that the City was able to identify the "proper [mailing] address registered with the vehicle[.]" Dkt 93 at 9 ¶ 49.

Failing to use mail here was a far cry from the best practicable notice. After all, Plaintiff's car *was* registered. Dkt 93 at 6 ¶ 33. Indeed, ***in this very case***, the Ninth Circuit was clear: the "vehicle *was* properly registered at the time of the tow[.]" Grimm, 971 F.3d at 1065. Thus, the City "**could obtain current information**" associated with the vehicle. Id.; Dkt. 93 at 9 ¶ 49. And, for a registered car, the best practicable notice entails, at "**a minimum,**" notice by "mail." Valdez, 105 Ill. App. 3d at 976.

In fact, Plaintiff's car was **doubly registered**. Plaintiff's car was registered with the state. Dkt 93 at 6 ¶ 33. His car was also registered with the City's own parking app. Dkt 93 at 6 ¶ 30.

Accordingly, ***all sorts of contact information*** were available for the vehicle. A mailing address was available. Dkt 93 at 9 ¶ 49. An email address was available. Dkt 93 at 6 ¶ 31. A phone number was available. Id. Yet, the City did *not* use *any* of this information to attempt pre-tow notice. Dkt 93 at 9 ¶ 51.

That's **not best practicable notice**. Thus, this Court should deny the City's Motion.

iii.    The City ignores the Ninth Circuit's third question about tickets.

As explained above, the City completely ignores the dispositive rule that, under <u>Mullane</u>-<u>Jones</u>, posting is inadequate when mail is available.  <u>See</u> Section I.A.i., *supra*.  The City's Motion *also* ignores that <u>Mullane</u>-<u>Jones</u> requires the "best notice practicable."  <u>See</u> Section I.A.ii., *supra.*

That's not *all* the City ignores.  The City *also* ignores that <u>Mullane</u>-<u>Jones</u> imposes a *content* requirement.  Indeed, ***in this very case***, the Ninth Circuit expressly asked a question about this content requirement:

> Is putting citations on a car that do not explicitly warn that the car will be towed reasonably calculated to give notice of a tow to the owner?

<u>Grimm</u>, 971 F.3d at 1068.

Yet, the City's Motion fails to answer the Ninth Circuit's question. The City acknowledges that "the Ninth Circuit asked this Court to consider" this question on remand. Dkt. 94 at 9.  Then, oddly, the City's Motion never engages this question.  The City's silence is telling.  The answer is simple: **<u>No</u>**, a ticket that does **<u>not</u>** mention a tow plainly does **<u>not</u>** provide notice *of a tow*.  That's a question that answers itself.   And, the case law backs up this common-sense answer.

In addition to imposing *method* requirements, <u>Mullane</u>-<u>Jones</u> also imposes a *content* requirement.  The notice must expressly warn of the specific property deprivation.  To count as notice, the tickets "***must* make some *conspicuous mention***" of the property deprivation.  <u>See</u> <u>Brody v. Village of Port Chester</u>, 434 F.3d 121, 130 (2d Cir. 2005) (citing <u>Mullane</u>, 339 U.S. at 315).  The attempted notice must "**convey [such] required information**" to be adequate.  <u>Harris v. County of Riverside</u>, 904 F.2d 497, 503 (9th Cir. 1990) (citing <u>Mullane</u>).

That's why, in <u>Mullane</u> itself, the Supreme Court found that even mailing a copy of the statute itself did **<u>not</u>** provide notice *of the specific property deprivation*. <u>Mullane</u>, 339 U.S. at 318 ("sending them a copy of the statute" insufficient). <u>Mullane</u>-<u>Jones</u> imposes requirements for "the ***content* of the notice**[.]" <u>Brody</u>, 434 F.3d at 130 (citing <u>Mullane</u>).

Here, the City's tickets make **<u>no</u>** mention of a tow—a point the City has rightfully conceded. <u>E.g.</u>, Dkt. 6 at 5 ¶ 36c ("City Defendants admit that the third citation itself does not mention a tow."); Dkt. 6 at 4-6 ¶¶ 34c, 35c, 36c, 37c, 38 (same); <u>cf.</u> Dkt. 1 at 6 ¶ 36c ("This third citation does not mention a tow."); Dkt. 1 at 6-7 ¶¶ 34c, 35c, 36c, 37c, 38 (same). Indeed, the tickets speak for themselves:

2-ER-181





**None** of the tickets use the word tow.  There is no "***conspicuous mention***" of the property deprivation.  See Brody, 434 F.3d at 130.  Thus, the tickets don't "convey the *required* information."  See Mullane, 339 U.S. at 314.  Under Mullane-Jones, these tickets are simply **not** attempts at notice *of a tow that they do not mention*.

Therefore, the City vastly overstates its attempts at notice here.  The City claims that the "notice provided to Plaintiff by the City included four parking citations[.]"  See Dkt. 94 at 15.  That's not true.  Under Mullane-Jones, these tickets do not provide notice of a tow because the tickets do not *even* mention a tow.

The City may point to Clement's dicta that "a ticket ***can*** also serve as notice […] that the car will be towed[.]"  Dkt. 94 at 12.  (quoting Clement v. City of Glendale, 518 F.3d 1090, 1094 (9th Cir. 2008)).  Of course, a ticket *could* warn of a tow—***if*** that ticket mentioned a tow.  But here the City's tickets don't mention a tow and, so, the tickets don't count as notice of a tow under Mullane-Jones.[2]

In sum, the City never answers the Ninth Circuit's third question.  To address the Ninth Circuit's question directly, the answer is **no**—putting "citations on a car **that do _not_ explicitly warn** that the car will be towed" is **not** "reasonably calculated to give notice *of a tow.*

---

[2] The City also cites cases, such as Gross v. Carter, 265 F. Supp. 2d 995, 1002 (W.D. Ark. 2003), to suggest that tickets *can* provide notice of a tow.  Dkt. 94 at 19 n. 3.  Again, these cases do **not** undermine Mullane's content requirement.  Indeed, in Gross it was undisputed that *those* tickets expressly referenced the property deprivation.  Gross, 265 F. Supp. 2d at 999 ("result in *your* vehicle being disabled with a wheel boot").  By contrast, it is undisputed that the tickets here made no reference to a tow.  See Dkt. 1, Dkt. 6, Dkt 93-1 at Exhibit E.

B.  *The City's Motion contradicts well-established* Mullane-Jones *requirements*.

As explained above, the City's Motion has glaring omissions.  The City's Motion completely ignores well-established rules under <u>Mullane</u>-<u>Jones</u>.  <u>See</u> Section I.A.i-ii, *supra*.  And, the City's Motion even fails to answer an express questions asked by the Ninth Circuit *in this very case*.  <u>See</u> Section I.A.iii, *supra*.

Beyond these glaring omissions, the City's Motion also *repeatedly contradicts and contravenes* <u>Mullane</u>-<u>Jones</u> principles.  In contradicting and contravening these <u>Mullane</u>-<u>Jones</u> principles, the City profoundly overstates the notice it attempted and understates the notice it was obligated to provide.

*<u>First</u>*, the City's Motion contradicts clear statements about notice made by the Supreme Court.

For example, the City asserts that it did not have to "craft notice practices **unique to [Plaintiff] and his unusual circumstances**[.]"  Dkt. 94 at 15.  Yet, the Supreme Court has been crystal clear that <u>Mullane</u>-<u>Jones</u> requires exactly that: "we have **required** the government **to** **<u>consider unique information</u>** about an intended recipient[.]"  <u>Jones</u>, 547 U.S. at 230.  And, that requirement to consider "unique" circumstances applies "**<u>regardless of</u>** whether a statutory scheme is reasonably calculated to provide notice in **the ordinary case**."  <u>Id.</u>  Thus, the City did not understand its obligation to consider unique information about Plaintiff when attempting notice.

The City also oddly asserts that it provided "*<u>actual notice</u>*" to Plaintiff here.  Dkt. 94 at 10.  Specifically, the City refers to "the adequacy of the *<u>actual notice</u>* that the City gave Plaintiff[.]"  Dkt. 94 at 10.  But there was no actual notice here.  Again, the Supreme Court has been clear: actual notice means "**<u>receipt</u>** of notice" <u>Dusenbery</u>, 534 U.S. at 169 n.5.

2-ER-184

Plaintiff did not receive _actual_ notice because he did not _personally_ receive notice.  See BLACK'S LAW DICTIONARY 1087 (7th ed. 1999) (defining "actual notice" as notice "_received personally by a party_").  In fact, it's _undisputed_ that no actual notice occurred here.  Dkt. 93 at 9 ¶ 48 ("Plaintiff did _not_ see the postings before the tow.").  Thus, Portland's misunderstanding of what "actual notice" is leads it to overstate its own attempts at notice.

Furthermore, the City still misunderstands that it needed to provide notice of the _specific_ property deprivation (the tow), not merely notice of its laws _generally_ (municipal code).  The City states that Plaintiff "was fully aware that remaining in a metered spot, but not paying, could result in his vehicle being towed."  Dkt. 94 at 5, 7.  That's not relevant to whether the City fulfilled _its_ obligation to provide advance notice of the _specific_ property deprivation, _i.e._, of the _specific_ tow.

The Supreme Court has been clear that the "**common knowledge that property _may_ become subject to government taking [for breaking the law] does not excuse the government from complying with its constitutional obligation of notice before taking private property**."  Jones, 547 U.S. at 232.

The City also argues that Plaintiff should have "maintain[ed] superintendence of his property[.]"  Dkt. 94 at 14; id. at 16 ("[P]eople return to their vehicles").  That might sound plausible, but the Supreme Court says that it doesn't affect the Mullane-Jones notice requirement: "**a party's ability to take steps to safeguard its interests does _not_ relieve the State of its constitutional obligation**."  Jones, 547 U.S. at 232.  Indeed, the "**Supreme Court has now made it clear that a plaintiff's sub-par diligence does not dissolve the government's notice obligations**."  M.A.K. Inv. Grp., LLC v. City of Glendale, 897 F.3d 1303, 1316 (10th Cir. 2018).  The City's point might sound good, but is actually at odds with the Supreme Court.

In sum, the City repeatedly contradicts what the Supreme Court has said about <u>Mullane</u>-<u>Jones</u> notice.

***<u>Second</u>***, <u>the City's Motion also contradicts statements about notice from the Ninth Circuit.</u>

For example, the City's Motion boldly declares that "***<u>Plaintiff can point to no case that suggests that the City is required to obtain new information or utilize new technology in order to provide constitutionally adequate pre-tow notice.</u>***" Dkt. 94 at 24; Dkt. 94 at 22 (arguing that "advances in technology" do not alter the "analysis under the <u>Mullane</u> standard"). The City is wrong. Discussing the "best notice [...] practicable under the circumstances[,]" the Ninth Circuit has stressed that "***<u>technological developments are making it ever easier to target communications to specific persons or groups and to contact individuals electronically at little cost</u>***." <u>Roes v. SFBSC Mgmt., LLC</u>, 944 F.3d 1035, 1047 (9th Circ. 2019).

In <u>Roes</u>, the Ninth Circuit emphasized the option of notice being "electronically disseminated through ***<u>social media</u>***[.]" <u>Id.</u> Thus, Plaintiff ***<u>can</u>*** cite to a case that suggests that the City is required to consider new technology in order to provide notice. Indeed, the City's argument to the contrary is strange: why would <u>Mullane</u>-<u>Jones</u>, a fact-sensitive standard that requires the City to act like someone actually desirous of getting in touch and requiring them to choose the best practicable notice, disregard technological options that make effective notice easy and cheap?

That doesn't make sense.

Also, the City incorrectly states that it has an interest in using tows to discourage illegal parking. The City asserts that "[g]iven [its] finite number of [parking] spaces, the City has a legitimate **interest in discouraging** people from monopolizing these spots." Dkt 94 at 6.

Yet the Ninth Circuit has stated otherwise, *i.e.*, that towing "**cannot be justified as a means of deterring illegal parking**." Clement, 518 F.3d at 1094. Thus, the City's interest in regulating its street parking does not allow it to skirt its constitutional notice obligations under Mullane-Jones.

The City further contradicts the Ninth Circuit case law by arguing that the "permanency of the property deprivation is relevant" here. See Dkt. 94 at 13. And, the City suggests that postings are sufficient for this "type of deprivation—a temporary deprivation of tangible property." Dkt. 94 at 10.

Yet the fact that a tow may be a temporary deprivation in some sense (if the vehicle owner is able to get the car back) does not matter: "*Due process strictures must be met **though the deprivation be temporary**.*" Stypmann v. City of San Francisco, 557 F.2d 1338, 1342 (9th Cir. 1977); see also Fuentes v. Shevin, 407 U.S. 67, 85 (1972) ("well settled that a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment'"). Thus, even if a tow were temporary, a temporary deprivation does not absolve the City of its need to fulfill its Mullane-Jones obligations just as in any other case of a deprivation within the meaning of the Fourteenth Amendment.

Along similar lines, the City suggests that the reasonableness of mail is somehow "related to *permanent* deprivations." Dkt. 94 at 20. That's false. The Ninth Circuit has applied a straightforward application of the Mullane-Jones test to a temporary "**suspension**" of a pilot's license. Chin Yi Tu v. NTSB, 470 F.3d 941, 944 (9th Cir. 2006). *Mail* was what would have avoided the notice problems for the "suspension"—*i.e.*, the *temporary* deprivation. Id. at 945-946. Thus, mail is not limited to what the City thinks is a "permanent" deprivation.

2-ER-187

Thus, the City's positions contradict not only the Supreme Court but also the Ninth Circuit.

***Third***, and finally, the City's Motion even contradicts a holding from the Ninth Circuit, *in this very case*.

The City suggests that "[e]valuating the adequacy of a particular form of notice ***still requires a balancing*** of the government's interest against the individual interest protected by the Fourteenth Amendment." Dkt. 94 at 1. That's not what the Ninth Circuit said on appeal and it could not have been clearer: the Ninth Circuit stressed that the <u>Mullane</u> standard applies "***without any balancing test***, when courts are determining whether a *method* of notice satisfied due process." <u>Grimm</u>, 971 F.3d at 1066.

In sum, the City's understanding of notice contradicts and contravenes the Supreme Court, the Ninth Circuit, and even what the Ninth Circuit said on appeal in this very case. Adopting those positions would run afoul of these <u>Mullane</u>-<u>Jones</u> precedents. This Court should deny the Motion.

2-ER-188

## II.   **The City's sole reliance upon postings was not reasonably calculated.**

### A.   *The City's sole reliance upon postings was not reasonable.*

Courts use the <u>Mullane</u>-<u>Jones</u> test when "determining whether a *method* of notice satisfied due process." <u>Grimm</u>, 971 F.3d at 1066 (emphasis in original).  To help determine when the test is satisfied, the Supreme Court has provided a common-sense analogy: "**the prudent man of business**."  <u>Mullane</u>, 339 U.S. at 320.

This prudent-business analogy asks whether the government's chosen method of notice would have satisfied a "prudent man of business […] finding it ***in <u>his</u> interest*** to" notify the intended recipient.  <u>Id.</u> at 320.  That's because "[i]n some situations the law requires greater precautions in its proceedings than the business world accepts for its own purposes. *<u>In few, if any, will it be satisfied with less</u>*."  <u>Id.</u> at 319-320.

Here, the City's sole reliance on postings would **<u>not</u>** satisfy <u>Mullane</u>'s "prudent man of business."  Put in a business setting, the unreasonableness of the City's approach to notice speaks for itself.  To see why, consider how the "prudent man of business" would evaluate a situation similar to the case at hand.

Imagine that Joe is an associate at a law firm in Portland, Oregon.  His law firm's HR Department has an office directory that has the name, email address, cellphone number, and mailing address for each of the firm's attorneys and employees.  The law firm also has a policy: if a court calls an associate about a case, that associate must write the message on a post-it note and then that associate must leave that post-it note on the computer screen of the partner who is in charge of the case.

Suppose that, on a Monday, Joe receives a call from the courthouse.  A partner's oral argument that was originally set for next month has been rescheduled for the upcoming Friday.  Oral argument that was a month away is now just four days away.

Following the law firm's policy, Joe goes into the partner's office and puts a post-it on her computer screen. Satisfied with his posting, Joe doesn't try *any* other method of informing the partner of the new oral-argument date. Joe relies on *just* the posting to notify the partner.

Suppose the partner never goes back to her office, never sees the post-it note, and misses the oral argument. Having missed oral argument, the partner is perplexed that Joe failed to get in touch with her. She says, "Joe, why didn't you call me? Why didn't you email me? Why didn't you text me? HR has all my contact information." Joe responds "I did what the policy told me to do. The policy didn't say I had to do anything else."

Now consider a slightly different scenario.

Suppose that Joe is tasked with preparing trial exhibits for an upcoming trial scheduled for next month. Joe had been communicating with the partner about these trial exhibits by email and by text until Joe finished preparing the exhibits. On a Monday, Joe receives a call from the courthouse. The trial originally set for next month has been rescheduled for the upcoming Friday. Following the law firm's policy, Joe goes into the partner's office and puts a post-it on her computer screen. Suppose that the partner never sees the post-it on her computer screen and she misses the trial.

Having missed the trial, the partner is bewildered that Joe failed to get in touch. She says, "Joe, we were *just* emailing and texting about the trial! Why didn't you call? Why didn't you email? Why didn't you text?" Joe responds "I did what the policy told me to do. The policy didn't say I had to do anything else."

Now consider one final scenario.

Suppose that on a Monday morning Joe gets a call from the courthouse that a brief the partner filed was defective. The court informs Joe that the partner must file a corrected brief by Friday. Otherwise, the case will be dismissed.

After the call on Monday, Joe goes to the partner's office and puts a post-it note on the partner's computer screen. On Tuesday, Joe walks by the partner's office and notices his first note still affixed to her computer screen. Joe wants to make sure that the partner gets the message, so he posts a second note on top of the first. On Wednesday, walking past the partner's office again, Joe notices both of his post-its still sitting on her computer screen. So, Joe decides to add a third post-it on top of the first two just to be safe. On Friday afternoon an hour before the court closes, Joe walks by the partner's office again. Seeing all of the post-its piled up on her computer screen, Joe has a great idea.

Joe walks to the HR Department. He asks if they have any bright red post-it notes. Joe goes back to the Partner's office. Joe places this red post-it on top of the other three. This red post-it says "You're about to miss your filing deadline!" The Partner never sees any of the postings and misses the filing deadline. The court dismisses the case.

Having missed the filing deadline, the partner is baffled that Joe failed to get in touch. She says, "Joe, we missed our filing deadline. Why didn't you call? Why didn't you email? Why didn't you text? I didn't get any of your post-its." Joe responds "I did what the policy told me to do. In fact, I put *four* postings on your computer instead of just one. *And,* I made the last one red so it would catch your eye."

The partner says, "I obviously wasn't getting the post-its. Why didn't you try *anything* else?" Joe responds, "I did! After the court dismissed the case, I went to HR and got your mailing address. Then I sent you a letter telling you: 'you missed your deadline!'"

* * * * *

No one would find Joe's behavior reasonable.

His failure to get in touch certainly wouldn't satisfy <u>Mullane</u>'s "prudent man of business." Similarly, the City's sole reliance on posting was not reasonable here. That's because <u>Mullane</u>'s "prudent man of business" would behave like someone "**<u>desirous</u>** of actually informing" the intended recipient. <u>Mullane</u>, 339 U.S. at 315. "**<u>Of course</u>**," the prudent businessman would consider "**<u>alternatives and supplements</u>** to the form of notice chosen." <u>Greene</u>, 456 U.S. at 454. Indeed, he would choose the "**<u>best notice practicable</u>**[.]" <u>Silber</u>, 957 F.2d at 700.

The "prudent man of business" would consider "**<u>unique information</u>**" about the recipient. <u>Jones</u>, 547 U.S. at 230. He would undertake "**<u>due diligence</u>**" to identify the recipient. <u>See</u> <u>Mullane</u> at 317. When necessary, the prudent man of business would take "**<u>additional reasonable steps</u>**." <u>Jones</u>, 547 U.S. at 234. He certainly wouldn't turn a blind eye to options that had previously "worked." <u>Chin Yi Tu</u>, 470 F.3d at 946.

Indeed, no one actually desirous of informing another "would simply shrug his shoulders" if he suspects his attempts at notice may have failed and "say 'I tried.'" <u>Jones</u>, 547 U.S. at 229. A person who is actually desirous (*i.e.*, who meets the <u>Mullane</u>-<u>Jones</u> standard) "would take *further reasonable steps* [to inform the intended recipient] if **_any_** were available." <u>Id.</u> at 230.

The City's sole reliance on postings here, would not satisfy <u>Mullane</u>'s "prudent man of business." Thus, the City's sole reliance on posting fails under <u>Mullane</u>. It's unreasonable. This Court should deny the Motion.

### B. *The City did not make the required calculations in choosing its method.*

The <u>Mullane</u>-<u>Jones</u> standard required the City to use a "reasonably *calculated*" method to provide pre-tow notice. <u>Grimm</u>, 971 F.3d at 1066. The City argues that its sole reliance on the method of posting was "reasonably *calculated*" to warn Plaintiff that the City had decided to tow his car. Dkt. 94 at 11-16.

But it's not clear what calculation the City is referring to. After all, binding case law imposes a series of necessary requirements when making a calculation about what method to use. Here, the City's calculation of what method to use failed to meet these requirements. By contrast, a *reasonable calculation* would satisfy the following requirements, imposed by <u>Mullane</u>-<u>Jones</u>:

(1) The calculation requires the City **to "consider unique information** about an intended recipient" when choosing how to attempt pre-tow notice. <u>Jones</u>, 547 U.S. at 230.

(2) The calculation requires the City **to consider whether a "name and address are reasonably ascertainable**" when choosing how to attempt pre-tow notice. <u>Mennonite</u>, 462 U.S. at 800; <u>see also</u> <u>Greene</u>, 456 U.S. at 456 n. 10.

(3) The calculation requires the City **to consider "feasible [...] alternatives *and supplements*** to the form of notice chosen." <u>Greene</u>, 456 U.S. at 454.

Here, the City did **none** of these calculations.

***First***, the City failed to consider unique information about Plaintiff to provide pre-tow notice. Plaintiff had registered his car with the City's *own* parking app. Dkt. 93 at 6 ¶ 30. Plaintiff had provided his contact information, *as requested and required*, when registering his vehicle with Parking Kitty. Dkt. 93 at 2-3 ¶9, 6 ¶ 31.

Plaintiff's email address, phone number, and address were registered and on file with the City's parking app.  Dkt. 93 at 5 ¶ 20, 6 ¶ 31.  Most importantly, the City "**could obtain** current **information**" associated with Plaintiff's vehicle because "the vehicle was properly registered[.]" Grimm, 971 F.3d at 1065; Dkt. 93 at 6 ¶ 33.  Yet, the City did not use any of this unique information when calculating how to attempt pre-tow notice.  Dkt. 93 at 9 ¶¶ 50-51.

That's **not** a reasonable calculation under Mullane-Jones.

***Second***, the City failed to consider that a name and address were reasonably ascertainable to provide pre-tow notice.  Plaintiff's "car *was* properly registered at the time of the tow." Grimm, 971 F.3d at 1065 (emphasis in original); Dkt. 93 at 6 ¶ 33.  Thus, the "proper address registered with the vehicle" was both ascertainable and in fact ascertained.  Dkt. 93 at 9 ¶ 49.  After all, the City mailed a letter to the address on file—*after the tow*.  Id.  Yet, the City did not use this address when calculating how to attempt pre-tow notice. Dkt. 93 at 9 ¶¶ 50-51.

That's **not** a reasonable calculation under Mullane-Jones.

***Third***, the City failed to consider feasible alternatives *and supplements* to provide pre-tow notice.  The available **"alternatives *and supplements*"** to the City's chosen method of notice included a phone call, a text, an email, an in-app Parking Kitty notification, or even a mailed letter.  Dkt. 93 at 2 ¶ 9, 3 ¶ 12, 6 ¶ 31, 6 ¶ 33, 6 ¶ 36, 9 ¶ 49.  The City considered none of these.

Indeed, Plaintiff had *already* been receiving in-app "notifications on his smartphone from Parking Kitty[.]"  Dkt. 93 at 6 ¶ 36.  Plaintiff had also *already received* emails to the email address he provided when registering his car with the City's parking app.  Dkt. 93 at 3 ¶ 12, 6 ¶ 31.  *And*, the City was able to mail a letter to the address on file—when it wanted to.  Dkt. 93 at 9 ¶ 49.

Yet, the City did not use any of these alternatives or supplements when calculating how to attempt pre-tow notice here. Dkt. 93 ¶50, Dkt. 93 ¶51.

That's **<u>not</u>** a reasonable calculation under <u>Mullane</u>-<u>Jones</u>.

* * * * *

The City's Motion only pays lip service to <u>Mullane</u>-<u>Jones</u>'s demand for "reasonably *calculated*" notice.  Here it's not clear what calculation the City is referring to.  Regardless, the City failed to meet the calculation requirements imposed by the <u>Mullane</u> standard.

III.    **The City violated the *Jones* bright-line rule.**

The City's sole reliance on the method of posting was not reasonable here.  See Sections I-II, *supra*.

But *even if* postings alone were reasonable in the ordinary case, when there was "reason to suspect" that the postings were not reaching Plaintiff, Jones required the City to try something else.  See Section III.A., *infra*.

Here the City tried nothing else.  See Section III.B., *infra*.  Thus, Jones is dispositive here.  The City's Motion must be denied.

A.    *Under* Jones*, the City was required to try something else when there was "reason to suspect" that the postings were not working.*

On remand, the Ninth Circuit asked this Court to address three questions.  Grimm, 971 F.3d at 1068.  One of those questions was the Ninth Circuit's Jones question:

> Was Portland required under *Jones* to provide supplemental notice if it had reason to suspect that the notice provided by leaving citations and the tow slip on Grimm's windshield was ineffective?

Id.

**The answer is yes.**

Jones imposed a bright-line obligation.  That bright-line obligation requires the government to "**take additional steps to effect notice**" if the government has any "**reason to suspect**" that its earlier attempts at notice did not work.  Jones, 547 U.S. at 230.

The City attempts to sidestep the Ninth Circuit's Jones question.  It does so by misstating the law.  The City claims that the Jones bright-line obligation *only* kicks in where the City has "***actual knowledge* that notice had failed**[.]" Dkt. 94 at 17; Dkt. 94 at 18 ("actual knowledge").

But that's **not** what Jones says.

Jones says that the government must take additional steps when it has "**reason to suspect**" that Plaintiff had not received the attempts at notice.  See Jones 547 U.S. at 230.  After all, that's what someone would do if they were "*desirous* of actually informing" Plaintiff.  Id.  Someone actually desirous of informing a recipient would take other available steps if they had any "**reason to suspect**" that the intended recipient was "no better off than if the notice had never been sent."  Id.

The Supreme Court has been clear: "reason to suspect" that notice was ineffective is enough to trigger the Jones bright-line rule.  Id. Thus, the City is wrong to claim that "actual knowledge that notice had failed" is required for the Jones obligation to kick in.  Dkt. 94 at 17.  Rather, the Jones bright-line obligation kicks in when there is a "reason to suspect" that notice was ineffective.

The Ninth Circuit has agreed.  The Jones bright-line obligation to try something else kicks in when the government has "**reason to suspect**" that its attempts at notice were ineffective.  De Fontbrune v. Wofsy, 39 F.4th 1214, 1232 (9th Cir. 2022).  Again, "actual knowledge that notice failed" is **not** required, as the City suggests.  Thus, the City's Motion misstates the law.

Both the Supreme Court and the Ninth Circuit have said that a "reason to suspect" that notice was not working is sufficient to trigger the bright-line Jones obligation to try something else.   Because there was ample "reason to suspect" that the postings were not working here, the City was obligated, under Jones, to try something else.

Still, the City tries to avoid this straightforward implication of Jones.  The City argues that it had "*no reason to [...] even suspect* that Plaintiff did not get the notice" posted on his vehicle. Dkt 94 at 16.

Indeed, the City alleges that "there is *no evidence* from which it can be inferred" that the posted notices were not reaching Plaintiff. Dkt. 94 at 18. But that's just not a reasonable position on these undisputed facts. Dkt. 93.

Indeed, the photographic evidence **speaks for itself**:



Dkt. 93-1 at 35. The photographs obviously give ***some*** "reason to suspect" that Plaintiff was not receiving these postings—mechanically placed on top of each other, day-after-day over the course of a week. Dkt. 93 at 8 ¶¶ 44-45.

And, these photographs *are* evidence from which it could be inferred that Plaintiff was not receiving these notices. Indeed, there is ample evidence that the postings were proving to be ineffectual here. The postings were piling up on top of each other, undisturbed, unseen, and pinned under the windshield wiper. Dkt. 93-1 Ex E; Dkt. 93 at 8 ¶¶ 44-45.

Plus, it is **undisputed** that Plaintiff, *in fact*, never received and **never saw the postings** before the tow.  Dkt. 93 at 9 ¶ 48.  The undisputed fact of the matter is that notice by posting failed in *this* case.  Dkt. 93 ¶48.  And the photographic evidence in the record speaks for itself.  It certainly *is* evidence from which it can be inferred that Plaintiff  was not getting these posting.  **A***t the very least* **it creates a dispute of material fact that would preclude Defense side summary judgment.**

But there is *no* dispute of material fact here.  The photographic evidence is clear.  Looking at the photograph of the tickets piling up on the car, there is plainly "reason to suspect" that Plaintiff was **not** getting the City's postings.  That's enough to trigger the <u>Jones</u> bright-line obligation to try something else.


    B.   *Here, the City tried nothing else.*

Here, there was "reason to suspect" that Plaintiff was not receiving the City's postings.  <u>See</u> Section III.A., *supra*.

At that point, under <u>Jones</u>, the City was obligated to "take additional steps to effect notice."  <u>Jones</u>, 547 U.S. at 230.  Indeed, the City was required to "take further reasonable steps if ***any were available*.**  <u>Id.</u>

Here, it is undisputed that the City tried *nothing* else. Dkt. 93 at 9 ¶¶ 50-51.  Thus, under <u>Jones</u>, Plaintiff prevails on his claims if ***any*** other option was available.  By contrast, the City can only prevail if **<u>no</u>** other option was available.

Here, there were numerous additional options available to supplement the City's ineffective postings.  <u>See</u> Section I.A.ii (discussing the available methods of notice).  It's worth reiterating a few.

*First*, the **mail** was an available option here.  The City routinely uses mail to contact owners of registered vehicles.  And, because Plaintiff's vehicle was registered here, the City was in fact able to use the mail—but it only did so *after* the tow.

*Second*, **digital notifications** through the City's Parking Kitty app was yet another option.  After all, Parking Kitty had *already been* contacting Plaintiff regarding his vehicle via the Parking Kitty app prior to the tow.  On appeal, Plaintiff argued that one additional reasonable step "would have been to provide electronic notice through Portland's parking app."  Grimm, 971 F.3d at 1066.  The Ninth Circuit instructed this Court to "address this argument in the first instance."  Id.

*Third*, the available contact information for Plaintiff and associated with Plaintiff's vehicle provides yet another option.  Here, because Plaintiff's car was registered both with the state and with the City's parking app, the available contact information included: a mailing address, an email address, and a cellphone number.

Thus, there is **no serious argument** that there were **no additional methods** available to supplement the ineffectual postings.  Under Jones, that is dispositive.  The City was required to try other methods, had other available methods at its fingertips, and yet simply did not abide the Jones bright-line obligation.

* * * * *

Indeed, the City's defense here boils down to a rather far-fetched claim.  The City argues that mailing a letter to a registered vehicle owner before towing was not an available option here, because to do so would require "heroic efforts by the Government[.]"  Dkt. 94 at 11-12.

But, there's nothing heroic about putting a letter in the mail.

**CONCLUSION**

For the reasons discussed above, this Court is respectfully requested to deny the City's Motion for Summary Judgment.

Dated: November 8, 2022          Respectfully submitted,

         */s/ Megan Keenan*
         Megan Keenan (OSB No. 204657)
         INFORMATION DIGNITY ALLIANCE
         P.O. Box 8684
         Portland, Oregon 97207
         Phone: (925) 330-0359
         Megan@InformationDignityAlliance.org

**CERTIFICATE OF COMPLIANCE**

This Motion complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains **10,577** words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

Dated: November 8, 2022                    /s/ *Megan Keenan*
                                           Megan Keenan

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing on:

      Ms. Naomi Sheffield
      Sr. Deputy City Attorney
      OFFICE OF CITY ATTORNEY
      1221 Southwest Fourth Avenue
      Suite 430
      Portland, Oregon 97204
      Email: Naomi.Sheffield@PortlandOregon.Gov
      Telephone: (503) 823-3122
      Facsimile: (503) 823-3089

      *Of Attorney for City of Portland*

      Mr. Matthew Lowe
      Shareholder
      JORDAN RAMIS PC
      Two Centerpointe Drive
      6th Floor
      Lake Oswego, Oregon 97035
      Email: Matthew.Lowe@JordanRamis.com
      Telephone: (503) 598-7070
      Facsimile: (503) 598-7373

      *Of Attorney for Retriever Towing*

by **electronic filing** in CM/ECF.

Dated: November 8, 2022        /s/ *Megan Keenan*
                                Megan Keenan

2-ER-203

NAOMI SHEFFIELD, OSB 170601
Senior Deputy Attorney
Email: naomi.sheffield@portlandoregon.gov
Office of City Attorney
1221 SW 4th Avenue, Room 430
Portland, OR  97204
Telephone: (503) 823-9969
Facsimile: (503) 823-3089
*Of Attorneys for Defendant City of Portland*

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| ANDREW GRIMM,<br><br>    PLAINTIFF,<br><br>v.<br><br>CITY OF PORTLAND,<br><br>    DEFENDANT. | **3:18-cv-00183-MO**<br><br>**DEFENDANT CITY OF PORTLAND'S RESPONSE TO PLAINTIFF ANDREW GRIMM'S MOTION FOR SUMMARY JUDGMENT**<br><br>**Oral Argument Requested** |

Page  i  – DEFENDANT CITY OF PORTLAND'S RESPONSE TO PLAINTIFF ANDREW
        GRIMM'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................1

II.   ARGUMENT .....................................................................................1

     A.    The City's towing ordinances are not relevant to Plaintiff's claim. ......................1

     B.    The City's pre-tow notice met the *Mullane/Jones* requirements. ...........................4

          1.    Pre-tow notice by mail is not a requirement of due process. .......................5

          2.    Plaintiff's arguments regarding other available notice are inconsistent with the stipulated facts. ......................................................................10

III.   CONCLUSION ...................................................................................16

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

2-ER-205

# TABLE OF AUTHORITIES

## Federal Cases

*Bayer v. Neiman Marcus Grp., Inc.*,
  861 F.3d 857 (9th Cir. 2017) ........................................................................ 3, 4

*City of Canton v. Harris*,
  489 U.S. 378 (1989) ........................................................................................ 2

*Clement v. City of Glendale*,
  518 F.3d 1090 (9th Cir. 2008) ...................................................................... 10

*Dusenbery v. United States*,
  534 U.S. 161 (2002) ........................................................................................ 5

*Eggar v. City of Livingston*,
  40 F.3d 312 (9th Cir. 1994) ........................................................................... 4

*Gleason v. Bundage*,
  No. 6:17-cv-01415-AA , 2018 WL 2305690 (D. Or. May 18, 2018) ................. 3

*Golden v. Zwickler*,
  394 U.S. 103 (1969) ........................................................................................ 3

*Greene v. Lindsey*,
  456 U.S. 444 (1982) .......................................................................... 6, 7, 11, 12

*Grimm v. City of Portland*,
  971 F.3d 1060 (9th Cir. 2020) ...................................................................... 4

*Idaho v. Coeur d'Alene Tribe of Idaho*,
  521 U.S. 261 (1997) ........................................................................................ 3

*Intercontinental Indus. Corp. v. Luo*,
  No. CV 10-4174-JST, 2011 WL 221880 (C.D. Cal. Jan. 20, 2011) ................. 5

*Jones v. Flowers*,
  547 U.S. 220 (2006) ............................................................................... passim

*Kolender v. Lawson*,
  461 U.S. 352 (1983) ........................................................................................ 4

*Lombard v. United States*,
  356 F.3d 151 (1st Cir. 2004) .......................................................................... 6

*Mennonite Bd. of Missions v. Adams*,
  462 U.S. 791 (1983) ........................................................................................ 6

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ............................................................................. 4, 7, 11

*Murphy v. Kenops*,
  99 F. Supp. 2d 1255 (D. Or. 1999) .............................................................. 4

*Nelsen v. King Cty.*,
  895 F.2d 1248 (9th Cir. 1990) ...................................................................... 3

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
  944 F.3d 1035 (9th Cir. 2019) ...................................................................... 14

*Sample v. Johnson*,
  771 F.2d 1335 (9th Cir. 1985) ...................................................................... 3

Page  iii  – TABLE OF AUTHORITIES

2-ER-206

*Schroeder v. City of New York*,
 371 U.S. 208 (1962) ........................................................................... 7
*Spencer v. Kemna*,
 523 U.S. 1 (1998) .............................................................................. 3
*Sterling v. v. Environmental Control Bd.*,
 793 F.2d 52 (2d Cir. 1986) ................................................................. 7
*Tulsa Professional Collection Servs., Inc. v. Pope*,
 485 U.S. 478 (1988) ......................................................................... 7, 8
*Wright v. Beck*,
 981 F.3d 719 (9th Cir. 2020) .............................................................. 6

**State Cases**

*Valdez v. City of Ottawa*
 434 N.E.2d 1192 (Ill. App. Ct. 1982) .................................................. 8
*Ayers v. Landow*,
 666 A.2d 51 (D.C. 1995) .................................................................... 8
*Mitchell v. MAP Res., Inc.*,
 649 S.W.3d 180 (Tex. 2022) ............................................................... 7
*Wenatchee Reclamation Dist. v. Mustell*,
 684 P.2d 1275  (Wa. 1984) ................................................................ 7

**Portland City Code**

PCC 16.30.220 ................................................................................. 1, 2
PCC 16.30.320 ................................................................................. 1, 2

**Federal Rules**

FRCP 23(c)(2)(B) .............................................................................. 11

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

2-ER-207

Defendant City of Portland ("City") responds to Plaintiff Andrew Grimm's Motion for Summary Judgment (ECF No. 95, "Pl.'s MSJ") as follows:

## I.    INTRODUCTION

Plaintiff misstates the legal standards and ignores the undisputed material facts. In doing so, Plaintiff insists that the City should have used alternative forms of notice that were neither available nor practicable. The City placed pre-tow notice on Plaintiff's illegally parked vehicle two days before towing it. This notice was reasonably calculated to reach Plaintiff—the person who parked his vehicle in downtown Portland, paid for parking, and knew it might be towed if not moved. The City had no reason to believe that Plaintiff did not receive the notice. And, importantly, the alternatives that Plaintiff offers were not reasonably practicable means of providing pre-tow notice. If the City had utilized mail, it would not have provided timely notice, and it would have given notice to the wrong person. For the other proposed types of notice, the City lacked the necessary information or technology to contact Plaintiff in those ways. For these reasons, addressed more fully below and in the City's Motion for Summary Judgment, the Court should deny Plaintiff's Motion for Summary Judgment.

## II.    ARGUMENT

### A.    The City's towing ordinances are not relevant to Plaintiff's claim.

Plaintiff initially focuses on Portland City Code that authorizes towing vehicles without prior notice. Plaintiff cites to Portland City Code ("PCC") 16.30.220 "Towing Without Prior Notice" and PCC 16.30.320 (Notice After Vehicle Tow." (ECF 95, Pl.'s MSJ at 8-9). Plaintiff does not identify the specific provision of either of these City codes that he believes is unconstitutional. In fact, Plaintiff insists that PCC 16.30.320 is unconstitutional because it requires post-tow notice. (ECF 95, Pl.'s MSJ at 9). But nothing in that code prohibits, or in any way addresses pre-tow notice. PCC 16.30.320. Without identifying any specific provisions,

Page  1  – DEFENDANT CITY OF PORTLAND'S RESPONSE TO PLAINTIFF ANDREW GRIMM'S MOTION FOR SUMMARY JUDGMENT

Plaintiff asks the Court to declare each section of City code, in its entirety, unconstitutional. (ECF 95, Pl.'s MSJ at 10). Plaintiff's request should be denied for two independent reasons. First, Plaintiff has not stated a *Monell* claim with respect to these two City codes. Second, Plaintiff has presented no evidence that he has standing for prospective relief.

While Plaintiff repeatedly emphasizes the requirement for pre-tow notice, he ignores the stipulated fact that pre-tow notice was given here. To state a *Monell* claim, Plaintiff must establish: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had an official policy, or pervasive custom or practice; (3) that the policy, custom, or practice amounted to "deliberate indifference" to Plaintiff's constitutional rights; and (4) causation of such a degree that the deliberately indifferent policy, custom, or practice was the "moving force" behind the constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 380 (1989).

Regardless of whether Plaintiff can demonstrate the first three elements of a *Monell* claim, Plaintiff cannot show that PCC 16.20.220 or PCC 16.30.320 were the moving force behind Plaintiff's alleged deprivation. Plaintiff has stipulated that the City *did* provide pre-tow notice, regardless of the City code that he cites. In short, Plaintiff stipulated that the City provided notice, even if it was not required by City code. Therefore, these City codes are unrelated to Plaintiff's claim against the City.

Further, Plaintiff lacks standing to seek prospective relief. The question for determining whether there is a controversy in a case under the Declaratory Judgment Act is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy an[d] reality to warrant the issuance of a

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

declaratory judgment." *Golden v. Zwickler*, 394 U.S. 103, 108 (1969). "[P]laintiffs must demonstrate that a 'credible threat' exists that they will again be subject to the specific injury for which they seek injunctive or declaratory relief." *Sample v. Johnson*, 771 F.2d 1335, 1340 (9th Cir. 1985). "In evaluating whether such a credible threat of future harm exists, 'past exposure to harm is largely irrelevant.'" *Gleason v. Bundage*, No. 6:17-cv-01415-AA, 2018 WL 2305690, at *2 (D. Or. May 18, 2018) (quoting *Nelsen v. King Cty.*, 895 F.2d 1248, 1251 (9th Cir. 1990)). And "no matter how important the issue or how likely that a similar action will be brought, a court is without jurisdiction if there is not a sufficient likelihood of recurrence with respect to the party now before it." *Nelsen*, 895 F.2d at 1251.

Federal courts, "are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong." *Spencer v. Kemna*, 523 U.S. 1, 18 (1998). In short, "[a] declaratory judgment merely adjudicating past violations of federal law—as opposed to continuing or future violations of federal law—is not an appropriate exercise of federal jurisdiction." *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 857, 868 (9th Cir. 2017); *see also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 288 (1997) (stating "[a] federal court cannot award retrospective [declaratory] relief, designed to remedy past violations of federal law") (internal citations omitted).

Here, Plaintiff lacks standing to obtain prospective relief, including declaratory relief, because he was only once subject to an allegedly unconstitutional tow. This allegedly unconstitutional tow occurred almost five years ago. Moreover, as discussed above, the City's actions with respect to that single tow did not conform to the City code for which Plaintiff seeks relief. Plaintiff's past experience, in which pre-tow notice was given, and the absence of

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

evidence that Plaintiff risks a tow without notice in the future, makes Plaintiff's ongoing harm entirely speculative. *See, e.g.*, *Eggar v. City of Livingston*, 40 F.3d 312, 317 (9th Cir. 1994); *Murphy v. Kenops*, 99 F. Supp. 2d 1255, 1259-60 (D. Or. 1999).

To obtain prospective declaratory judgment with respect to the cited City code, Plaintiff must have evidence that (a) he will likely park in Portland again, (b) he will remain parked beyond the time that he pays for, (c) the City will decide to tow Plaintiff's vehicle, and (d) the City will not provide pre-tow notice. There is no evidence that any of these events is likely to occur. To the contrary, the evidence shows that even if the other contingencies are met, the City will provide Plaintiff with pre-tow notice on his vehicle prior to any tow.

Plaintiff cannot "show the conduct complained of in this action presently affects him or can reasonably be expected to affect him in the future." *Bayer*, 861 F.3d at 868. Therefore his claim for declaratory relief against the City is not justiciable. Plaintiff was subject to one allegedly unconstitutional action almost five years ago. This singular incident is insufficient to confer standing for prospective relief. *Cf. Kolender v. Lawson*, 461 U.S. 352, 355 n.3 (1983) (finding "credible threat" of future harm where plaintiff "ha[d] been stopped on approximately 15 occasions pursuant to [the challenged statute] . . . in a period of less than two years."). The Court should deny Plaintiff's request for any declaratory relief, particularly relief related to the referenced City code.

**B.      The City's pre-tow notice met the *Mullane/Jones* requirements.**

Plaintiff does not provide the legal standards set forth in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) and *Jones v. Flowers*, 547 U.S. 220 (2006). Nor does Plaintiff try to address and answer the questions remanded by the Ninth Circuit. *See Grimm v.*

Page  4  – DEFENDANT CITY OF PORTLAND'S RESPONSE TO PLAINTIFF ANDREW
                GRIMM'S MOTION FOR SUMMARY JUDGMENT

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

2-ER-211

*City of Portland*, 971 F.3d 1060, 1068 (9th Cir. 2020). Instead, Plaintiff's motion offers five variations of the same argument—the City should have used alternative methods to give Plaintiff notice. These arguments fail to address whether the actual notice—posting on Plaintiff's vehicle—was reasonably calculated to reach Plaintiff. They similarly do not address whether the City had any reason to believe Plaintiff did not receive the notice. But most importantly, Plaintiff mischaracterizes the facts to suggest that alternative means of notice were better and practicable alternatives. To the contrary, the stipulated facts and evidence show that Plaintiff's alternative methods of notice were either unavailable or impracticable.

### 1. Pre-tow notice by mail is not a requirement of due process.

Plaintiff asks the Court to conclude that posting pre-tow notice on his vehicle was categorically insufficient. This argument is unsupported by either the caselaw applying *Mullane-Jones* or the facts of this case. Posting pre-tow notice on Plaintiff's vehicle was, in this case, the most likely form of notice to reach Plaintiff, who had parked the vehicle and could take steps to move it before it was towed.

Plaintiff cites a number of cases in support of his position that when mail is available, relying solely on posting violates *Mullane*. But none stand for the position that Plaintiff advances. First, Plaintiff cites *Intercontinental Indus. Corp. v. Luo*, an unpublished district court case. Plaintiff relies on a parenthetical from this case, which cites the *dissent* in *Dusenbery*. *See* No. CV 10-4174-JST, 2011 WL 221880, *3 (C.D. Cal. Jan. 20, 2011); *see also Dusenbery v. United States*, 534 U.S. 161, 17 (2002) (J. Ginsburg dissent). Even if *Intercontinental* were controlling, the court did not consider posting notice on a vehicle. Rather, the court evaluated whether notice by publication satisfied due process. 2011 WL 221880, at *3.

Page  5  – DEFENDANT CITY OF PORTLAND'S RESPONSE TO PLAINTIFF ANDREW
GRIMM'S MOTION FOR SUMMARY JUDGMENT

Plaintiff's reliance on *Lombard v. United States*, 356 F.3d 151 (1st Cir. 2004) and *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791 (1983), is similarly inapposite. Both of these cases involved final disposition of property through judicial proceedings. Because they related to the final disposition of property, notifying the actual owner by mail took on greater significance. Additionally, because the judicial process is lengthier, identifying interested parties by mail is more practical. *Lombard v. United States*, 356 F.3d 151, 153-54 (1st Cir. 2004) (addressing whether notice was adequate in a multi-year process to quiet title); *Mennonite*, 462 U.S. at 794-95 (analyzing the necessity to provide notice of mortgagee of tax sale where proceedings occurred over multiple years). Additionally, *Mennonite* did not require notice by mail. Instead, it discussed notice by mail "or other means as certain to ensure actual notice." *Id*. at 800. Here, as discussed below, for a vehicle registered in a different state, posting notice on the property is more likely to ensure actual notice than notice by mail.

Plaintiff proceeds to quote circuit court interpretations of *Greene v. Lindsey*, 456 U.S. 444 (1982), to support his position that posting notice on Plaintiff's vehicle does not satisfy due process. The cited decisions again do not support that conclusion. In *Wright v. Beck*, 981 F.3d 719 (9th Cir. 2020), the court did not find that posting notice could never satisfy due process. (ECF 95, Pl.'s MSJ at 12 (omitting language from *Wright*)). Instead, it explained that *Greene* had "held that posting notice *on the door of a tenant's apartment of a forcible entry or detainer action* 'does not satisfy minimum standards of due process.'" 981 F.3d at 723 (emphasis added) (quoting *Greene*, 456 U.S. at 454-55).

Plaintiff similarly leaves out the beginning of the quoted sentence in *Sterling v. Environmental Control Bd.*, where the Second Circuit explained that in *Greene*, "[t]he Court

Page 6 – DEFENDANT CITY OF PORTLAND'S RESPONSE TO PLAINTIFF ANDREW GRIMM'S MOTION FOR SUMMARY JUDGMENT

noted that in many cases posting would be likely to afford actual notice." 793 F.2d 52, 57 (2d Cir. 1986). By omitting this language, Plaintiff incorrectly argues that *Sterling* concluded that posting without further steps does not satisfy due process. (ECF 95, Pl.'s MSJ at 12). These circuit courts have not, as Plaintiff contends, said that posting never satisfies due process. Rather, these courts looked at specific facts—none of which related to towing a vehicle parked on downtown streets—to determine what type of notice is reasonably calculated to reach the interested parties.

Plaintiff also cites a footnote in *Greene* for the assertion that the "'reason disappears' to resort to anything less than pre-tow mail." (ECF 95, Pl.'s MSJ at 12). However, this conclusion is also not supported by the footnote. The footnote quotes language from *Mullane* that found publication notice was not sufficient where names and addresses were at hand. *Mullane*, 339 U.S. at 319. In *Schroeder v. City of New York*, 371 U.S. 208 (1962), the Court also quoted *Mullane* for the proposition that "*notice by publication* is not enough with respect to a person whose name and address are known or very easily ascertainable." *Id*. at 212-13 (emphasis added). Similarly, *Tulsa Professional Collection Servs., Inc. v. Pope*, 485 U.S. 478 (1988) considered the efficacy of mail service in contrast to service by publication. The quoted language was addressing service by publication rather than mail, and none of the case were addressing pre-tow notice.

Plaintiff also cites numerous state court cases applying *Mullane*. These cases are not precedential and largely do not relate to pre-tow notice. *See Mitchell v. MAP Res., Inc.*, 649 S.W.3d 180, 184, 188-90 (Tex. 2022) (posting on courthouse door of a tax foreclosure sale of mineral rights did not satisfy due process); *Wenatchee Reclamation Dist. v. Mustell*, 684 P.2d

Page  7  – DEFENDANT CITY OF PORTLAND'S RESPONSE TO PLAINTIFF ANDREW
            GRIMM'S MOTION FOR SUMMARY JUDGMENT

1275, 1277-78 (Wa. 1984) (statute providing for posting and publishing notice related to the sale

of property, without requiring mailing notice to delinquent property owners or a hearing was

constitutionally inadequate); *Ayers v. Landow*, 666 A.2d 51 (D.C. 1995) (interpreting District of

Columbia statute requiring both posting and mailing of notice to a tenant).

Plaintiff identifies a single intermediate appellate court decision from Illinois that relates

to posting versus mailing pre-tow notice. (ECF 95, Pl.'s MSJ at 13-14). This Court should not

follow the reasoning of that case. First, it is notable that Plaintiff identifies no court that has

reached the same conclusion in the forty years since that opinion. Second, factual distinctions

make the decision unpersuasive. In *Valdez v. City of Ottawa*, the plaintiff's vehicle "displayed

valid license plates that were registered to the plaintiff at his current address." 434 N.E.2d 1192,

1194 (Ill. App. Ct. 1982). There, the police department placed a sticker on the car indicating it

would be towed unless it was moved. *Id*. The vehicle was towed when it was not moved. *Id*.

Subsequently, plaintiff was unable to pay the towing fee, and the vehicle was destroyed. *Id*. at

973-74. Unlike the plaintiff in that case, here, the City here did not believe that "[t]he auto was

currently registered." In fact, the expired tags on Plaintiff's vehicle suggested the opposite. (ECF

93, at ¶ 33). Additionally, the vehicle wasn't registered to Plaintiff and the City did not have "the

plaintiff's name and address." (*Id*.).

In short, Plaintiff is incorrect when he asserts that "seventy years of *Mullane* cases have

established the widely-recognized principle that notice by posting is constitutionally inadequate

where notice by mail is available." (ECF 95, Pl.'s MSJ at 14). Plaintiff's cited cases do not

support the conclusion that "pre-tow notice by posting was clearly constitutionally inadequate."

(*Id*.). More importantly, that conclusion is contrary to the Supreme Court's own interpretation of

Page  8  – DEFENDANT CITY OF PORTLAND'S RESPONSE TO PLAINTIFF ANDREW
GRIMM'S MOTION FOR SUMMARY JUDGMENT

*Greene*, which is that "outside the specific facts of that case, posting notice on real property is 'a singularly appropriate and effective way of ensuring that a person . . . is actually apprised of proceedings against him.'" *Jones*, 547 U.S. at 236. Instead of relying on the majority opinion in *Jones*, Plaintiff repeatedly cites the *dissent* for the opposite proposition – that posting notice is inherently unreliable. (ECF 95, Pl.'s MSJ at 12, 21, 24)

Posting notice on a vehicle that is illegally parked is not only reasonably calculated to provide notice to the person with an interest in the vehicle, but the facts of this case suggest that it may be the form of notice most likely to have reached Plaintiff. First, Plaintiff parked his vehicle on the City's street just over a week before it was towed. (ECF 93, ¶¶ 32-47). He initially paid for parking, suggesting that he understood the parking rules related to leaving his vehicle. (*Id.* at ¶ 35). And he did actually understand that his car could be towed if it was left without payment. (*Id.* at ¶ 29). Second, Plaintiff's vehicle was registered, but it had California plates with expired tags. (*Id.* at ¶¶ 32-33). The City parking enforcement officer that issued the Warning Placard and ordered the tow did not know if the vehicle was actually registered with an updated address. (*Id.* at ¶ 19).

Even if the parking enforcement officer, despite evidence to the contrary, expected that the registration was up-to-date, the vehicle was registered in California. (*Id.* at ¶ 32). It would not be reasonable to expect that sending notice by mail to an out-of-state registered owner would assist in getting actual notice to a person responsible for the vehicle parked in Portland. Finally, the notice that was ultimately mailed was mailed to the registered owners, not Plaintiff. These owners were located in Illinois and Nebraska. (ECF 22-1, at 6). Further evidencing that mailed notice would have been ineffectual, Plaintiff apparently did not learn of the post-tow notice that

Page 9 – DEFENDANT CITY OF PORTLAND'S RESPONSE TO PLAINTIFF ANDREW GRIMM'S MOTION FOR SUMMARY JUDGMENT

was sent by mail. Two days after that notice was sent by mail, Plaintiff returned to his vehicle to find it was not there, apparently learning for the first time that it had been towed. (ECF 93, ¶ 49; ECF 22-1, ¶ 7). Given these facts, there is no reason to believe that notice by mail would have been more likely to provide actual notice than posting notice on the vehicle. If anything, it was less likely that such notice would have given actual notice to Plaintiff.

Plaintiff also ignores that the Ninth Circuit has expressly recognized that physically posting notice on the vehicle is the common and accepted form of pre-tow notice. *Clement v. City of Glendale*, 518 F.3d 1090, 1094, 1096 (9th Cir. 2008) ("The punishment for illegal parking is a fine, which is normally imposed by affixing a ticket to the windshield. A ticket can also serve as notice of the illegality and a warning that the car will be towed if not moved[.]"). Here, posting on the vehicle was a reasonably calculated method of providing actual notice to the person in possession of the vehicle—Plaintiff.[1]

### 2. Plaintiff's arguments regarding other available notice are inconsistent with the stipulated facts.

Plaintiff attempts to insert four new elements into the analysis of the City's notice—best notice practicable, consider available information, available alternative methods, taking additional steps when notice was ineffectual. (ECF 95, Pl.'s MSJ at 15, 16-25 (identifying what Plaintiff describes as "four additional independent reasons" why the City's pre-tow notice violated *Mullane*)). Despite separating them into different arguments, Plaintiff's position on each

---

[1] Before engaging in any final disposition of the vehicle, which would permanently deprive the owner, the City provided notice by mail, as Plaintiff recognizes. (ECF 95, Pl.'s MSJ at 14). The decision to mail this notice does not support the conclusion that pre-tow notice posted on the vehicle was inadequate. It is simply an additional form of notice, which in this case was given to a different person, before permanent deprivation.

Page 10 – DEFENDANT CITY OF PORTLAND'S RESPONSE TO PLAINTIFF ANDREW GRIMM'S MOTION FOR SUMMARY JUDGMENT

circles back to a single question of whether there were other feasible alternative forms of notice. (ECF 95, Pl.'s MSJ at 16-25).

There are not four additional requirements that the Court must analyze to determine whether the City's notice was adequate. Rather, the Court must initially determine whether the pre-tow notice was reasonably calculated to give Plaintiff notice. As discussed above, it was. Subsequently, the Court must consider whether there were unique circumstances that nonetheless made this reasonably calculated notice insufficient. *Jones*, 547 U.S. at 226-27, 231, 234. If the City should have known that notice was ineffective, the Court must consider whether there were reasonably practicable alternatives. *Id.* Notably, Plaintiff appears to acknowledge this in the final section of his motion. (ECF 95, Pl.'s MSJ at 24-25)

Plaintiff initially focuses on the requirement for class action notice, which must be "the best notice that is practicable under the circumstances." FRCP 23(c)(2)(B); (*see* ECF 95, Pl.'s MSJ at 16-19). Plaintiff ignores that the cited language only appears in class action cases. Nonetheless, to the extent it is drawing from *Mullane*, it is part of addressing the fundamental question of whether the notice was reasonably calculated to provide the owner with actual notice. 339 U.S. at 315. Plaintiff also cites language related to testing notice against "the existence of 'feasible and customary' alternatives and supplements to the form of notice chosen."[2] *Greene*, 456 U.S. at 454; (*see* ECF 95, Pl.'s MSJ, at 17, 21-24). In *Greene*, the Court articulated this requirement in a situation where the government knew the posted notice was likely ineffective

_____

[2] Plaintiff's reliance on this analysis of feasible and customary alternatives and supplements is repeated in two sections, but Plaintiff does not offer any reason why this would arise in two separate parts of the analysis. (*See* ECF 95, Pl.'s MSJ at 17, 21).

Page 11 – DEFENDANT CITY OF PORTLAND'S RESPONSE TO PLAINTIFF ANDREW GRIMM'S MOTION FOR SUMMARY JUDGMENT

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

2-ER-218

due to the knowledge that it was being removed by non-interested parties. 456 U.S. at 454. There are no similar facts here.

Plaintiff also discusses the requirement that the City use the unique information it has about an intended recipient "regardless of whether a statutory scheme is reasonably calculated to provide notice in the ordinary case." *Jones* 547 U.S. at 230. Plaintiff suggests that the unique information that the City had was alternatives ways to contact Plaintiff. (ECF 95, Pl.'s MSJ at 20). That is not the proper application of this analysis. The unique information analysis addresses whether the government had information unique to the intended recipient or circumstance that should have made it clear that the recipient did not receive notice. *Jones*, 547 U.S. at 230 (describing two cases where the government knew specific information about the recipients' circumstances such that they were aware that the notices provided would be ineffectual).

Ultimately, each of Plaintiff's four arguments are iterations of his counter-factual assertion that there were other practicable methods of notice that the City opted not to use. While the City will address this inaccurate assertion below, the Court need not reach this question. First, as discussed above, posting pre-tow notice on the vehicle was reasonably calculated to inform the interested party—Plaintiff—that it needed to be moved.

Second, there is no evidence that placing notice on Plaintiff's vehicle was not the best practicable notice under the circumstances. There was no reason, as there was in *Green*e and *Jones*, to believe that the City's chosen form of notice was not reaching the intended recipient. Plaintiff's only argument that notice was ineffectual is that citations remained on the windshield. (ECF 95, Pl.'s MSJ at 24). But unlike certified mail being returned, which "promptly provides additional information to the government about the effectiveness of notice," *Jones*, at 231, the

Page 12 – DEFENDANT CITY OF PORTLAND'S RESPONSE TO PLAINTIFF ANDREW GRIMM'S MOTION FOR SUMMARY JUDGMENT

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

2-ER-219

failure to remove parking citations does not provide the same information. It could, just as reasonably, mean that Plaintiff saw the citation and ignored them. And unlike the citations, the Warning Placard, which provided express notice of the tow, apparently did not remain on the windshield. (ECF 22-1, ¶ 13). It cannot be the case that citations remaining on the windshield means that notice was ineffective and the Warning Placard being removed from the windshield *also* means that notice was ineffective.

At bottom, the City provided reasonably calculated notice by placing the Warning Placard on Plaintiff's windshield. The City had no information indicating that this notice was not successful. In this situation, *Jones* and *Mullane* do not require the Court to look further into the availability of other forms of notice. However, if the Court examines alternatives, the evidence shows that they were either unavailable or impractical.

Plaintiff lists eight alternative "methods available to attempt pre-tow notice." (ECF 95, Pl.'s MSJ at 17). Many of these are duplicative of others.[3] Plaintiff asserts that these methods were available and practicable despite stipulated facts to the contrary.

Plaintiff states that when "providing notice was in [the City's] *own* interest" it mailed notice to the registered owner. (ECF 95, Pl.'s MSJ at 18). This post-tow notice was not sent to advance the City's interest. This notice was an additional notice to protect the interests of the owner of the vehicle before there was any permanent deprivation. In short, it was another step to protect Plaintiff's interest. Because the vehicle had been towed, any posted notice would no

---

[3] Plaintiff lists "[t]he mail" and also "[u]sing the car's registration information," (ECF 95, Pl.'s MSJ at 17). It is not clear whether these are two different methods of notice or two steps necessary to provide notice by mail.

Page  13  –  DEFENDANT CITY OF PORTLAND'S RESPONSE TO PLAINTIFF ANDREW
                GRIMM'S MOTION FOR SUMMARY JUDGMENT

longer be likely to provide actual notice. But, as discussed above, this form of notice was less

likely to be successful because it was sent to the registered owner, not Plaintiff.

Plaintiff also asserts that the City, in the regular course of business admits to using

telephone, email, mobile parking app, and Internet to conduct business. (ECF 95, Pl.'s MSJ at

18, 20). But Plaintiff ignores the stipulated facts that such technologies were not available to

provide pre-tow notice to Plaintiff. (ECF 93, ¶ 14). Plaintiff asks this Court to find that notice

was ineffectual because the City didn't utilize information that it did not have—Plaintiff's phone

number, address or email address. Plaintiff's insistence that the City had communicated with him

by email is simply inaccurate. (ECF 95, Pl.'s MSJ at 22-23). Passport contacted Plaintiff by

email. When Plaintiff registered for ParkingKitty, he shared his contact information with

Passport. Passport does not share that information with the City. (ECF 93, ¶ 20). The City did not

have Plaintiff's contact information to communicate with him.

Alternatively, Plaintiff insists that the City needed to contact him in a manner unavailable

to the City—through ParkingKitty. (ECF 95, Pl.'s MSJ at 22-23). The City does not own, did not

design, and does not operate ParkingKitty. (ECF 93, ¶¶ 5, 14). ParkingKitty is owned, designed,

and operated by a third-party, Passport. And ParkingKitty does not functionally allow the City to

provide separate or new push notifications to Plaintiff. (*Id*. at ¶¶ 13-14). Providing notice through

a technology that is unavailable to the City is not required by due process.

Plaintiff cites a case discussing notice for a proposed class action settlement, in support

of his argument that the City was required to use unavailable technology. That case does not

support his argument. There, the court noted the possibility of disseminating notice "through

social media or postings on any relevant online message boards." *Roes, 1-2 v. SFBSC Mgmt.,*

Page  14  – DEFENDANT CITY OF PORTLAND'S RESPONSE TO PLAINTIFF ANDREW
                   GRIMM'S MOTION FOR SUMMARY JUDGMENT

*LLC*, 944 F.3d 1035, 1047 (9th Cir. 2019). There is nothing in that decision that suggests that posting on social media was required even if this technology was unavailable to the class representatives. Plaintiff has pointed to no decision requiring a government to obtain additional information about people or purchase different technology in order to provide notification before towing a vehicle.[4] In fact, the Supreme Court in *Jones* expressly rejected a less burdensome requirement of searching other government records prior to selling someone's home. *Jones*, 547 U.S. at 235-36.

Here, the unique information that Plaintiff identifies—that he was a user of ParkingKitty and that the vehicle had registration information[5]—does not provide any basis for concluding that Plaintiff would not receive the actual notice placed on his vehicle. Moreover, as discussed above, these other potential points of contact with Plaintiff or the registered owners of the car, were not practicable means for the City to provide Plaintiff pre-tow notice.

Because the City's posting practice was reasonably calculated to give vehicle owners notice that their car would be towed, and the City had no reason to know that such notice had not been effective, the Court need not consider available alternatives. However, even if the Court chooses to evaluate Plaintiff's alternatives, the evidence demonstrates that they were either not

---

[4] Plaintiff cites a program in a single other city that allows individuals to sign-up for a text before towing program in four instances when a vehicle may be towed. A text notification is sent at the time that the tow truck is notified, meaning it may be sent as few as five minutes before the tow. *See* https://www.sfmta.com/getting-around/drive-park/towed-vehicles/text-tow-program. That program appears to have been started in 2022, over four years after the date when Plaintiff suggests the use of such forms of communication was required to satisfy due process. *See* https://www.sfgate.com/local/article/SF-drivers-now-get-text-before-tow-16774009.php.

[5] While Plaintiff's car was registered, the parking enforcement officer would not have reason to know that because the tags on Plaintiff's vehicle were expired. (ECF 93, ¶ 33).

Page  15  – DEFENDANT CITY OF PORTLAND'S RESPONSE TO PLAINTIFF ANDREW
              GRIMM'S MOTION FOR SUMMARY JUDGMENT

available or impracticable for prompt pre-tow notice. For these reasons, the Court should deny

Plaintiff's Motion for Summary Judgment.

**III.    CONCLUSION**

      For the above reasons, this Court should deny Plaintiff's Motion for Summary Judgment

and grant the City's Motion for Summary Judgment.

      Dated:  November 7, 2022.

                          Respectfully submitted,

                          */s/ Naomi Sheffield*
                          Naomi Sheffield, OSB No. 170601
                          Sr. Deputy City Attorney
                          Email: naomi.sheffield@portlandoregon.gov
                          *Of Attorneys for Defendant City of Portland*

Page  16  – DEFENDANT CITY OF PORTLAND'S RESPONSE TO PLAINTIFF ANDREW
             GRIMM'S MOTION FOR SUMMARY JUDGMENT

Megan Keenan (OSB No. 204657)
INFORMATION DIGNITY ALLIANCE
P.O. Box 8684
Portland, Oregon 97207
Phone: (925) 330-0359
Megan@InformationDignityAlliance.org

Paul Maddock (admitted *pro hac vice*)
CAREY DANIS & LOWE
8235 Forsyth Boulevard, Suite 1100
St. Louis, Missouri 63105
Phone: (314) 678-1205
PMaddock@CareyDanis.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **ANDREW GRIMM**, <br>     Plaintiff, <br><br> v. <br><br> **CITY OF PORTLAND** <br>     Defendant. | Case No. 3:18-cv-183-MO <br><br> Plaintiff Andrew Grimm's <br> MOTION FOR SUMMARY JUDGMENT <br> Pursuant to Fed. R. Civ. P. 56 <br><br> ***Oral Argument Requested*** |

2-ER-224

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ 3

LOCAL RULE 7-1(A)(1)(A) CERTIFICATE OF COMPLIANCE .............................. 4

MOTION ................................................................................................................... 5

UNDISPUTED MATERIAL FACTS ........................................................................ 5

STATEMENT OF ISSUES ....................................................................................... 6

INTRODUCTION ..................................................................................................... 7

LEGAL MEMORANDUM ....................................................................................... 8

    I.   The City's towing ordinances are unconstitutional. ............................................. 8

    II.  The City's sole reliance upon posting violates *Mullane*. ..................................... 11

    III. The City violated *Mullane* for four additional independent reasons. .............. 15

          A.  The City failed to provide the best notice practicable. ........................................ 16

          B.  The City failed to consider information that it had. ............................................. 20

          C.  The City did not avail itself of available alternative methods. ............................ 21

          D.  The City did not take additional steps when there was reason to suspect the

              postings were proving ineffectual ....................................................................... 24

CONCLUSION ......................................................................................................... 26

CERTIFICATE OF COMPLIANCE .......................................................................... 27

CERTIFICATE OF SERVICE ................................................................................... 28

2-ER-225

## TABLE OF AUTHORITIES

### Cases

Aero-Medical v. United States,
        23 F.3d 328 (10th Cir. 1994) ............................................................. 12

Ayers v. Landow,
        666 A.2d 51 (D.C. 1995) ................................................................... 13

Brannon v. Household Int'l, Inc.,
        236 F. App'x 285 (9th Cir. 2007). ..................................................... 16

Fager v. CenturyLink Communs., LLC,
        854 F.3d 1167 (10th Circ. 2016) ........................................................ 16

Greene v. Lindsey,
        456 U.S. 444 (1982). ..................................................... 11, 12, 19, 20

Grimm v. City of Portland,
        971 F.3d 1060 (9th Cir. 2020) ..................................................... 8, 9, 11

In re Drexel Burnham Lambert Group,
        995 F.2d 1138 (2d Cir. 1993) ............................................................. 16

Intercontinental Indus. Corp. v. Luo,
        2011 U.S. Dist. LEXIS 9081 (C.D. Cal. Jan. 20, 2011) .......................... 11

Jones v. Flowers,
        547 U.S. 220 (2006). ............................................................ 8, 9, 12, 20

Lombard v. United States,
        356 F.3d 151 (1st Cir. 2004). ............................................................. 11

Mennonite Bd. of Missions v. Adams,
        462 U.S. 791 (1983). ................................................................... 11, 12

Mitchell v. MAP Res., Inc.,
        649 S.W.3d 180 (Tex. 2022) ............................................................. 13

Phillips Petroleum Co. v. Shutts,
        472 U.S. 797 (1985). ......................................................................... 16

Schroeder v. City of New York,
        371 U.S. 208 (1962). ......................................................................... 12

Silber v. Mabon,
        957 F.2d 697 (9th Cir. 1992) .................................................. 16, 17, 19

2-ER-226

Sterling v. Environmental Control Bd.,
    793 F.2d 52 (2d Cir. 1986)...................................................................... 12

Taylor v. Yee,
    780 F.3d 928 (9th Cir. 2015)................................................................. 8, 9

Tulsa Professional Collection Services, Inc. v. Pope,
    485 U.S. 478 (1988). ............................................................................. 12

Valdez v. Ottawa,
    105 Ill. App. 3d 972 (1982)............................................................... 13, 14

Walker v. City of Hutchinson,
    352 U.S. 112 (1956). .............................................................................. 25

Wenatchee Reclamation Dist. v. Mustell,
    102 Wn.2d 721 (Wash. App. 1984). ...................................................... 13

Wright v. Beck,
    981 F.3d 719 (9th Cir. 2020)................................................................. 12

## Statutes

Portland, Or., City Code ch. 16.30 § 220.................................................. 8, 9

Portland, Or., City Code ch. 16.30 § 320............................................. 8, 9, 21

## LOCAL RULE 7-1(a)(1)(A)
### CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7-1(a)(1)(A), the undersigned counsel hereby certifies that the Parties' counsel have made a good-faith effort during several phone calls, including a phone call on October 17, 2022, to jointly resolve this Motion and have been unable to do so.

2-ER-227

## Motion[1]

Pursuant to Federal Rule of Civil Procedure 56, Plaintiff Andrew Grimm hereby moves, through undersigned counsel, that the Court grant summary judgment in his favor on the following grounds:

1. The City's towing ordinance are unconstitutional.

2. The City's exclusive reliance upon pre-tow posting violated <u>Mullane</u> because pre-tow mail was available.

3. The City did not use the best practicable method of notice.

4. The City did not use information available to it to provide notice.

5. The City did not avail itself of available additional methods.

6. The City did not take additional steps when there was reason to suspect the postings were proving ineffectual.

There is no issue of material fact, and Plaintiff is entitled to judgment as a matter of law on Plaintiff's claim under

## Undisputed Material Facts

For the purposes of summary judgment, the Parties have stipulated to facts. The Parties' Statement of Stipulated and Undisputed Material Facts are provided both in the record, Dkt. 93, and incorporated by declaration attached to this motion for summary judgment.

---

[1] Emphasis supplied unless otherwise indicated. Internal brackets, quotations, and citations are often removed for ease of reading. Record citations are to "Dkt." and are according to the docket-stamps, not internal pagination.

2-ER-228

STATEMENT OF ISSUES

I.   Whether the City's towing ordinances provide constitutionally sufficient pre-tow notice. <u>See</u> Section I, *infra*.

II.  Whether the City's sole reliance upon pre-tow posting violates the <u>Mullane</u> standard.  <u>See</u> Section II, *infra*.

III. Whether the City violated the <u>Mullane</u> standard here in any of four independent ways. <u>See</u> Section III, *infra*.

    A.   Whether the City used the best notice practicable, as required.  <u>See</u> Section III.A, *infra*.

    B.   Whether the City considered unique information as required.  <u>See</u> Section III.B, *infra*.

    C.   Whether the City had available alternatives or additions, as required.  <u>See</u> Section III.C, *infra.*

    D.   Whether the City took additional steps when it had reasonable to believe that posting was proving ineffectual, as required.  <u>See</u> Section III.D, *infra*.

**INTRODUCTION**

A

TIMING PROBLEM

METHOD PROBELM

2-ER-230

LEGAL MEMORANDUM

I.      **The City's towing ordinances are unconstitutional.**

The City's towing ordinances, such as Portland City Code Sections 16.30.220 and 16.30.320, are unconstitutional.  See Portland, Or., City Code ch. 16.30 § 220 ("Towing Without Prior Notice"); id. § 320 ("Notice After Vehicle Tow").

That's because there is a "**pre-towing notice requirement**."  Grimm v. City of Portland, 971 F.3d 1060, 1064 (9th Cir. 2020).   This "*requirement* that the government provide individualized *pre*-tow notice" applies here in this case.  Id. at 1063; id. at 1064 ("few exceptions" inapplicable here).  As the phrase **pre**-tow notice indicates, the notice required by due process must occur **before** the tow occurs.  Id. at 1063.

This requirement of *pre*-tow notice is a "**settled principle**" of constitutional law:

* "We first reiterate a *settled principle*: *Due process requires that individualized notice be given before an illegally parked car is towed*[.]"  Grimm v. City of Portland, 971 F.3d 1060, 1063 (9th Cir. 2020).

* Due process imposes the "*requirement that notice be given before an individual's control of his property is disturbed*," *i.e.*, towed.  See Taylor v. Yee, 780 F.3d 928, 934 (9th Cir. 2015) ("before" italicized in original).

* There is a "*constitutional obligation of notice before taking private property*."  Jones v. Flowers, 547 U.S. 220, 232 (2006).

Simply put, there is a well-established "**pre-towing notice requirement**."  Grimm, 971 F.3d at 1064.

Given this pre-towing notice requirement, the City's towing ordinances are unconstitutional.

For example, Section 16.30.220 purports to authorize "Towing **Without** Prior Notice." See Portland, Or., City Code ch. 16.30 § 220. In other words, Section 220 is a **_no-notice_** towing ordinance. That's unconstitutional because due process imposes a "_pre-towing_ **notice requirement**." Grimm, 971 F.3d at 1064; id. at 1063 ("**requires**"); Taylor, 780 F.3d at 934 ("**requirement**"); Jones, 547 U.S. at 232 ("**constitutional obligation**"). Simply put, Section 16.30.220 is unconstitutional because "Towing _Without_ Prior Notice" is plainly non-compliant with a "_pre-towing notice requirement_."

Likewise, Section 16.30.320 purports to authorize "Notice **After** Vehicle Tow." See Portland, Or., City Code ch. 16.30 § 320. In other words, Section 320 is a **_post-tow-notice_** towing ordinance. That's unconstitutional too because due process imposes a "**_pre-towing notice requirement_**." Grimm, 971 F.3d at 1064; id. at 1063 ("**_before an illegally parked car is towed_**"); Taylor, 780 F.3d at 934 ("**_before an individual's control of his property is disturbed_**"); Jones, 547 U.S. at 232 ("**_before taking private property_**"). Simply put, Section 16.30.320 is unconstitutional because "Notice _After_ Vehicle Tow" is plainly non-compliant with a "_pre_-towing notice requirement."

These results were foreseen. Many cities foresaw that the pre-towing notice requirement "**calls into question municipal towing ordinances**[.]" Muni. Amicus 21. In 2020, the City foresaw this result too, _i.e._, that pre-towing notice "_will likely necessitate_" the "**overhaul**" of towing ordinances. Portland Pet. En Banc 21. As the City's no-notice and post-tow-notice ordinances show, the City and many other cities haven't "ordered their affairs"—_i.e._, their towing ordinances—to provide for **pre**-towing notice. See Muni. Amicus 21.

Thus, those ordinances are unconstitutional. The City's towing ordinances are unconstitutional in light of the pre-towing notice requirement. Accordingly, the Court is respectfully requested to declare them unconstitutional and, in turn, to grant summary judgment in Plaintiff's favor.

## II. __The City's sole reliance upon posting violates *Mullane*.__

The City's sole reliance upon pre-tow posting *when mail was available* violates the Mullane standard.

The Mullane standard turns on "whether a __*method*__ of notice satisfied due process."  Grimm, 971 F.3d at 1066 (italics in original).  When, as here, the *method* of __mail__ was available before the tow, see Dkt. 93 at 9 ¶ 49, the City's sole reliance upon the *method* of __posting__, Dkt. 93 at 7-8 ¶¶ 41-47, violates the Mullane standard:

- "In __a series of cases__ following Mullane, the Supreme Court has similarly __condemned notice by__ publication or __posting__ as not reasonably calculated to inform persons with known interests[.]'' Intercontinental Indus. Corp. v. Luo, 2011 U.S. Dist. LEXIS 9081, *8-9 (C.D. Cal. Jan. 20, 2011) (citing Mullane).

- "__Leading cases__ like Mullane __contain general statements that notice by posting__ or publication __only suffices where claimants are otherwise unknown__[.]" Lombard v. United States, 356 F.3d 151, 155-156 (1st Cir. 2004) (citing Mullane).

- "__Notice by mail__ or other means as certain to ensure actual notice __is a minimum constitutional precondition__" where a "name and address are reasonably ascertainable." Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 800 (1983) (applying Mullane).

In sum, a series of leading cases following Mullane have condemned exclusive reliance upon notice by posting.

Consider one of the leadings cases applying Mullane, *i.e.*, Greene v. Lindsey, 456 U.S. 444 (1982).

In <u>Greene</u>, the Supreme Court "concluded that **mere posting** on an apartment door, *without further steps such as **mailing**, did **not** satisfy the minimum standards of due process*." <u>Sterling v. Environmental Control Bd.</u>, 793 F.2d 52, 57 (2d Cir. 1986) (citing <u>Greene</u>). After <u>Greene</u>, "**posting notice**" simply "**does not satisfy minimum standards of due process**." See <u>Wright v. Beck</u>, 981 F.3d 719, 728 (9th Cir. 2020) (quoting <u>Greene</u>).

In <u>Greene</u>, the Supreme Court reasoned that where "the names and post-office addresses of those affected […] are at hand, **the reasons disappear [to] resort to means less likely than the mails**[.]" <u>Greene</u>, 456 U.S. at 456 n. 10 (citing <u>Schroeder v. City of New York</u>, 371 U.S. 208, 213 (1962)). If the City has a name and address available, the "**reasons disappear**" to resort to anything less than pre-tow mail. See <u>id.</u>

Indeed, the Supreme Court has "**repeatedly recognized that mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice**." <u>Tulsa Professional Collection Services, Inc. v. Pope</u>, 485 U.S. 478, 490 (1988); <u>Mennonite</u>, at 799, 800; <u>Greene</u>, 456 U. S. at 455.

By contrast, the Supreme Court has "concluded that **posting is an inherently unreliable method of notice**." <u>Jones</u>, 547 U.S. at 248 (Thomas, J., dissenting) (citing <u>Greene</u>); see also <u>Aero-Medical v. United States</u>, 23 F.3d 328, 330-331 (10th Cir. 1994) (citing <u>Schroeder</u>, 371 U.S. 208 (1962)) (noting that "posting of notice" was "inadequate" when the property owner's "name and address were easily ascertainable").

In sum, Supreme Court case after Supreme Court case, and the appellate decisions interpreting those cases, have rejected reliance upon mere posting when another method of notice was available.

State courts applying <u>Mullane</u> have said much the same.

Emphatically, state courts applying <u>Mullane</u> say the same about posting's insufficiencies standing alone when mail is available:

- *The Texas Supreme Court*: "Following <u>Mullane</u>, **the [U.S.] Supreme Court has consistently held** that when an unknown defendant can be identified, or a known defendant's address can be ascertained from publicly recorded instruments, **notice by posting** or publication **is insufficient** to satisfy due process." <u>Mitchell v. MAP Res., Inc.</u>, 649 S.W.3d 180, 189-190 (Tex. 2022).

- *The Washington Court of Appeals*: "**Notice by […] posting is constitutionally inadequate** where the name and address of the owner are known or can be discovered by the governmental entity[.]" <u>Wenatchee Reclamation Dist. v. Mustell</u>, 102 Wn.2d 721, 726 (Wash. App. 1984) (citing <u>Mennonite</u>, 103 S. Ct. at 2712).

- *The District of Columbia Court of Appeals*: "**Notice by posting** of a summons on the door to the tenant's apartment, **without more, has been held to be constitutionally inadequate**." <u>Ayers v. Landow</u>, 666 A.2d 51, 55 (D.C. 1995) (citing <u>Greene</u>).

Thus, the general constitutional principle that notice by posting is constitutionally inadequate where notice by mail is available has been repeatedly recognized by state courts and federal courts alike.

Courts have even applied this principle to *specific issue of pre-tow notice*: "**At a minimum, notice by certified or registered mail** would have been *appropriate*" here because the "**auto[mobile] was currently registered** and the police had the plaintiffs' name and address." <u>See</u> <u>Valdez v. Ottawa</u>, 105 Ill. App. 3d 972, 976 (1982) (citing <u>Mullane</u>).

So too here.

Plaintiff's car was registered. Dkt. 93 at 6 ¶ 33. The City was able to mail notice about the tow. Dkt. 93 at 9 ¶ 49. Yet the Government failed to mail any pre-tow notice. Dkt. 93 ¶ at 50. Instead, the Government relied solely on posting despite the availability of mail. Dkt. 93 at 7-8 ¶¶ 41-47.

That's Constitutionally inadequate—as the plethora of authorities state above.

* * * * *

In sum, seventy years of <u>Mullane</u> cases have established the widely-recognized principle that notice by posting is constitutionally inadequate where notice by mail is available. Federal courts and state courts alike have recognized that principle. And that principle has been directly applied to the issue of pre-tow notice in the 1980s. <u>Valdez</u>, 105 Ill. App. 3d at 976 (1982). Applying this principle to the undisputed facts of this case, the City's method of pre-tow notice by posting was clearly constitutionally inadequate under the <u>Mullane</u>-<u>Jones</u> standard, given the availability of mail.

Here, it is undisputed that the method of mail was available. Dkt. 93 at 9 ¶ 49. After all, *<u>the government used mail to send notice of the tow</u>*. <u>Id.</u> But the government did *<u>not</u>* do so until ***<u>after</u>*** the tow. <u>Id.</u> Instead, they relied solely on postings to attempt pre-tow notice. Despite the availability of mail, it is undisputed that the ***<u>only method</u>*** attempted to provide pre-tow notice here was notice by posting. Dkt. 93 at 9 ¶ 50.

**III.**    <u>**The City violated *Mullane* for four additional independent reasons.**</u>

This dispute can be settled by the application of a widely accepted, central tenet of the <u>Mullane-Jones</u> standard. Specifically, the <u>Mullane-Jones</u> standard establishes that notice by posting is unconstitutional where the mail is available or where a mailing address is readily ascertainable. <u>See</u> Section II, *supra*. That alone is enough to grant Plaintiff's motion for summary judgment here.

Yet, if this Court disagrees or wants to go further, then there are four additional, independent doctrinal reasons that the City's attempts at notice failed to satisfy the <u>Mullane-Jones</u> standard:

1. The City failed to provide the <u>**best notice practicable**</u>, as required by the <u>Mullane</u> standard. <u>See</u> Section III A., *infra*.

2. The Government—FAILED INFORMATION See Section III B., infra.

3. The Government–OTHER Methods See Section III C., infra.

4. JONES. See Section III D., infra.

   Each additional reason is addressed in turn.

A.    *The City failed to provide the best notice practicable.*

The Mullane-Jones standard requires the best notice practicable.

Relying on Mullane, the Supreme Court has observed that notice "must be the **best practicable**" in order to satisfy the demands of due process. Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985) (citing Mullane, 339 U.S., at 314-315). The Courts of Appeals have also stressed that "the Due Process Clause requires the **best notice practical** under the circumstances[.]" In re Drexel Burnham Lambert Group, 995 F.2d 1138, 1144 (2d Cir. 1993) (citing Mullane at 315).

The Ninth Circuit has reiterated that "**the standard required since Mullane**" has been the "**best notice practicable**[.]" Silber v. Mabon, 957 F.2d 697, 700 (9th Cir. 1992); Brannon v. Household Int'l, Inc., 236 F. App'x 285, 288 n.1 (9th Cir. 2007) ("**best practicable notice** under Mullane").

**Thus, *Mullane* requires the best notice practicable.**

Courts often discuss this "best practicable" notice requirement in the familiar context of Rule 23's notice of class actions. Yet, Rule 23's "best practicable" notice requirement is a straightforward application of Mullane. Indeed, the Courts of Appeals have clarified that the Mullane "standard is **coextensive** with the requirements of Fed. R. Civ. P. 23(c)(2)[.]" Fager v. CenturyLink Communs., LLC, 854 F.3d 1167, 1171 (10th Circ. 2016) (citing Mullane). The Ninth Circuit has clarified that the "best notice practicable under the circumstances" is ***both*** "the standard **required since *Mullane*** [...] and by the express terms of Rule 23[.]" Silber v. Mabon, 957 F.2d 697, 700 (9th Cir. 1992).

Thus, Mullane-Jones requires the best notice practicable, whether in the Rule 23 context or in the property-deprivation context.

That's because <u>Mullane</u> requires that the government act "as one desirous of actually informing" of the property deprivation. <u>Mullane</u> at 315. This standard requires that "the notice provided must be tested with reference to the existence of **_feasible and customary alternatives_**[.]" <u>Greene</u>, 456 U.S. at 454.

The Government must consider available "supplements to the form of notice chosen[.]" <u>Id.</u> In short, courts ask "whether [the chosen method of notice] would satisfy a prudent man of business…finding it **_in his interest_** to convey information[.]" <u>Mullane</u>, 339 U.S. at 320. Such a person would reasonably choose the best notice practicable. _That's why_ the <u>Mullane</u> standard requires the "**best practicable notice** under the circumstances." <u>Silber</u>, 957 F.2d at 700 (9th Cir. 1992).

Here, the City fell far short of that standard. The City had numerous methods available to attempt pre-tow notice. Specifically, the City could have sent pre-tow notice by any of the following methods:

- The mail. Dkt. 93 at 5 ¶ 22; <u>id.</u> at 9 ¶ 49.

- Via the City-owned Parking app. <u>Id.</u> at 3 ¶¶ 10-11.

- By email. <u>Id.</u> ¶ 12.

- By phone call. <u>Id.</u> at 6 ¶ 31.

- By text message. <u>Id.</u>

- Using the car's registration information. <u>See id.</u> at 5 ¶ 22.

- Using the contact information Parking Kitty had requested when the car was registered with "the City-owned" parking app. <u>Id.</u> at 2-3 ¶ 9.

- Using the same method that the City used to contact Retriever Towing to order the tow. <u>Id.</u> at 8 ¶ 47.

But the City did not use *any* of these options to attempt pre-tow notice.  Dkt. 93 at 4 ¶ 13, 5 ¶ 21, 9 ¶ 50-51.

And, it's not that they couldn't. After all, the City uses such methods in the ordinary course of business. Dkt. 6 at 8 ¶ 67a-d (admitting usage of telephone, email, mobile parking app, and Internet to conduct business).  And the City even used such methods to contact Mr. Grimm about his car—**just not to attempt pre-tow notice**.  Dkt. 93 at 6 ¶ 36, 9 ¶ 49.

In short, when the City was constitutionally obligated to provide the best notice practicable, the City did not use a single one of these methods to attempt pre-towing notice. Dkt. 93 at 5 ¶ 21, 9 ¶ 50.  That's not what someone who "actually desired" to get in touch would do under the Mullane-Jones standard.  Jones, 547 U.S. at 229.

Indeed, one needn't guess how the City would have notified if it actually desired to.  Nor would one need to guess what the City would have done when it thought providing notice was in its *own* interest.  When the City wanted to provide notice of the tow (*after* the fact), it simply looked up the car registration information and dropped a letter in the mail.  Dkt. 93 at 9 ¶ 49.  Yet, when the City was constitutionally obligated to use the best practicable method to attempt **pre**-tow notice, it made no use of the registration information and refused to use the mail.  Dkt. 93 at 5 ¶ 21, 9 ¶ 50.

When the City wanted to notify that the car's parking had expired it did so using the "City-owned" parking app–Parking Kitty.  Dkt. 93 at 3 ¶¶ 10-11, 6 ¶ 36.  Yet, when the City was obligated to provide the best practicable notice of the tow it failed to use Parking Kitty or any of the Parking Kitty contact information. Dkt. 93 at 5 ¶ 21,

Furthermore, when the government wanted to tow, it managed to contact Retriever Towing on the same day it ordered the tow.  Dkt. 93 at 9 ¶ 47.

By contrast, when the government was constitutionally obligated to provide pre-tow notice, it didn't use whatever that method was to inform a citizen.

* * * * *

In short, the City was constitutionally obligated, under the <u>Mullane</u>-<u>Jones</u> standard, to provide the "**best notice practicable**." <u>Silber v. Mabon</u>, 957 F.2d 697, 700 (9th Cir. 1992). The City's sole reliance on postings, refusing to use "**feasible and customary alternatives**" fell far short of that standard. <u>Greene v. Lindsey</u>, 456 U.S. 444, 454 (1982).

Indeed, given the plethora of options available to easily provide notice of the tow, "there seem to be **no compelling or even persuasive reasons why such direct notice cannot be given**." <u>Walker v. City of Hutchinson</u>, 352 U.S. 112, 116 (1956).

B. *The City failed to consider information that it had.*

Under the Mullane standard, the City is required "to consider **unique information about** an intended recipient regardless of whether a statutory scheme is reasonably calculated to provide notice in the ordinary case." Jones, 547 U.S. at 230. This consideration depends on what information is available. Greene, 456 U.S. at 456 n.10.

Here, the City failed to use contact information that it was already in possession of from Parking Kitty. Dkt 93 at 5 ¶ 21. The parking officers knew that Plaintiff was a Parking Kitty user. In fact, the officer cannot determine if Plaintiff was illegally parked without consulting the Parking Kitty information. Dkt 93 at 7-8 ¶¶ 42-44. Furthermore, the City failed to use information that was readily accessible, such as the vehicle registration information. Rather, the registration information was only used to attempt contact *after* the tow, when the Plaintiff's car was already impounded. Dkt 93 at 5 ¶ 22, 9 ¶ 49.

For both of those reasons, the City's attempts at notice failed under Mullane. This is because the City did not consider the unique information that was readily accessible and/or already used to contact the Plaintiff, to provide pre-tow notice. The City failed to consider this unique information about the Plaintiff when notifying about the tow. Dkt 93 at 5 ¶ 21. Therefore, the City failed under the Mullane standard because it failed to meet the requirement that it consider unique information about the Plaintiff when making attempts at pre-tow notice.

### C. *The City did not avail itself of available alternative methods.*

Under the <u>Mullane</u> standard, "the reasonableness of the notice provided **must be tested** with reference to the existence of **'feasible and customary'** <u>alternatives and supplements</u> to the form of notice chosen." <u>Greene</u>, 456 U.S. at 454. In other words, whether the City's sole reliance on posting satisfied <u>Mullane</u> depends on what feasible or customary alternative forms of notice were available.

Importantly, the Supreme Court has "concluded that posting is **an inherently unreliable method** of notice." <u>Jones</u>, 547 U.S. at 248 (Thomas, J., dissenting) (citing <u>Greene</u>). Indeed, it is undisputed *here* that Plaintiff never saw the postings before the tow. Dkt 93 at 9 ¶ 48 ("Plaintiff did not see the postings before the tow."). And, "**notice by posting [...]** *only* **suffices where claimants are otherwise unknown**" such that alternative methods such as the mail are infeasible. <u>Lombard</u>, 356 F.3d at 155-156 (citing <u>Mullane</u>, 339 U.S. at 318). Given the numerous alternative methods for attempting pre-tow notice here, the City's sole reliance on the method of posting does not satisfy <u>Mullane</u>.

*First*, there is the mail.

When the City wanted to provide **post**-tow notice, the City *mailed* a letter to the mailing address associated with the car's registration. Dkt. 93 at 5 ¶ 22 (policy), 9 ¶ 49 (mailed here). Indeed, the City routinely relies on the mail to provide **post**-tow notice. Dkt. 93 ¶ 22; <u>see</u> ." Portland, Or., City Code ch. 16.30 <u>§ 320</u> ("Notice After Vehicle Tow"). Yet, here, the City failed to attempt any **pre**-tow notice via the mail. Dkt. 93 at 9 ¶¶ 50-51.

The City's sole reliance on postings failed to satisfy the <u>Mullane-Jones</u> standard, given the feasible and customary method of mail. Here, the mail provided a "feasible and customary" method of notice that would have been a reasonable "alternative[] or supplement[] to the form of notice chosen." <u>Greene v. Lindsey</u>, 456 U.S. 444, 454.

Where, as here, "the names and post-office addresses of those affected [...] are at hand, the reasons disappear for resort to means less likely than the mails[.]" Greene, 456 U.S. at 456 n.10 (citing Mullane at 318); Dkt. 93 at 9 ¶ 49. Here, the mailing address associated with the car's registration was available. Dkt. 93 ¶ 49. And, the mail is a feasible and customary method of communication.

Nonetheless, the City simply did not bother to make use of the mail until *after* it ordered the tow. Dkt. 93 ¶ 22, 49. The availability of mail here renders sole reliance on the method of posting inadequate under the Mullane-Jones standard.

*Second*, there is email and the Parking Kitty app—the methods the City was using to contract Plaintiffs already, just not about the tow.

Given that the City had already been contacting Plaintiff about his car *via Parking Kitty* and *via email*, sole reliance on posting to attempt pre-tow notice does not satisfy Mullane. In October 2017, Plaintiff had registered his car with Parking Kitty. Dkt 93 at 6 ¶ 30. As part of the registration process, Plaintiff had provided his license-plate information and contact information like his email. Id. ¶ 31.

In the week leading up to the tow, the City used its app and the Plaintiff's email address to contact Plaintiff about his car. In fact, Plaintiff received digital in-app notifications directly to his smartphone. Dkt. 93 at 3 ¶¶ 10-11, id. at 6 ¶ 36. Plaintiff also received notifications to his email about parking receipts. Id. ¶ 12.

Yet, the City did not provide pre-tow notice using the app or any of the registration information, like his email. Dkt 93 at 5 ¶ 21, 9 ¶ 50. The City had been using its Parking Kitty app to send notices about Plaintiff's car and parking status directly to Plaintiff's smartphone. Dkt. 93 at 6 ¶ 36, . And, he had elected to receive emails from Parking Kitty. Id. at 3 ¶ 12.

But, when it came time to provide pre-tow notice, these digital communications ceased and Portland resorted to paper methods.

The fact that the City had used the app and email to notify Plaintiff of his car and parking status prior to the tow, is "persuasive" that use of this method would have been practicable. <u>See</u> Mullane at 319. That's because courts have recognized that where the government has used a method to successfully communicate prior to a property deprivation, that method is persuasively practicable to notify of the property deprivation. See <u>Mullane</u> at 319; <u>see also</u> <u>Chin Yi Tu v. NTSB</u>, 470 F.3d 941, 946 (9th Cir. 2006).

The Ninth Circuit has recognized that "[t]echnological developments are making it ever easier to target communications to specific persons or groups and to contact individuals electronically at little cost." <u>Roes v. SFBSC Mgmt., LLC</u>, 944 F.3d 1035, 1047 (9th Cir. 2019). Here, the City's Parking Kitty app, and the registration information, make providing notice readily practicable. Here, in light of Parking Kitty and the use of email "something more was required here to meet the standard of the best notice practicable" <u>Roes</u>, 944 F.3d at 1048.

*Third*, there's text and phone calls.

This isn't some hypothetical possibility. The City of San Francisco already provides automated pre-towing text messages. "<u>Text Before Tow Program</u>," SFMTA (last accessed Oct. 17, 2022); "<u>San Francisco Program Warns Motorists Via Text That Their Car Is About to Get Towed</u>," NBC Bay Area (last accessed Oct. 17, 2022). The key point is that the City could have gotten in touch with Plaintiff regarding his tow via a phone call using an automated system, a text message, or even a courtesy call. After all, the City's already doing this for certain other tows.

Thus, sole reliance on postings when digital communications were available fails to satisfy the <u>Mullane-Jones</u> standard.

D. _The City did not take additional steps when there was reason to suspect the postings were proving ineffectual_

One Supreme Court case applying the Mullane standard—Jones v. Flowers, 547 U.S. 220 (2006)—is crucial here. Jones clearly establishes that more must be done when there is good reason to believe that prior efforts at notice have failed to provide actual notice. Id. at 229.

Armed with reasons to believe that notice had not been received, taking "no further action is not what someone 'desirous of actually informing' [another] would do." Id. Instead, someone who actually desired to provide notice "would take further reasonable steps if any were available." Id. (emphasis added).

Instead, in the face of indicia that notice did not reach the intended recipient, the government is required to take additional steps to ensure notice if any were available.

Here, there was such indicia, that the postings were not reaching the intended recipient. First, postings have long been recognized as "an inherently unreliable method of notice." Jones v. Flowers, 547 U.S. 220, 248(Thomas, J., dissenting) (citing _Greene_ v. _Lindsey_, 456 U.S. 444, 453-454). And, there was ample evidence that posting were proving to be ineffectual here. Indeed, the postings were piling up on top of each other, undisturbed, still in their envelopes, and pinned under the windshield. Dkt. 93 Ex E. Finally, it is undisputed that plaintiff, in fact, never received or saw the postings before the tow in this case. Dkt. 93 ¶48.

In short, there was reason to suspect that the postings were not being received. When Defendants towed Plaintiff's car, they had "good reason to suspect [...] that [Plaintiff] was 'no better off than if the notice had never been sent.'" Jones v. Flowers, 547 U.S. at 230. These reasons to suspect that "notice pursuant to the normal procedure was ineffective **triggered an obligation on the government's part to take additional steps to effect notice**." Id.

And yet, it is undisputed that the government did not take *any* additional steps to provide pre-towing notice. Dkt. 93 ¶50-51.

Thus, under the <u>Mullane</u>-<u>Jones</u> standard, the government can only prevail here if there were **<u>no further</u>** reasonable steps if any were available." Id. (emphasis added). After all, while Due Process has never required the "impossible or impractical", <u>Jones v. Flowers</u>, 547 U.S. 220, 241, it does require the "**best notice practicable**[.]" <u>Silber v. Mabon</u>, 957 F.2d 697, 700 (9th Cir. 1992); <u>v. SFBSC Mgmt.</u>, LLC, 944 F.3d 1035, 1048 (9th Cir. 2019) ("best notice practicable").

Here, the City plainly failed to take additional steps. See Section III C, supra. After all, the mail was an available option. And yet, when postings were proving ineffectual, the City failed to use the mail. Digital notifications through the City's Parking Kitty app or using any of the Parking Kitty contact information for the registered car presented another additional step to effect notice. But the City did not use the app or *any* of the contact information collected via the app. And, the car's registration information was readily ascertainable (and in fact was ascertained). But the City did not use any of this information to take additional steps at notice.Dkt. 93 ¶21, 50-51.

Such refusal to use additional steps when there was reason to suspect that the postings were proving ineffectual fails to satisfy the <u>Mullane</u>-<u>Jones</u> standard.

## CONCLUSION

For the reasons discussed above, this Court is respectfully requested to grant summary judgment in favor of Plaintiff and against Defendant.

Respectfully submitted,

Dated: October 17, 2022

*/s/ Megan Keenan*
Megan Keenan (OSB No. 204657)
INFORMATION DIGNITY ALLIANCE
P.O. Box 8684
Portland, Oregon 97207
Phone: (925) 330-0359
Megan@InformationDignityAlliance.org

2-ER-249

**CERTIFICATE OF COMPLIANCE**

This Motion complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains **5,524** words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.


Dated: October 17, 2022          /s/ *Megan Keenan*
                                 Megan Keenan

**CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing on:

> Ms. Naomi Sheffield
> Sr. Deputy City Attorney
> OFFICE OF CITY ATTORNEY
> 1221 Southwest Fourth Avenue
> Suite 430
> Portland, Oregon 97204
> Email: Naomi.Sheffield@PortlandOregon.Gov
> Telephone: (503) 823-3122
> Facsimile: (503) 823-3089
>
> *Of Attorney for City of Portland*
>
> Mr. Matthew Lowe
> Shareholder
> JORDAN RAMIS PC
> Two Centerpointe Drive
> 6th Floor
> Lake Oswego, Oregon 97035
> Email: Matthew.Lowe@JordanRamis.com
> Telephone: (503) 598-7070
> Facsimile: (503) 598-7373
>
> *Of Attorney for Retriever Towing*

by **electronic filing** in CM/ECF.

Dated: October 17, 2022                    /s/ *Megan Keenan*
                                           Megan Keenan

NAOMI SHEFFIELD, OSB 170601
Senior Deputy Attorney
Email: naomi.sheffield@portlandoregon.gov
Office of City Attorney
1221 SW 4th Avenue, Room 430
Portland, OR 97204
Telephone: (503) 823-9969
Facsimile: (503) 823-3089
*Of Attorneys for Defendant City of Portland*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| ANDREW GRIMM, | |
| **PLAINTIFF,** | **3:18-cv-00183-MO** |
| v. | **DEFENDANT CITY OF PORTLAND'S MOTION FOR SUMMARY JUDGMENT** |
| CITY OF PORTLAND, | |
| **DEFENDANT.** | **Oral Argument Requested** |

Page i – DEFENDANT CITY OF PORTLAND'S MOTION FOR SUMMARY JUDGMENT

2-ER-252

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    FACTUAL BACKGROUND ..................................................................................2

      A.    City of Portland's policies and procedures. ...............................................2

      B.    Plaintiff's parking and towing experience in Portland. .............................3

III.    PROCEDURAL HISTORY.....................................................................................4

IV.    LEGAL STANDARD..............................................................................................5

V.    ARGUMENT ..........................................................................................................6

      A.    The City's practice of providing pre-tow notice met the *Mullane/Jones* standard..6

            1.    Posting a warning on Plaintiff's vehicle that it would be towed if not moved was reasonably calculated to apprise Plaintiff of the tow. ...............7

            2.    The City had no reason to know or even suspect that Plaintiff did not get notice that his vehicle was subject to tow. ...................................................12

            3.    The alternative steps that Plaintiff proposes were not reasonably available to the City.................................................................................................16

VI.    CONCLUSION.....................................................................................................20

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

2-ER-253

# TABLE OF AUTHORITIES

**Federal Cases**

*Addison v. City of Baker City*,
  258 F. Supp. 3d 1207 (D. Or. 2017) ........................................................... 5
*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ........................................................................................ 5
*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ........................................................................................ 5
*Clement v. City of Glendale*,
  518 F.3d 1090 (9th Cir. 2008) ................................................................. 7, 8
*Covey v. Town of Somers*,
  351 U.S. 141 (1956) ..................................................................................... 13
*Derritt v. City of Pomona Ca.*
  2:11-cv-03904-SVW-PJW, 2018 WL 5859175 (C.D. Cal. June 20, 2018)........... 14
*Dusenbery v. United States*,
  534 U.S. 161 (2002) .......................................................................... 7, 13, 18
*Galfer v. City of Los Angeles*,
  No. CV1300664SJOMRWX, 2015 WL 13917145 (C.D. Cal. Mar. 6, 2015)........... 9
*Greene v. Lindsey*,
  456 U.S. 444 (1982) ............................................................................. passim
*Grimm v. City of Portland*,
  971 F.3d 1060 (9th Cir. 2020) .............................................................. passim
*Gross v. Carter*,
  265 F. Supp. 2d 995 (W.D. Ark. 2003).................................................... 15
*Hawkins v. San Mateo Cty. Law Library*,
  No. C 05-2323 SI, 2008 WL 2782717 (N.D. Cal. July 16, 2008) ........... 14
*Hicks v. City of Portland*,
  No. CV 04-825-AS, 2006 WL 3311552 (D. Or. Nov. 8, 2006) ............... 5
*Jones v. Flowers*,
  547 U.S. 220 (2006)............................................................................. passim
*Keene Grp., Inc. v. City of Cincinnati, Ohio*,
  998 F.3d 306 (6th Cir. 2021) ...................................................................... 9
*Mathews v. Eldridge*,
  424 U.S. 319 (1976)....................................................................................... 4
*Mennonite Bd. of Missions v. Adams*,
  462 U.S. 791 (1983)............................................................................... 16, 17
*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ............................................................................. passim
*North Laramie Land Co. v. Hoffman*,
  268 U.S. 276 (1925)....................................................................................... 7
*Oberhausen v. Louisville-Jefferson Cty. Metro Gov't*,
  527 F. Supp. 2d 713 (W.D. Ky. 2007)...................................................... 15

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

*Rector v. City and Cty. of Denver,*
    348 F.3d 935 (10th Cir. 2003) .................................................................. 15
*Riley v. City and Cty. of San Francisco,*
    No. C 10-01300 SI, 2010 WL 5069697 (N.D. Cal. Dec. 7, 2010) ........................................... 8
*Robinson v. Hanrahan*
    409 U.S. 39, 40 (1972) ........................................................................ 13
*Sereno-Morales v. Cascade Food Inc.,*
    819 F. Supp. 2d 1148 (D. Or. 2011) ............................................................. 5
*Taylor v. Yee,*
    780 F.3d 928 (9th Cir. 2015) ................................................................... 9
*Walthall v. United States*,
    131 F.3d 1289 (9th Cir. 1997) ................................................................. 11
*Wilson v. Farris,*
    No. 6:07CV1293-ORL-28KRS, 2010 WL 3463442 (M.D. Fla. Aug. 30, 2010) ................ 9, 10
*Yi Tu v. Nat'l Transp. Safety Bd.,*
    470 F.3d 941 (9th Cir. 2006) ............................................................. 16, 17

**State Cases**

*Patterson v. Cronin,*
    650 P.2d 531 (Colo. 1982) .................................................................... 15

**State Statutes**

ORS 803.560 ......................................................................................... 9

**Federal Rules**

Fed. R. Civ. P. 56 ................................................................................... 1

Page iv – TABLE OF AUTHORITIES

2-ER-255

**MOTION**

Pursuant to L.R. 7-1(a), counsel for Defendant City of Portland ("City") certifies that she consulted with Plaintiff's counsel multiple times, including a telephone conversation on October 17, 2022, and made a good faith effort to resolve the issues raised in this motion.

The City moves this Court for summary judgment in its favor because there is no genuine issue of material fact, and it is entitled to summary judgment as a matter of law with respect to Plaintiff's sole claim for relief.

**MEMORANDUM OF LAW**

## I.     INTRODUCTION

Plaintiff parked his vehicle on a street in downtown Portland for a week after paying for just a few hours of parking. Plaintiff did this knowing that his vehicle could be towed for remaining parked in excess of the paid time. The City placed multiple citations on Plaintiff's vehicle over the next week. The City placed a warning placard on Plaintiff's vehicle; warning him that the vehicle would be towed if it was not moved. Two days after placing the warning placard on the vehicle, Plaintiff still had not moved it. At this point, the City had Plaintiff's vehicle towed.

Plaintiff now asserts that despite his actual knowledge that his vehicle could be towed, the repeated citations, and the express warning that his car would be towed, the City provided inadequate notice to satisfy due process under the Fourteenth Amendment. This is incorrect. The City's notice, placed on the vehicle's windshield, was reasonably calculated to inform Plaintiff, as the driver of that vehicle, that it would be towed if it was not moved. Notice placed on one's windshield is the exact type of notice that people ordinarily expect before a vehicle is towed. The City's notice was reasonably calculated to apprise Plaintiff of the tow, given the particular circumstances. The Court should grant the City's motion for summary judgment.

///

Page 1  – DEFENDANT CITY OF PORTLAND'S MOTION FOR SUMMARY JUDGMENT

2-ER-256

## II.   FACTUAL BACKGROUND

### A.   City of Portland's policies and procedures.

The City has a limited number of on-street parking spots available for public use. Given this finite number of spaces, the City has a legitimate interest in discouraging people from monopolizing these spots. (ECF 93, ¶¶ 2-3). To advance this interest the City has metered parking spots. (*Id.* at ¶ 1). Drivers seeking to park their vehicle in a metered parking spot in the City in 2017 could pay for their parking either by paying at a physical pay station (*Id.* at ¶ 15), or by using a smart phone app called Parking Kitty. (*Id.* at ¶ 7).

Parking Kitty is a white label app that is owned by a third party—Passport. (*Id.* at ¶ 14). Passport designed and operates Parking Kitty. (*Id.* at ¶ 5). The City did not design Parking Kitty and does not control its functionality. Passport collects some information, including a phone number and sometimes an email address, from users who register to use Parking Kitty. (*Id.* at ¶ 9). Parking Kitty allows registered users to pay for metered parking through the app. (*Id.* at ¶¶ 7, 9). It also notifies users before their parking expires and again immediately after their parking expires. (*Id.* at ¶¶ 10-11). If users elect and provide their email address, Parking Kitty will also email users a receipt for their payment. (*Id.* at ¶ 12).

Parking Kitty is not configured to send users any additional information. (*Id.* at ¶ 13). It does not send push notifications for citations, towing, or any other topic besides payment for parking sessions. (*Id.* at ¶ 14). Passport does not regularly share user phone numbers, email addresses or other contact information with the City.

City parking enforcement officers cite cars that remain in metered parking spaces beyond the paid-for time. (*Id.* at ¶ 16). The City's procedure is to provide at least two citations for over-time parking before issuing a warning that the vehicle will be towed if it is not moved. (*Id.* at ¶ 17). After at least two citations, a parking enforcement officer will place a red warning placard on the vehicle's windshield, warning that it will be towed if it is not moved. (*Id.*; *see also* ECF 93-1, 1, Ex. A (the "Warning Placard")). The Warning Placard must remain on the vehicle for at

Page  2  – DEFENDANT CITY OF PORTLAND'S MOTION FOR SUMMARY JUDGMENT

2-ER-257

least twelve hours before a parking enforcement officer will place a tow placard, and contact the towing company to remove the unmoved vehicle. (*Id*. at ¶ 18). Within two days of towing a vehicle, the City identifies the registered title holder of the vehicle and sends written notice to the address of the registered title holder, providing them with information on how to retrieve their vehicle. (*Id*. at ¶ 22).

## B. Plaintiff's parking and towing experience in Portland.

Plaintiff parked in downtown Portland in December 2017. At that time, he was fully aware that remaining in a metered spot, but not paying, could result in his vehicle being towed. (*Id*. at ¶ 29). In fact, Plaintiff was the director of a company that at this very same time was soliciting cities to use the company's tow notification website. Plaintiff's company contacted Portland just weeks before he parked his car, and again on the very day that he parked his vehicle on Portland's streets. (*Id*. at ¶¶ 24, 26, 32). The communications from Plaintiff's company, expressly stated that they "believe that your current practices for notifying vehicles owners of a tow are unconstitutional." (ECF 93-1, 13, Ex. D).

Notwithstanding Plaintiff's apparent knowledge of the City's practices for towing vehicles, Plaintiff parked his vehicle in a metered spot in downtown Portland on December 14, 2017. (ECF 93, ¶ 32). Plaintiff paid for parking until 7:00 p.m. and received notifications from Parking Kitty prior to the expiration of his paid-for time and after expiration of his paid-for time. (*Id*. at ¶¶ 10-11, 35-36). Despite these notifications, Plaintiff did not move his vehicle or pay for additional time. (*Id*. at ¶¶ 37-38).

On December 15, 2017, a City parking enforcement officer issued two citations, placing them on Plaintiff's windshield. One citation was for parking in a metered space without payment, and the second was for the vehicle not displaying current registration tags. (*Id*. at ¶ 42). Three days later, on December 18, 2017, Plaintiff's vehicle remained unmoved. (*Id*. at ¶ 48). A City parking official again issued two citations for the same violations, and placed the citations on

Page 3 – DEFENDANT CITY OF PORTLAND'S MOTION FOR SUMMARY JUDGMENT

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

2-ER-258

Plaintiff's vehicle's windshield. (*Id*. at ¶ 43).

The next day, on December 19, 2017, a City parking enforcement officer issued another citation for parking in a metered space without payment. This time, the parking enforcement officer also placed a Warning Placard on Plaintiff's vehicle windshield. The Warning Placard warned that the vehicle would be towed if it was not moved. (*Id*. at ¶ 44). Two days after the Warning Placard was placed on Plaintiff's vehicle, on December 21, 2017, a City parking enforcement officer placed a red tow slip on Plaintiff's vehicle and contacted the towing company to remove and impound the vehicle. (*Id*. at ¶ 45, 46). The day after Plaintiff's vehicle was towed, the City sent letters to Mr. Fredrick Grimm in Omaha, Nebraska and Imperial ECU in Lincolnwood, Illinois to inform them, as the registered owners of the vehicle, that it had been towed and how to retrieve the vehicle. (*Id*. ¶¶ 33, 49; ECF 22-1, 6, Ex. 1).

## III. PROCEDURAL HISTORY

Plaintiff filed his original complaint on January 29, 2018, alleging a violation of his procedural due process right to notice under the Fourteenth Amendment. (ECF 1 "Original Complaint"). The Original Complaint included claims against the City, two parking enforcement officers employed by the City, and Retriever Towing. (*Id*.). Retriever Towing filed a motion to dismiss, which this Court granted on April 16, 2018. (ECF 17). The City and City defendants then filed a motion for summary judgment, which this Court granted on July 18, 2018. (ECF 26). Plaintiff appealed to the Ninth Circuit this Court's decision granting summary judgment to the City. (ECF 28). On August 21, 2020, the Ninth Circuit reversed and remanded this Court's decision finding that the Court erred in applying *Mathews v. Eldridge*, 424 U.S. 319 (1976) rather than applying *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) to analyze the adequacy of the City's notice to Plaintiff. *Grimm v. City of Portland*, 971 F.3d 1060, 1062, 1068 (9th Cir. 2020).

///

Page 4 – DEFENDANT CITY OF PORTLAND'S MOTION FOR SUMMARY JUDGMENT

In remanding the case to this Court, the Ninth Circuit asked the Court to:

> consider, among other questions: (1) Is putting citations on a car
> that do not explicitly warn that the car will be towed reasonably
> calculated to give notice of a tow to the owner?; (2) Did the red
> tow slip placed on Grimm's car shortly before the tow provide
> adequate notice?; and (3) Was Portland required under *Jones* to
> provide supplemental notice if it had reason to suspect that the
> notice provided by leaving citations and the tow slip on Grimm's
> windshield was ineffective?

*Id*.

## IV. LEGAL STANDARD

Fed. R. Civ. P. 56(a) authorizes summary judgment if no genuine issue exists regarding

any material fact and the moving party is entitled to summary judgment as a matter of law. *See*

*Addison v. City of Baker City*, 258 F. Supp. 3d 1207, 1215 (D. Or. 2017) (citing Fed. R. Civ. P.

56(a)). "The moving party has the burden of establishing the absence of a genuine dispute of

material fact." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving

party shows the absence of a genuine issue of material fact, the party opposing summary

judgment "may not rest upon mere allegation or denials of his pleading, but must set forth

specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 256 (1986).

Summary judgment should be entered against "a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Sereno-Morales v. Cascade Food Inc.*, 819 F. Supp.

2d 1148, 1150 (D. Or. 2011) (quoting *Celotex*, 477 U.S. at 322). "If the nonmoving party fails to

make a showing sufficient to establish the existence of an element essential to its case, and on

which she bears the burden of proof at trial, summary judgment must be granted." *Hicks v. City

of Portland*, No. CV 04-825-AS, 2006 WL 3311552, *4 (D. Or. Nov. 8, 2006) (citing *Celotex*,

477 U.S. at 322-23).

Page 5 – DEFENDANT CITY OF PORTLAND'S MOTION FOR SUMMARY JUDGMENT

## V.     ARGUMENT

The City provided Plaintiff with adequate pre-tow notice. Parking Kitty notified Plaintiff that his parking session had expired. The City placed multiple citations over a series of days notifying Plaintiff that he was no longer legally parked. Plaintiff's vehicle remained illegally parked. After five days, the City placed a Warning Placard on Plaintiff's vehicle, warning him of a potential tow. Plaintiff's vehicle remained parked illegally. Two days after placing the Warning Placard, the City contacted the towing company to have the vehicle removed. The City's notice was "reasonably calculated, under all the circumstances, to apprise" Plaintiff that his vehicle would be towed and to afford him the opportunity to avoid the tow. *Jones v. Flowers*, 547 U.S. 220, 226 (2006).

Rather than consider the adequacy of the actual notice that the City gave Plaintiff, Plaintiff alleges that the City should have used any number of other means to notify him that his vehicle would be towed—telephone, email, text message, push notification, or mail. However, the question is not whether other notice may have also been adequate, but whether the City's chosen notice was reasonably calculated to reach Plaintiff. The City's notice was reasonably calculated given the type of deprivation—a temporary deprivation of tangible property. The City had no reason to believe the notice was not effective. And even if the notice was not effective, the alternatives offered by Plaintiff were not available and practicable means of providing notice given the type of deprivation and the information available. Because the City provided Plaintiff with pre-tow notice that was reasonably calculated to apprise him that his vehicle would be towed, this Court should grant the City's motion.

### A.     The City's practice of providing pre-tow notice met the *Mullane/Jones* standard.

The City repeatedly notified Plaintiff that his vehicle remained park beyond the legally paid-for time. More importantly, the City expressly warned that Plaintiff's vehicle would be towed if not moved. This notice was calculated to ensure that Plaintiff would be aware of the

Page  6  – DEFENDANT CITY OF PORTLAND'S MOTION FOR SUMMARY JUDGMENT

potential deprivation—a temporary deprivation of the use of his car—if he did not respond to the warnings and move his vehicle.

"Due process does not require that a property owner receive actual notice before the government may take his property." *Jones*, 547 U.S. at 226. The Ninth Circuit has recognized "Due process requires that individualized notice be given before an illegally parked car is towed unless the state has a 'strong justification for not doing so.'" *Grimm*, 971 F.3d at 1063 (quoting *Clement v. City of Glendale*, 518 F.3d 1090, 1094 (9th Cir. 2008)). Here, there is no dispute that the City engaged in individualized pre-towing notice. The dispute is whether the City's notice was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections . . . with due regard for the practicalities and peculiarities of the case." *Grimm*, 971 F.3d at 1065 (quoting *Mullane*, 339 U.S. at 314-15). The City's notice was reasonably calculated.

### 1. Posting a warning on Plaintiff's vehicle that it would be towed if not moved was reasonably calculated to apprise Plaintiff of the tow.

The City posted a placard on Plaintiff's car, warning that it would be towed if it was not moved. Posting a warning on the windshield of tangible property that the City intended to move was reasonably calculated to apprise Plaintiff that his vehicle would be towed. Courts have consistently found that this type of notice, for this type of deprivation, is appropriate. That is unsurprising because it is precisely the type of notice that people reasonably expect to receive before their vehicle is towed.

"In determining the constitutionality of a procedure established by the State to provide notice in a particular class of cases, 'its effect must be judged in the light of its practical application to the affairs of men as they are ordinarily conducted.'" *Greene v. Lindsey*, 456 U.S. 444, 451 (1982) (quoting *North Laramie Land Co. v. Hoffman*, 268 U.S. 276, 283 (1925)). Importantly, the requirement of notice does not require that the City exhaust all efforts to ensure that an individual receive notice. "Due Process Clause does not require . . . heroic efforts by the

Page 7  – DEFENDANT CITY OF PORTLAND'S MOTION FOR SUMMARY JUDGMENT

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

2-ER-262

Government; it requires only that the Government's effort be 'reasonably calculated' to apprise a party of the pendency of the action[.]" *Dusenbery v. United States*, 534 U.S. 161, 170 (2002).

In the context of towing a vehicle, posting notice on a vehicle itself is the recognized and common way to apprise the vehicle owner of the tow. In fact, the Ninth Circuit has affirmatively stated that "[t]he punishment for illegal parking is a fine, which is normally imposed by affixing a ticket to the windshield. A ticket can also serve as notice of the illegality and a warning that the car will be towed if not moved or properly registered." *Clement*, 518 F.3d at 1094 ("Our holding today dovetails with *Scofield*, where we held that there was a due process requirement that notice be given—usually in the form of a ticket placed on the windshield—before police could tow apparently abandoned vehicles that are otherwise legally parked."); *see also Riley v. City and Cty. of San Francisco*, No. C 10-01300 SI, 2010 WL 5069697, *4 (N.D. Cal. Dec. 7, 2010) (finding that a warning letter affixed to plaintiff's vehicle prior to being towed satisfied due process).

In reliance on *Greene*, Plaintiff contends that posting alone is an unreliable method of notice. But that is not the conclusion reached in *Greene*. In *Greene*, the Court considered the adequacy of process servers posting notices of a writ of forceable entry and detainer on the door of a tenant's apartment. 456 U.S. at 446. The uncontroverted testimony of the process servers themselves was that the posted notices were often removed by other tenants. *Id*. at 447-48. As a result of not receiving the notices, plaintiffs "did not learn of the eviction proceedings until they were served with writs of possession, executed after default judgments had been entered against them, and after their opportunity for appeal had lapsed." *Id*. 446-47. In short, the tenants lost any ability to participate in the legal proceedings related to their eviction because they did not receive notice. Importantly, the government knew that the posted notice was often not getting to the proper person. *Greene* did not, more generally, condemn the practice of posting notice on property. In fact, applying *Greene*, the Supreme Court has explained that absent the unique

Page 8 – DEFENDANT CITY OF PORTLAND'S MOTION FOR SUMMARY JUDGMENT

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

2-ER-263

circumstances in that case, "posting notice on real property is 'a singularly appropriate and
effective way of ensuring that a person . . . is actually apprised of proceedings against him.'"
*Jones*, 547 U.S. at 236 (quoting *Greene*, 456 U.S. at 452-453).

*Jones* dictates that notice must be "appropriate to the nature of the case." 547 U.S. at 223.
Evaluating the adequacy of a particular form of notice still requires a balancing of the
government's interest against the individual interest protected by the Fourteenth Amendment. *Id.*
at 221. In *Jones*, "the Court was concerned with the 'important and irreversible prospect' of 'the
loss of a house.'" *Taylor v. Yee*, 780 F.3d 928, 937 n.6 (9th Cir. 2015) (describing the property
deprivation in *Jones*). In contrast, here the City has towed Plaintiff's vehicle to a lot where the
City's practice was to provide additional notice before any further action would permanently
deprive Plaintiff of his vehicle.[1]

The City does not dispute, as the Ninth Circuit has repeatedly recognized, that there is an
"important private interest at stake when the government orders that a private car be towed."
*Grimm*, 971 F.3d at 1063. But the Ninth Circuit has recognized that even under the *Jones* test,
the severity and permanency of the property deprivation is relevant when evaluating whether the
notice was reasonably calculated to provide actual notice to the individual.[2] *See Taylor*, 780 F.3d
at 937 (contrasting the property deprivation in *Jones* with a situation where "the property
conditionally transferred to the Controller pursuant to the UPL does not permanently escheat to
the State and may be claimed at any time."); *see also Keene Grp., Inc. v. City of Cincinnati,
Ohio*, 998 F.3d 306, 312 (6th Cir. 2021) ("*Jones* does not require reversal here because, as the
Supreme Court reiterated in that case, what constitutes adequate notice under the Due Process
Clause depends on the circumstances of each case."); *Wilson v. Farris*, No. 6:07CV1293-ORL-

---

[1] Here, the City did then provide the additional notice of sending a letter. That letter was sent to
the registered owner of the vehicle, who was not Plaintiff. (ECF 93, ¶ 33).
[2] It is notable here that the deprivation that Plaintiff experienced is further limited by the fact that
his vehicle could not be legally driven because it was displaying expired registration tags. (ECF
93, ¶ 33); ORS 803.560.

Page 9 – DEFENDANT CITY OF PORTLAND'S MOTION FOR SUMMARY JUDGMENT

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

2-ER-264

28KRS, 2010 WL 3463442, at *3 (M.D. Fla. Aug. 30, 2010) (differentiating the additional steps that may be needed to provide adequate notice in a lien action from notice of the tax sale of a house); *Galfer v. City of Los Angeles*, No. CV1300664SJOMRWX, 2015 WL 13917145, at *4 (C.D. Cal. Mar. 6, 2015) (considering the significance of the property interest at stake when applying the *Jones* notice analysis).

In addition to calibrating types of notice that would be reasonable to the property deprivation, the particular types of interest at stake may also impact whether the manner of giving notice is reasonable. In *Mullane*, the Court differentiated between the legal interests at issue in that case—which involved notice to beneficiaries of a judicial settlement of accounts by the trustee of a common-law trust fund—and interests in "tangible property." 339 U.S. at 308, 316. As the Court explained, the reasonableness of notice depends on the type of property at issue, and "publication or posting" generally affords sufficient notice of the seizure of "tangible property":

> The ways or [*sic*] an owner with tangible property are such that he usually arranges means to learn of any direct attack upon his possessory or proprietary rights. Hence, libel of a ship, attachment of a chattel or entry upon real estate in the name of law may reasonably be expected to come promptly to the owner's attention. When the state within which the owner has located such property seizes it for some reason, publication or posting affords an additional measure of notification. A state may indulge the assumption that one who has left tangible property in the state either has abandoned it, in which case proceedings against it deprive him of nothing, or that he has left some caretaker under a duty to let him know that it is being jeopardized. As phrased long ago by Chief Justice Marshall in *The Mary*, 9 Cranch 126, 144, 3 L.Ed. 678, 'It is the part of common prudence for all those who have any interest in (a thing), to guard that interest by persons who are in a situation to protect it.

*Mullane*, 339 U.S. at 316. This expectation was reiterated in *Greene*, where the Court explained "[i]t is, of course, reasonable to assume that a property owner will maintain superintendence of his property, and to presume that actions physically disturbing his holdings will come to his attention." *Greene*, 456 U.S at 451. For this reason, "a State may in turn conclude that in most cases, the secure posting of a notice on the property of a person is likely to offer that property

Page 10 – DEFENDANT CITY OF PORTLAND'S MOTION FOR SUMMARY JUDGMENT

2-ER-265

owner sufficient warning of the pendency of proceedings possibly affecting his interests." *Id*. at 452.

Here, the City did just what was instructed in *Greene*, and provided notice to Plaintiff by affixing it to the vehicle that would be impacted. In remanding this case, the Ninth Circuit directed the Court to consider whether putting citations without an explicit tow warning on Plaintiff's vehicle or placing the red tow slip on Plaintiff's vehicle provided adequate notice. *Grimm*, 971 F.3d at 1068. But neither of those questions alone are sufficient to answer whether the City's notice was sufficient considering the stipulated facts in this case.

The parties have stipulated that the notice provided to Plaintiff by the City included four parking citations and two citations for expired registration, all placed on the vehicle over the course of a week. (ECF 93, ¶¶ 43-45). The stipulation also includes agreement that the red tow slip was placed Plaintiff's vehicle before it was towed. (*Id*. at ¶ 45). But importantly, the parties further stipulated that the notice provided by the City also included a Warning Placard, which indicated that Plaintiff's vehicle would be subject to tow if it was not moved. (*Id*. at ¶ 17-18, 44). By policy, this Warning Placard must be placed on the vehicle at least twelve hours prior to any tow. (*Id*. at ¶ 18). In this instance, it was placed on Plaintiff's vehicle a full two days prior to the vehicle being towed. (*Id*. at ¶¶ 44-47). The citations and tow slip, when coupled with the express warning in the Warning Placard, were reasonably calculated to give Plaintiff notice of the tow. *Grimm*, 971 F.3d at 1068.

Plaintiff asks the Court to upend the City's practices, which are reasonably calculated to provide notice prior to towing vehicles. He asks the City to craft notice practices unique to him and his unusual circumstances, rather than providing notice that works in the "practical application to the affairs of men as they are ordinarily conducted." *Greene*, 456 U.S. at 451. Plaintiff left his vehicle parked in a metered spot without paying. He did this knowing that payment was required and knowing that failure to pay could result in his vehicle being towed. He

Page 11 – DEFENDANT CITY OF PORTLAND'S MOTION FOR SUMMARY JUDGMENT

then left his vehicle without checking on it for ten days. This is not representative of how people ordinarily conduct their affairs. *Cf. Walthall v. United States*, 131 F.3d 1289, 1295 (9th Cir. 1997) (explaining that unique circumstances of plaintiff's case which involved a partnership where some partners "might have engaged in fraud are not the proper basis upon which to assess the efficacy of a notice provision[.]"). The City's posting of citations, a Warning Placard, and tow notice on the vehicle itself, is calculated to notify people of a potential tow given how people ordinarily conduct their affairs—people return to their vehicles, parked on metered downtown streets, more than once a week.

Repeated citations, a separate Warning Placard, and a tow notice were each attached to Plaintiff's vehicle. These were the kinds of notice that "may reasonably be expected to come promptly to the owner's attention." *Mullane*. 339 U.S. at 316. Notice on the vehicle itself, a vehicle that Plaintiff just days earlier parked in a location that he knew required payment, and had made an initial payment, is a form of notice "desirous of actually informing" Plaintiff of the tow. *Jones*, 547 U.S. at 229.

### 2. The City had no reason to know or even suspect that Plaintiff did not get notice that his vehicle was subject to tow.

While Plaintiff concedes that the City provided notice on Plaintiff's vehicle, he contends that the notice was inadequate because citations that the City had issued remained on the windshield undisturbed. (Compl., ¶ 18). Plaintiff asks the Court to conclude that the City was aware that Plaintiff had not received the notice because he did not remove the citations from his vehicle. The Ninth Circuit's question on remand similarly asks the Court to consider whether the City was somehow aware that Plaintiff had not received notice: "(3) Was Portland required under *Jones* to provide supplemental notice if it had reason to suspect that the notice provided by leaving citations and the tow slip on Grimm's windshield was ineffective?" *Grimm*, 971 F.3d at 1068. But here, there is no evidence that the City's parking enforcement officers had reason to believe that leaving the citations, Warning Placard, and tow slip on Plaintiff's windshield was

Page 12 – DEFENDANT CITY OF PORTLAND'S MOTION FOR SUMMARY JUDGMENT

ineffective notice. It is therefore important that the Court first consider whether there is any evidence here, like in *Jones*, that the City had "knowledge that notice pursuant to the normal procedure was ineffective." 547 U.S. at 231. There is not.

Plaintiff relies on the analysis in *Jones* that considered "whether due process entails further responsibility when the government becomes aware prior to the taking that its attempt at notice has failed." 547 U.S. at 226-34. There, the Court concluded "that when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." *Id.* at 225.

Plaintiff appears to argue that here, because the citations remained on the windshield of his vehicle, that the parking enforcement officer had knowledge that the owner did not or would not receive notice that his vehicle would be towed. This argument fails for two reasons. First, *Jones* was decided not on the possibility that notice was ineffective, but rather on the actual knowledge that notice had failed because the only notice provided was returned unopened. *Jones*, 547 U.S. at 227 (explaining that the Court was considering for the first time "whether due process entails further responsibility when the government becomes aware prior to the taking that its attempt at notice has failed"). Second, Plaintiff's argument for why the City may have been aware that the notice was ineffective is inconsistent with the stipulated facts in this case.

The Court in *Jones* confirmed that "[d]ue process does not require that a property owner receive actual notice before the government may take his property." *Jones*, 547 U.S. at 226. In fact, the Court acknowledged that notice that is "reasonably certain to inform those affected" is constitutionally valid where "the government attempted to provide notice and heard nothing back indicating that anything had gone awry." *Id.* at 227 (citing *Dusenbery*, 534 U.S. at 170; *Mullane*, 339 U.S. at 315). The requirement to look to whether there were other, reasonable, means to provide notice, only arises where the government has "unique information" about the inadequacy

Page 13 – DEFENDANT CITY OF PORTLAND'S MOTION FOR SUMMARY JUDGMENT

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

2-ER-268

of the notice. *Id.* at 230. In *Robinson v. Hanrahan*, the Court found notice sent to a vehicle owner's home address was inadequate when the government *knew* that the owner was in prison. 409 U.S. 39, 40 (1972); *see also Covey v. Town of Somers*, 351 U.S. 141, 146-47 (1956) (foreclosure notice inadequate when officials *knew* property owner was incompetent without guardian's protection). And in *Jones*, it was "a feature of the State's chosen procedure . . . that it promptly provides additional information to the government about the effectiveness of notice," so the government was required to use that information in evaluating whether notice was effective. 547 U.S. at 231.

Conversely, here the City had no knowledge about whether Plaintiff did or did not receive actual notice that his vehicle would be towed. As discussed above, the City had a notification system that was reasonably calculated to ensure that notice would be given to the owner, or at least the driver, of the vehicle. This system included citations, but more pointedly included a Warning Placard indicating the vehicle would be towed if not moved. At no point was the City informed that Plaintiff did not see the Warning Placard that was placed on his vehicle. Unlike certified mail that is returned undelivered, the fact that Plaintiff had not removed citations from his windshield does not indicate that they had not been seen or that other warnings on the vehicle would not be seen. It could just as readily be the case that the citations were seen and ignored. Without evidence that the City had actual knowledge that notice was ineffective, *Jones* does not require the City to consider additional steps. *See Hawkins v. San Mateo Cty. Law Library*, No. C 05-2323 SI, 2008 WL 2782717, *5 (N.D. Cal. July 16, 2008) (distinguishing situation where "there is no evidence from which it can be inferred that [defendant] actually knew that the notice sent did not reach [plaintiff] from *Jones* and *Robinson*); *see also Derritt v. City of Pomona Ca.*, No. 2:11-cv-03904-SVW-PJW, 2018 WL 5859175, *5 (C.D. Cal. June 20, 2018) (same).

///

Page 14 – DEFENDANT CITY OF PORTLAND'S MOTION FOR SUMMARY JUDGMENT

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

2-ER-269

Next, Plaintiff appears to assert that because the citations remained on the car, the parking enforcement officer should have known that Plaintiff was not receiving notice that the vehicle was illegally parked. However, the evidence shows that the Warning Placard that warned Plaintiff of a potential tow if the vehicle was not moved did not remain affixed to the windshield. (ECF 22-1, ¶ 13). Under Plaintiff's theory—citations remaining on the windshield meant they were not known to the vehicle owner—the removal of the Warning Placard from the windshield would indicate that Plaintiff was aware of the potential tow. In reality, as discussed above, this simply highlights that unlike the return of certified mail or a phone call that goes unanswered, *Jones*, 547 U.S. at 231, neither the presence or absence of citations or warnings remaining on the windshield provide information to the City of whether notice was or was not effective.

The City had no reason to know that notice left on Plaintiff's vehicle was ineffective at warning him of the potential tow. There is no evidence that such warnings were routinely removed from the vehicle by persons other than the vehicle owner. *Cf. Greene*, 456 U.S. at 447. The warning was not returned to the City unopened and undelivered. *Cf. Jones*, 547 U.S. at 224. Rather, placing tow warning on a vehicle—Plaintiff's tangible property—is the type of warning that the Courts have repeatedly found adequate in the absence of additional information known to the government. *Id*. at 236 (quoting *Greene*, 456 U.S. at 452-53).[3] Absent any reason to conclude that the City's chosen form of notice was not effective, the City had no burden to seek out and find additional means of providing Plaintiff notice of the impending tow.

---

[3] Other courts have similarly found that affixing notice to a windshield is likely to provide the owner of the vehicle with notice. *See Oberhausen v. Louisville-Jefferson Cty. Metro Gov't*, 527 F. Supp. 2d 713, 721 (W.D. Ky. 2007) ("The Court is also satisfied that affixing parking tickets to vehicle windshields is reasonably certain to provide an owner notice of the violation."); *Rector v. City and Cty. of Denver*, 348 F.3d 935, 948 (10th Cir. 2003) (citing other cases from Seventh and Sixth circuit in support of conclusion that parking citations satisfied due process requirements for late fee); *Gross v. Carter*, 265 F. Supp. 2d 995, 1001–02 (W.D. Ark. 2003) ("The Court believes that [city's] practice of affixing parking tickets to illegally parked vehicles which are left unattended is reasonably certain to provide notice of the parking violation."); *Patterson v. Cronin*, 650 P.2d 531, 535 (Colo. 1982) (same).

Page  15  – DEFENDANT CITY OF PORTLAND'S MOTION FOR SUMMARY JUDGMENT

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

2-ER-270

### 3. The alternative steps that Plaintiff proposes were not reasonably available to the City.

Plaintiff contends that the City should have used other communication methods, such as telephone, email, text messages, push notifications, or regular mail, to provide notice that his vehicle would be towed. However, there is no evidence to conclude that these additional means of notice were available to the City or reasonable given the circumstances. In fact, the stipulated facts show that such additional steps were not practicable.

In *Jones*, the Court explained that where the government became aware that notice was ineffective, "the State should have taken additional reasonable steps to notify [the petitioner], if practicable to do so." 547 U.S. at 234. However, "if there were no reasonable additional steps the government could have taken upon return of the unclaimed notice letter, it cannot be faulted for doing nothing." *Id.* Moreover, the Court noted that "[w]hat steps are reasonable in response to new information depends upon what the new information reveals." *Id.*

Here, Plaintiff asks the Court to conclude that because the citations were not removed from the windshield, that Plaintiff did not go to his vehicle and was, therefore, unaware that it would be towed. As discussed above, this is not a reasonable conclusion of what the information revealed in light of the fact that the Warning Placard did appear to be removed from Plaintiff's vehicle. (ECF 22-1, ¶ 13). However, even if the Court agrees with Plaintiff that the City should have known that the notice was ineffective, he has not identified steps that were practicable for the City to take prior to towing his vehicle.

First, Plaintiff contends that the City could have mailed notice. This argument is initially appealing because the City did mail notice after the vehicle was towed. *Cf. Yi Tu v. Nat'l Transp. Safety Bd.*, 470 F.3d 941, 946 (9th Cir. 2006) (noting that the government had at other times used first class mail successfully to communicate with the plaintiff). However, mailed notice was not reasonable in this case for two reasons. First, the cases where the Court found that mailing or remailing notice was a reasonable additional step typically related to permanent deprivations,

Page 16 – DEFENDANT CITY OF PORTLAND'S MOTION FOR SUMMARY JUDGMENT

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

2-ER-271

where the failure to provide timely notice could result in the owner losing all rights in their property. *See, e.g.*, *Jones*, 547 U.S. at 239 (noting that "the State is exerting extraordinary power against a property owner—taking and selling a house he owns"); *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 799 (1983) (requiring notice by mail or personal service to mortgagee prior to a tax sale); *Greene*, 456 U.S. at 455 (considering notice by mail for initiating detainer actions). Additionally, other cases that found first class mail to be a reasonable alternative generally involved relatively lengthy processes, so the time needed to send notice by mail and receive a response was reasonable. *See Jones*, 547 U.S. at 239 (process that lasted at least two years); *Yi Tu*, 470 F.3d at 946 (process included a six-month investigation and notice triggered a 20-day appeal); *Mennonite Bd. of Missions*, 462 U.S. at 799 (tax sale required over a year of delinquency and publication of the sale for three weeks).

Here, as discussed above, the notice placed on Plaintiff's windshield was the notice required prior to towing his vehicle away from the location where he was illegally parked. This was not the notice given prior to selling the vehicle or otherwise permanently depriving Plaintiff of his vehicle. Rather, within two days of the vehicle being towed, the City notified the registered title holder of the tow, and provided information for retrieving the vehicle. (ECF 93, ¶ 22). Notably, in this case, Plaintiff was not the registered title holder of the vehicle. (*Id*. at ¶ 33). Any notice that City provided to the registered title holder in this instance, would not have been directed to Plaintiff. (*Id*.).

Additionally, a tax sale of a home, suspension of a license, or eviction proceedings, each involve time-intensive procedures, which means the time needed to provide additional notice, if initial notice is known to have failed, is reasonable. Conversely, for cars parked and remaining illegally in the public right-of-way, notice by mail is not similarly reasonable. Requiring such an additional step would significantly delay the City's ability to move these vehicles and would disrupt the City's legitimate interests related to the limited parking on its downtown streets.

Page  17  – DEFENDANT CITY OF PORTLAND'S MOTION FOR SUMMARY JUDGMENT

Here, for example, Plaintiff's vehicle was registered to Fredrick Grimm at 15287 Pepperwood Dr., Omaha, NE 68154, and Imperial ECU at 7161 Cicero, Lincolnwood, IL 60712. (ECF 22-1, 6, Ex. 1). Pre-towing notice, sent by mail, to addresses well-over a thousand miles away would not be reasonably likely to assist in addressing the immediate issue of having the vehicle moved before it is towed.

Plaintiff offers other alternative forms of notice, including by telephone, email, or through Parking Kitty. Plaintiff assumes, contrary to the stipulated facts, that the City has the information and tools to provide notice using these methods but elects not to. First, with respect to notifications through Parking Kitty, the City did not create, nor does it control, the software for Parking Kitty. (ECF 93, ¶ 14). And that software does not provide for notifications regarding citations or towing.[4] (*Id*. at ¶ 13). For Plaintiff's "reasonable" alternative to be utilized, the City would have to create a new, alternative application or purchase a different application. This goes far beyond even the additional steps that the Supreme Court considered and rejected as unreasonable in *Jones*. 547 U.S. at 236 (rejecting argument that the additional steps of searching government records would be reasonable).

Furthermore, the Supreme Court in *Dusenbery* expressly rejected the argument that advances in technology alter the due-process analysis under the *Mullane* standard. As the Court explained, it has "never held that improvements in the reliability of new procedures necessarily demonstrate the infirmity of those that were replaced. Other areas of the law, moreover, have for strong policy reasons resisted rules crediting the notion that, 'because the world gets wiser as it gets older, therefore it was foolish before.'" *Dusenbery*, 534 U.S. at 162. That is so even if newer

---

[4] Notably, for the same reasons that Plaintiff claims the City should have known that he was not receiving actual notice of the citations or Warning Placard, the City should presumably assume that he was not receiving his notifications through Parking Kitty. Specifically, Parking Kitty sent multiple notifications indicating that his parking was about to expire and subsequently did expire. (ECF 93, ¶¶ 10, 11, 36). Notwithstanding Parking Kitty sending these notifications, Plaintiff did not move his vehicle. Presumably if a person received notices that his parking was expired, in the ordinary course of affairs such person would pay to extend their parking session or move their vehicle.

Page  18  – DEFENDANT CITY OF PORTLAND'S MOTION FOR SUMMARY JUDGMENT

methods of effecting notice might "improve delivery to some degree." *Id*. The Supreme Court precedent makes clear, that the City was not obligated to develop or purchase an application with Plaintiff's preferred functionality. This is particularly true where the City provided notice that was reasonably calculated to notify vehicle owners, who park their vehicles on City streets, prior to towing the vehicle.

Finally, as the facts show, the City's parking enforcement officers, who issue the citations, place the Warning Placards, and place the tow notices, do now have access to information regarding the owner of the vehicle. (ECF 93, ¶ 19). These City parking enforcement officers did not have either the names or the contact information for the owners of the vehicle. (*Id*.). Similarly, Passport, the owner of Parking Kitty, did not and does not regularly share phone numbers, email addresses, or other contact information relating to its registered users with the City. (*Id.* at ¶ 20). Plaintiff describes emailing or telephone warning as "commonplace communications methods that Portland uses in the ordinary course of its business." (Compl., ¶ 42). But neither of these means are available here, where the City lacked the requisite information—telephone numbers and email addresses—to provide notice in this fashion. This is not a case like *Jones*, where the government clearly had an address, and mail could have just been re-sent first class, rather than certified mail. 547 U.S. at 234. Instead, Plaintiff here contends that the City is required to collect and maintain new and different information about individuals when they park their vehicles in order to provide Plaintiff with his preferred form of notice. This is not what is required by *Jones*.

The City provided notice that was reasonably calculated to apprise Plaintiff that his vehicle would be towed if he did not move it. The City had no reason to believe that the notice was not effective. In fact, it was perfectly reasonable for the City to assume that a vehicle owner or driver who parks their vehicle and pays for parking, will return in less than a week to retrieve their vehicle. Even if the notice was not effective, there was no other reasonable, practicable

Page 19 – DEFENDANT CITY OF PORTLAND'S MOTION FOR SUMMARY JUDGMENT

means for the City to provide expeditious tow notice to Plaintiff. The alternatives that he offers would significantly delay the City's ability to tow vehicles and advance the City's interest in ensuring access to the limited number of on-street parking spots. And the other suggested alternatives would involve the City entirely revamping its software or changing the information that it collects and maintains with respect to individuals parking on City streets. Plaintiff can point to no case that suggests that the City is required to obtain new information or utilize new technology in order to provide constitutionally adequate pre-tow notice.

## VI.    CONCLUSION

For the above reasons, this Court should grant the City's motion for summary judgment and dismiss Plaintiff's claim with prejudice.

Dated:  October 17, 2022.

Respectfully submitted,

/s/ Naomi Sheffield
Naomi Sheffield, OSB No. 170601
Sr. Deputy City Attorney
Email: naomi.sheffield@portlandoregon.gov
Of Attorneys for Defendant City of Portland

Page  20  – DEFENDANT CITY OF PORTLAND'S MOTION FOR SUMMARY JUDGMENT

2-ER-275

NAOMI SHEFFIELD, OSB 170601
Senior Deputy Attorney
Email: naomi.sheffield@portlandoregon.gov
Office of City Attorney
1221 SW 4th Avenue, Room 430
Portland, OR  97204
Telephone: (503) 823-9969
Facsimile: (503) 823-3089
*Of Attorneys for Defendant City of Portland*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

ANDREW GRIMM,

   **PLAINTIFF,**

  v.

CITY OF PORTLAND,

   **DEFENDANT.**

**3:18-cv-00183-MO**

**JOINT NOTICE OF STIPULATED FACTS**

   Plaintiff Andrew Grimm and Defendant City of Portland (the "City") (collectively, the "Parties"), hereby stipulate and agree to the following facts for purposes of the Parties' Fed. R. Civ. P. 56 motions for summary judgment. The Parties agree that as to all of the stipulated facts and evidence set forth below, no further authentication or proof is required and no contradictory evidence will be offered or admitted. However, both Parties reserve the right to argue the relevancy of stipulated facts.

## UNDISPUTED STIPULATED FACTS

**City's Parking Policies/Practices:**

   1.  The City maintains metered parking with different time requirements at different locations throughout the City.

Page 1  –    JOINT NOTICE OF STIPULATED FACTS

2-ER-276

2.      The City has a limited number of on-street parking spots available for the public to use. The City requires payment for metered parking at certain locations and during certain times based on the needs of adjacent property owners and tenants, the need for increased turnover of parking spaces and right-of-way management, mitigation of traffic and parking impact on areas adjacent to the parking, and other City policy interests.

3.      The City has a legitimate interest in discouraging people from monopolizing parking spaces on the streets for lengthy periods of time and in preventing the abandonment of vehicles on highways, streets, and alleys.

4.      The City also has an interest in removing unregistered vehicles from public streets, as this encourages owners to maintain automobile registration and deters owners from violating state registration laws.

5.      Parking Kitty is a mobile parking payment app made and operated by Passport Parking, Inc. ("Passport"). The City contracts with Passport to offer a remote payment option to pay for public parking meter fees in Portland.

6.      The Portland Bureau of Transportation ("PBOT") website explains that the "most convenient way to pay for parking is through Parking Kitty, the City-owned mobile pay app." See Exhibit G.

7.      Users can sign up with Parking Kitty to remotely pay from their smartphone for the meter fees when they park in a public metered parking spot in Portland. Users pay a surcharge on top of the metered parking fee when using Parking Kitty to pay for metered parking. Passport processes these transactions, and remits the payment, less the surcharge for their services, to the City.

8.      When users sign up with Parking Kitty, they agree to Passport's Terms and Conditions and Privacy Policy.

9.      When a user registers with Parking Kitty, the app asks for the user's phone

Page  2  –     JOINT NOTICE OF STIPULATED FACTS

2-ER-277

number. Additionally, to pay for parking using Parking Kitty, the app requires that the user provide the license plate number of the vehicle and credit card information. Additionally, the user can provide their email address if they wish to receive receipts by email.

10.     Parking Kitty notifies users who have paid for parking using the app three minutes before their parking has expired as follows through the app:



11.     Parking Kitty notifies users who have paid for parking using the app immediately upon expiration of the parking, as follows through the app:



12.     Users of Parking Kitty can also elect to have Parking Kitty email receipts to the email address they provide.

Page  3  –    JOINT NOTICE OF STIPULATED FACTS

13.     Besides these notifications and receipts, the Parking Kitty app does not send notifications to users regarding their vehicle status.

14.     The Parking Kitty app is operated by a third-party, Passport. Parking Kitty is not currently configured to enable the City to push notifications through Parking Kitty regarding citations, towing, or any other topic to users who have paid for parking using the app.

15.     As an alternative to using Parking Kitty, individuals can pay for metered parking at physical pay stations. In 2017, these physical pay stations allowed for payment, and provided a sticker indicating that parking had been paid, which a person was required to display on the inside of their vehicle. For those who pay by Parking Kitty, there is no sticker.

16.     The City routinely issues citations for vehicles remaining in a metered space for longer than the designated or paid-for time.

17.     The City's policy and procedure is that after a minimum of two citations are issued for overtime parking in a metered zone, a Parking Enforcement Officer working for PBOT places a red warning placard in the form attached as Exhibit A ("Warning Placard") on the vehicle's windshield. The City's policy and procedure is that the Parking Enforcement Officer circles "tow" on the Warning Placard where it states: "Your vehicle will be subject to tow/citation _____ if it is not moved."

18.     The City's policy and procedure is that after placing the Warning Placard on the vehicle, if the vehicle is not moved within twelve hours, a City Parking Enforcement Officer places a tow placard in the form attached as Exhibit B on the vehicle and contacts a contracted towing company to tow and impound the vehicle.

19.     In 2017, Parking Enforcement Officers had access to whether a payment was made through Parking Kitty for specific vehicles parked in metered spots. PBOT's Parking Enforcement Officers also had information regarding prior citations or warnings issued with respect to specific vehicles on previous days. Parking Enforcement Officers did not have vehicle

Page 4 –    JOINT NOTICE OF STIPULATED FACTS

2-ER-279

ownership information, and specifically did not have the name or contact information for the owner or user of the vehicle.

20.     Passport does not regularly share user phone numbers, email addresses, or other contact information with the City.

21.     PBOT does not use telephone, email, Internet, contact information from Passport or the Parking Kitty app to notify individuals that their vehicle will be towed.

22.     Within 48-hours after a vehicle is towed, the Portland Police Bureau, identifies the registered title holder of the vehicle. The Portland Police Bureau mails a letter to the address of the registered title holder of the vehicle to let that person know that the vehicle has been towed and to provide information on how to retrieve their vehicle.

**KnowTow**

23.     On December 4, 2017, Plaintiff's father emailed then-City Attorney Tracy Reeve and Mayor Ted Wheeler regarding an app called KnowTow. That email is attached as Exhibit C.

24.     Around December 4, 2017, KnowTow sent emails with the same letter to a number of other cities and municipal entities such as Vancouver, WA; Omaha, NE; Lincoln, NE; Multnomah County, OR; then police chief Danielle Outlaw of Portland, OR; Lane County, OR; and Clark County, WA. See Exhibit H.

25.     Plaintiff's father was president of KnowTow.

26.     A later email from the "KnowTow Team" was sent to City Attorney Reeve and Mayor Ted Wheeler on December 14, 2017. That email is attached as Exhibit D.

27.     On December 20, 2017 Kim Sneath, an Office Administrator in the City Attorney's Office, responded to the emails from the "KnowTow Team" stating that the "The City does not require towing notification services at this time. Moreover, the City respectfully disagrees with your assertion that its towing notification procedures are unconstitutional." The email is attached as Exhibit F.

Page 5  –    JOINT NOTICE OF STIPULATED FACTS

2-ER-280

28.     Plaintiff was a director of KnowTow during the time these emails were sent and throughout December 2017.

29.     In December, 2017, both at the time Plaintiff parked his vehicle on the street in downtown Portland and at the time his vehicle was towed, Plaintiff understood that remaining in a metered parking spot without paying could result in his vehicle being towed. Plaintiff was not specifically aware of how the Parking Kitty app functioned.

**Plaintiff Registered as a User of Parking Kitty**

30.     On October 25 2017, Plaintiff registered with Parking Kitty.

31.     In connection with the registration process, Plaintiff downloaded the Parking Kitty app to his smartphone. Plaintiff entered his phone number, email address, license plate, and credit card information into the Parking Kitty app.

**Towing of Plaintiff's Vehicle on December 21, 2017**

32.     On December 14, 2017, Plaintiff was the owner of a 1999 Honda Accord with California License plate number 6DNF990.

33.     On December 14, 2017, Plaintiff's vehicle was registered in California to Fredrick Grimm and Imperial ECU. The registration for Plaintiff's vehicle was up to date. However, the registration tags physically on Plaintiff's vehicle were only valid through June 2017.

34.     On December 14, 2017, Plaintiff parked his vehicle on Southwest Hall Street in downtown Portland, Oregon.

35.     Plaintiff paid $3.10 for a parking spot plus the Parking Kitty surcharge from 5:41 p.m. to 7:00 p.m. on December 14, 2017, through Parking Kitty.

36.     On December 14, 2017, Plaintiff received notifications on his smartphone from Parking Kitty regarding the expiration of his parking that were substantially the same as the notifications set forth in paragraphs 10 and 11 of these stipulated facts.

37.     Plaintiff did not move his vehicle after his time expired at 7 p.m. on December 14,

Page  6  –    JOINT NOTICE OF STIPULATED FACTS

2-ER-281

2017.

38.    Plaintiff did not pay for any additional time to park his vehicle, either through Parking Kitty or otherwise.

39.    In the parking zone where Plaintiff had parked, payment is required for parking between 8 a.m. and 7 p.m.

40.    Plaintiff's vehicle was legally parked from 5:41pm on December 14, 2017 through 8am on December 15, 2017.

41.    Beginning at 8 a.m. on December 15, 2017, Plaintiff's vehicle was parked illegally pursuant to Portland City Code 16.20.430A, which provides:

It is unlawful for any person to park any vehicle in any parking meter space during the hours of operation of the meter without paying the parking meter fee, or to permit any vehicle in their control or custody to remain in any parking mater space longer than the time designated time limit.

42.    On December 15, 2017, a PBOT Parking Enforcement Officer, after checking payment and citation data on his handheld device, issued two citations on Plaintiff's vehicle. One for failing to display current registration tags in violation of Portland City Code 16.20.120(L). The other for being unlawfully parked in a meter zone without proof of payment of the parking meter fee in violation of Portland City Code 16.20.430A. These two citations were placed on the exterior of the vehicle's windshield. See Exhibit E pages 1-5.

43.    On December 18, 2017, a PBOT Parking Enforcement Officer after checking payment and citation data on his handheld device, issued two additional citations on Plaintiff's vehicle for failing to display current registration tags and for being parked in a meter zone without proof of payment of the parking meter fee. This second set of citations were placed on the exterior of the vehicle's windshield, on top of the previously issued citations from December 15, 2017. See Exhibit E pages 6-10.

Page  7  –    JOINT NOTICE OF STIPULATED FACTS

2-ER-282

44.     On December 19, 2017, a PBOT Parking Enforcement Officer after checking payment and citation data on his handheld device, issued an additional parking citation on Plaintiff's vehicle for being parked in a meter zone without proof of payment of the parking meter fee. See Exhibit E pages 11 -12. This citation included the comment "CITE AND WARN." In connection with this citation, the PBOT Parking Enforcement Officer placed a red warning slip with the word "WARNING" in large print on one side, the back side provided a warning and notice stating: "Your vehicle will be subject to tow/citation if it is not moved." The PBOT Parking Enforcement Officer underlined the word "tow" and circled the words "tow/citation" on the backside of the warning placard. This warning placard was in substantially the form set forth in Exhibit A.

45.     On December 21, 2017, Plaintiff's vehicle remained unlawfully parked at the same parking meter space without proof of payment of the parking meter fee. A PBOT Parking Enforcement Officer, after checking payment and citation data on his handheld device, issued an additional parking citation on Plaintiff's vehicle for being parked in a meter zone without proof of payment of the parking meter fee. The Parking Enforcement Officer placed this citation on the exterior of Plaintiff's windshield on top of the previously issued citations. See Exhibit E pages 13-14. This citation included a comment referencing the previous warning "PREV CI AND WRNED." The PBOT Parking Enforcement Officer also placed a separate red tow slip on the exterior of the vehicle's windshield. The red tow slip had the word "TOW" in large print on one side and an order to tow the vehicle and the underlying information on the other side. The Tow placard was in substantially the form set forth in Exhibit B.

46.     The citations placed on Plaintiff's vehicle are set forth in Exhibit E.

47.     On December 21, 2017, the PBOT Parking Enforcement Officer contacted Retriever Towing and ordered them to tow and impound Plaintiff's vehicle. Retriever Towing did so.

Page 8 –     JOINT NOTICE OF STIPULATED FACTS

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

2-ER-283

48.     Plaintiff did not return to his vehicle between December 14, 2017, and December 24, 2017. Plaintiff did not see the postings before the tow.

49.     On December 22, 2017, the City sent letters to the proper address registered with the vehicle that Plaintiff's vehicle had been towed and providing information for its retrieval.

50.     The City did not provide any additional notice regarding the towing of Plaintiff's vehicle besides the notices set forth in these facts.

51.     The City did not use telephone, email, Internet, contact information from Parking Kitty, or the Parking Kitty app to notify Mr. Grimm that his vehicle would be towed.

52.     Plaintiff retrieved his vehicle from Retriever Towing on or about December 30, 2017.

53.     Plaintiff paid $514 to retrieve his vehicle.

IT IS SO STIPULATED:

DATED: September 14, 2022.

By:     */s/ Megan Keenan* [authorized signature]
        MEGAN KEENAN, OSB No. 204657
        Email: megan@informationdignityalliance.org
        Information Dignity Alliance
        *Of Attorneys for Plaintiff*

DATED: September 14, 2022.

By:     */s/ Naomi Sheffield*
        Naomi Sheffield , OSB No. 170601
        Sr. Deputy City Attorney
        Email: naomi.sheffield@portlandoregon.gov
        *Of Attorneys for Defendant City of Portland*

Page  9  –    JOINT NOTICE OF STIPULATED FACTS

2-ER-284

Case: 23-35235, 01/02/2024, ID: 12843335, DktEntry: 21-3, Page 204 of 246

2-ER-285



**WARNING**

**PARKING ENFORCEMENT DIVISION**
1120 SW 5th Avenue, Suite 800, Portland, Oregon 97204-1912

Your vehicle LICENSE NUMBER _____  State _____

is parked _____

which is in violation of the City Parking Code.

Your vehicle will be subject to tow/citation _____
if it is not moved.  Your cooperation is appreciated.

Date _____  Parking Enforcement Officer M-_____

**Exhibit A**
**Joint Stipulated Facts**
**Page 1 of 1**

Case: 23-35235, 01/02/2024, ID: 12843335, DktEntry: 21-3, Page 205 of 246

2-ER-286



# TOW

**CIRCUIT COURT OF THE STATE OF OREGON, FOR THE COUNTY OF MULTNOMAH**

CITY OF PORTLAND, ORDINANCE Nos. 172788, 179141

## ORDER TO TOW VEHICLE

**NOTICE TO TOWING COMPANY:**

License No. _____, State _____, Make _____ per:

☐  Warrant for unpaid parking citations

☐  Citation No. _____ Violation _____

Date _____ Officer No. M– _____

**NOTICE TO VEHICLE OWNER:**

If vehicle was TOWED for unpaid parking citations, please contact Circuit Court at 503-988-3235.

**Exhibit B**
**Joint Stipulated Facts**
**Page 1 of 1**

**To:** Reeve, Tracy[Tracy.Reeve@portlandoregon.gov]; Sneath, Kim[Kim.Sneath@portlandoregon.gov]
**From:** KnowTow Team
**Sent:** Mon 12/4/2017 11:14:16 PM
**Subject:** An Important Notice for the Portland City Attorney
Letter - City Attorney.pdf
2017-12-04 service description.pdf

Dear City Attorney Reeve:
KnowTow will be launching in your area soon, and I believe it will have important implications for your organization.

  Please see my attached letter.

Best regards,

Fredrick Grimm
President
MyGarcon, Inc. d/b/a KnowTow, Inc.
notify@knowtow.net
.

Exhibit 2
Joint Stipulated F
Page 1 of 10
2-ER-287



The Honorable Tracy Reeve
City Attorney
1221 SW 4th Avenue
Room 430
Portland, OR 97204

Dear City Attorney Reeve:

I am writing to you on behalf of KnowTow, Inc. ("KnowTow"), a company serving the public interest by providing our users with near-instantaneous notice of impending tows. KnowTow plans to begin providing this service in cities across the country, including yours, soon.

I hope that upon learning more about KnowTow, you will share our enthusiasm for providing pre-towing notice and that you will be interested in partnering with us. KnowTow would happily work with you to integrate our service into your municipality's towing practices.

We at KnowTow are genuinely excited to empower cities to immediately contact vehicle owners about impending tows, no matter where the vehicle owner may be. Our service is simple: once a government employee enters a KnowTow user's license plate number on our website to indicate an impending tow, KnowTow will automatically notify that vehicle owner via a text, an email, and, in some cases, a phone call.

Municipalities as well as our users will benefit from KnowTow's service. By reducing the time and costs of notifying vehicle owners of impending tows, KnowTow facilitates the timely relocation of illegally parked vehicles and prevents easily avoidable tows— tows that can be devastating for the nearly half of American households living paycheck to paycheck. In short, KnowTow makes providing pre-towing notice quick and effective, advancing aims shared by local governments and their citizens alike.

However, it is our belief that any government that refuses to provide pre-towing notice to KnowTow users violates our users' constitutional rights. Although KnowTow itself could not—and does not wish to—assert constitutional claims against governments or their agents, our users might. In the interest of transparency, we would be happy to share a

1

Exhibit C
Joint Stipulated F    2-ER-288
Page 2 of 10

memorandum exploring the constitutional implications of KnowTow's service. Please let me know if you would like a copy.

To further introduce you to KnowTow's service, I have enclosed a document describing how our service works. This service description demonstrates how authorized government employees and agents can use KnowTow's service to provide pre-towing notice to vehicle owners.

When KnowTow launches its service in your area, we will send you additional information. First, we will provide you with a list of license plates registered with KnowTow. Second, we will provide you with a username and password for your city so that the appropriate municipal agents can provide KnowTow users with pre-towing notice. They will be able to do so by logging in at knowtow.net/login/dept.

Thank you for your time. As I mention above, we at KnowTow would be delighted to speak with you, at your convenience, to discuss how we can best partner with you on this important initiative.

Best regards,

Fredrick Grimm
President
MyGarcon, Inc. d/b/a KnowTow, Inc.
notify@knowtow.net

Enclosed: KnowTow Service Description

2

Exhibit 9
Joint Stipulated F 2-ER-289
Page 3 of 10



# KnowTow
# Service Description
# For Government Users

MyGarcon, Inc. d/b/a KnowTow, Inc.
Published 12/4/2017
© 2017

Exhibit 2
Joint Stipulated F
Page 4 of 10

2-ER-290

This service description explains how authorized governmental employees and agents can use KnowTow's service to provide pre-towing notice to vehicle owners.

The following instructions describe how to log onto KnowTow and notify a KnowTow user of an impending tow.

**Step 1:** Go to [knowtow.net](knowtow.net) **and click City Login.**

Go to KnowTow's homepage, [knowtow.net](knowtow.net), and click on the City Login button. You may access this website from a web browser on a mobile phone, tablet, PC, Mac, etc.

The city login button is indicated by a green arrow below.



1



Exhibit C
Joint Stipulated F| 2-ER-291
Page 5 of 10

**Step 2: Enter your organization's login credentials.**

KnowTow has separately provided (or will provide) a Department ID and password to your organization.

Enter your organization's Department ID and password. Then click submit.

The appropriate fields and the submit button are indicated by green arrows below.



**If you do not know your organization's Department ID and password,** consult the appropriate contact within your organization.



2

Exhibit 2
Joint Stipulated F
Page 6 of 10

2-ER-292

**Step 3:** Click to report a vehicle infraction.

The name of your organization should appear on the screen after you login.

Click the button indicated by the green arrow below.





3

Exhibit C
Joint Stipulated F...
2-ER-293
Page 7 of 10

**Step 4:** **Enter the license plate of the vehicle.**

Enter the license plate's state and number for the vehicle that may be towed. Then click submit.

The appropriate fields and the submit button are indicated by green arrows below.





4

Exhibit 2
Joint Stipulated F[...] 2-ER-294
Page 8 of 10

**You will see an error message if the vehicle's license plate is not entered correctly _or_ if the vehicle is not registered with KnowTow.** The error message is indicated below by a green arrow. If you do not see this error message, proceed to **Step 5**.

If you do see this error message, be sure that have you entered the correct license plate information. If you did enter the correct license plate information and you still see this error message, then the vehicle is not registered with KnowTow. KnowTow cannot provide notice to this vehicle owner.





5

Exhibit 2
Joint Stipulated F... 2-ER-295
Page 9 of 10

**Step 5:** **Finally, enter a brief description of the vehicle's infraction. Once you click submit, KnowTow will notify the vehicle owner.**

Fill out the form shown below. Then click submit.

After you fill out the form and click submit, KnowTow will automatically notify the vehicle owner via a text, an email, and, in some cases, a phone call.

The appropriate fields and the submit button are indicated by green arrows below.



**Disclaimer:** KnowTow is not providing you with legal advice as to how you should answer the questions on the above form. Consult your organization's legal counsel and make an independent determination.



6

Exhibit 2
Joint Stipulated F__ 2-ER-296
Page 10 of 10

**To:** City Info[cityinfo@portlandoregon.gov]; Reeve, Tracy[Tracy.Reeve@portlandoregon.gov]; Sneath, Kim[Kim.Sneath@portlandoregon.gov]; Wheeler, Mayor[MayorWheeler@portlandoregon.gov]
**From:** KnowTow Team
**Sent:** Thur 12/14/2017 12:14:42 AM
**Subject:** KnowTow Has Launched In Portland
Login Credentials.pdf
2017-12-04 service description.pdf

To Whom It May Concern:

KnowTow has launched in your city or county. KnowTow is a free service. It enables you to provide timely notice of a tow or infraction via text and email to our users.

We have reached out to you previously but have not heard back. We would like to reiterate that we are happy to speak with you if you have any questions.

We believe that your current practices for notifying vehicle owners of a tow are unconstitutional. Your practices are especially deficient for KnowTow users because they could so easily be informed via text and email. Again, if you would like to see our legal analysis on this issue, we are happy to provide it.

We have attached your login credentials. You and your authorized employees can login at https://knowtow.net/login/dept to verify if a vehicle is registered with KnowTow and, if so, to provide notice. See the attached description of our service for detailed instructions. Some of our users might also feature a conspicuous KnowTow decal on their vehicle.

Thank you for your attention to the constitutional rights of our users.

Best,

The KnowTow Team

notify@knowtow.net

.

Portland Police Bureau
ID: 22652630
Password: A573424Z


Portland Bureau of Transportation
ID: 14919408
Password: 15ZUJK4

Exhibit 2
Joint Stipulated F... 2-ER-298
Page 2 of 9



KnowTow
Service Description
For Government Users

MyGarcon, Inc. d/b/a KnowTow, Inc.
Published 12/4/2017
© 2017

Exhibit 2
Joint Stipulated F
Page 3 of 9

2-ER-299

This service description explains how authorized governmental employees and agents can use KnowTow's service to provide pre-towing notice to vehicle owners.

The following instructions describe how to log onto KnowTow and notify a KnowTow user of an impending tow.

**Step 1: Go to knowtow.net and click City Login.**

Go to KnowTow's homepage, knowtow.net, and click on the City Login button. You may access this website from a web browser on a mobile phone, tablet, PC, Mac, etc.

The city login button is indicated by a green arrow below.



1



## Step 2: Enter your organization's login credentials.

KnowTow has separately provided (or will provide) a Department ID and password to your organization.

Enter your organization's Department ID and password. Then click submit.

The appropriate fields and the submit button are indicated by green arrows below.



**If you do not know your organization's Department ID and password,** consult the appropriate contact within your organization.



2

**Step 3:** **Click to report a vehicle infraction.**

The name of your organization should appear on the screen after you login.

Click the button indicated by the green arrow below.





3

Exhibit 2
Joint Stipulated F...
Page 6 of 9

2-ER-302

<u>**Step 4:**</u> **Enter the license plate of the vehicle.**

Enter the license plate's state and number for the vehicle that may be towed. Then click submit.

The appropriate fields and the submit button are indicated by green arrows below.





4

**You will see an error message if the vehicle's license plate is not entered correctly *or* if the vehicle is not registered with KnowTow.** The error message is indicated below by a green arrow. If you do not see this error message, proceed to **Step 5**.

If you do see this error message, be sure that have you entered the correct license plate information. If you did enter the correct license plate information and you still see this error message, then the vehicle is not registered with KnowTow. KnowTow cannot provide notice to this vehicle owner.





5

**Step 5:** **Finally, enter a brief description of the vehicle's infraction. Once you click submit, KnowTow will notify the vehicle owner.**

Fill out the form shown below. Then click submit.

After you fill out the form and click submit, KnowTow will automatically notify the vehicle owner via a text, an email, and, in some cases, a phone call.

The appropriate fields and the submit button are indicated by green arrows below.



**Disclaimer:** KnowTow is not providing you with legal advice as to how you should answer the questions on the above form. Consult your organization's legal counsel and make an independent determination.



6

2-ER-306

Case: 23-35235, 01/02/2024, ID: 12843335, DktEntry: 21-3, Page 225 of 246

## Parking Violation #  HA30383285

| | | | |
|---|---|---|---|
| **Officer:** | 160 | **Date:** | 12/15/17 |
| **Time:** | 08:54 AM | **Violation:** | 95 |
| **Make:** | HONDA | **State:** | CA |
| **Plate:** | 6DNF990 | **Expiration:** | |
| **Trip:** | | **VIN:** | |
| **Street:** | SW HALL ST | | |
| **From:** | 5TH AVE | | |
| **To:** | 4TH AVE | | |
| **Physical Loc:** | | | |
| **Address:** | | | |
| **Side of Street:** | S | **Meter #:** | F200410 |
| **Receipt #:** | | **Receipt Exp:** | |

**Comments:**   NO REC CURB SIDE, CHECKED DATA NO ELECTRONIC PAYMENT

PAY DURING METER HOURS

**Remarks:**

**CITY OF PORTLAND**
Title No. 16 Ord. 165189
CIRCUIT COURT FOR MULTNOMAH COUNTY
**PARKING VIOLATION**

CITATION #   **HA30383285**

| DATE | TIME MARKED | TIME ISSUED |
|---|---|---|
| 12/15/2017 | | 08:54AM |
| LICENSE # | EXPIRATION | STATE |
| 6DNF990 | 06/17 | CA |
| VEHICLE ID | | TRIP EXP |
| | | |

| MAKE | METER # | LIMIT | V/S |
|---|---|---|---|
| HONDA | F200410 | 3H | |
| RECEIPT # | EXP TIME | | BEAT # |
| | | | 10 |

LOCATION

SW HALL ST
between 5TH AVE
and   4TH AVE

| SIDE | OFFICER | OFC # |
|---|---|---|
| S | L. McHenry | 160 |

SIGN DETAILS

IN VIOLATION OF:   16.20.430-A
NO METER RECEIPT
AMOUNT DUE:   $ 65.00
COMMENTS:
NO REC CURB SIDE, CHECKED DATA NO
ELECTRONIC PAYMENT PAY DURING METER
HOURS

Photos 5

2-ER-307

Case: 23-35235, 01/02/2024, ID: 12843335, DktEntry: 21-3, Page 226 of 246

**Parking Violation #  HA30383285**






**Exhibit E**
**Joint Stipulated Facts**
**Page 2 of 14**

Case: 23-35235, 01/02/2024, ID: 12843335, DktEntry: 21-3, Page 227 of 246

2-ER-308

**Parking Violation #   HA30383285**



Case: 23-35235, 01/02/2024, ID: 12843335, DktEntry: 21-3, Page 228 of 246

2-ER-309

## Parking Violation #  HA30383286

| | | | | |
|---|---|---|---|---|
| **Officer:** | 160 | **Date:** | 12/15/17 | |
| **Time:** | 08:55 AM | **Violation:** | 110 | |
| **Make:** | HONDA | **State:** | CA | |
| **Plate:** | 6DNF990 | **Expiration:** | | |
| **Trip:** | | **VIN:** | | |
| **Street:** | SW HALL ST | | | |
| **From:** | 5TH AVE | | | |
| **To:** | 4TH AVE | | | |
| **Physical Loc:** | | | | |
| **Address:** | | | | |
| **Side of Street:** | S | **Meter #:** | F200410 | |
| **Receipt #:** | | **Receipt Exp:** | | |

**Comments:**   DISPLAYING EXPIRED REGISTRATION 91 DAYS OR MORE

EXPIRED TAG REAR, NO TAG FRONT, NO TEMP/TRIP

**Remarks:**

**CITY OF PORTLAND**
Title No. 16 Ord. 165189
CIRCUIT COURT FOR MULTNOMAH COUNTY
**PARKING VIOLATION**

| CITATION # | HA30383286 | |
|---|---|---|
| DATE | TIME MARKED | TIME ISSUED |
| 12/15/2017 | | 08:55AM |
| LICENSE # | EXPIRATION | STATE |
| 6DNF990 | 06/17 | CA |
| VEHICLE ID | | TRIP EXP |
| MAKE | METER # | LIMIT | V/S |
| HONDA | F200410 | | |
| RECEIPT # | EXP TIME | BEAT # |
| | | 10 |
| | LOCATION | |

SW HALL ST
between 5TH AVE
and    4TH AVE

| SIDE | OFFICER | OFC # |
|---|---|---|
| S | L. McHenry | 160 |
| | SIGN DETAILS | |

IN VIOLATION OF:  16.20.120 (L)
FAILURE TO DISPLAY CURRENT
REGISTRATION (91 OR MORE DAYS)
COMMENTS:  $ 145.00
DISPLAYING EXPIRED REGISTRATION 91 OR
MORE EXPIRED TAG REAR, NO TAG FRONT, NO
TEMP/TRIP
Photos 4

2-ER-310

Case: 23-35235, 01/02/2024, ID: 12843335, DktEntry: 21-3, Page 229 of 246

## Parking Violation #  HA30383286






**Exhibit E**
**Joint Stipulated Facts**
**Page 5 of 14**

2-ER-311

Case: 23-35235, 01/02/2024, ID: 12843335, DktEntry: 21-3, Page 230 of 246

## Parking Violation #  HA30925526

| | | | |
|---|---|---|---|
| **Officer:** | 159 | **Date:** | 12/18/17 |
| **Time:** | 09:30 AM | **Violation:** | 110 |
| **Make:** | HONDA | **State:** | CA |
| **Plate:** | 6DNF990 | **Expiration:** | |
| **Trip:** | | **VIN:** | |
| **Street:** | SW HALL ST | | |
| **From:** | 5TH AVE | | |
| **To:** | 4TH AVE | | |
| **Physical Loc:** | | | |
| **Address:** | | | |
| **Side of Street:** | S | **Meter #:** | F200410 |
| **Receipt #:** | | **Receipt Exp:** | |

**Comments:**  DISPLAYING EXPIRED REGISTRATION 91 DAYS OR MORE

EXPIRED TAGS FRONT AND REAR, NO TEMP/TRIP

**Remarks:**

**CITY OF PORTLAND**
Title No. 16 Ord. 165189
CIRCUIT COURT FOR MULTNOMAH COUNTY
**PARKING VIOLATION**

CITATION #   HA30925526

| DATE | TIME MARKED | TIME ISSUED |
|---|---|---|
| 12/18/2017 | | 09:30AM |
| LICENSE # | EXPIRATION | STATE |
| 6DNF990 | 06/17 | CA |
| VEHICLE ID | | TRIP EXP |
| MAKE | METER # | LIMIT | V/S |
| HONDA | F200410 | | |
| RECEIPT # | EXP TIME | BEAT # |
| | | 10 |
| | LOCATION | |

SW HALL ST
between 5TH AVE
and     4TH AVE

| SIDE | OFFICER | OFC # |
|---|---|---|
| S | F. Earle | 159 |

SIGN DETAILS

IN VIOLATION OF:  16.20.120 (L)
FAILURE TO DISPLAY CURRENT
REGISTRATION (91 OR MORE DAYS)
COMMENTS:  $ 145.00
DISPLAYING EXPIRED REGISTRATION 91 DAYS OR
MORE EXPIRED TAGS FRONT AND REAR, NO
TEMP/TRIP

Photos 5

WAR: WARNING (12.15.2017 8.52.00AM,
110, HALL ST Side: S; between 5TH AVE
and 4TH AVE; Officer: 160; Vehicle:
HONDA; Valves: /// DISPLAYING
EXPIRED REGISTRATION 91 DAYS OR
MORE)

**Exhibit E**
**Joint Stipulated Facts**
**Page 6 of 14**

2-ER-312

Case: 23-35235, 01/02/2024, ID: 12843335, DktEntry: 21-3, Page 231 of 246

**Parking Violation #  HA30925526**






**Exhibit E**
**Joint Stipulated Facts**
**Page 7 of 14**

Case: 23-35235, 01/02/2024, ID: 12843335, DktEntry: 21-3, Page 232 of 246

2-ER-313

**Parking Violation #  HA30925526**



Case: 23-35235, 01/02/2024, ID: 12843335, DktEntry: 21-3, Page 233 of 246

2-ER-314

## Parking Violation #  HA30925527

| | | | |
|---|---|---|---|
| **Officer:** | 159 | **Date:** | 12/18/17 |
| **Time:** | 09:32 AM | **Violation:** | 95 |
| **Make:** | HONDA | **State:** | CA |
| **Plate:** | 6DNF990 | **Expiration:** | |
| **Trip:** | | **VIN:** | |
| **Street:** | SW HALL ST | | |
| **From:** | 5TH AVE | | |
| **To:** | 4TH AVE | | |
| **Physical Loc:** | | | |
| **Address:** | | | |
| **Side of Street:** | S | **Meter #:** | F200410 |
| **Receipt #:** | | **Receipt Exp:** | |

**Comments:**   NO REC CURB SIDE, CHECKED DATA NO ELECTRONIC PAYMENT

**Remarks:**

---

**CITY OF PORTLAND**
Title No. 16 Ord. 165189
CIRCUIT COURT FOR MULTNOMAH COUNTY
**PARKING VIOLATION**

CITATION #        **HA30925527**

| DATE | TIME MARKED | TIME ISSUED |
|---|---|---|
| 12/18/2017 | | 09:32AM |

| LICENSE # | | EXPIRATION | STATE |
|---|---|---|---|
| 6DNF990 | | 06/17 | CA |

| VEHICLE ID | | TRIP EXP | |
|---|---|---|---|

| MAKE | METER # | LIMIT | V/S |
|---|---|---|---|
| HONDA | F200410 | 3H | |

| RECEIPT # | EXP TIME | BEAT # |
|---|---|---|
| | | 10 |

LOCATION

SW HALL ST
between 5TH AVE
and     4TH AVE

| SIDE | OFFICER | OFC # |
|---|---|---|
| S | F. Earle | 159 |

SIGN DETAILS

IN VIOLATION OF:     16.20.430-A
NO METER RECEIPT
AMOUNT DUE:      $ 65.00
COMMENTS:
NO REC CURB SIDE, CHECKED DATA NO
ELECTRONIC PAYMENT

Photos 4

WAR: WARNING (12.15.2017 8.52.00AM,
110, HALL ST Side: S; between 5TH AVE
and 4TH AVE; Officer: 160; Vehicle:
HONDA; Valves: /// DISPLAYING
EXPIRED REGISTRATION 91 DAYS OR
MORE)

2-ER-315

Case: 23-35235, 01/02/2024, ID: 12843335, DktEntry: 21-3, Page 234 of 246

## Parking Violation #   HA30925527






**Exhibit E**
**Joint Stipulated Facts**
**Page 10 of 14**

Case: 23-35235, 01/02/2024, ID: 12843335, DktEntry: 21-3, Page 235 of 246

2-ER-316

## Parking Violation #  HA30925545

| | | | |
|---|---|---|---|
| **Officer:** | 159 | **Date:** | 12/19/17 |
| **Time:** | 08:43 AM | **Violation:** | 95 |
| **Make:** | HONDA | **State:** | CA |
| **Plate:** | 6DNF990 | **Expiration:** | |
| **Trip:** | | **VIN:** | |
| **Street:** | SW HALL ST | | |
| **From:** | 5TH AVE | | |
| **To:** | 4TH AVE | | |
| **Physical Loc:** | | | |
| **Address:** | | | |
| **Side of Street:** | S | **Meter #:** | F200410 |
| **Receipt #:** | | **Receipt Exp:** | |

**Comments:**   NO REC CURB SIDE, CHECKED DATA NO ELECTRONIC PAYMENT

VS 6 4

CITE AND WARN

**Remarks:**

### CITY OF PORTLAND
Title No. 16 Ord. 165189
CIRCUIT COURT FOR MULTNOMAH COUNTY
### PARKING VIOLATION

CITATION #  **HA30925545**

| DATE | TIME MARKED | TIME ISSUED |
|---|---|---|
| 12/19/2017 | | 08:43AM |
| LICENSE # | EXPIRATION | STATE |
| 6DNF990 | 06/17 | CA |
| VEHICLE ID | | TRIP EXP |
| | | |
| MAKE | METER # | LIMIT | V/S |
| HONDA | F200410 | 3H | |
| RECEIPT # | EXP TIME | BEAT # |
| | | 10 |
| | LOCATION | |

SW HALL ST
between 5TH AVE
and    4TH AVE

| SIDE | OFFICER | OFC # |
|---|---|---|
| S | F. Earle | 159 |

SIGN DETAILS

IN VIOLATION OF:   16.20.430-A
NO METER RECEIPT
AMOUNT DUE:   $ 65.00
COMMENTS:
NO REC CURB SIDE. CHECKED DATA NO
ELECTRONIC PAYMENT VS 6 4 CITE AND WARN

Photos 4

**Exhibit E**
**Joint Stipulated Facts**
**Page 11 of 14**

Case: 23-35235, 01/02/2024, ID: 12843335, DktEntry: 21-3, Page 236 of 246

2-ER-317

## Parking Violation #  HA30925545






**Exhibit E**
**Joint Stipulated Facts**
**Page 12 of 14**

2-ER-318

Case: 23-35235, 01/02/2024, ID: 12843335, DktEntry: 21-3, Page 237 of 246

## Parking Violation #  HA30925607

| | | | |
|---|---|---|---|
| **Officer:** | 159 | **Date:** | 12/21/17 |
| **Time:** | 08:35 AM | **Violation:** | 95 |
| **Make:** | HONDA | **State:** | CA |
| **Plate:** | 6DNF990 | **Expiration:** | |
| **Trip:** | | **VIN:** | |
| **Street:** | SW HALL ST | | |
| **From:** | 5TH AVE | | |
| **To:** | 4TH AVE | | |
| **Physical Loc:** | | | |
| **Address:** | | | |
| **Side of Street:** | S | **Meter #:** | F200410 |
| **Receipt #:** | | **Receipt Exp:** | |

**Comments:**   NO REC CURB SIDE, CHECKED DATA NO ELECTRONIC PAYMENT

VS 6 4  SR 1304

PREV CITE AND WRNED

**Remarks:**

---

**CITY OF PORTLAND**
Title No. 16 Ord. 165189
CIRCUIT COURT FOR MULTNOMAH COUNTY
**PARKING VIOLATION**

CITATION #        **HA30925607**

| DATE | TIME MARKED | TIME ISSUED |
|---|---|---|
| 12/21/2017 | | 08:35AM |
| LICENSE # | EXPIRATION | STATE |
| 6DNF990 | 06/17 | CA |
| VEHICLE ID | | TRIP EXP |
| | | |

| MAKE | METER # | LIMIT | V/S |
|---|---|---|---|
| HONDA | F200410 | 3H | |
| RECEIPT # | EXP TIME | | BEAT # |
| | | | 10 |
| | LOCATION | | |

SW HALL ST
between 5TH AVE
and      4TH AVE

| SIDE | OFFICER | OFC # |
|---|---|---|
| S | F. Earle | 159 |
| | SIGN DETAILS | |

IN VIOLATION OF:    16.20.430-A
NO METER RECEIPT
AMOUNT DUE:      $ 65.00
COMMENTS:
NO REC CURB SIDE, CHECKED DATA NO
ELECTRONIC PAYMENT VS 6 4  SR 1304 PREV CI
AND WRNED

Photos 4

WAR: WARNING (12.19.2017 8.43.00AM,
95, HALL ST Side: S; between 5TH AVE
and 4TH AVE; Officer: 159; Vehicle:
HONDA; Valves: /// NO REC CURB SIDE,
CHECKED DATA NO ELECTRONIC
PAYMENT)

**Exhibit E**
**Joint Stipulated Facts**
**Page 13 of 14**

2-ER-319

Case: 23-35235, 01/02/2024, ID: 12843335, DktEntry: 21-3, Page 238 of 246

## Parking Violation #  HA30925607






**Exhibit E**
**Joint Stipulated Facts**
**Page 14 of 14**

**To:** KnowTow Team[notify@knowtow.net]
**From:** Sneath, Kim
**Sent:** Wed 12/20/2017 5:08:52 PM
**Subject:** RE: KnowTow Has Launched In Portland

Thank you for contacting the City of Portland regarding your services.

The City does not require towing notification services at this time. Moreover, the City respectfully disagrees with your assertion that its towing notification procedures are unconstitutional.

Please note that all businesses doing business in the City of Portland must register with the City of Portland's Revenue Division. For more information, please visit https://www.portlandoregon.gov/revenue/59484.

Thank you.

**KIM SNEATH | Office Administrator** (She/Her)
PORTLAND OFFICE OF THE CITY ATTORNEY
1221 SW Fourth Avenue, Room 430
Portland, OR 97204
Voice: 503-823-3085 | Fax: 503-823-3089
kim.sneath@portlandoregon.gov
*Legal Assistant for Tracy Reeve & Robert Taylor*

*Equal Access Notice: The City of Portland operates without regard to race, color, national origin, religion, sex, sexual orientation, gender identity, marital status, age or disability according to all applicable non -discrimination laws, Title VI of the Civil Rights Act, and Title II of the ADA. To help ensure equal access to City services, the City will provide translation and interpretation and will reasonably modify policies or procedures and provide auxiliary aids or services to persons with disabilities. For such requests please click here or call (503) 823-2559, TTY 503-823-6868 or Oregon Relay Service: 711.*
*Portland City Attorney Confidentiality Notice: This message may contain confidential or legally privileged information belonging to the sender. If you have received this message by mistake, please immediately notify the sender, delete the original message, and destroy all copies.*

**From:** KnowTow Team [mailto:notify@knowtow.net]
**Sent:** Wednesday, December 13, 2017 4:15 PM
**To:** City Info <cityinfo@portlandoregon.gov>; Reeve, Tracy <Tracy.Reeve@portlandoregon.gov>; Sneath, Kim <Kim.Sneath@portlandoregon.gov>; Wheeler, Mayor <MayorWheeler@portlandoregon.gov>
**Subject:** KnowTow Has Launched In Portland

To Whom It May Concern:

KnowTow has launched in your city or county. KnowTow is a free service. It enables you to provide timely notice of a tow or infraction via text and email to our users.

We have reached out to you previously but have not heard back. We would like to reiterate that we are happy to speak with you if you have any questions.

We believe that your current practices for notifying vehicle owners of a tow are unconstitutional. Your practices are especially deficient for KnowTow users because they could so easily be informed via text and email. Again, if you would like to see our legal analysis on this issue, we are happy to provide it.

We have attached your login credentials. You and your authorized employees can login at https://knowtow.net/login/dept to verify if a vehicle is registered with KnowTow and, if so, to provide notice. See the attached description of our service for detailed instructions. Some of our users might also feature a conspicuous KnowTow decal on their vehicle.

Thank you for your attention to the constitutional rights of our users.

Best,

The KnowTow Team

notify@knowtow.net

https://www.**portland.gov**/transportation/parking/parking-guide

# How do you pay for parking?

## With Mobile Pay

The most convenient way to pay for parking is through **Parking Kitty, the City-owned mobile pay app**. Park, pay, be on your way.

[Download Parking Kitty (Android) ↗]  [Download Parking Kitty (iOS) ↗]
[Use Parking Kitty Web Version ↗]

Check out our Parking Kitty video below, it's pawsitively awesome.



[Parking Kitty FAQs]

https://www.portland.gov/transportation/parking/parking-guide

Last accessed 8/17/22 at 12:45am

Exhibit 2
Joint Stipulated F
Page 1 of 2
2-ER-322

  https://www.**portland.gov**/transportation/parking/parking-kitty-faqs

# HOW DO I USE PARKING KITTY/ HOW DO I PAY WITH MY PHONE?

Download the City-owned Parking Kitty app from the **App Store** ↗ or **Google Play** ↗ .

A web version is also available at **https://parkingkitty.ppprk.com/park** ↗



Please note: your wireless carrier's message and data rates may apply.

https://www.portland.gov/transportation/parking/parking-kitty-faqs

Last accessed 8/17/22 at 12:47am

Exhibit 2
Joint Stipulated F
2-ER-323
Page 2 of 2



# KNOW
# TOW
You should know,
*before* they tow.

The Honorable Stephen Dingle
County Counsel
125 East 8th Avenue
Eugene, OR 97401

Dear County Counsel Dingle:

I am writing to you on behalf of KnowTow, Inc. ("KnowTow"), a company serving the public interest by providing our users with near-instantaneous notice of impending tows. KnowTow plans to begin providing this service in counties across the country, including yours, soon.

I hope that upon learning more about KnowTow, you will share our enthusiasm for providing pre-towing notice and that you will be interested in partnering with us. KnowTow would happily work with you to integrate our service into your county's towing practices.

We at KnowTow are genuinely excited to empower counties to immediately contact vehicle owners about impending tows, no matter where the vehicle owner may be. Our service is simple: once a government employee enters a KnowTow user's license plate number on our website to indicate an impending tow, KnowTow will automatically notify that vehicle owner via a text, an email, and, in some cases, a phone call.

Counties as well as our users will benefit from KnowTow's service. By reducing the time and costs of notifying vehicle owners of impending tows, KnowTow facilitates the timely relocation of illegally parked vehicles and prevents easily avoidable tows—tows that can be devastating for the nearly half of American households living paycheck to paycheck. In short, KnowTow makes providing pre-towing notice quick and effective, advancing aims shared by local governments and their citizens alike.

However, it is our belief that any government that refuses to provide pre-towing notice to KnowTow users violates our users' constitutional rights. Although KnowTow itself could not—and does not wish to—assert constitutional claims against governments or their agents, our users might. In the interest of transparency, we would be happy to share a memorandum exploring the constitutional implications of KnowTow's service. Please let me know if you would like a copy.

To further introduce you to KnowTow's service, I have enclosed a document describing how our service works. This service description demonstrates how authorized government employees and agents can use KnowTow's service to provide pre-towing notice to vehicle owners.

When KnowTow launches its service in your area, we will send you additional information. First, we will provide you with a list of license plates registered with KnowTow.  Second, we will provide you with a username and password for your county so that the appropriate county agents can provide KnowTow users with pre-towing notice. They will be able to do so by logging in at knowtow.net/login/dept.

Thank you for your time. As I mention above, we at KnowTow would be delighted to speak with you, at your convenience, to discuss how we can best partner with you on this important initiative.

Best regards,

Fredrick Grimm
President
MyGarcon, Inc. d/b/a KnowTow, Inc.
notify@knowtow.net

Enclosed: KnowTow Service Description



2

NAOMI SHEFFIELD, OSB #170601
Senior Deputy City Attorney
naomi.sheffield@portlandoregon.gov
Portland City Attorney's Office
1221 SW 4th Ave., Rm. 430
Portland, OR 97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
*Of Attorneys for Defendant City of Portland*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

ANDREW GRIMM,

               PLAINTIFF,

   v.

CITY OF PORTLAND,

               DEFENDANT**.**

**Case No.: 3:18-CV-183 MO**

**JOINT STATUS UPDATE AND
PROPOSED CASE SCHEDULE**

Pursuant to this Court's Order (ECF 89), the Parties hereby provide this joint status update.

The Parties have been engaged in settlement discussions since February 2022. Although meaningfully productive in moving the Parties closer toward resolution of this case, the Parties' settlement discussions have not yet resulted in an agreement. The Parties are prepared to move forward with the litigation, but also agree that it may be worthwhile to return to settlement discussions at a later time.

Page 1 – JOINT STATUS UPDATE

2-ER-326

In a call last week, counsel discussed the possibility of stipulating to facts in order to efficiently and effectively move forward in this case.

Consistent with this intent, but acknowledging that such agreement may not be possible, the Parties propose that counsel will attempt, until September 15, 2022, to work out stipulated facts that avoid the costs and burdens of extensive discovery. By September 15, 2022, the Parties would provide the Court with another status update.

If the Parties can stipulate to the facts in full, then the Parties will then propose a briefing schedule for cross-motions. If the Parties are not able to stipulate to the facts in full, then the Parties will propose a discovery schedule for those issues for which a stipulated agreement as to the facts could not be achieved. Either way, counsel anticipate that they will have a strong sense of the scope of stipulated facts by September 15, 2022.

Dated: July 18, 2022

Respectfully submitted,

*/s/ Ryan Bailey for Naomi Sheffield*
NAOMI SHEFFIELD, OSB # 891607
Senior Deputy City Attorney
Telephone: (503) 823-4047
*Of Attorney for City of Portland*

*/s/ Megan Kennan* [authorized signature]
MEGAN KEENAN, OSB # 204657
Information Dignity Alliance
Telephone: (925) 330-0359
*Of Attorney for Plaintiff*

Page  2  –    JOINT STATUS UPDATE