FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ANDREW GRIMM, | No. 23-35235 |
| *Plaintiff-Appellant*, | D.C. No. 3:18-cv-00183-MO |
| v. | |
| CITY OF PORTLAND, | OPINION |
| *Defendant-Appellee*. | |

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, District Judge, Presiding

Argued and Submitted October 21, 2024
Portland, Oregon

Filed January 3, 2025

Before: David F. Hamilton,[*] Lawrence VanDyke, and
Holly A. Thomas, Circuit Judges.

Opinion by Judge H.A. Thomas

---

[*] The Honorable David F. Hamilton, United States Circuit Judge for the U.S. Court of Appeals for the Seventh Circuit, sitting by designation.

## SUMMARY[**]

**Fourteenth Amendment Due Process Clause/Vehicular Tows**

The panel affirmed the district court's grant of summary judgment for the City of Portland in an action brought by Andrew Grimm alleging that the City's procedures for notifying him that his car would be towed were deficient under the Fourteenth Amendment's Due Process Clause.

Grimm parked a car on the side of a downtown street, paid for an hour and 19 minutes of parking through a mobile app, and then left the car on the street for seven days. During that time, City parking enforcement officers issued multiple parking citations, which they placed on the car's windshield. After the car sat on the street for five days, a parking enforcement officer added a red slip warning that the car would be towed. Grimm did not move the car, and, two days after the warning slip was placed on the windshield, the car was towed.

The panel held that the City conformed with the requirements of the Fourteenth Amendment by providing notice reasonably calculated to alert Grimm of the impending tow. The warning slip placed on the car's windshield five days after Grimm had parked the car and two days before the car was towed, which explicitly stated that the car would be towed if it were not moved, was reasonably calculated to inform Grimm of the impending tow.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel further held that Grimm's failure to remove the citations and warning slip from the windshield did not provide the City with actual knowledge that its attempt to provide notice had failed.

## COUNSEL

Gregory W. Keenan (argued), Digital Justice Foundation, Floral Park, New York, Plaintiff-Appellant.

Elsa C. W. Haag (argued), Assistant Deputy City Attorney; Denis M. Vannier, Deputy City Attorney; Portland Office of the City Attorney, Portland, Oregon; for Defendant-Appellee.

## OPINION

H.A. THOMAS, Circuit Judge:

Andrew Grimm parked a car on the side of a downtown street in the City of Portland, Oregon, paid for an hour and 19 minutes of parking through a mobile app, and then left the car on the street for seven days. During that time, City parking enforcement officers issued multiple parking citations, which they placed on the car's windshield. After the car had sat on the street for five days, a parking enforcement officer added to this growing pile a slip warning that the car would be towed. Grimm did not move the car, and, two days after the warning slip was placed on the windshield, the car was towed.

Grimm sued the City, alleging that its procedures for notifying him that his car would be towed were deficient under the Fourteenth Amendment's Due Process Clause. The district court granted summary judgment to the City. The district court explained that, although Grimm's failure to remove the citations from the windshield might have alerted the City that its attempt to provide notice had failed, no other form of notice was practicable under the circumstances.

We have jurisdiction under 28 U.S.C. § 1291. We hold that the City conformed with the requirements of the Fourteenth Amendment by providing notice reasonably calculated to alert Grimm of the impending tow. We further hold that Grimm's failure to remove the citations and warning slip from the windshield did not provide the City with actual knowledge that its attempt to provide notice had failed. We therefore affirm the district court's grant of summary judgment.

I.

A.

Like many municipalities, the City of Portland offers people the option to electronically pay for parking through a mobile app. In Portland, people may pay for parking using Parking Kitty, an app created and operated by Passport Parking, Inc. ("Passport"). Users of Parking Kitty must provide a phone number to register with the app. To pay for parking, users must input a credit card number and the license plate number of the car they wish to park. Users can also provide their email address to the app if they wish to receive receipts by email. Parking Kitty sends users a notification shortly before a parking session expires, and another notification when the session has expired. Passport

is a private entity, and the City cannot send notifications regarding citations or towing through Parking Kitty. Nor does Passport regularly share users' contact information with the City.

On October 25, 2017, Andrew Grimm registered as a user of Parking Kitty. He entered into the app his phone number, email address, credit card information, and the California license plate number for a Honda Accord. Just under two months later, on December 14, 2017, Grimm parked the Accord on the side of a street in downtown Portland. Using the Parking Kitty app, Grimm paid to use the parking spot from 5:41 p.m. to 7:00 p.m. Grimm received notifications from Parking Kitty when his parking session was about to expire and when it expired. Grimm did not pay to extend his parking time or initiate a new parking session. Nor did he move the car.

At the time Grimm parked the car on December 14, the vehicle registration for the Accord was up to date, but the registration tags on the car were only valid through June 2017.[1] On December 15, a City parking enforcement officer issued two citations and placed them on the car's windshield: one for being unlawfully parked in a meter zone without proof of payment, and another for failing to display current registration tags. On December 18, a parking enforcement officer issued two more citations for the same offenses and placed them on top of the December 15 citations.

On December 19, a parking enforcement officer issued yet another citation for parking unlawfully and placed it on top of the other citations. This time, the officer also placed

---

[1] The registration for the car listed Grimm's father, Fredrick, as the registered owner and "Imperial ECU" as a lienholder.

on the car a red slip warning that the car would be towed. The warning slip displayed the word "WARNING" in large print on one side and included on the other side the following sentence: "Your vehicle will be subject to tow/citation if it is not moved." The officer circled the words "tow/citation" and underlined the word "tow."

On December 21, seven days after Grimm had parked the car, a parking enforcement officer issued a final citation for parking unlawfully and placed it on top of the other citations. The cherry on top of this pile was another red slip, this time displaying the word "TOW" in large print on one side, and an order to tow the car on the other. After placing the red tow slip, the officer contacted Retriever Towing, which towed the car. The City then mailed a tow notice and information about how to retrieve the car to the addresses listed on the car's registration. The City did not otherwise attempt to contact Grimm.

Grimm did not return to the car before it was towed and did not see the citations, the warning slip, or the tow slip. He picked up the car from Retriever Towing on December 30, paying $514 to do so.

B.

On January 26, 2018, Grimm filed a complaint in the district court, alleging that the City, two parking enforcement officers, and Retriever Towing violated his rights under the Fourteenth Amendment's Due Process Clause. The district court granted Retriever Towing's motion to dismiss, and Grimm conceded that the parking enforcement officers were entitled to qualified immunity, leaving only the City as a defendant. The City then filed a motion for summary judgment, which the district court granted in July 2018. The district court applied the three-

factor balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to hold that the City's procedures for notifying Grimm about the tow were reasonable.

In a 2020 decision, we reversed the district court's judgment, holding that the district court had applied the wrong legal standard. *Grimm v. City of Portland* (*Grimm I*), 971 F.3d 1060, 1065–68 (9th Cir. 2020). We first determined that "*some* individualized form of pre-towing notice was required before Portland could tow Grimm's car." *Id.* at 1064. We explained that the case did not involve an exigency, such as a car parked in the path of traffic, that could justify towing the car without any advance notice. *Id.*

We then concluded that the district court had incorrectly relied on the *Mathews* balancing test to determine the adequacy of the City's pre-tow notice. *Id.* at 1065. We held that the appropriate test was that set forth in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), which requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Grimm I*, 971 F.3d at 1065 (quoting *Mullane*, 339 U.S. at 314). We emphasized that the distinction between these standards could be dispositive because, in *Jones v. Flowers*, 547 U.S. 220 (2006), the Supreme Court had explained that applying the *Mullane* standard sometimes requires governments to undertake additional attempts at notice when they become aware that their previous attempts have failed. *Grimm I*, 971 F.3d at 1066.

We declined, however, to determine in the first instance whether the City's notice procedures were adequate under the *Mullane* standard. *Id.* at 1068. We therefore remanded

the case to the district court to consider, among other issues, the following questions:

> (1) Is putting citations on a car that do not explicitly warn that the car will be towed reasonably calculated to give notice of a tow to the owner?; (2) Did the red tow slip placed on Grimm's car shortly before the tow provide adequate notice?; and (3) Was Portland required under *Jones* to provide supplemental notice if it had reason to suspect that the notice provided by leaving citations and the tow slip on Grimm's windshield was ineffective?

*Id.* We did not expressly ask whether the warning slip placed on Grimm's windshield on December 19 provided adequate notice because, at the time of that appeal, the record was unclear as to whether such a slip had been issued. *See id.* at 1062 n.2.

On remand, the district court granted summary judgment to the City. The district court determined that a citation lacking an express warning of an impending tow would be inadequate under *Mullane*. But the district court held that the red warning slip, which was issued two days prior to the tow, provided adequate notice because it expressly warned Grimm that the car would be towed. The district court then found that, although the City's notice procedures were constitutional, the City had information indicating that Grimm did not receive notice because the City's citations and slips had piled up on Grimm's windshield. The district court thus held that, under *Jones*, the City was required to provide additional notice to the extent practicable. But the

district court determined that the City had no practicable alternative means of providing notice to Grimm.

## II.

"We review the district court's grant of summary judgment *de novo*, viewing the evidence and drawing all reasonable inferences in the light most favorable to the non-moving party." *Anthony v. Trax Int'l Corp.*, 955 F.3d 1123, 1127 (9th Cir. 2020) (quoting *Cohen v. City of Culver City*, 754 F.3d 690, 694 (9th Cir. 2014)). "We must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Id.* (quoting *Cohen*, 754 F.3d at 694). We may affirm on any ground supported by the record. *Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117, 1122 (9th Cir. 2024).

## III.

### A.

We first consider whether the City provided notice reasonably calculated to alert Grimm of the impending tow. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314. In determining what notice is appropriate under the *Mullane* standard, we must "balanc[e] the 'interest of the State' and 'the individual interest sought to be protected by the Fourteenth Amendment.'" *Tulsa Pro. Collection Servs., Inc. v. Pope*, 485 U.S. 478, 484 (1988) (quoting *Mullane*, 339 U.S. at 314). A plaintiff need not

receive "actual notice" under this standard. *Dusenbery v. United States*, 534 U.S. 161, 170 (2002).

In *Clement v. City of Glendale*, we held that governments must provide notice in most circumstances before towing an illegally parked car. 518 F.3d 1090, 1095–96 (9th Cir. 2008). We explained that "[t]he punishment for illegal parking is a fine, which is normally imposed by affixing a ticket to the windshield." *Id.* at 1094. We emphasized that the "ticket can also serve as notice of the illegality and a warning that the car will be towed if not moved or properly registered." *Id.* We further explained that our holding was consistent with our prior decision in *Scofield v. City of Hillsborough*, where we "held that there was a due process requirement that notice be given—usually in the form of a ticket placed on the windshield—before police could tow apparently abandoned vehicles that are otherwise legally parked." *Clement*, 518 F.3d at 1096 (citing *Scofield v. City of Hillsborough*, 862 F.2d 759, 764 (9th Cir. 1988)).

Here, the City provided Grimm with all the notice that the Fourteenth Amendment requires. The red warning slip placed on the car's windshield five days after Grimm had parked the car was reasonably calculated to inform him that the car would be towed. *Id.* at 1094–96. Although the subsequent tow slip was placed on the windshield the same day the car was towed, the warning slip provided two days' advance notice that the car would be removed from the city street. *Cf. Grimm I*, 971 F.3d at 1068 (describing the tow slip as having been placed on the car "shortly before the tow"). And, unlike the earlier citations placed on the car, the warning slip explicitly stated that the car would be towed if it were not moved. *See id.*

Grimm cites the Supreme Court's decision in *Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983), for the proposition that the warning slip placed on the car's windshield was inadequate. And, indeed, the Court held in that case that "posted notices were inadequate to apprise a property owner of condemnation proceedings when his name and address were readily ascertainable from both deed records and tax rolls." *Id.* at 797 (citing *Schroeder v. City of New York*, 371 U.S. 208, 210–11 (1962)). But *Mennonite Board of Missions* is readily distinguishable. There, the Court addressed the notice that a mortgagee must receive before the forced sale of real property. *See id.* at 792–93. At issue here is the notice that an individual must receive before the temporary seizure of a car. Our precedents have already made clear that a ticket placed on a car generally provides adequate notice of an impending tow. *Clement*, 518 F.3d at 1094–96. And while it is undoubtedly the case that an individual has an interest against being even temporarily deprived of a vehicle, *see Grimm I*, 971 F.3d at 1063–64, that interest is different than an individual's interest against the permanent loss of real property. *Compare Mennonite Bd. of Missions*, 462 U.S. at 798, *with Clement*, 518 F.3d at 1094. Second, this is not a case in which Grimm's "name and address were readily ascertainable" to the City. *Mennonite Bd. of Missions*, 462 U.S. at 797. The Accord was not registered to Grimm, but to his father, with a third-party lienholder. And the City had no access to Grimm's information—or any ability to contact him—through the Parking Kitty app.

But even if the car had been registered to Grimm, or if the City could have obtained Grimm's phone number or email address through the Parking Kitty app, we reject the notion that the City would have been required to track him

down in this way before towing the car. A tow warning slip—or a similar document or ticket expressly warning of an impending tow—placed on a car two days before a tow takes place is notice reasonably calculated to alert the user of that car to an impending tow. An individual with an interest in preserving uninterrupted access to his car would revisit the car after his parking session ended or his meter ran, and, seeing such a notice, would either move the vehicle or pay for additional parking time.[2]

A standard requiring the City to mail out a notice, send an email, or make a phone call in addition to leaving a warning slip would strike the wrong balance between the "'interest of the State' and 'the individual interest sought to be protected by the Fourteenth Amendment.'" *Tulsa Pro. Collection Servs., Inc.*, 485 U.S. at 484 (quoting *Mullane*, 339 U.S. at 314). It is thus perhaps unsurprising that Grimm cannot point to any cases requiring such action before a car is towed. While Grimm cites the D.C. Circuit's decision in *Propert v. District of Columbia*, 948 F.2d 1327 (D.C. Cir. 1991), for the principle that notice by mail is required before a government can tow a car with up-to-date registration, *Propert* held no such thing. That case concerned the notice required before a car is destroyed, not before it is towed. *Id.* at 1328–30. The D.C. Circuit acknowledged in *Propert* that a "warning sticker" that the government had attached to the plaintiff's windshield could "provide[] adequate pre-towing—as opposed to pre-destruction—notice." *Id.* at 1335. Although we would not in any event be bound by a contrary decision from that court, *Al Ramahi v. Holder*, 725

---

[2] Our holding here applies with equal force to a car that is illegally parked in a location that does not require payment. *See Clement*, 518 F.3d at 1094–96.

F.3d 1133, 1138 n.2 (9th Cir. 2013), *Propert* is thus consistent with our holding here that the warning slip left by the City provided Grimm with adequate notice.

B.

We next consider whether the City should have known that its attempt at notice had failed because the citations and slips remained undisturbed on Grimm's vehicle before it was towed. Grimm argues that this fact gave the City "good reason to suspect" that its attempt to notify him had not been received, and, citing to the Supreme Court's decision in *Jones*, urges that the City was therefore obligated to use additional methods of notifying him.

Grimm overstates the Court's holding in *Jones*. In that case, the Supreme Court addressed whether the plaintiff received adequate notice of an upcoming tax sale of his home when a state government sent the plaintiff notice of the sale through certified mail, but the mail was returned and marked as unclaimed. *Jones*, 547 U.S. at 223–24. The Court explained that, although notice by mail was generally sufficient, it had "never addressed whether due process entails further responsibility when the government becomes aware . . . that its attempt at notice has failed." *Id.* at 227. The Court therefore characterized the question presented as "whether such knowledge on the government's part . . . varies the 'notice required.'" *Id.* (quoting *Walker v. City of Hutchinson*, 352 U.S. 112, 115 (1956)). And the Court ultimately held that the state's use of certified mail was inadequate because the state should have been aware that its attempts at notice had failed when the mail was returned. *Id.* at 229–34.

Viewing the evidence in the light most favorable to Grimm, we cannot draw a reasonable inference that the City

ever became aware that its attempt to notify him of the impending tow had failed. *Cf. id.* at 227. While in *Jones* the Supreme Court emphasized that "a feature of the State's chosen procedure is that it promptly provides additional information to the government about the effectiveness of notice," *id.* at 231, nothing about the City's method of notice required Grimm to confirm that he had received it.[3] Grimm's argument also leaves little room for our prior holding in *Clement* that notice provided by a ticket is generally sufficient. 518 F.3d at 1094. Under the approach Grimm advocates, individuals would need to regularly remove citations from their vehicles to demonstrate that they had received notice—and would have good incentive not to do so if they wished to avoid being towed. But notice does not become adequate only when its receipt is confirmed. *See Dusenbery*, 534 U.S. at 171–72 (rejecting any requirement that a prisoner sign for a piece of mail notifying him of his right to contest the administrative forfeiture of his property). Rather, absent specific information demonstrating that notice was not received, the ultimate "failure of notice in a specific case does not establish the inadequacy" of the attempt. *Jones*, 547 U.S. at 231.

---

[3] In *Jones*, the Supreme Court also explained that "when a letter is returned by the post office, the sender will ordinarily attempt to resend it . . . especially . . . when . . . the subject matter of the letter concerns such an important and irreversible prospect as the loss of a house." *Id.* at 230. Here, as we have discussed above, the "subject matter" of the warnings, although also important, did not concern a matter as "irreversible" as that at issue in *Jones*. *Id.* It instead involved the temporary deprivation of a car that had not been accessed, moved, or otherwise required by its user for a week.

IV.

While we do not dictate the precise form of notice that a municipality must provide before towing a vehicle, such notice must contain an express warning that the vehicle may be towed. A citation that lacks an express tow warning would not provide the notice that the Fourteenth Amendment requires. Nor would a warning provided only shortly before towing takes place be constitutionally adequate.[4]

In the case before us today, Portland complied with these requirements. By placing a warning slip on the windshield of the Accord two days before the car was towed, the City provided notice reasonably calculated to alert Grimm of the impending tow. The fact that the citations and warning slip remained on the car undisturbed did not provide the City with actual knowledge that its attempt to notify Grimm had failed.[5] The district court's grant of summary judgment to the City is therefore **AFFIRMED**.

---

[4] Our decision today does not disturb the exceptions to the pre-towing notice requirement that we recognized in *Grimm I*, *Clement*, and *Scofield*. *See Grimm I*, 971 F.3d at 1064.

[5] Because the City did not have actual knowledge that its attempt to provide notice had failed, we do not reach the question whether any additional forms of notice would have been practicable under the circumstances.